| | |
|---|---|
| FS MEDICAL SUPPLIES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>TANNERGAP, INC. and TANNER PHARMA UK LIMITED,<br><br>    Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff FS Medical Supplies, LLC ("FSMS") alleges against Defendants TannerGAP, Inc. ("TannerGAP") and Tanner Pharma UK Limited ("Tanner Pharma" and collectively with TannerGAP, "Tanner" or "Defendants") as follows:

## PARTIES

1. FSMS is a Delaware limited liability company with its principal place of business in the County of Parker, State of Texas. However, at all times herein referenced, FSMS had its principal place of business in the County of Santa Clara, State of California.

2. The members of FSMS are all individuals who are citizens of either California or Texas.

3. Defendant TannerGAP, Inc. is, and at all times herein referenced was, a North Carolina corporation with its principal place of business in the County of Mecklenburg, State of North Carolina, and the alter ego of the other Defendant.

4. Defendant Tanner Pharma UK Limited is, and at all times herein referenced was, a European corporation with its principal place of business located in the United Kingdom, and the alter ego of the other Defendant.

1

## ALTER EGO RELATIONSHIP

5.     FSMS is informed and believes that each of the Defendants was the agent, servant, employee, partner, joint venturer, surety, alter ego, employer, and/or principal of each other and the actions complained of herein were all carried out in the course and scope of such relationships. Because of the alter ego relationship between the Defendants, the Defendants had actual or constructive knowledge of the acts of each other.

6.     FSMS is further informed and believes that TannerGAP and Tanner Pharma are solely owned and controlled by Raymond Fairbanks Bourne a/k/a Banks Bourne who treated each entity as if they were one and the same by, *inter alia*, transferring money and assets between the two freely, without any consideration and without imposing any conditions, for his sole benefit; by engaging in business with third-parties in such a manner as suggests no distinction between the two; by failing to observe corporate formalities; and by treating each entity, and its assets and employees, as if they were interchangeable.

7.     Each Defendant ratified and/or authorized the wrongful acts of the other Defendants by accepting and retaining the benefits of such acts. At all times relevant hereto, and as discussed further below, Defendants were alter egos of one another, and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between Defendants such that any separateness between them has ceased to exist in that the entities shared employees and/or agents, acted and/or contracted and interacted with third parties, including FSMS, as though each entity was one and the same, and generally acted and operated in a manner that the individuality or separateness of each Defendant ceased to exist for practical purposes, making them alter egos of each other, and an adherence to the fiction of the separate existence of each individual defendant would sanction a fraud and promote injustice.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy, exclusive of interest and costs, exceeds $75,000 and because all parties are citizens of different states and foreign states.

9.  This Court has personal jurisdiction over Defendants who have systematic and continuous contacts with this forum, have purposefully availed themselves of this forum, and have regularly transacted business in this forum, and because the exercise of jurisdiction over Defendants in this forum would not offend traditional notions of fair play and substantial justice. This Court additionally has personal jurisdiction over Defendants pursuant to North Carolina's Long-Arm Statute, N.C. Gen. Stat. §§ 1-75.4(1), (2), and (5), because TannerGAP is a domestic corporation and Defendants each engage in substantial activity within North Carolina, and because this action arises from promises made by Defendants while in North Carolina and relating to services and payments performed, or failed to have been performed as promised, in North Carolina.

10.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims stated herein occurred in this District; because TannerGAP resides in this District; and because Defendants are subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

11.  FSMS is in the business of, among other things, the supply and sale of personal protective medical equipment and diagnostic rapid tests. Defendants are an international pharmaceutical service provider that distribute pharmaceutical products on a global basis. FSMS had a business relationship with Orient Gene Biotech Co., Ltd ("Orient Gene"). Orient Gene was a provider of the Antigen Rapid Test Kit, also branded as Healgen Antigen Rapid Test Kit ("Coronavirus Test").

12.  On or around September 11, 2020, FSMS entered into a Distribution Agreement (the "Agreement") with TannerGap and Tanner Pharma. Bourne signed the agreement on behalf of both TannerGAP and Tanner Pharma, who were collectively referred to in the Agreement as "Tanner" and treated as the same entity in the Agreement. Pursuant to the Agreement, all notices to Defendants were sent to Tanner's General Counsel's office in Charlotte, North Carolina.

13. The Agreement, amongst other things, established a relationship, pursuant to which FSMS would supply Tanner with coronavirus rapid antigen tests for sale to the United Kingdom Department of Health and Social Care ("UKDHSC").

14. The crux of the Agreement was based on FSMS and Tanner's respective relationships. On or about August 29, 2020, Defendants contacted FSMS with an urgent opportunity to bid on selling a large quantity of Coronavirus Antigen tests to the UKDHSC. To be considered for the bid, FSMS was tasked with getting 500 sample units from its supplier, Orient Gene. Not only was this amount significantly lower than the minimum order requirement, but Orient Gene also informed FSMS that it would take approximately one month to get the 500 samples to the United Kingdom.

15. Fortunately, and as a result of FSMS's relationship with Orient Gene, Orient Gene's United States subsidiary, Healgen Scientific, agreed to divert 500 sample tests to FSMS from a shipment they had already sent to the United States for submission to the U.S. Food and Drug Administration. FSMS was able to arrange for pick up of these samples from Healgen Scientific within two days in Houston, Texas, through Tanner's logistic company and immediately shipped these to the United Kingdom. FSMS's ability to get samples quickly to the UKDHSC was critical to meet the timeframe to even be considered for the opportunity to bid on selling a large quantity of Coronavirus Antigen tests to the UKDHSC.

16. The 500-unit quantity was significantly below Orient Gene's minimum order quantity. As a result, FSMS was charged a premium price of $5.00 per unit.

17. After entering into the Agreement, Defendants entered into a direct agreement with Orient Gene to purchase Orient Gene's Coronavirus Test in order to fill three separate tenders for the UKDHSC (the "Tenders"). Tender No. 1 was for 2,000,000 units of the Coronavirus Test, Tender No. 2 was for 37,499,920 units of the Coronavirus Test, and Tender No. 3 was for 18,750,000 units of the Coronavirus Test. Although the Agreement permits Defendants to contract with suppliers like Orient Gene directly, Defendants must still adhere to the payment structure outlined in the Agreement.

18. Pursuant to the Agreement, Defendants agreed to, amongst other things, evenly split the gross profits collected from the sales of the Coronavirus Tests. Gross profits were calculated as the total purchase price paid by Defendants' customer minus the actual cost of the product paid by FSMS or Defendants to the supplier.

19. Pursuant to the Agreement, Defendants provided to FSMS a reconciliation sheet stating the (1) the cost of the Coronavirus Tests Defendants paid to Orient Gene, and (2) the amount the UKDHSC paid Defendants for the Coronavirus Tests for each of the three relevant Tenders.

20. Defendants' reconciliation sheets reflect that Defendants used the premium price of $5.00 per unit as their cost basis. Based on information and belief, Defendants did not pay $5.00 per unit of the Coronavirus Test to Orient Gene. Further, based on information and belief, Orient Gene offers lower per unit prices for purchases of such large quantities of the Coronavirus Test as were made in the Tenders.

21. FSMS demanded data to support Defendants' claim that they paid $5.00 per unit of the Coronavirus Test to Orient Gene; however, Defendants refused to provide the necessary and relevant data.

22. Further, based on information and belief, Defendants have continued to profit from covered products in the Agreement without notifying FSMS and without properly compensating FSMS as required under the Agreement.

## FIRST CAUSE OF ACTION

(Breach of Contract – Against All Defendants)

23. FSMS hereby incorporates by reference as though fully set forth herein each and every allegation contained in paragraphs 1 through 22, inclusive.

24. On or around September 11, 2020, Defendants entered into the Agreement with FSMS, pursuant to which, amongst other things, FSMS would supply Defendants with Coronavirus Tests for sale to the UKDHSC and Defendants would split the gross profit with FSMS. The gross profit to be split between the parties was calculated by subtracting the actual cost paid to Orient Gene (or other manufacturer/supplier) for the Coronavirus Tests from the amount

the UKDHSC paid for the Coronavirus Tests. The Agreement allowed Defendants to contract directly with Orient Gene, so long as the gross profit was still calculated and divided pursuant to the Agreement.

25. FSMS has fully performed its obligations required under the Agreement.

26. Defendants provided FSMS with reconciliation sheets for three separate Tenders to the UKDHSC. For all three Tenders, Defendants represented that they paid Orient Gene a flat $5.00 price per unit of the Coronavirus Tests.

27. Based on information and belief, Orient Gene offered, and Defendants paid, a bulk discount price of $3.30 per unit for orders of 1,000,000 units or more of the Coronavirus Tests. Based on the Agreement, the profit split between FSMS and Defendants is calculated based on the actual amount paid to Orient Gene and not the flat $5.00 per unit price on which Defendants are relying.

28. Based on information and belief, Defendants did not actually pay Orient Gene $5.00 per unit of the Coronavirus Tests, as alleged in their reconciliation sheets for the sales to the UKDHSC.

29. FSMS demanded backup data to support Defendants' representation that they paid $5.00 per unit for the Coronavirus Tests, but Defendants refused to provide the necessary and relevant information.

30. Defendants breached the Agreement failing to split profits from the Tenders with FSMS in accordance with its terms. Specifically, Defendants improperly used a $5.00 per unit flat fee to calculate the gross profits from the sale of Orient Gene's Coronavirus Test to the UKDHSC rather than the actual amount it paid to Orient Gene as required by the Agreement.

31. Defendants also breached the Agreement by failing to provide the reasonable and necessary data requested by FSMS to verify Defendants' purported costs.

32. Defendants also breached the agreement by failing to collaborate with Plaintiff prior to submitting the bid to the UKDHSC as required under the Agreement.

33. Defendants also breached the agreement by continuing to profit from covered products under the Agreement without notifying FSMS and without properly compensating FSMS as required by the Agreement.

34. As an actual and proximate result of Defendant's breach of the Agreement, FSMS has been damaged in an amount to be determined according to proof at trial, but in an amount believed to be in excess of $45,811,164.80.

## SECOND CAUSE OF ACTION

(Breach of Implied Covenant of Good Faith and Fair Dealing – Against All Defendants)

35. FSMS hereby incorporates by reference as though fully set forth herein each and every allegation contained in paragraphs 1 through 34, inclusive.

36. On or around September 11, 2020, Defendants entered into the Agreement with FSMS, pursuant to which, amongst other things, FSMS would supply Defendants with Coronavirus Tests for sale to the UKDHSC and Defendants would divide gross profits equally with FSMS. The gross profits to be divided equally between the parties was calculated by subtracting the actual cost paid to Orient Gene (or other manufacturer/supplier) for the Coronavirus Tests from the amount the UKDHSC paid for the Coronavirus Tests. The Agreement allowed for Defendants to contract directly with Orient Gene, so long as gross profit was still calculated and divided pursuant to the Agreement.

37. FSMS has fully performed its obligations required under the Agreement.

38. All conditions required for Defendants' performance had occurred.

39. Defendants provided FSMS with reconciliation sheets for three separate Tenders to the UKDHSC. For all three Tenders, Defendants represented that they paid Orient Gene a flat $5.00 price per unit of the Coronavirus Tests.

40. Based on information and belief, Orient Gene offered, and Defendants paid, a bulk discount price of $3.30 per unit for orders of 1,000,000 units or more of the Coronavirus Tests. Based on the Agreement, the profit split between FSMS and Defendants is calculated based on the actual amount paid to Orient Gene and not the flat $5.00 per unit price on which Defendants

7

are relying.

41. Based on information and belief, Defendants did not actually pay Orient Gene $5.00 per unit of the Coronavirus Tests as alleged in their reconciliation sheets for the sales to the UKDHSC.

42. FSMS demanded backup data to support Defendants' representation that they paid $5.00 per unit for the Coronavirus Tests, but Defendants refused to provide the necessary and relevant information.

43. The Agreement contains a choice of law provision making Delaware law govern the Agreement. Every contract entered into under Delaware law has an implied duty of good faith and fair dealing.

44. Defendants have breached the implied covenant of good faith and fair dealing between the parties and did not act fairly and in good faith in their calculation and division of gross profits from the sale of Orient Gene's Coronavirus Test to the UKDHSC. Specifically, Defendants improperly used a $5.00 per unit flat fee to calculate gross profit rather than the actual amount it paid to Orient Gene as required by the Agreement, which has prevented FSMS from receiving its share of the true gross profits.

45. Defendants have also breached their implied covenant of good faith and fair dealing by failing to provide the reasonable and necessary data requested by FSMS to verify the gross profit calculation, knowing that it would reveal Defendants' deliberate erroneous calculation.

46. Defendants also breached their implied covenant of good faith and fair dealing in continuing to profit from covered products without notifying FSMS and without properly compensating FSMS as required by the Agreement.

47. FSMS has suffered harm by Defendants' conduct and has been damaged in an amount to be determined according to proof at trial, but in an amount believed to be in excess of $45,811,164.80.

## THIRD ALTERNATIVE CAUSE OF ACTION

(Money Had and Money Received – Against All Defendants)

48. FSMS hereby incorporates by reference as though fully set forth herein each and every allegation contained in paragraphs 1 through 22, inclusive.

49. FSMS makes this Third Cause of Action for Money Had and Money Received in the alternative to the First and Second Causes of Action.

50. Defendants have money in their hands which belongs to FSMS. Specifically, Defendants took FSMS's share of the true gross profits derived from the sale of Orient Gene's Coronavirus Test to the UKDHSC. Defendant improperly used a $5.00 per unit flat fee to calculate gross profit rather than the actual amount it paid to Orient Gene as required by the Agreement. Defendants in fact paid a lesser amount to Orient Gene. Additionally, Defendants have continued to profit from covered products under the Agreement without notifying FSMS and without properly compensating FSMS as required under the Agreement.

51. Defendants have no right to retain the money belonging to FSMS and their conduct has prevented FSMS from receiving its share of the true gross profits.

52. Defendants in equity and good conscience ought to pay FSMS its full share of the true gross profits in an amount to be determined according to proof at trial, but in an amount believed to be in excess of $45,811,164.80.

## FOURTH ALTERNATIVE CAUSE OF ACTION

(Unjust Enrichment – Against All Defendants)

53. FSMS hereby incorporates by reference as though fully set forth herein each and every allegation contained in paragraphs 1 through 22 and 47 through 52, inclusive.

54. FSMS makes this Fourth Cause of Action for Unjust Enrichment in the alternative to the First, Second, and Third Causes of Action.

55. FSMS, at Defendants' request and with their knowledge, expended significant time and energy and utilized its unique connections to secure sample Coronavirus Tests for Defendants' use in responding to the UKDHSC tender.

56. Defendants received a measurable benefit from FSMS. As a direct result of FSMS's efforts and the timely procurement of the sample Coronavirus, Defendants met the UKDHSC deadline, a necessary condition to receiving future tenders for the Coronavirus Tests from the UKDHSC.

57. FSMS did not confer this benefit gratuitously. FSMS performed in anticipation of receiving an equal split of the gross profit from future tenders from the UKDHSC, and other purchasers, of Coronavirus Tests.

58. Defendants voluntarily accepted the benefit created by FSMS.

59. Defendants will be unjustly enriched in an amount in excess of $75,000 if they are not required to account for the benefit created by FSMS.

## FIFTH CAUSE OF ACTION

(Declaratory Relief – Against All Defendants)

60. FSMS hereby incorporates by reference as though fully set forth herein each and every allegation contained in paragraphs 1 through 59, inclusive.

61. An actual controversy has arisen and now exists between FSMS and Defendants concerning, among other things, the parties' respective obligations, right and remedies with respect to the Agreement, specifically pertaining to FSMS' rights to its shares of the true gross profits.

62. FSMS claims that it is entitled to 50% of the gross profits from the sales of Orient Gene's Coronavirus Test by Defendants to the UKDHSC, calculated as the difference between Defendants' cost for the Coronavirus Tests paid to Orient Gene and the price paid by the UKDHSC to Defendants. Defendants take the position that the gross profit calculation is based not on their cost paid to Orient Gene but rather on a flat $5.00 per unit fee.

63. FSMS is entitled to a declaratory judgment that it is entitled pursuant to the Agreement to 50% of the gross profits from the sales of Orient Gene's Coronavirus Test by Defendants to the UKDHSC, calculated as the difference between Defendants' cost for the Coronavirus Tests paid to Orient Gene and the price paid by the UKDHSC to Defendants, for the three Tenders and future tenders.

64. Pursuant 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, FSMS requests that the Court declare the rights, status, and obligations of the parties to this action.

65. Pursuant to the Agreement and N.C. Gen. Stat. § 6-21.6, FSMS is also entitled to recovery of its attorneys' fees and expenses incurred in the filing and prosecution of this claim for declaratory judgment.

66. Pursuant to 28 U.S.C. § 2202, FSMS requests that the Court award such other and further supplemental relief as may be appropriate in light of any Declaratory Judgment entered.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff FS Medical Supplies, LLC respectfully prays for the following:

1. That FSMS have judgment against Defendants, jointly and severally, under the First and Second Causes of Action and be awarded damages in the amount of at least $45,811,164.80 or such amount as may be determined at trial, plus interest as allowed by contract and law;

2. That FSMS have judgment against Defendants, jointly and severally, under the Third and Fourth Alternative Causes of Action and be awarded damages in amount in excess of $75,000 as determined at trial, plus interest as allowed by law;

3. Under the Fifth Cause of Action, that the Court declare that FSMS is entitled pursuant to the Agreement to 50% of the gross profits from the sales of Orient Gene's Coronavirus Test by Defendants to the UKDHSC, calculated as the difference between Defendants' cost for the Coronavirus Tests paid to Orient Gene and the price paid by the UKDHSC to Defendants, for the three Tenders and future tenders;

4. For reasonable attorney's fees as allowed by the Agreement and applicable law;

5. For costs of suit incurred herein;

6. That there be a trial by jury on all issues so triable; and

7. For such other and further relief as the court may deem just and proper.

THIS the 22nd day of September, 2021.

/s/ Lex M. Erwin
Lex M. Erwin
NC State Bar No. 34619
David A. Luzum
NC State Bar No. 41398
ERWIN, CAPITANO & MOSS, P.A.
4521 Sharon Road, Suite 350
Charlotte, North Carolina 28211
lerwin@ebcmlaw.com
dluzum@ebcmlaw.com
Telephone: (704) 716-1200
Facsimile: (704) 716-1201
*Counsel for Plaintiff*