IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00501-RJC-WCM

| | |
|---|---|
| FS MEDICAL SUPPLIES, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> ) <br> v. ) <br> ) <br> TANNERGAP, INC. and ) <br> TANNER PHARMA UK LIMITED, ) <br> ) <br> Defendants. ) <br> ) | MEMORANDUM AND <br> RECOMMENDATION |

This matter is before the Court on Plaintiff's Motion to Consolidate (the "Motion to Consolidate," Doc. 127) by which Plaintiff moves to consolidate this action ("Tanner I") with FS Medical Supplies, LLC v. Tanner Pharma UK Limited, Raymond Fairbanks Bourne, and Mary Everett Whitehurst Bourne, No. 3:23-cv-00598-RJC-WCM ("Tanner II"). It is also before the undersigned for the issuance of recommendations regarding various pretrial scheduling and discovery matters.

I. Background

A. Tanner I, No. 3:21-cv-00501-RJC-WCM.

On September 23, 2021, FS Medical Supplies, LLC ("FSMS") filed its original complaint in the instant matter naming TannerGAP, Inc. ("GAP") and Tanner Pharma UK, Limited ("TPUK") (collectively, "Tanner") as defendants.

1

Doc. 1. Generally, FSMS asserts claims based on Tanner's alleged breaches of a Non-Circumvention Agreement and a Distribution Agreement related to the sale of COVID-19 rapid tests.

On September 16, 2022, FSMS filed an Amended Complaint that added Raymond Fairbanks Bourne ("Bourne") and Stephen John Scalia ("Scalia") as defendants. See Doc. 58.[1]

On September 30, 2023, motions to dismiss filed by Tanner were granted in part and motions to dismiss filed by Bourne and Scalia were granted. The claims remaining in Tanner I are breach of the Distribution Agreement and breach of the Non-Circumvention Agreement against Tanner. See Doc. 117 at 3, 16.

On October 31, 2023, the parties filed a Joint Certification of Initial Attorneys' Conference and Discovery Plan. Doc. 123.

On December 19, 2023, FSMS filed the Motion for Consolidation. Tanner responded, and FSMS replied. Docs. 129, 136.

---

[1] Bourne is the sole officer of GAP, the sole director of TPUK, and the owner of 75% of the shares of TPUK. Tanner I, Doc. 58 at 3. Scalia is described as being the "President of 'Tanner Pharma Group'…" Id. FSMS alleges that Bourne and Scalia "direct, control, and coordinate the activities of [Tanner] …." Id. at 4.

## B. Tanner II, No. 3:23-cv-00598-RJC-WCM

On September 20, 2023, FSMS filed its original complaint against Bourne and Mary Everett Whitehurst Bourne a/k/a Molly Bourne (the "Bourne Defendants") and TPUK. Tanner II, Doc. 1.

On October 5, 2023, FSMS filed an Amended Complaint against these same defendants. Doc. 33. Generally, FSMS alleges that Bourne fraudulently conveyed TPUK's assets to the Bourne Defendants thereby "stripping the company of sufficient assets to pay FSMS." Doc. 33 ¶ 1. More specifically, FSMS contends that it learned, on March 31, 2023, that TPUK disbursed a total of $96,700,000.00 to the Bourne Defendants beginning in January 2021, and that it learned on September 29, 2023, that FSMS had disbursed another $100,000,000.00 in dividends to the Bourne Defendants on March 8, 2022. See Doc. 39 at 3.

FSMS also filed a Motion for Temporary Restraining Order and Preliminary Injunction, which sought to stop the issuance of any future dividends and to freeze dividends previously disbursed to the Bourne Defendants. Doc. 5.

On October 16, 2023, FSMS's request for injunctive relief was denied. Doc. 39.

On November 15, 2023, the parties filed a Joint Certification of Initial Attorneys' Conference and Discovery Plan. Doc. 44. Therein, the parties again

3

outlined their positions for and against the consolidation of Tanner I and Tanner II.

### C. January 17, 2024 Proceedings

On January 17, 2024, the undersigned conducted a hearing on multiple motions, as well as a combined initial pretrial conference in both Tanner I and Tanner II.[2]

## II. The Motion to Consolidate

As noted, by the Motion to Consolidate, FSMS asks that Tanner I and Tanner II be consolidated. During the hearing on January 17, FSMS acknowledged that some of the evidence in each case would be different, but it nonetheless contends that trying both matters separately would result in the duplication of testimony. Further, FSMS asserts that the question of how trial will ultimately be conducted (including whether the issues in Tanner II are bifurcated) is separate from whether these matters should be "generally" consolidated at this time.

Tanner responds that while Tanner I is a breach of contract case, Tanner II would involve different testimony regarding different timeframes; specifically, evidence regarding the distributions from TPUK to the Bourne Defendants. Tanner further asserts that consolidated discovery would be

---

[2] Besides the Motion to Consolidate, the undersigned heard Motions to Compel filed in Tanner I and Tanner II, as well as other motions related to sealing and page limits.

difficult to manage because of the different relevant time periods and claims. Finally, Tanner agrees that coordination of discovery across both cases is appropriate, but it contends that the trial in Tanner II should be set for a date following the trial in Tanner I.[3] The Bourne Defendants generally agree with Tanner's positions regarding consolidation.

Rule 42 of the Federal Rules of Civil Procedure provides that, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). "The consolidation of actions is ordinarily within the discretion of the trial court." Pickens v. Hendricks, No. 1:21-cv-00030-MR, 2023 WL 316134, at *3 (W.D.N.C. Jan. 19, 2023) (citing Mut. Life Ins. Co. v. Hillmon, 145 U.S. 285, 292 (1892)). "[P]roper application of Rule 42(a) requires the district court to determine 'whether the specific risks of prejudice and possible confusion' from consolidation [are] 'overborne by the risk of inconsistent adjudications ..., the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.'" Campbell v. Boston Scientific

---

[3] The parties appear to be in agreement that a finding of no liability in Tanner I would obviate the need for a trial in Tanner II.

Corp., 882 F.3d 70, 74 (4th Cir. 2018) (quoting Arnold v. Eastern Air Lines, Inc., 681 F.2d 186, 193 (4th Cir. 1982), *rev'd on other grounds*, 712 F.2d 899 (4th Cir. 1983) (en banc)).

Here, the specific legal claims asserted in each case are not identical; Tanner I involves contract claims against Tanner while Tanner II involves claims relative to the alleged wrongful distribution of corporate dividends. Nonetheless, there are many facts that will overlap; indeed, a copy of the Amended Complaint in Tanner I is attached to the Amended Complaint in Tanner II and is incorporated by reference in the Amended Complaint in Tanner II. Doc. 33 at ¶ 15.

Further, in opposition to FSMS's previous request for a temporary restraining order, TPUK asserted that "FSMS's claims in [Tanner II] arise out of and depend on its claims in [Tanner I]"). Doc. 27 at 13.

Similarly, the Bourne Defendants asserted that:

> There can be little doubt that the claim in [Tanner II] involves the same parties, as TPUK and Mr. Bourne were both named as defendants in [Tanner I] and in [Tanner II]. There can also be little doubt that the lawsuits arise out of the same series of transactions when the complaint in [Tanner II] incorporates the entire Amended Complaint in [Tanner I]. Indeed, all of the acts complained of in [Tanner II] happened before the First Amended Complaint in [Tanner I] was filed.

Doc. 29 at 12 (internal citation omitted)

Additionally, consolidation may reduce the burdens on the parties, third parties, and the Court of engaging in overseeing discovery. TPUK is a defendant in both matters and, although Bourne is no longer a defendant in Tanner I, he will likely be a witness in that case. See Tanner I, Doc. 137 (Bourne Defendants' Rule 26(a)(1)(A) initial disclosures listing Bourne as an individual who is believed to have discoverable information regarding, among other things, "the breach of contract claim upon which this claim is contingent").

Finally, the undersigned is not persuaded that there would be a significant risk of prejudice to any defendant if these two matters were consolidated for discovery purposes.

Therefore, having reviewed the parties' filings and considered the arguments of counsel and applicable authorities, the undersigned will recommend that these matters be consolidated for discovery purposes, and that the Motion to Consolidate be granted in part accordingly.

The undersigned does not, however, recommend that Tanner I and Tanner II be consolidated for trial at this time, as such a determination can be made at a later date and upon a more complete record, including, for example, information as to what claims, if any, have survived dispositive motions in each case and are proceeding to trial.

### III. Other Case Management Issues

The parties' Certifications and Reports of Fed. R. Civ. P. 26(f) Conferences and Discovery Plans (the "Reports") raise additional issues that were discussed during the January 17, 2024 initial pretrial conference. See Tanner I, Doc. 123; Tanner II, Doc. 44.

#### A. Early Discovery

FSMS asserted in its portion of the Report filed in Tanner II that early discovery regarding its fraudulent conveyance claim is appropriate. See Tanner II, Doc. 44 at 3.

However, no motion for early discovery is currently pending in either Tanner I or Tanner II and, during the January 17, 2024 conference, FSMS agreed that this request was moot.

#### B. Procedure for Discovery Disputes

Relatedly, FSMS asks the Court to put into place an expedited procedure to manage potential discovery disputes, including a procedure by which the parties may submit short memoranda regarding disputes using a compressed briefing schedule. See Tanner I, Doc. 123 at 20-21.

As discussed during the January 17 conference, the undersigned is confident that the parties will endeavor to resolve any discovery disputes that may arise without the need for court intervention, and that, if following those efforts, a disputed discovery issue remains, such a dispute may be resolved

8

through motions practice in the ordinary course.[4] At this juncture, though, it is not apparent that an expedited procedure should be created for the purpose of addressing discovery disputes that have not yet arisen (and might not arise).

### C. Protective Orders and ESI Protocol

In <u>Tanner I</u>, a Stipulated Protective Order was entered on April 14, 2022. The parties subsequently filed a Joint Stipulation on Electronically Stored Information. Docs. 25, 125. Although that Joint Stipulation indicates that it is "subject to the approval of the Court," <u>see</u> <u>Tanner I</u>, Doc. 125 at 1, the parties confirmed during the January 17 conference that they are not asking the Court to take any action relative to this filing.

In <u>Tanner II</u>, the parties have filed a Joint Motion for Entry of a Protective Order. <u>Tanner II</u>, Doc. 46. The undersigned will grant that Motion by separate Order and will endorse the parties' proposed procedures for handling information that may be confidential, though with some limited modifications. During the January 17 conference, the parties stated that, following the entry of a protective order in <u>Tanner II</u>, they would file a joint stipulation regarding electronically stored information similar to the Joint Stipulation filed in <u>Tanner I</u>.

---

[4] The Court, of course, remains free to shorten the briefing schedule or page limits or otherwise address any individual discovery dispute on an expedited basis, if necessary.

### D. Discovery Limits and Timeframes

#### 1. Initial Disclosures

During the initial pretrial conference, counsel in both <u>Tanner I</u> and <u>Tanner II</u> confirmed that all parties have exchanged initial disclosures.

#### 2. Discovery Deadline

Next, although the Reports reference a bifurcated discovery schedule, no party objected to the use of a unified deadline for the completion of court-enforceable discovery, which would apply to both fact and expert discovery, and the undersigned recommends setting a single deadline for the completion of all discovery.

#### 3. Depositions of Fact Witnesses

FSMS indicated during the conference that it anticipated deposing approximately 20 witnesses (cumulatively for both <u>Tanner I</u> and <u>Tanner II</u>). Tanner indicated that it also anticipated deposing approximately 20 fact witnesses cumulatively. The Bourne Defendants advised that the depositions conducted by Tanner would be sufficient for the Bourne Defendants.

#### 4. Written Discovery

With respect to the scope of written discovery, FSMS requested that requests for admission and interrogatories be allocated on a "per side" basis. While Tanner asserts that allocation of written discovery "per side" would be

appropriate in Tanner I, it contends that the allocation of written discovery in Tanner II should be "per party."

Considering the undersigned's recommendation regarding consolidation of Tanner I and Tanner II for discovery purposes, the undersigned recommends (1) that each side (FSMS on one side, and Tanner and the Bourne Defendants on the other) be allowed to depose up to 20 fact witnesses, and (2) that each party group ((a) FSMS; (b) Tanner; and (c) the Bourne Defendants) be allowed to propound 20 interrogatories and 20 requests for admission to any other party group.

### E. Pretrial Deadlines

The undersigned recommends that Tanner I and Tanner II be set preliminarily for the same trial term, with the following pretrial deadlines:

| | |
|---|---|
| Rule 26 Disclosures | completed |
| Expert Designations-Plaintiff(s) | 6 months from entry of PTO |
| Expert Designations-Defendant(s) | 7 months from entry of PTO |
| Discovery | 5 months prior to trial |
| Mediation | 4½ months prior to trial |
| Motions Deadline | 4 months prior to trial |
| Trial | 14 months from entry of PTO |

Finally, the undersigned recommends allocating a total of 8 trial days cumulatively between Tanner I and Tanner II.

### F. Miscellaneous Issues

During the conference, FSMS requested that the Court set a deadline of 60 days before trial for the parties' pretrial submissions (exhibit lists, etc.).

11

Tanner asserted that a deadline for pretrial submissions between 30-45 days prior to trial could be appropriate. The undersigned recommends that these deadlines be set in conformity with the Court's usual practice.

The parties also represented that they had agreed to an extended briefing schedule for responding and replying to motions for summary judgment. The undersigned will not recommend such a schedule be put in place preemptively, and instead suggests that any requests for extensions (of briefing deadlines or otherwise) be made in the ordinary course.

### IV. Recommendations

For the reasons set out above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion to Consolidate (Doc. 127) be **GRANTED IN PART**, and that this matter (No. 3:21-cv-00501-RJC-WCM) and Tanner II (No. 3:23-cv-00598-RJC-WCM) be **CONSOLIDATED** for discovery purposes.

The undersigned **FURTHER RECOMMENDS** that a Pretrial Order and Case Management Plan be entered as outlined above.

Signed: 2/12/2024

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).