# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| FS MEDICAL SUPPLIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:21-cv-00501-RJC-WCM |
| v. | ) | |
| | ) | |
| TANNERGAP, INC. and | ) | |
| TANNER PHARMA UK LIMITED, | ) | |
| | ) | |
| Defendants. | ) | |

*Consolidated for discovery with*

| | | |
|---|---|---|
| FS MEDICAL SUPPLIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:23-cv-00598-RJC-WCM |
| v. | ) | |
| | ) | |
| TANNER PHARMA UK LIMITED; | ) | |
| RAYMOND FAIRBANKS BOURNE; | ) | |
| and MARY EVERETT | ) | |
| WHITEHURST BOURNE; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER

This matter is before the Court on a Motion to Compel (Doc. 148) filed by

FS Medical Supplies, LLC ("FSMS").[1]

---

[1] The motion was initially denied as moot following the filing of a stipulation by FSMS and the Bourne Defendants but was subsequently reinstated upon a consent motion and following a hearing.

1

## I. The Subject Discovery Dispute

On September 20, 2023, FSMS filed its original complaint in <u>FS Medical Supplies, LLC v. Tanner Pharma UK Limited, Raymond Fairbanks Bourne, and Mary Everett Whitehurst Bourne</u>, No. 3:23-cv-00598-RJC-WCM ("<u>Tanner II</u>").[2] Doc. 1. Generally, FSMS alleged that Raymond Fairbanks Bourne ("Mr. Bourne") and Mary Everett Whitehurst Bourne ("Mrs. Bourne") (collectively the "Bourne Defendants") fraudulently conveyed assets of Tanner Pharma UK Limited ("TPUK") to the Bourne Defendants thereby "stripping the company of sufficient assets to pay FSMS." <u>Tanner II</u>, Doc. 1, ¶ 1. The next day, FSMS filed a Motion for Temporary Restraining Order and Preliminary Injunction. <u>Tanner II</u>, Doc. 5.

On October 5, 2023, and as part of their opposition to that motion, the Bourne Defendants submitted a declaration of John Bly, a certified public accountant with the firm of Aprio, LLP ("Aprio"). <u>Tanner II</u>, Doc. 31. That declaration stated, in part, that Bly had "worked with the Bournes on tax planning considerations related to the repatriation of dividends to them from [TPUK] for the tax years 2020, 2021 and 2022." <u>Id</u>. at ¶ 2.

---

[2] <u>Tanner II</u> has been consolidated for discovery purposes with <u>FS Medical Supplies, LLC v. TannerGAP, Inc. and Tanner Pharma UK Limited</u>, No. 3:21-cv-00501-RJC-WCM ("<u>Tanner I</u>").

The same day, FSMS filed an Amended Complaint. <u>Tanner II</u>, Doc. 33. That pleading includes a claim under N.C.G.S. §39-23.4(a) alleging in part that Mr. Bourne caused TPUK to transfer at least $200 million to himself and Mrs. Bourne with the intent to hinder, delay, or defraud a creditor of TPUK. Doc. 33 at ¶¶ 29-32.

The Bourne Defendants answered the Amended Complaint on October 26, 2023 and, in doing so, alleged that they had received dividends from TPUK "as a result of legitimate tax planning and for the payment of taxes owed by the Bournes." <u>Tanner II</u>, Doc. 42 at 13.

Subsequently, in their initial disclosures made pursuant to Rule 26(a)(1)(A), the Bourne Defendants indicated that Bly had information relating to the issuance of dividends from TPUK to the Bourne Defendants, the tax implications of issuing, or failing to issue, the dividends in dispute, the financial condition of TPUK at the time the dividends were issued, and the financial condition of the Bourne Defendants. <u>Tanner I</u>, Doc. 149-1 at 2-3.

On January 8, 2024, FSMS issued a document subpoena to Aprio and Bly (the "Subpoena") that directed them to produce various materials in Charlotte, North Carolina. <u>Tanner I</u>, Doc. 149-4. Aprio and Bly have objected, and FSMS has moved to compel their compliance with the Subpoena.

3

## II. Discussion

Aprio and Bly have raised numerous objections, which are addressed in turn, below.

### A. Service of the Motion to Compel

Aprio and Bly initially object that the Motion to Compel itself was never served on them directly, as opposed to on their counsel. This objection is without merit.

After the Subpoena was served on Aprio and Bly, their attorney served an objection and response consisting of approximately 68 pages, and then communicated at length with FSMS's counsel regarding the Subpoena. See Tanner I, Doc. 149-7, Docs. 149-8 – 149-15. The certificate of service on the Motion to Compel indicates that the Motion was sent to counsel for Aprio and Bly. Counsel later filed a brief in opposition to the Motion to Compel and appeared during a video hearing on March 13, 2024 pertaining to a request by FSMS that the Motion to Compel be reinstated.

Aprio and Bly cite no provision of the Federal Rules of Civil Procedure that required FSMS to serve them directly with the Motion to Compel. Further, as a practical matter, Aprio and Bly (through their counsel) have had an opportunity to respond to the Motion to Compel and have done so.

4

## B. Validity of the Subpoena

Next, Aprio contends that the Subpoena is invalid on its face because it attempts to require Aprio to produce documents at an improper location.

Rule 45 of the Federal Rules of Civil Procedure provides, in relevant part, that a subpoena may command the "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person…" Fed. R. Civ. P. 45(c)(2).

Aprio asserts that it is headquartered in Atlanta, Georgia, and therefore that the proper place of compliance is the Northern District of Georgia. It argues that attempting to require it to produce documents in Charlotte, which is more than 100 miles away from Atlanta, is improper. See Tanner I, Doc. 157 at 9-12.

In contrast, FSMS asserts that requiring Aprio to produce documents in Charlotte is appropriate since Aprio regularly transacts business there. See Tanner I, Doc. 149 at 12-13.

The view that the district where a company's headquarters are located is a proper place of compliance is reasonable; because the corporation "resides, is employed, or regularly transacts business in person…" where its headquarters are located, the company may be required to comply with a subpoena there. See e.g., Sec. & Exch. Comm'n v. TCA Fund Mgmt. Grp. Corp.,

5

No. 20-21964-CIV, 2021 WL 9440378, at *1 (S.D. Fla. June 10, 2021) ("Thus, the district of compliance for a nonparty corporation is typically where the corporation is headquartered."); Moore v. Pooches of Alrgo, Inc., No. 8:20-CV-2184-MSS-SPF, 2023 WL 2584466, at *2 (M.D. Fla. Mar. 21, 2023) ("The district of compliance for a nonparty corporation is where the corporation is headquartered."); Procaps S.A. v. Patheon Inc., No. 12-24356-CIV, 2015 WL 1722481, at *3 (S.D. Fla. Apr. 15, 2015) ("Subsection (c)(2)(A), in turn, defines the 'place of compliance' to be 'within 100 miles of where the person resides, is employed or regularly transacts business in person.' Because DSM is headquartered in Parsippany, N.J., this is the District of New Jersey.")).

However, the text of Rule 45 does not limit the place of compliance solely to where a company is headquartered, and courts have declined to quash subpoenas that require compliance where companies regularly transact business, even if their corporate headquarters are located elsewhere. See e.g., Fed. Trade Comm'n v. Thomas Jefferson Univ., No. CV 20-01113, 2020 WL 4347371, at *2 (E.D. Pa. July 29, 2020) ("Kindred regularly transacts business within 100 miles of Philadelphia and there is no basis to quash the subpoena under Rule 45(d)(3)(A)(ii)); Trustees of Bos. Univ. v. Everlight Elecs. Co., No. 12-CV-11935-PBS, 2014 WL 12792496, at *3 (D. Mass. Sept. 8, 2014) ("As Apple regularly transacts business in Massachusetts, including Boston, the subpoena complies with the geographical limitations of Rule 45(c)")).

Here, the Bourne Defendants' initial disclosures indicated that Bly is the "South Atlantic Regional Leader" of Aprio, and provided an address for Bly in Matthews, North Carolina – a location approximately 10 miles from Charlotte. Aprio's website also indicates that Aprio has a location in Charlotte, and Aprio does not contest that it regularly does business in Charlotte. Therefore, FSMS's attempt to require the production of materials from Aprio in Charlotte is proper under Rule 45.

### C. Objections to the Specific Materials Sought

#### 1. Categories of Documents

The Subpoena requests 14 categories of documents. <u>Tanner I</u>, Doc. 149-4 at 5. The parties' filings indicate that FSMS has agreed to suspend its request for documents responsive to Requests 6, 7, 8, 12, and 13. <u>See</u> Doc. 149-8. Accordingly, Requests 1-5, 9-11, and 14 remain active.

Aprio and Bly, citing Request 14, object that the "Subpoena seeks documents having nothing to do with any claim or defense." Doc. 157 at 2. The undersigned agrees that Request 14, which seeks "[a]ll communications with the Bournes concerning the 2020 election," is overly broad.

#### 2. Scope of the Subpoena

In addition, Aprio and Bly argue that the Subpoena improperly seeks documents that FSMS should obtain directly from the Bourne Defendants. However, FSMS represents that, before serving the Subpoena, FSMS *did*

7

attempt to obtain Bly's data from the Bourne Defendants but that their counsel indicated the Bourne Defendants were unable to obtain documents from Bly and Aprio and that a subpoena would be needed in order for FSMS to obtain those materials.

Aprio and Bly also argue that compliance with the Subpoena would require them to apply overly broad keywords to search for electronically stored information. However, the Court declines to attempt to define appropriate search terms or key words; with direction from the Court about the categories of documents to be produced, the parties should be able to identify appropriate key words and search terms for Aprio and Bly to use as they attempt to locate responsive materials.

Finally, Aprio and Bly argue that compliance with the Subpoena would require them to search "personal cellphones and laptops" (the "Personal Devices") for responsive information. See Tanner I, Doc. 157 at 2. Aprio and Bly further state that a search of Personal Devices is inappropriate because Aprio's policy prohibits employees from storing work locally, and because "the custodians have been interviewed and stated that they do not store anything on Personal Devices." Id.

To the extent the term "Personal Devices" refers to devices that are owned by Aprio and used by custodians of potentially responsive information,

requiring Aprio to search those devices, which are presumably in Aprio's control, is appropriate.[3]

Similarly, requiring Bly to search any devices that are owned personally by him is appropriate, as the Subpoena is, in part, directed to Bly.

However, the undersigned will not require Aprio, in response to the Subpoena, to search devices that are personally owned by its employees.[4]

### D. Cost of Compliance

Rule 45 provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." F.R.C.P. 45(d)(1). The Rule further provides that, if a person commanded to produce documents objects to a subpoena and the court then compels the recipient to respond, the

---

[3] Aprio previously indicated its willingness to search Personal Devices. See Tanner I, Doc. 157 at 18 ("Aprio will still have an IT consultant review each custodian's local drive to ensure that no emails about the Bournes are saved thereon. If anything is saved, it will be reviewed and if responsive produced."). Aprio later stated that because the custodians are located in different geographic regions, obtaining and physically reviewing the Personal Devices "was not feasible under the circumstances." The undersigned reads Aprio's filings as indicating that a review of these devices by an IT consultant was not feasible in connection with Aprio's response to the Motion to Compel. Aprio has not explained why a review of company-owned devices used by relevant custodians would not be possible in order for it to comply with the Subpoena, should the Court grant the Motion to Compel.

[4] However, should those employees voluntarily give Aprio information from their devices, such information should be produced by Aprio. Further, as discussed above, Bly is obligated to produce responsive information from devices personally owned by him.

court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." F.R.C.P. 45(d)(2)(B)(ii).

Here, Aprio and Bly contend that they "have already had to incur over $44,484.50 in reviewing the Subpoena, drafting and serving objections, and repeatedly trying to confer with [FSMS] to resolve the disputes, and drafting their opposition to the Motion to Compel" and that complying with the Subpoena will require them to incur many more costs, and argue that the burden of these costs should be shifted to FSMS. See Tanner I, Doc. 157-9 at ¶¶ 6, 7, 8.

In response, FSMS argues that any costs incurred by Aprio and Bly in responding to the Subpoena may be reimbursed by the Bourne Defendants through an indemnification agreement. FSMS additionally argues that any decision to shift the costs of production would be premature, as it is unknown whether the cost of compliance with the Subpoena will be "significant."

"Given that the Rule uses the word 'must,' the court has to shift the cost of compliance to the requesting party if the responding party has incurred significant expense." Volt Power, LLC v. Butts, No. 7:19-CV-00149-BO, 2021 WL 4188428, at *1 (E.D.N.C. Aug. 17, 2021).

Here, however, Aprio and Bly have not yet responded to the Subpoena, and the costs of their compliance are not yet known. Under these circumstances, any consideration of cost-shifting would be premature. Upon

Aprio and Bly's compliance with the Subpoena, the Court will be able to consider, as appropriate, any relevant factors regarding Aprio and Bly's expenses. See Stafford v. Bojangles Restaurants, Inc., No. 2023 WL 3971698, at *2 (W.D.N.C. June 9, 2023) ("When determining the cost allocation of a subpoena, courts often consider three factors: 1) whether the non-party actually has an interest in the outcome of the case; 2) whether the non-party can more readily bear its costs than the requesting party; and 3) whether the litigation is of public importance") (citing In re Exxon Valdez, 142 F.R.D. 380, 383 (D.D.C. 1992)); Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr., No. 05 Civ. 6298, 2006 WL 2996645, at *3 (S.D.N.Y. Oct. 13, 2006) ("The existence of an indemnification agreement does not foreclose a non-party's recovery of significant expenses in complying with a subpoena but it may be considered as part of the mix of information considered by the court in assessing the burden on the non-party."); Assure Re Intermediaries, Inc. v. Western Surplus Lines Agency, Inc., No. 1:21MC25, 2021 WL 9682281, at *3 (M.D.N.C. Sept. 28, 2021) ("the Court reserves any ultimate determination on the issue of cost-shifting until after the documents have been produced, If at that time the Third Parties seek cost-shifting in relation to their compliance, they may file a motion to that effect in this action and the Court will consider that motion at that time.").

**IT IS THEREFORE ORDERED THAT:**

1. The Motion to Compel (Doc. 148) is **GRANTED IN PART** as stated herein, and John Bly and Aprio, LLP are directed, on or before **April 22, 2024**, to produce documents responsive to Requests 1 through 5 and 9 though 11 as referenced in the Subpoena.

2. With respect to the Requests 6, 7, 8, 12, and 13, which FSMS has agreed to suspend, the Motion to Compel is **DENIED AS MOOT**.

3. With respect to Request 14, the Motion to Compel is **DENIED.**

Signed: April 1, 2024

W. Carleton Metcalf
United States Magistrate Judge