IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| FS MEDICAL SUPPLIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> TANNERGAP, INC. AND TANNER PHARMA UK LIMITED, <br><br> Defendants. | Case No. 3:21-cv-501-RJC-WCM |

**DEFENDANTS TANNER PHARMA UK LIMITED AND TANNERGAP, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND ANSWER**

Defendants Tanner Pharma UK Limited ("TPUK") and TannerGAP, Inc. ("TannerGAP," together the "Tanner Defendants"), under Rule 13 and Rule 15(a)(2) of the Federal Rules of Civil Procedure, submit this memorandum in support of their Motion for Leave to File a First Amended Answer ("Motion") to include additional defenses to the Amended Complaint and two additional counterclaims. For the reasons set forth below, the Court should grant TannerGAP and TPUK's Motion and permit them leave to amend their defenses and add counterclaims to their Answer.

**RELEVANT BACKGROUND**

On September 23, 2021, Plaintiff FS Medical Supplies, LLC ("FSMS") filed this action against TannerGAP and TPUK, setting forth five claims related to alleged breaches of a 2020 Distribution Agreement between the parties.[1] The agreement contemplated that FSMS would

---

[1] In addition to asserting claims for breach of contract against TannerGAP and TPUK, the Amended Complaint also alleged breach of the implied covenant of good faith and fair dealing and violations of N.C. Gen. Stat. § 75-1.1. Dkt. 40. The Amended Complaint also named

1

supply TannerGAP and TPUK with COVID-19 related personal protective equipment ("PPE") and test kits for resale to third parties. Dkt. 1 at ¶ 13. FSMS conducted substantial jurisdictional discovery and filed its Amended Complaint on August 12, 2022. Dkt. 36, 40. In its Amended Complaint, and as relevant to this Motion, FSMS alleged that TannerGAP and TPUK breached the parties' 2020 Distribution Agreement and (for the very first time in the 18-month long dispute) alleged that TannerGAP and TPUK also breached the parties' 2020 Mutual Non-Disclosure and Non-Circumvention Agreement ("NDNCA"). *Id.*

On October 14, 2022, TannerGAP and TPUK moved to dismiss FSMS's claims under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Dkt. 62, 65, 67. TannerGAP and TPUK argued that FSMS failed to state a claim for breach of the Distribution Agreement because, among other things, TPUK already paid FSMS the amount owed under the Distribution Agreement. They further argued that FSMS failed to state a claim for breach of the NDNCA because it was superseded by the Distribution Agreement and no longer in effect. Dkt. 66 at 22-23; Dkt. 68 at 16-17. After argument, Magistrate Judge Metcalf granted the motions in part, but recommended that FSMS's claims for breach of the Distribution Agreement and the NDNCA be allowed to proceed. Dkt. 110. On October 2, 2023, the District Court adopted Judge Metcalf's recommendation over TannerGAP's and TPUK's objections.[2] Dkt. 117.

On October 16, 2023, TannerGAP and TPUK filed their Answer and Affirmative Defenses and Counterclaim ("the Answer"), alleging twelve defenses and one counterclaim, reserving their

---

Raymond Fairbanks Bourne and Stephen John Scalia as individual defendants. *Id.* Only the breach of contract claims against the corporate defendants remain. Dkt. 117.

[2] FSMS filed a second lawsuit against TPUK and its shareholders, Raymond Fairbanks Bourne and Mary Everett Whitehurst Bourne for fraudulent conveyance only three days after the District Judge's Order adopting Judge Metcalf's recommendation. No. 3:23-cv-598, Dkt. 33. The fraudulent conveyance case is consolidated with this contract action for purposes of discovery only. Dkt. 165.

2

right to assert additional defenses during or upon the completion of discovery, which does not close until December 6, 2024. Dkt. 120 at 50-52; Dkt. 164, 165. Now that discovery is underway, the facts and issues in the case have developed and TannerGAP and TPUK seek leave to amend their Answer to include three additional affirmative defenses, to supplement defenses already asserted, and to assert two additional counterclaims against FSMS.[3] A redlined copy of the proposed Amended Answer is attached as **Exhibit A**, and a clean copy is attached as **Exhibit B**, to the Motion. For reasons explained more fully below, TannerGAP and TPUK request leave to amend their Answer to assert their proposed amended defenses and counterclaims over FSMS's objections[4] because the proposed amendments will not unduly prejudice FSMS, are proposed in good faith, and are not futile.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The decision to grant or deny leave to amend lies within the discretion of the trial court. *Scherer v. Steel Creek Prop. Owners Ass'n*, No. 1:13-CV-121, 2015 WL 13579342, at *1 (W.D.N.C. Apr. 14, 2015) (citation omitted). And trial courts routinely grant leave to amend; indeed, the Fourth Circuit has held that denial of leave to amend is appropriate *only* in three circumstances: "(1) where allowing the amendment would prejudice the opposing party; (2) [where] the moving party acted in bad faith; or (3) where the amendment would be futile." *Id.* (citing *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010)).

---

[3] TannerGAP and TPUK also seek leave to amend their Answer to correct a typographical error in their Third Defense.

[4] TannerGAP and TPUK have consulted with FSMS about the relief requested in this Motion; FSMS does not consent to the proposed amendments.

3

The Fourth Circuit's "strong policy" in favor of "freely granting leave to amend 'reflects the importance of deciding a case on its merits rather than through disposing of them on technicalities.'" *Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*, No. 2:09CV185, 2011 WL 13229623, at *2 (E.D. Va. Mar. 11, 2011) (quoting *Sciolino v. City of Newport News*, 480 F.3d 642, 651 (4th Cir. 2007)); *see also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) (noting the "general policy embodied in the Federal Rules favoring resolution of cases on their merits"). In addition, "[t]he Fourth Circuit has found that . . . leave to amend to include compulsory counterclaims . . . should be granted freely lest parties later be met with a plea of res judicata." *Richards v. Octane Env't, LLC*, No. 1:18CV157, 2019 WL 8165258, at *2 (N.D.W. Va. Jan. 28, 2019) (quotation and citation omitted).

For the reasons set forth below, TannerGAP and TPUK should be granted leave to amend their Answer. The proposed amended defenses and counterclaims will cause FSMS no undue prejudice at this early stage, when only four non-party depositions and one party deposition on accounting topics have been taken, and with over four months remaining in fact discovery. They are also proposed in good faith and are not futile.

## ARGUMENT

TannerGAP and TPUK seek leave to amend their Answer to include three additional affirmative defenses, to elaborate on prior defenses already asserted, and to include two additional counterclaims against FSMS. None of these amendments prejudices FSMS, TannerGAP and TPUK have a good faith basis in seeking the amendments, and none of the amendments is futile.

### I. The Proposed Amendments Do Not Unduly Prejudice FSMS.

FSMS will suffer no undue prejudice from the amendments because there are almost four months left in fact discovery and only one party deposition on accounting topics (which are not

implicated by the proposed amendments) has occurred. The "absence of prejudice, though not alone determinative, will normally warrant granting leave to amend." *Davis*, 615 F.2d at 613 (citing *Wall v. Chesapeake & Ohio Railway*, 339 F.2d 434 (4th Cir. 1964)). "While it is 'axiomatic that almost every amendment . . . results in some prejudice,' the relevant test is whether the opposing party would suffer from 'undue prejudice.'" *Builders Mut. Ins. Co.*, 2011 WL 13229623, at *2 (quoting *Smithfield Foods Inc. v. United Food & Commercial Workers Int'l Union*, 254 F.R.D. 274, 277 (E.D. Va. 2008)). Courts within this Circuit have routinely granted leave to amend due to lack of prejudice where the non-movant has "ample time" to conduct discovery into the amended claims or defenses. *See, e.g.*, *Stewart v. Coyne Textile Servs.*, 212 F.R.D. 494, 498 (S.D.W. Va. 2003); *Essex Ins. Co. v. Neely*, No. 5:04CV139, 2007 WL 9733993, at *2-*3 (N.D.W. Va. Feb. 20, 2007) (finding no prejudice where "the civil action has not progressed to such a stage that an amendment will seriously affect the plaintiff's discovery or trial strategy"); *Fisher v. United States*, No. 1:18-cv-255, 2020 WL 1821018, at *2 (W.D.N.C. Apr. 10, 2020) (granting leave to amend and noting lack of prejudice to non-movant because discovery had been extended for an additional six months); *Mondragon v. Scott Farms, Inc.*, No. 5:17-cv-00356, 2019 WL 489117, at *15 (E.D.N.C. Feb. 7, 2019) (finding no prejudice where "discovery [was] still ongoing" and remained open for another 60 days).

Here, FSMS would suffer no undue prejudice should TannerGAP and TPUK be granted leave to amend. The discovery completion deadline in this case is December 6, 2024—almost four months from now. *See* Dkt. 164 at 1. That leaves "ample time" for FSMS to conduct discovery into and to prepare its case in response to the proposed amendments. *See Stewart*, 212 F.R.D. at 498. This case is still in its early stages—party depositions on substantive topics have yet to occur, and the amendments cannot be credibly characterized as having a negative impact on

5

FSMS's discovery or trial strategy. The proposed amendments all turn on events, communications, and contracts that are already the subject of ongoing discovery and will not add any material or prejudicial discovery burden. The proposed amendments accordingly do not unduly prejudice FSMS, and the Court should grant TannerGAP and TPUK's Motion.

## II. The Tanner Defendants' Amendment Is Not in Bad Faith.

In addition to considering whether the proposed amendments would unduly prejudice the nonmoving party, the Court is to consider whether the party seeking amendment engaged in bad faith in moving to amend. *See Scherer*, 2015 WL 13579342, at *1.

TannerGAP and TPUK are acting in good faith in bringing this Motion. The proposed amendments are proper because, now that document discovery has been substantially completed, the Tanner Defendants' theory of the case has evolved as new facts have been discovered. FSMS has produced documents on a rolling basis between January 12, 2024 and June 27, 2024, and TannerGAP's and TPUK's proposed amendments are a result of information learned during discovery, including from FSMS's documents produced during that time that could not have been discovered earlier. *See Software Pricing Partners, LLC v. Geisman*, No. 3:19-cv-195, 2021 WL 12092946, at *2 (W.D.N.C. May 12, 2021) (granting leave to amend in part because amendments sought to add claims based on information learned during discovery); *T&M Industrials v. Great Lakes Salt, Inc.*, No. 15 C 3107, 2016 WL 693231, at *2, *6-7 (N.D. Ill. Feb. 22, 2016) (same); *Hollinger Int'l, Inc. v. Hollinger Inc.*, No. 04 C 698, 2007 WL 1029089, at *1 (N.D. Ill. Mar. 29, 2007) (same). TannerGAP and TPUK are seeking to account for these additional facts developed in discovery and follow on investigation, are pursuing defenses they believe are supported by the law, and are complying with the Local Rules. The Motion is brought in a good faith effort to maximize TannerGAP's and TPUK's chances of prevailing in this litigation and to avoid the

potential loss of these compulsory counterclaims because of res judicata in a subsequent proceeding. *Richards*, 2019 WL 8165258 at *2 (explaining that "the Fourth Circuit has found that . . . leave to amend to include compulsory counterclaims . . . should be granted freely lest parties later be met with a plea of res judicata") (citations and quotations omitted); *Rutherford Controls, Int'l Corp. v. Sec. Door Controls, Inc.*, No. 2:08CV312, 2009 WL 10689625, at *1 (E.D. Va. Feb. 6, 2009) (explaining that "[t]he argument for allowing the omitted compulsory counterclaim is particularly compelling because res judicata may bar the claim in a subsequent proceeding"); *see also Alabama Mun. Ins. Corp. v. Munich Reinsurance Am., Inc.*, No. 2:20CV300, 2021 WL 2392421, at *2 (M.D. Ala. June 11, 2021) (stating that "courts in the Eleventh Circuit liberally allow amendment of pleadings to add compulsory counterclaims"). FSMS can point to no evidence of bad faith. Accordingly, the Court should grant TannerGAP and TPUK leave to amend their Answer and Counterclaims.

**III.     The Proposed Amendments Are Not Futile.**

Denial of leave to amend based on futility is appropriate "'only where [the proposed amendment] is legally insufficient on its face.'" *Builders Mut. Ins. Co*, 2011 WL 13229623, at *2 (quoting *Smithfield Foods Inc.*, 254 F.R.D. at 281). In other words, "the Court's review for futility does not involve an evaluation of the underlying merits of the case." *Earthkind, LLC v. Lebermuth Co. Inc.*, No. 5:19-cv-00051, 2020 WL 8771419, at *2 (W.D.N.C. Dec. 1, 2020) (citations and quotations omitted). Ultimately, "[f]or a motion to amend to be denied for futility, the amendment must be clearly insufficient or frivolous on its face." *Massie v. Bd. of Trustees, Haywood Cmty. Coll.*, 357 F. Supp. 2d 878, 884 (W.D.N.C. 2005) (citation and quotations omitted); *accord Willis v. Cleveland Cnty., N. Carolina*, No. 1:18-cv-00292-MR-WCM, 2020 WL 908888, at *2 (W.D.N.C. Feb. 25, 2020) ("[A] motion to amend an answer to state a new affirmative defense

should be denied as futile only if the proposed amendment is clearly insufficient or frivolous on its face."); *Hamilton v. APV Baker, Inc.*, No. 5:04-cv-913, 2005 WL 8159358, at *2 (E.D.N.C. Aug. 9, 2005) (granting motion to amend and finding proposed amendments not futile because amendments could survive motion to dismiss).

Here, none of the proposed amendments is futile. TannerGAP and TPUK's proposed amendments are legally sufficient and establish that futility is not an appropriate basis on which to deny leave to amend.

### a) The Proposed Misrepresentation-Based Counterclaims Are Not Futile.

The proposed counterclaims are not futile because they are not facially insufficient or frivolous. TannerGAP's and TPUK's proposed misrepresentation-based counterclaims are grounded on important and particular facts learned from FSMS's document production and discovery responses to date. Specifically, TannerGAP and TPUK seek to include the alternative counterclaims of fraudulent inducement and negligent misrepresentation because discovery has established that FSMS materially misrepresented that it had direct relationships with manufacturers, vetted factories itself, and did not use resellers to purchase products. In addition, FSMS misrepresented the extent of its relationship with Orient Gene, creating the impression that FSMS had done substantial prior business with Orient Gene. However, discovery to date has shown that FSMS's first communication with anyone from Orient Gene or Healgen was on May 16, 2020, hardly two weeks before its contact with TPUK and TannerGAP; that FSMS had never purchased any products directly from Orient Gene or Healgen when it entered the NDNCA; and that FSMS had only made one small purchase of Orient Gene-related products from a third-party reseller not affiliated with Orient Gene or Healgen by that point. FSMS also misrepresented its resources and capabilities, and misrepresented that it had years of experience in the distribution of

8

PPE. Discovery has established that these representations were false, misleading, and were made to induce TannerGAP and TPUK to enter into the contracts that ultimately afforded FSMS a profit share it did not earn.

These proposed alternative counterclaims are supported by both law and fact and are pled with particularity as required by Federal Rule of Civil Procedure 9(b).

First, the proposed counterclaim of "Fraud/Fraudulent Inducement" alleges all the elements of intentional fraud, which is actionable where there is a misrepresentation as to a material fact made by one party and upon which the other party reasonably or justifiably relies to their detriment. *See Mauro v. Mooney*, 711 S.E.2d 531, at *3 n.3 (N.C. Ct. App. 2011) (reciting general elements of fraud) (citation omitted); *Malinak v. Kramer*, No. CIV.A. CPU6-11002145, 2012 WL 174958, at *2 (Del. Ct. Com. Pl. Jan. 5, 2012) (same).

TannerGAP and TPUK have set forth extensive allegations regarding the misrepresentations made by FSMS, the dates on which they were made, and the persons to whom they were made. *See* Ex. A, ¶¶ 10-27. The proposed counterclaims then go on to detail the reasons why the misrepresentations were false and misleading when they were made. *Id.* at ¶¶ 28-55. As just one example, TannerGAP and TPUK allege that "on or around June 2, 2020" Laird Cagan of FSMS told Jonathan Bracey of TPUK that Cagan "got into PPE distribution a few years back and that he worked directly with the main and best quality Chinese manufacturers." *Id.* at ¶ 14. But discovery has established that, by June 2, 2020, "FSMS had been operating for a little over a month, did not purchase products exclusively from manufacturers, and had little experience in PPE distribution." *Id.*

The proposed counterclaims are replete with allegations like this: particularized allegations that FSMS made material misrepresentations regarding "FSMS's experience, resources, and

9

relationships with manufacturers" upon which TannerGAP and TPUK reasonably relied to their detriment. *See id.* at ¶¶ 61-64. These allegations plausibly allege the elements of and meet the federal pleading standard for fraud. *See Mauro*, 711 S.E.2d at *3 n.3; *Malinak*, 2012 WL 174958, at *2; *see also Hongda Chem USA, LLC v. Shangyu Sunfit Chem. Co.*, No. 1:12-CV-1146, 2013 WL 5563845, at *5 (M.D.N.C. Oct. 8, 2013), *report and recommendation adopted*, No. 1:12CV1146, 2014 WL 1224745 (M.D.N.C. Mar. 25, 2014) (must allege the "who, what, when, where, and how" of fraud to satisfy Rule 9(b)) (citation and quotations omitted)). The proposed counterclaim of "Fraud/Fraudulent Inducement" would survive a motion to dismiss and is, therefore, not futile. *Hongda Chem USA, LLC*, 2013 WL 6653845, at *3-5 (granting leave to amend to add fraud-based claim because fraud elements were alleged with particularity); *Thompson Auto. Labs, LLC v. Illinois Tool Works Inc.*, No. 5:15-CV-282-FL, 2016 WL 11805987, at *5 (E.D.N.C. Mar. 17, 2016) (granting leave to amend to add fraudulent inducement counterclaim where the claim was "not clearly insufficient upon its face"); *Hamilton*, 2005 WL 8159358, at *2.

Second, the same is true of the alternative proposed counterclaim of "Negligent Misrepresentation." Negligent misrepresentation occurs when one justifiably relies to his detriment on information misrepresented to him by someone who owes a duty of care. *Rountree v. Chowan Cnty.*, 796 S.E.2d 827, 830 (N.C. Ct. App. 2017) (stating elements of negligent misrepresentation) (citation omitted); *see also PR Acquisitions, LLC v. Midland Funding LLC*, No. CV 2017–0465–TMR, 2018 WL 2041521, at *13 (Del. Ch. Apr. 30, 2018) (same). The proposed alternative counterclaim of negligent misrepresentation turns on the same well-pled allegations as the fraud counterclaim; thus, the negligent misrepresentation counterclaim would similarly withstand a motion to dismiss and is not futile.

### b) The "Modification, Waiver, and Acquiescence by Course of Performance" Affirmative Defense Is Not Futile.

The Fourth Defense in the Amended Answer titled "Modification, Waiver, and Acquiescence by Course of Performance" is not futile because it is not clearly insufficient or frivolous on its face. This defense is a supplementation of the existing Third Defense, which already includes "Waiver" and "Ratification." Delaware law allows contracting parties to orally or by their conduct modify their written contracts notwithstanding the presence of any clause to the contrary. *See Haft v. Dart Grp. Corp.*, 841 F. Supp. 549, 567 & n.23 (D. Del. 1993) (explaining that, under Delaware law, "parties may, by their conduct, substitute a new oral contract without a formal abrogation of the written agreement, even if that agreement contains an explicit clause to the contrary") (citation and quotations omitted)). Indeed, Delaware law recognizes that "a course of performance can . . . constitute a waiver or modification of a contract," *Motors Liquidation Co., Dip Lenders Tr. v. Allianz Ins. Co.,* No. CV-N11C-12-022, 2013 WL 7095859, at *5 (Del. Super. Ct. Dec. 31, 2013), *aff'd sub nom. Motors Liquidation Co. DIP Lenders Tr. v. Allstate Ins. Co.,* 191 A.3d 1109 (Del. 2018), and that written contracts may be modified by later conduct. *See, e.g.*, *Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*, 297 A.2d 28, 33 (Del. 1972); *Haft v. Dart Group Corp.,* Civ. No. A 93-384, 1994 WL 828326, at *12 (D. Del. 1994) ("Written contracts can be modified by unwritten conduct on the part of the parties.") (citations and quotations omitted).

Here, even if this Court were to conclude that the Distribution Agreement is enforceable and were to disagree with TannerGAP and TPUK's interpretation of the payment provisions in the Distribution Agreement, they assert, in the alternative, that the parties' course of performance modified the contract. With the proposed amendment, the Tanner Defendants allege that, although FSMS promised in the Distribution Agreement that it would act as an "authorized reseller or distributor," it never did so. After TPUK reproached FSMS for failing to attend multiple calls and

11

failing to respond timely to urgent inquiries, the evidence will show that FSMS urged TPUK to go direct to the manufacturer. Discovery has also shown that FSMS (1) was not able to act as a distributor at scale, (2) did not have a balance sheet that would have enabled it to undertake financial risk for large transactions, and (3) did not have the willingness, experience, or personnel to manage the supplier side of large, fast-paced transactions. *See* Ex. A, at Fourth Defense. Accordingly, through their course of performance, the parties modified the contract to discharge FSMS from its reseller/distributor obligations under the Distribution Agreement, and to reduce TPUK's payment obligations to reflect FSMS's modified performance. *Id.* FSMS accepted these payments, thus confirming the contract modification, waiving FSMS's claim for additional payment, and/or acquiescing to the Tanner Defendants' interpretation of the profit split provision. *Id.* These allegations are not clearly insufficient on their face and, if proven true at trial, would entitle TannerGAP and TPUK to relief on their proposed Course of Performance defense. The proposed defense is not futile.

    **c)    The "Distribution Agreement Void Due to Misrepresentation" Affirmative Defense Is Not Futile.**

Similarly, the Seventh Defense titled "Distribution Agreement Void Due to Misrepresentation" is not futile. TannerGAP and TPUK seek to add this defense because their motivation for entering into the Distribution Agreement with FSMS was driven by FSMS's misrepresentations that it (1) had direct relationships with manufacturers, including Orient Gene; (2) vetted factories itself; (3) did not use resellers to purchase products; and (4) had extensive experience and capabilities in the distribution of PPE. Ex. A, Seventh Defense. But FSMS's true capabilities fell far short of their represented ones, which frustrated the essential purpose of the two contracts (which TannerGAP and TPUK would not have entered into but for the misrepresentations), and ultimately left TPUK to do all of the work and shoulder all of the risk.

12

Delaware courts have recognized that contracts formed under similar circumstances involving misrepresentation are voidable. *Schiavello v. Delmarva Sys. Corp.*, 61 F. Supp. 2d 110, 114 (D. Del. 1999) ("Delaware courts recognize that, under ordinary contract [principles], transactions entered into in reliance upon material misrepresentations are voidable.") (citing *Kern v. NCD Indus., Inc.*, 316 A.2d 576, 582 (Del. Ch. 1973)). This is so even if the party complaining of a misrepresentation has only after-acquired evidence of that misrepresentation. *Schiavello*, 61 F. Supp. 2d at 114-15. With their proposed affirmative defense, TannerGAP and TPUK have alleged that an essential purpose of entering into the Distribution Agreement was so that FSMS could perform as a supplier and leverage its relationship with Orient Gene, which FSMS has described as "trusted," *see, e.g.*, Dkt. 40, ¶ 26; however, those representations have proved to be false. *See* Del. P.J.I. Civ. § 19.13 (2000) (Delaware pattern jury instruction titled "Fraud or Misrepresentation by a Party Invalidates a Contract"). As described above, FSMS lacked the capacity to function as a supplier at scale. *Supra* Part III.b. In addition, as discussed above, FSMS misrepresented the extent of its relationship with Orient Gene, creating the impression that FSMS had done substantial prior business with Orient Gene when it had not.

Cagan, Mao, and FSMS's inexperience and lack of resources and relationships forced TPUK to handle the supplier side of the DHSC transactions and bear all of the financial risk. In fact, none of Cagan, Mao, or FSMS ever had a personal relationship with decisionmakers at Healgen and Orient Gene. *See* Ex. A. ¶ 37. Instead of having the personal working relationship FSMS claimed it had, TPUK had to build its relationship with Orient Gene from the ground up. The Tanner Defendants' proposed defense that the Distribution Agreement is void due to misrepresentation is facially sufficient, and therefore, not futile.

### d) The Proposed NDNCA Amendments Are Not Futile.

TannerGAP and TPUK also seek to amend their defenses with respect to the NDNCA to expand upon an existing defense and to add a new defense. First, they seek to elaborate on their currently existing Twelfth Defense titled "Compliance with the NDNCA" to provide further detail on how TannerGAP and TPUK complied with the NDNCA (if it is enforceable). The amendment reflects that (1) Orient Gene was not a "Personal Relationship" of FSMS within the meaning of the NDNCA; and (2) FSMS did not "originally" make Orient Gene known or available to TannerGAP and TPUK. Ex. A, Twelfth Defense. As discussed above, discovery has revealed, among other things, that (1) TannerGAP and TPUK employees had contacted Orient Gene and had been negotiating an agreement to acquire test kits from a third-party distributor of its U.S. affiliate, Healgen, prior to the effective date of the NDNCA; (2) FSMS's first communication with anyone at Orient Gene or Healgen occurred only a few weeks prior to FSMS's first contact with the Tanner Defendants; and (3) FSMS's financials show that its first direct purchase from Orient Gene came only *after* the effective date of the NDNCA. *See* Ex. A, ¶¶ 30-39. The amendment seeks to account for this additional factual detail, and therefore, is not futile. *See Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, No. C 08-4567, 2009 WL 10677178, at *1 (N.D. Cal. May 4, 2009) (holding that "add[ing] another factual allegation in support of [defendant's] existing defense" was not futile). The Court should thus allow this amendment.

Second, TannerGAP and TPUK also seek to add the Thirteenth Defense that the NDNCA is void under California's Business and Professions Code § 16600. This defense is likewise not futile. California law voids "every contract by which anyone is restrained from engaging in a lawful professional, trade, or business." Cal. Bus. & Prof. Code § 16600. Under California law

14

(the law selected by the choice-of-law clause in the NDNCA),[5] section 16600 applies to commercial, non-circumvention contracts like the NDNCA. *See Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1149 (2020) ("[S]ection 16600 applies to business contracts."). Because the NDNCA is a commercial contract and limits the ability of TannerGAP and TPUK to solicit or do business with other businesses, the reasonableness standard applies. *See id.* at 1159-60. That is a "heavily factual" standard, which ultimately considers whether the restraint is reasonable in light of the circumstances. *Sandler Partners, LLC v. Masergy Commc'ns, Inc.*, 848 F. App'x 798, 799 (9th Cir. 2021) (citing *Ixchel*, 9 Cal. 5th at 1159).

Here, the NDNCA attempts to prohibit the Tanner Defendants from doing business with Orient Gene **in perpetuity** and without any territorial limitation or limitation on type of business activity. *See* Dkt. 63-2, §§ 4, 10 (providing no term limit on the non-circumvention provision). A fact finder could find this restraint on the Tanner Defendants' ability to do business with Orient Gene unreasonable such that it would be void under California state law. *See Mid-Am. Salt, LLC v. D.J.'s Lawn Serv., Inc.*, 396 F. Supp. 3d 797, 809–10 (N.D. Ind. 2019) (holding that non-circumvention agreement that lacked temporal and geographic limitations was unreasonable and therefore unenforceable). The proposed NDNCA defense is therefore not futile.

---

[5] In the Court's Order Adopting the Magistrate Judge's Memorandum and Recommendation, the Court held that the Distribution Agreement was ambiguous as to whether the NDNCA remained in effect. Dkt. 117, at 8-9. The Court, however, did not have the occasion to decide which law governed the NDNCA and the parties did not fully brief the issue. As TPUK stated in its Rule 12(b)(2) motion, the NDNCA has a California choice-of-law clause. Dkt. 64, at 6 (citing Ex. B, NDNCA § 12).

## CONCLUSION

For these reasons, TannerGAP and TPUK respectfully request that this Court allow their Motion for Leave to Amend their Answer and Counterclaims to include additional defenses, to elaborate on prior defenses already asserted, and to add two counterclaims.

This the 20th day of August, 2024.

McGuireWoods LLP

By: /s/ Bradley R. Kutrow
Bradley R. Kutrow
N.C. State Bar No. 13851
Brian A. Kahn
N.C. State Bar No. 29291
Anita Foss
N.C. State Bar No. 47743
Jessica L. O'Brien
N.C. State Bar No. 56679
Kelly A. Warlich
N.C. State Bar No. 51053
201 North Tryon Street, Suite 3000
Charlotte, NC 28202-2146
Telephone: (704) 343-2049
Facsimile: (704) 343-2300
bkutrow@mcguirewoods.com
bkahn@mcguirewoods.com
afoss@mcguirewoods.com
jobrien@mcguirewoods.com
kwarlich@mcguirewoods.com

Mark E. Anderson
N.C. State Bar No. 15764
501 Fayetteville Street, Suite 500
Raleigh, NC 27601
Telephone: (919) 755 -6678
Facsimile: (919) 755-6699
manderson@mcguirewoods.com

Anne Doherty
N.C. State Bar No. 55494
Gateway Plaza
800 East Canal Street
Richmond, VA 23219

Telephone: (804) 775-7633
Facsimile: (804) 775-1061
adoherty@mcguirewoods.com

*Attorneys for Defendants TannerGAP, Inc.
and Tanner Pharma UK Limited*

## **CERTIFICATION**

Pursuant to this Court's June 18, 2024 Order regarding the use of artificial intelligence, the undersigned states that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 20th day of August, 2024.

/s/ Bradley R. Kutrow
Bradley R. Kutrow
N.C. State Bar No. 13851
McGuireWoods LLP

*Counsel for Defendants TannerGAP, Inc. and Tanner Pharma UK, Ltd.*