**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

FS MEDICAL SUPPLIES, LLC,

      Plaintiff,

v.

TANNERGAP, INC. AND TANNER
PHARMA UK LIMITED,

      Defendants;

and

FS MEDICAL SUPPLIES, LLC,

      Plaintiff,

v.

TANNER PHARMA UK LIMITED; RAYMOND
FAIRBANKS BOURNE; MARY EVERETT
BOURNE,

      Defendants.

Case No. 3:21-cv-501-RJC-WCM
Case No. 3:23-cv-598-RJC-WCM

**DEFENDANTS TANNER PHARMA UK LIMITED AND TANNERGAP, INC.'S
MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER
<u>TO PRECLUDE DISCOVERY-ON-DISCOVERY</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................................1

I.      BACKGROUND ...............................................................................................2

II.     LEGAL STANDARD.........................................................................................5

III.    ARGUMENT ...................................................................................................6

        A.     Topics 43 and 44 are not relevant to any claim or defense and are thus beyond the scope of permissible discovery. ................................................7

        B.     FSMS has not made the requisite showing to warrant discovery on discovery. ....................................................................................................8

        C.     FSMS's requested "discovery on discovery" is an improper topic for a fact witness because the discovery process was conducted by lawyers. ..........13

CONCLUSION.............................................................................................................................15

CERTIFICATION ........................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barn Light Elec. Co. v. Barnlight Originals*,
   No. 8:14-cv-1955-T-35, 2017 WL11632537 (M.D. Fla. June 28, 2017) ...............................12

*Black v. W. Va. State Police*,
   No. 3:22-cv-00096, 2023 WL 4834948 (S.D.W. Va. July 27, 2023) ........................5, 8, 9, 12

*Bombardier Recreational Prods., Inc. v. Arctic Cat, Inc.*,
   No. 12-cv-2706, 2014 WL 10714011 (D. Minn. Dec. 5, 2014) ...........................................13

*Calloway-Durham v. N.C. Dep't of Just.*,
   No. 5:21-cv-371-BO, 2024 WL 694019 (E.D.N.C. Feb. 20, 2024) ........................................8

*Columbia Gas Transmission, LLC v. 252.071 Acres, More or Less, in Baltimore
   Cnty., Maryland*,
   No. ELH-15-3462, 2016 WL 7167979 (D. Md. Dec. 8, 2016) ................................................6

*In re Exxon Corp.*,
   208 S.W.3d 70 (Tex. Ct. App. 2006) ...................................................................................13

*Fed. Deposit Ins. Corp. v. Johnson*,
   No. 12-cv-209, 2013 WL 1195698 (D. Nev. Mar. 22, 2013) ...............................................13

*Fish v. Air & Liquid Sys. Corp.*,
   No. CV GLR-16-496, 2017 WL 697663 (D. Md. Feb. 21, 2017) ...................................6, 8, 12

*Freedman v. Weatherford Int'l*,
   No. 12 Civ. 2121 (LAK) (JCF), 2014 WL 4547039 (S.D.N.Y. Sept. 12, 2014) ..............11, 13

*Guillory v. Carrington Mortg. Servs., LLC*,
   No. CV 22-192-JWD-SDJ, 2023 WL 4688133 (M.D. La. July 21, 2023) ........................9, 13

*Jowite Ltd. P'ship v. Fed. Ins. Co.*,
   No. CV SAG-18-2413, 2019 WL 1513457 (D. Md. Apr. 5, 2019)...........................................6

*LKQ Corp. v. Kia Motors Am., Inc.*,
   345 F.R.D. 152 (N.D. Ill. 2023)....................................................................................... *passim*

*Lofton v. Verizon Wireless (VAW) LLC*,
   No. 13-cv-05665-YGR, 2014 WL 10965261 (N.D. Cal. Nov. 25, 2014) ..............................14

*Mason v. Health Mgmt. Assocs., LLC*,
   No. 3:10-cv-00472-KDB, 2023 WL 362512 (W.D.N.C. Jan. 23, 2023)...................................7

Case 3:21-cv-00501-RJC-WCM   Document 184   Filed 08/22/24   Page 3 of 21

*Powell v. WestRock CP, LLC*,
No. 2:23-cv-2085, 2024 WL 448785 (W.D. Ark. Feb. 6, 2024) .........................................9, 12

*S.C. v. Wyndham Hotels & Resorts, Inc.*,
No. 1:23-cv-00871, 2024 WL 21548 (N.D. Ohio Jan. 2, 2024) ...............................................12

*Salzgitter Mannesmann Int'l USA Inc. v. Sun Steel Co., LLC*,
No. 3:22-cv-00030, 2022 WL 3041134 (S.D. Tex. Aug. 2, 2022) ..........................................12

*Shenwick v. Twitter, Inc.*,
No. 16-CV-05314, 2018 WL 833085 (N.D. Cal. Feb. 7, 2018) .............................................14

*Williams v. NYC Bd. of Elections*,
No. 23-CV-5460 (AS) (KHP), 2024 WL 3567395 (S.D.N.Y. July 29, 2024)....................9, 12

**Other Authorities**

Fed. R. Civ. P. 1 ................................................................................................................6, 12

Fed. R. Civ. P. 26(b)(1)........................................................................................................6, 7

Fed. R. Civ. P. 26(b)(2)(C)(iii) ............................................................................................6, 8

Fed. R. Civ. P. 26(c)(1)...........................................................................................................5

Fed. R. Civ. P. 37(e) .............................................................................................................11

*The Sedona Principles, Third Edition: Best Practices, Recommendations &*
*Principles for Addressing Electronic Document Production*,
19 Sedona Conf. J. 1, 123-24 (2018) ....................................................................................10

# INTRODUCTION

The Tanner Defendants have now produced an enormous volume of electronically stored information ("ESI") drawn from hundreds of thousands of emails and other documents, which have been reviewed, analyzed, and tagged for production by the Tanner Defendants' counsel and contract attorneys engaged to review the documents. This has proven to be an exhaustive task, requiring thousands of attorney hours and costing hundreds of thousands of dollars. The document review has required over 8,500 hours from the Tanner Defendants' document review vendor, with hundreds more hours worked by the undersigned counsel and their colleagues doing further review, quality control, and privilege logging. Importantly, this amount of work was necessary because the Tanner Defendants retain **all** emails sent and received on their company email servers, including all email communications with Plaintiff FS Medical Supplies, LLC ("FSMS"), COVID test kit manufacturer Orient Gene, and the United Kingdom Department of Health and Social Care ("DHSC"). The result: The Tanner Defendants have produced over 64,000 emails involving Jonathan Bracey ("Bracey"). Over 4,000 documents involving Defendant Banks Bourne[1] ("Bourne") have been produced. Text messages (including both WhatsApp messages and other types of messages) were also collected from Bracey's and Bourne's personal phones and from other individuals' phones who texted with Bourne and Bracey. Overall, the Tanner Defendants have produced over **103,000 documents**, totaling roughly **450,000 pages**, from twelve document custodians and other systems. A staggering **220,000 documents** were reviewed by the Tanner Defendants' counsel to facilitate this robust production. FSMS, by contrast, has only produced around **6,000** documents from just two document custodians.

---

[1] Some of the Bourne emails and other documents were produced by Bourne as an individual defendant from his custodial data retained by Bourne Partners. The Tanner Defendants also produced Bourne ESI retained in their systems.

Against this backdrop, FSMS has now served Tanner Pharma UK Limited ("TPUK") with a Rule 30(b)(6) deposition notice demanding that a corporate representative testify about "the preservation, collection, review and production of the custodial ESI" of both Bourne and Bracey. Evidently not satisfied with the hundreds of thousands of pages of communications and other documents that the Defendants have already produced, FSMS now wants to obtain discovery about the **discovery process itself**, including privileged and work product communications between the Tanner Defendants and their counsel. FSMS concedes that this is "discovery on discovery," although such discovery is disfavored and thwarts the objectives of the 2015 amendments to the Federal Rules of Civil Procedure.

FSMS's extraordinary request is unjustified under applicable law and the facts of this case. This is not a case where the Tanner Defendants have resisted discovery to the prejudice of FSMS, or refused to produce documents that they have in hand. To the contrary, FSMS has been provided ample information that is relevant to the parties' claims and defenses and sufficient to pursue FSMS's claims. This discovery has been proportionate to the needs of the case.

FSMS has not specified any material information that is unavailable or any prejudice it has suffered. Its positions in the parties' meet-and-confer process preceding this motion suggest that FSMS is not seeking essential information, but instead positioning itself to pursue sanctions by critiquing the Defendants' discovery process. TPUK thus respectfully seeks a protective order preventing the disfavored "discovery on discovery" FSMS has demanded.

I.      **BACKGROUND**

On June 20, 2024, FSMS served its Rule 30(b)(6) notice of deposition of TPUK, which consisted of a total of forty-two topics. On July 3, 2024, FSMS served an amended Rule 30(b)(6) notice of deposition of TPUK, which added Topics 43 and 44. Those topics are:

2

43. The preservation, collection, review, and production of the custodial ESI of Jonathan Bracey.

44. The preservation, collection, review, and production of the custodial ESI of Raymond Fairbanks Bourne.

Ex. A.  TPUK served its objections and responses to FSMS's amended notice on July 19, 2024.

Ex. B.  Counsel for TPUK and counsel for FSMS exchanged emails concerning these two topics and related Rule 34 requests for documents, then met and conferred on TPUK's objections on August 13, 2024.  FSMS's counsel refused to withdraw Topics 43 and 44.  FSMS's counsel have also confirmed that FSMS's document requests seek the privileged litigation hold communication that the Tanner Defendants' counsel sent to potential document custodians as well as the Tanner Defendants' communications with their counsel related to preservation, which are protected by the attorney-client privilege and work product doctrine.

Relatedly, on July 18, 2024, FSMS filed a Motion to Compel Production of ESI from Jonathan Bracey's Mobile Phone.  Dkt. 174.  The Tanner Defendants filed their opposition to that motion August 1, and FSMS filed its reply on August 16.  Dkt. 176; 178.  As the Tanner Defendants' opposition explains, they have already produced documents totaling roughly 450,000 pages.  Dkt. 176-3, Declaration of Anita Foss ("Foss Decl.") ¶ 5.  More specifically, TPUK has produced more than 64,000 emails, WhatsApp messages, and other text messages involving Jonathan Bracey.  Dkt. 176-3, Foss Decl. ¶ 12.  With respect to Bracey's WhatsApp and other text messages, which are on a personal device outside of TPUK's control, Bracey permitted TPUK's counsel to review his texts and WhatsApp messages, collect responsive messages, and produce those that were not privileged.  Dkt. 176-4, Declaration of Alice O'Donovan ("O'Donovan Decl.") ¶¶ 5–7.  Specifically, with Bracey's consent and outside his presence, counsel spent a full workday reviewing the messages and running searches to efficiently identify relevant communications.

targeted search and obtained screenshots of all potentially responsive, nonduplicative messages they identified, taking care to preserve date and time stamps and include the names of participants. Dkt. 176-4, O'Donovan Decl. ¶ 11; Dkt. 176-3, Foss Decl. ¶ 8. TPUK produced all 571 responsive, Dkt. 176-4, O'Donovan Decl. ¶¶ 5–10. During that review, counsel conducted a reasonable non-privileged individual messages that its counsel identified. Dkt. 176-3, Foss Decl. ¶ 6. This was and remains the only legally permitted and practicable method for TPUK to search, collect, and produce business information from Bracey's mobile phone, given the scope of Bracey's consent, so TPUK's method in collecting and reviewing such information was reasonable under the circumstances.[2]

With respect to Bourne, TPUK's and Bourne's individual counsel have produced over 3,900 email communications and text messages. *See* Exhibit C, Declaration of Anita M. Foss ("Foss Decl. 2") ¶¶ 5-6. Upon learning that Bourne unknowingly had a 30-day limited retention setting on his iPhone, his individual counsel also collected a backup from his iPad to determine what, if anything, could be recovered. Foss Decl. 2 at Ex. A. Bourne and his counsel were able to recover a backup of text messages from November 25, 2022 to present, but nothing from before that date. *Id.* However, prior to the November 25, 2022 date, Bourne only recalls texting with Stephen Scalia ("Scalia"), Bracey, William Taylor, and Molly Bourne, his wife, about material issues. *Id.* Text messages with Bourne from these individuals' phones have either been produced or are in the process of being reviewed for production by the Tanner Defendants.[3]

---

[2] It is not possible to image Bracey's phone in a way that collects **only** work-related information and excludes personal information; a forensic image of a mobile device does not differentiate between business and personal data. And, even if only text messages are copied from the forensic image for review, they would have to be reviewed to determine whether they were work-related or personal—the device copying the text messages does not know whether a text is "work related" or "personal."

[3] All responsive text messages identified in the Tanner Defendants' searches have been produced, with the exception of some text messages from Stephen Scalia's phone that were not initially provided by the Tanner

The Tanner Defendants have no reason to believe their collections and productions are missing any relevant text messages. FSMS has argued that, in a few situations, it has found text messages in one custodian's files but not in another's, and therefore it is prejudiced and must be missing something. But FSMS's argument proves the Tanner Defendants' point—FSMS cannot be prejudiced if it has the text messages. Any conclusion beyond that is simply speculation. FSMS has a comprehensive collection of ESI relevant to the claims and defenses in this case given the extensive collection and production of documents from twelve different people, many of whom conversed with each other. And FSMS has put forth no evidence (and offers only speculation) suggesting anything material is missing or that anyone intentionally deleted any relevant information. Thus, there is no basis for the extraordinary discovery FSMS seeks.

## II. LEGAL STANDARD

Rule 26(b)(1) limits discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," in view of several criteria that require weighing the marginal benefit of the discovery against burden and expense. More specifically, "discovery on discovery has increasingly been looked upon with disfavor" because it quickly becomes "counterproductive and disproportional to the needs of the case." *Black v. W. Va. State Police*, No. 3:22-cv-00096, 2023 WL 4834948, at *10 (S.D.W. Va. July 27, 2023).

Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ.

---

Defendants' forensic ESI consultant. A significant number of text messages were produced from two different phones that Scalia had during the relevant time period, but counsel then learned that the forensic vendor experienced a technical issue in delivering the text messages. The vendor has now provided corrected text message files and the Tanner Defendants are in the process of reviewing and producing those as promptly as possible. Apart from this processing error, all Scalia's WhatsApp and other text messages have been produced to FSMS (subject to any additional items identified during supplemental quality control review that occurs in any large-scale discovery review). Additional text messaging data for Bourne may be produced by his individual counsel.

P. 26(c)(1). "This undue burden category encompasses situations where a party seeks information irrelevant to the case." *Columbia Gas Transmission, LLC v. 252.071 Acres, More or Less, in Baltimore Cnty., Maryland*, No. ELH-15-3462, 2016 WL 7167979, at *2 (D. Md. Dec. 8, 2016) (quotation marks and brackets omitted). "Thus, if the discovery sought has no bearing on an issue of material fact—i.e., if it is not relevant—a protective order is proper." *Jowite Ltd. P'ship v. Fed. Ins. Co.*, No. CV SAG-18-2413, 2019 WL 1513457, at *2 (D. Md. Apr. 5, 2019). In addition, under Rule 26(b)(2)(C), "[o]n motion or on its own, the court ***must*** limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii) (emphasis added). The party seeking a protective order bears the burden of establishing good cause. "Good cause exists when the information sought in discovery is not relevant to any issue in the case," such as "discovery on discovery, and information protected by the attorney-client privilege and the work product doctrine." *Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL 697663, at *2 (D. Md. Feb. 21, 2017).

## III.  ARGUMENT

The Federal Rules of Civil Procedure are to be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. These objectives are served by the Rules' limitation to discovery that is non-privileged and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In disregard of these Rules, FSMS's Rule 30(b)(6) deposition notice seeks improper "discovery on discovery." Specifically, Topics 43 and 44 of FSMS's amended notice demand testimony on the "preservation, collection, review and production of the custodial ESI" for Bourne and Bracey, two TPUK custodians, based only on speculation that something might be missing from the Tanner Defendants' productions. FSMS's approach is disfavored and constitutes improper discovery on

discovery. *See, e.g.*, *LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 161-62 (N.D. Ill. 2023) (citation omitted).

FSMS should not be permitted to elicit corporate designee testimony from TPUK about the preservation, collection, review and production of custodial ESI because that information is not relevant to any claim or defense at issue in this case; because FSMS is unable to point to anything relevant and material not already contained in the hundreds of thousands of documents and pages the Tanner Defendants have already produced; and because topics 43 and 44 intrude on the attorney-client privilege and the work product doctrine. And, practically speaking, there is no corporate representative (other than lawyers) who can speak knowledgeably to these topics—it would be improper and burdensome to force lawyers to prepare a client witness to testify about the process the lawyers followed to collect and produce documents, and would unnecessarily jeopardize privileged and work product communications.

### A. Topics 43 and 44 are not relevant to any claim or defense and are thus beyond the scope of permissible discovery.

It is well settled that the scope of discovery is limited to "any nonprivileged matter that is relevant to any claim or defense." *Mason v. Health Mgmt. Assocs., LLC*, No. 3:10-cv-00472-KDB, 2023 WL 362512, at *1 (W.D.N.C. Jan. 23, 2023); *see also* Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). Topics 43 and 44—which concern the "preservation, collection, review, and production of the custodial ESI of" Bracey and Bourne—are clearly not relevant to the contract claims or fraudulent transfer claims or defenses thereto. FSMS has not provided any basis whatsoever for how these topics are relevant to any claim or defense, nor could it as these topics plainly seek discovery on discovery. Because Topics 43 and 44 target irrelevant

7

information, there is good cause to warrant a protective order under Rule 26(c) and Rule 26(b)(2)(C)(iii). *Fish*, 2017 WL 697663, at *1-2 (granting defendant's motion for a protective order as to Rule 30(b)(6) deposition topics seeking irrelevant discovery on discovery and holding "[g]ood cause exists where the information sought in discovery is not relevant to any issue in the case"); *Calloway-Durham v. N.C. Dep't of Just.*, No. 5:21-cv-371-BO, 2024 WL 694019, at *3-5 (E.D.N.C. Feb. 20, 2024) (granting motion for a protective order as to certain Rule 30(b)(6) topics on the ground that the topics were irrelevant); Fed. R. Civ. P. 26(b)(2)(C)(iii) ("On motion or on its own, the court *must* limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." (emphasis added)).

**B.      FSMS has not made the requisite showing to warrant discovery on discovery.**

Rather than seek information relevant to the claims and defenses at issue in these actions (consolidated for discovery only), Topics 43 and 44 seek impermissible discovery on discovery. *See LKQ Corp.*, 345 F.R.D. at 158 (discovery on discovery is not explicitly permitted under the Federal Rules). "Discovery on discovery has been broadly described by courts as any discovery seeking information regarding a party's preservation, collection, and retention efforts. Its purpose is generally to challenge the sufficiency and thoroughness of the other party's production of documents and other evidence." *Black*, 2023 WL 4834948, at *9 (citation omitted). "[**A**]**ll**" federal courts that have addressed the issue agree that "this type of discovery should be rare and certainly the exception, not the norm." *LKQ Corp.*, 345 F.R.D. at 156 (emphasis added). This is to guard against the discovery system "break[ing] down into an endless barrage of motions based on mistrust about the opponent's production." *See id.* (explaining that discovery on discovery is tantamount to second-guessing the opponent's process for producing responsive information).

8

"[M[ere speculation of discovery misconduct is inadequate to justify a court granting discovery on discovery." *Id.* at 161 (citations omitted).

In order to pursue discovery on discovery, the party seeking such discovery must show a specific deficiency in the other party's production. *Black*, 2023 WL 4834948, at *10 ("When a party seeks discovery on discovery, that party must provide an adequate factual basis to justify the discovery, and the Court must closely scrutinize the request in light of the danger of extending the already costly and time-consuming discovery process ad infinitum." (quotation marks omitted)).

Other courts have reached the same conclusion, setting a similarly strict standard. *Williams v. NYC Bd. of Elections*, No. 23-CV-5460 (AS) (KHP), 2024 WL 3567395, at *4 (S.D.N.Y. July 29, 2024) ("When the discovery sought is collateral to the relevant issues (i.e., discovery on discovery), the party seeking the discovery must provide an adequate factual basis to justify the discovery, and the Court must closely scrutinize the request in light of the danger of extending the already costly and time-consuming discovery process ad infinitum. Discovery on discovery is disfavored absent a showing of abuse." (citations and quotation marks omitted)); *Guillory v. Carrington Mortg. Servs., LLC*, No. CV 22-192-JWD-SDJ, 2023 WL 4688133, at *5 (M.D. La. July 21, 2023) ("[A] party seeking [discovery on discovery] should point to a specific or material deficiency in the other party's production or otherwise make a showing, including through the documents that have been produced, that allows the Court to make a reasonable deduction that other documents may exist or did exist and have been destroyed or must point to the existence of additional responsive material." (citation and quotation marks omitted)); *Powell v. WestRock CP, LLC*, No. 2:23-cv-2085, 2024 WL 448785, at *3 (W.D. Ark. Feb. 6, 2024) ("[A] party must provide an adequate factual basis for its belief that discovery on discovery is warranted.").

The *LKQ* court, after a comprehensive review of the Rules, the Sedona Principles, and "case law nationwide," held that: "Mere speculation about missing evidence is insufficient to allow discovery on discovery," that a party requesting such discovery "bears the burden of producing specific and tangible evidence of a **material failure of an opponent's obligation to conduct a reasonable inquiry** in the discovery process," and that "court authorization . . . via motion **before** discovery on discovery is sought should be obtained by the party seeking it. *LKQ Corp*, 345 F.R.D. at 162-63 (emphasis added).

Courts' refusal to allow discovery on discovery absent a specific, factual showing of a material discovery deficiency is consistent with the principles developed by the Sedona Conference, which courts often rely on "in the context of ESI discovery for particularized discovery issues." *Id.* at 162 (citations omitted). Specifically, the comments to Principle 6 state:

> [A]s a general matter, neither a requesting party nor the court should prescribe or detail the steps that a responding party must take to meet its discovery obligations, and there should be no discovery on discovery, absent an agreement between the parties, or specific, tangible, evidence-based indicia (versus general allegations of deficiencies or mere "speculation") of a material failure by the responding party to meet its obligations. A requesting party has the burden of proving a specific discovery deficiency in the responding party's production.

The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 123-24 (2018).

Here, FSMS has made no factual showing of a material deficiency in the Tanner Defendants' and Bourne's cumulative productions to warrant discovery on discovery targeting Bracey and Bourne. The Tanner Defendants have produced over 103,000 documents totaling roughly 450,000 pages. TPUK has produced more than 64,000 emails, text messages, and WhatsApp messages involving Bracey. Bourne's messages have also been produced by his

counsel. Beyond their comprehensive email production, the Tanner Defendants have produced numerous WhatsApp messages and other text messages and involving Bourne, including messages with Scalia and Bracey. While Bourne unknowingly had a setting on his phone that limited text retention to 30 days, that did not affect WhatsApp messages, so all his WhatsApp messages were retained and produced. *See* Foss Decl. 2 at Ex. A. WhatsApp was used far less than email by Bourne, Bracey, and Scalia, and SMS texting was used even less frequently. And to the extent any of Bourne's text messages have not been produced from his mobile device, the relevant and material information would very likely have been produced from others' ESI given the scope of the Tanner Defendants' collection and production from the eleven other document custodians.

FSMS has not pointed to any specific, material deficiency in the Tanner Defendants' extensive productions to warrant discovery on discovery. Pointing to a few emails or text messages produced by one defendant and/or custodian and not others, as FSMS does here, is not enough. *See Freedman v. Weatherford Int'l,* No. 12 Civ. 2121 (LAK) (JCF), 2014 WL 4547039, at *2-3 (S.D.N.Y. Sept. 12, 2014) (denying discovery on discovery where request was premised on argument that the defendants' production had documents missing because the Federal Rules "do not require perfection" and it was unsurprising that some documents had "fallen through the cracks" in a production of hundreds of thousands of documents). "Speculation that there is more will not suffice; if the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end." *LKQ Corp.*, 345 F.R.D. at 161 (*quoting Hubbard v. Potter*, 245 F.R.D. 27, 29 (D.D.C. 2008)). If a relative handful of missing text messages out of hundreds of thousands of electronic communications over a multi-year period justified discovery on discovery, discovery would be effectively limitless. *See* Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment ("Because electronically stored information

often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere"; duty to preserve does not require "perfection"); *see also LKQ Corp.*, 345 F.R.D. at 156-59 (explaining rationale for strictly limiting discovery on discovery); Fed. R. Civ. P. 1 (courts and litigants are directed to "secure the just, speedy, and inexpensive" resolution of civil cases); *see also Barn Light Elec. Co. v. Barnlight Originals*, No. 8:14-cv-1955-T-35, 2017 WL11632537, at *7-8 (M.D. Fla. June 28, 2017) (declining to find prejudice on a sanctions motion due to emails that a party claimed were missing from the opposing party's production where the moving party already had the emails from a third party).

Unsurprisingly, courts routinely prohibit such discovery on discovery in these circumstances, where the party opposing such discovery has made robust productions and the party seeking such discovery cannot articulate a specific need to breach privilege and work product protections. *Black*, 2023 WL 4834948, at *10 (granting defendant's motion for protective order on Rule 30(b)(6) topics seeking discovery on discovery where plaintiff failed to provide an adequate factual basis to justify a deposition on such topics); *Fish*, 2017 WL 697663 at *20-22 (same); *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-cv-00871, 2024 WL 21548, at *2 (N.D. Ohio Jan. 2, 2024) (denying plaintiff's request for Rule 30(b)(6) depositions seeking discovery on discovery where plaintiff failed to show that defendants' responses were insufficient or that defendants engaged in discovery misconduct); *Powell*, 2024 WL 448785, at *3 (quashing Rule 30(b)(6) topic seeking discovery on discovery where plaintiff provided no factual basis to support such discovery); *Salzgitter Mannesmann Int'l USA Inc. v. Sun Steel Co., LLC*, No. 3:22-cv-00030, 2022 WL 3041134, at *2-3 (S.D. Tex. Aug. 2, 2022) (prohibiting party from taking depositions into discovery on discovery where there was no factual reason to allow such discovery); *Williams*, 2024 WL 3567395, at *4 (denying plaintiff's request to order defendants to provide information

about preservation of documents and conduct of discovery where plaintiff failed to make any factual showing suggesting defendants failed to preserve evidence); *Guillory*, 2023 WL 4688133, at *5 (denying plaintiff's motion to compel discovery on discovery where plaintiff "presented nothing beyond mere speculation"). *Id.*; *supra* at 9.

The Court should deny FSMS's request for discovery on discovery and put a protective order in place prohibiting FSMS from eliciting testimony about Topics 43 and 44.

### C. FSMS's requested "discovery on discovery" is an improper topic for a fact witness because the discovery process was conducted by lawyers.

In addition, FSMS's requested discovery on discovery should be denied for the separate and independent reason that the requested discovery is not a proper topic for a fact witness. Topics 43 and 44 seek testimony from a TPUK fact witness about the "preservation, collection, review and production of the custodial ESI" for Bracey and Bourne. Ex. A. The process of collecting reviewing, and producing custodial ESI was performed and directed entirely by lawyers. *See* Dkt. 176-3, Foss Decl. ¶ 7; Dkt. 176-4, O'Donovan Decl. ¶ 5. The Topics therefore necessarily intrude upon the attorney-client privilege and work product doctrines. *See In re Exxon Corp.*, 208 S.W.3d 70, 75 (Tex. Ct. App. 2006) (request to depose corporate representative "for the purpose of inquiring specifically into the process" of responding to document requests "necessarily and almost exclusively concerns" attorney work product); *Bombardier Recreational Prods., Inc. v. Arctic Cat, Inc.*, No. 12-cv-2706, 2014 WL 10714011, at *15 (D. Minn. Dec. 5, 2014) (deposition topic on discovery on discovery "treads dangerously close to encroaching on attorney work product privilege") (citations omitted); *Fed. Deposit Ins. Corp. v. Johnson*, No. 12-cv-209, 2013 WL 1195698, at *3 (D. Nev. Mar. 22, 2013) (noting that all "searches, filters, document review, coding, and tagging of documents is the work product of the attorney and firm performing the work in the database and is not available to any other party").

During the meet and confer process, counsel for FSMS confirmed its demands for the Tanner Defendants to produce their litigation hold notice as well as all attorney-client communications about that hold notice. However, that information is a privileged attorney-client communication. *See, e.g.*, *Shenwick v. Twitter, Inc.*, No. 16-CV-05314, 2018 WL 833085, at *4 (N.D. Cal. Feb. 7, 2018) ("[P]reservation notices, if prepared by counsel and directed to the client, are protected by the attorney-client privilege." (citation omitted)).

And while it might be appropriate to ask individual fact witnesses about their personal practices with email or mobile device communications, it is not appropriate to ask a Rule 30(b)(6) corporate representative about such topics. Both Bourne and Bracey will be deposed in this case, and they, as individuals, are in a much better position to testify about their personal mobile device use than TPUK's corporate designee is. During their depositions, FSMS can ask both of them about their phone use and the retention of their phone data. But it would be burdensome, unnecessary, and premature to force TPUK to prepare a corporate designee who lacks personal knowledge to testify as to the personal phone use and retention practices of an individual employee, especially where the corporation does not have control over that phone. *See Lofton v. Verizon Wireless (VAW) LLC*, No. 13-cv-05665-YGR, 2014 WL 10965261, at *1 (N.D. Cal. Nov. 25, 2014) (holding that a party must produce documents within its "possession, custody, or control" under Rule 34 and the test is defined by the legal right to obtain the documents on demand) (citation omitted).[4]

This is especially clear here, where counsel for the Tanner Defendants have explained to FSMS—in good faith, in detail, and on multiple occasions—the process by which they have

---

[4] As TPUK has shown in its response to FSMS's motion to compel related to Bracey's phone, it does not have the legal right to demand that Bracey, a citizen and resident of the United Kingdom, surrender the phone despite valid privacy concerns. *See generally* Dkt. 176.

searched for, collected, reviewed, and produced the text messaging and WhatsApp data belonging to Bracey and Bourne, among other custodians.  FSMS acknowledges this in its recent Motion to Compel the ESI on Bracey's mobile phone.  *See* Dkt. 175 at 6; *see also* Dkt. 176 at 2-5 (acknowledging and explaining process by which TPUK's counsel searched for and collected custodian ESI belonging to Bracey).  Thus, any remaining information that FSMS does not have and seeks to elicit testimony about is virtually certain to implicate privilege and work product, making the requested information inappropriate for a fact witness.  The Court should enter a protective order prohibiting FSMS from pursuing this testimony from TPUK's corporate representative.

## CONCLUSION

For the foregoing reasons, TPUK respectfully requests that this Court grant its motion and enter a protective order prohibiting FSMS from deposing TPUK's Rule 30(b)(6) representative as to Topics 43 and 44.  FSMS's demand for discovery on discovery is unjustified under Rule 26 and would improperly invade the attorney-client privilege and the protections of the work product doctrine.

This the 22d day of August 2024.

McGuireWoods LLP

By:   */s/ Bradley R. Kutrow*
      Bradley R. Kutrow
      N.C. State Bar No. 13851
      Brian A. Kahn
      N.C. State Bar No. 29291
      Anita Foss
      N.C. State Bar No. 47743
      Jessica L. O'Brien
      N.C. State Bar No. 56679
      Kelly A. Warlich
      N.C. State Bar No. 51053

201 North Tryon Street, Suite 3000
Charlotte, NC 28202-2146
Telephone: (704) 343-2049
Facsimile: (704) 343-2300
bkutrow@mcguirewoods.com
bkahn@mcguirewoods.com
afoss@mcguirewoods.com
jobrien@mcguirewoods.com
kwarlich@mcguirewoods.com

Mark E. Anderson
N.C. State Bar No. 15764
501 Fayetteville Street, Suite 500
Raleigh, NC 27601
Telephone: (919) 755 -6678
Facsimile: (919) 755-6699
manderson@mcguirewoods.com

Anne Doherty
N.C. State Bar No. 55494
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-7633
Facsimile: (804) 775-1061
adoherty@mcguirewoods.com

*Attorneys for Defendants TannerGAP, Inc.,
and Tanner Pharma UK Limited*

**CERTIFICATION**

Pursuant to this Court's June 18, 2024 Order regarding the use of artificial intelligence, the undersigned states that:

1.      No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

2.      Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 22d day of August 2024.

/s/ Bradley R. Kutrow
Bradley R. Kutrow
N.C. State Bar No. 13851
MCGUIREWOODS LLP

*Counsel for Defendants TannerGAP, Inc.*
*and Tanner Pharma UK Limited*