# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

FS MEDICAL SUPPLIES, LLC,

     Plaintiff,

v.

TANNERGAP, INC. AND TANNER
PHARMA UK LIMITED,

     Defendants.

Case No. 3:21-cv-501-RJC-WCM

## REPLY MEMORANDUM OF LAW
## IN SUPPORT OF TANNER PHARMA UK LIMITED AND
## <u>TANNERGAP, INC.'S MOTION FOR LEAVE TO AMEND ANSWER</u>

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 2

    I.      The proposed amendments do not unduly prejudice FSMS. ................................. 2

    II.     TPUK and TannerGAP are not seeking leave to amend in bad faith. ................... 5

    III.    The proposed amendments are not futile. .............................................................. 8

          A.     TPUK and TannerGAP have plausibly alleged that FSMS made false statements and misrepresentations. ............................................................. 9

          B.     TPUK and TannerGAP have plausibly alleged justifiable reliance.......... 13

          C.     Delaware law does not bar the proposed amendments. ............................ 16

CONCLUSION.................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n,*
    352 F. Supp. 3d 508 (E.D.N.C. 2016) ....................................................................13

*Advanced Training Grp. Worldwide, Inc. v. Pro-Active Techs., Inc.,*
    No. 22-1945, 2023 WL 8945846 (4th Cir. Dec. 28, 2023) ......................................3

*Airborne Health, Inc. v. Squid Soap, LP,*
    984 A.2d 126 (Del. Ch. 2009) .................................................................10, 11, 14

*Alkemal Singapore Pte Ltd. v. DEW Glob. Fin., LLC,*
    No. 15 CVS 1406, 2017 WL 6383145 (N.C. Super. Dec. 12, 2017) .......................9

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,*
    367 F.3d 212 (4th Cir. 2004) ................................................................................12

*APEX Fin. Options, LLC v. Gilbertson,*
    No. CV 19-046, 2022 WL 619833 (D. Del. Jan. 31, 2022) ...........................13, 16

*Apex Tool Grp. LLC v. Cyderes, LLC,*
    No. 3:23-CV-00236-KDB-SCR, 2023 WL 7490146 (W.D.N.C. Nov. 13,
    2023) .....................................................................................................................10

*Appel v. Berkman,*
    180 A.3d 1055 (Del. 2018) ...................................................................................14

*Bailey v. Polk County,*
    No. 1:10-CV-264, 2011 WL 4565449 (W.D.N.C. Sept. 29, 2011) .........................5

*Bucci v. Burns,*
    No. 16 CVS 15478, 2018 WL 4288524 (N.C. Super. Sept. 4, 2018) ....................14

*Charlotte-Mecklenburg Cnty. Bd. of Educ. v. Brady,*
    66 F.4th 205 (4th Cir. 2023) ..................................................................................6

*Church Mut. Ins. v. Storm Team Constr., Inc.,*
    No. 2:21-CV-31-D, 2022 WL 990511 (E.D.N.C. Mar. 31, 2022) ..........................4

*Craft v. Bariglio,*
    No. 6050, 1984 WL 8207 (Del. Ch. Mar. 1, 1984) ....................................14, 16, 17

*Davis v. Piper Aircraft Corp.,*
    615 F.2d 606 (4th Cir. 1980) ..................................................................................2

*DDS Striker Holdings, LLC, et al. v. Verisk Analytics, Inc.*,
No. N24C-02-130, 2024 WL 3983973 (Del. Super. Ct. Aug. 29, 2024)................................16

*Deasy v. Hill*,
833 F.2d 38 (4th Cir. 1987) ........................................................................................3

*E.I. DuPont de Nemours & Co. v. Pressman*,
679 A.2d 436 (Del. 1996) .........................................................................................17

*Equal Rts. Ctr. v. Niles Bolton Assocs.*,
602 F.3d 597 (4th Cir. 2010) ......................................................................................3

*Ferguson v. Maita*,
162 F. Supp. 2d 433 (W.D.N.C. 2000) .........................................................................5

*First Wheel Mgmt. Ltd. v. Inventist, Inc.*,
No. CV 17-1059 (MN), 2021 WL 3363504 (D. Del. Aug. 3, 2021) ......................................16

*Frank M. McDermott, Ltd. v. Moretz*,
898 F.2d 418 (4th Cir. 1990) ...................................................................................4, 6

*Gifford v. Pro Line Prod., Inc.*,
No. 3:17-CV-00346-RJC-DSC, 2018 WL 4328262 (W.D.N.C. June 15, 2018).................3, 5

*Glob. Hookah Distributors, Inc. v. Avior, Inc.*,
401 F. Supp. 3d 653 (W.D.N.C. 2019) ........................................................................14

*Golden Rule Fin. Corp. v. S'holder Representative Servs. LLC*,
No. CV 2020-0378, 2021 WL 305741 (Del. Ch. Jan. 29, 2021) .......................................13

*Graham v. Golden Corral Franchising Sys., Inc.*,
No. 5:04-CV-541, 2006 WL 8438606 (E.D.N.C. Mar. 17, 2006)..........................................3

*Greenstar, LLC v. Heller*,
934 F. Supp. 2d 672 (D. Del. 2013)............................................................................16

*Grzybowski v. Tracy*,
No. CV 3888-VCG, 2013 WL 4053515 (Del. Ch. Aug. 9, 2013) .......................................17

*Hollinger Int'l, Inc. v. Hollinger Inc.*,
No. 04 C 698, 2007 WL 1029089 (N.D. Ill. Mar. 29, 2007) .............................................5

*Interim Healthcare, Inc. v. Spherion Corp.*,
884 A.2d 513 (Del. Super. Ct. 2005) ..........................................................................13

*Island Creek Coal Co. v. Lake Shore, Inc.*,
832 F.2d 274 (4th Cir. 1987) .......................................................................................6

*ITW Glob. Invs. Inc. v. Am. Indus. Partners Cap. Fund IV, L.P.*,
No. CVN-14C-10236, 2017 WL 1040711 (Del. Super. Ct. Mar. 6, 2017) ..............................9

*Jackson v. County of Sabine*,
No. 9:20-CV-112, 2021 WL 2405606 (E.D. Tex. Apr. 20, 2021)................................................3

*Jones v. United States*,
No. 5:21-CT-03158-M, 2023 WL 3807028 (E.D.N.C. June 2, 2023)........................................2

*K.C. Co. v. Pella Corp.*,
No. 22-2018, 2024 WL 1554759 (4th Cir. Apr. 10, 2024)........................................................8

*Kostyszyn v. Martuscelli*,
No. CV 8828-MA, 2014 WL 3510676 (Del. Ch. July 14, 2014) ............................................17

*Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*,
844 F. Supp. 2d 519 (D. Del. 2012).........................................................................................16

*Laber v. Harvey*,
438 F.3d 404, 428 (4th Cir. 2006) .............................................................................................3

*Lynch v. Gonzalez*,
No. CV 2019-0356, 2020 WL 4381604 (Del. Ch. July 31, 2020)....................................11, 14

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
674 F.3d 369 (4th Cir. 2012) .................................................................................................3, 5

*Mondragon v. Scott Farms, Inc.*,
No. 5:17-cv-00356, 2019 WL 489117 (E.D.N.C. Feb. 7, 2019) ..............................................3

*Norman v. Elkin*,
860 F.3d 111 (3d Cir. 2017)....................................................................................................16

*Orban v. Nationwide Tr. Servs., Inc.*,
No. 5:12-CV-16, 2015 WL 4132935 (W.D.N.C. July 8, 2015)................................................5

*PC Connection, Inc. v. Int'l Bus. Machines Corp.*,
687 F. Supp. 3d 227 (D.N.H. 2023).......................................................................................10

*Phillips v. Creative Website Studios*,
No. 5:23-CV-568-M, 2024 WL 3634450 (E.D.N.C. July 24, 2024)......................................17

*Pub. Health Equip. & Supply Co. v. Clarke Mosquito Control Prod., Inc.*,
410 F. App'x 738 (5th Cir. 2010) .............................................................................................2

*In re P3 Health Grp. Holdings, LLC*,
No. 2021-0518-JTL, 2022 WL 15035833 (Del. Ch. Oct. 26, 2022) ...............................12, 13

*Richards v. Octane Env't, LLC*,
No. 1:18CV157, 2019 WL 8165258 (N.D.W. Va. Jan. 28, 2019)............................................6

*Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*,
332 N.C. 1 (1992) ..........................................................................................................14

*SciGrip, Inc. v. Osae*,
373 N.C. 409 (2020) ......................................................................................................17

*Sed, Inc. of S.C. v. E. Coast Sweepstakes LLC*,
No. 7:10-CV-135, 2010 WL 5477748 (E.D.N.C. Dec. 30, 2010) ..........................................11

*Shaver v. Walker*,
No. 22 CVS 11080, 2023 WL 2746848 (N.C. Super. Mar. 31, 2023) .......................11, 14, 15

*Smith v. Angelone*,
111 F.3d 1126 (4th Cir. 1997) ........................................................................................3

*Software Pricing Partners, LLC v. Geisman*,
No. 3:19-CV-195-RJC-DCK, 2021 WL 12092946 (W.D.N.C. May 12, 2021)..................2, 5

*Stewart v. Coyne Textile Servs.*,
212 F.R.D. 494 (S.D.W. Va. 2003)....................................................................................2

*T&M Industrials v. Great Lakes Salt, Inc.*,
No. 15 C 3107, 2016 WL 693231 (N.D. Ill. Feb. 22, 2016)....................................................5

*In re Triangle Cap. Corp. Sec. Litig.*,
988 F.3d 743 (4th Cir. 2021) ..........................................................................................2

*Ussery v. Branch Banking & Tr. Co.*,
368 N.C. 325 (2015) ......................................................................................................13

*Wheeler v. BMW of N. Am. LLC*,
534 F. Supp. 3d 527 (Conrad, J.) (W.D.N.C. 2021) ...........................................................16

*Yavar Rzayev, LLC v. Roffman*,
No. CV S14L-12-035 MJB, 2015 WL 5167930 (Del. Super. Ct. Aug. 31,
2015) ...........................................................................................................................17

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597 (4th Cir. 2015) ..........................................................................................12

# INTRODUCTION

FSMS's overreaching arguments reveal the strength of TPUK and TannerGAP's proposed counterclaims. FSMS tries to disprove factual allegations of its own fraud by attaching documents not relevant to the alleged misstatements and never relied on by the proposed counterclaims. FSMS points to alleged "admissions" from a deposition transcript but then relies on quotes by its own counsel, not TPUK's witness. FSMS tries to mastermind a bad-faith theory that overlooks the timing of FSMS's receipt of the proposed amended answer. And FSMS cites **no cases** finding bad faith for an amendment based on newly learned facts. FSMS utterly fails to show that the amendment is somehow improper.

FSMS will suffer no undue prejudice from the addition of the proposed counterclaims. FSMS reviewed them **more than four months before the close of discovery** and at a time when no relevant party depositions had occurred. Courts regularly allow amendments in these circumstances, and FSMS has cited no cases to the contrary. Further, the new claims involve the same contracts and conduct already at issue, rely on information in FSMS's own records, raise factual questions that do not require expert testimony, and would require only marginal additional discovery.

TPUK and TannerGAP are not acting in bad faith in seeking amendment. The proposed counterclaims result from information learned in discovery that was not available at the time of the original answer. And, as compulsory counterclaims, the Fourth Circuit has held that they "should be liberally permitted" by amendment.

Finally, the proposed counterclaims are not futile. They contain **extensive and specific allegations** about how FSMS misrepresented its capabilities, experience, and relationships to lure TPUK and TannerGAP into a contractual relationship that gave FSMS millions of dollars for doing practically nothing. The new allegations, which contain names, dates, and locations, easily satisfy

1

Rule 9(b)—a point FSMS never challenges.  FSMS's attempt to undercut these allegations by cherry-picking documents that FSMS's own complaint relies on, but the counterclaims do not, is improper.  Thus, this Court should allow TPUK and TannerGAP leave to amend their answer.

## ARGUMENT

The parties agree on the relevant legal standard for this Motion.  "Leave to amend should be granted unless the amendment would be futile, the non-moving party would be prejudiced, or there has been bad faith on the part of the moving party."  Opp. 13 (citing *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021)); Dkt. 180 ("Mem.") at 3.  The parties also agree that leave to amend TPUK and TannerGAP's Fourth Defense (course of performance); Twelfth Defense (compliance with the NDNCA); and the Thirteenth Defense (NDNCA is void) is proper.  Opp. 1 & n.1 (stating that "FSMS does not oppose" these parts of the proposed amended answer "in view of the lenient standard for pleading facts concerning defenses").  Thus, only the addition of the misrepresentation-based counterclaims and defense ("Misrepresentation Claims") are in dispute.

## I.    The proposed amendments do not unduly prejudice FSMS.

The addition of the Misrepresentation Claims will not cause undue prejudice to FSMS.  As the Fourth Circuit has long held, the "absence of prejudice, though not alone determinative, will normally warrant granting leave to amend."  *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)); Mem. 5 (collecting cases).  No undue prejudice exists where the non-movant has "ample time" to conduct discovery into the amended claims and defenses.  *Stewart v. Coyne Textile Servs.*, 212 F.R.D. 494, 498 (S.D.W. Va. 2003); Mem. 5 (collecting authorities).  Courts regularly find no undue prejudice where several months remain in the discovery period.  *See, e.g.*, *Pub. Health Equip. & Supply Co. v. Clarke Mosquito Control Prods., Inc.*, 410 F. App'x 738, 741 (5th Cir. 2010) (four months); *Jones v. United States*, No. 5:21-CT-03158-M, 2023 WL 3807028, at

2

*3 (E.D.N.C. June 2, 2023) (one month); *Software Pricing Partners, LLC v. Geisman*, No. 3:19-CV-195-RJC-DCK, 2021 WL 12092946, at *2 (W.D.N.C. May 12, 2021) (two months); *Jackson v. County of Sabine*, No. 9:20-CV-112, 2021 WL 2405606, at *2 (E.D. Tex. Apr. 20, 2021) (five months); *Mondragon v. Scott Farms, Inc.*, No. 5:17-cv-00356, 2019 WL 489117, at *15 (E.D.N.C. Feb. 7, 2019) (60 days). Here, TPUK and TannerGAP ("the Tanner Defendants") sent the draft amended answer to FSMS over four months before the discovery completion deadline and filed their Motion soon thereafter.[1] FSMS has had, and will have, ample time to prepare its defense.

FSMS did not address any of the cases that the Tanner Defendants cited on this point in the Motion. And almost all FSMS's cases involved motions to amend **after** the close of discovery,[2] with two exceptions. In the first, the plaintiff brought the motion "ten months after filing their Complaint and answering written discovery" and had known the newly alleged facts before filing the original complaint. *Gifford v. Pro Line Products*, 2018 WL 4328262, at *2 (W.D.N.C. June 15, 2018). In the second, the plaintiff sought to add twelve new claims with one month remaining in discovery, and those claims required defendants to "change their defense strategy," "conduct new investigations, depose new witnesses and redepose existing witnesses," and "retain an expert in [the subject] area" of the new claims. *Graham v. Golden Corral Franchising Sys.*, No. 5:04-CV-541, 2006 WL 8438606, at *3 (E.D.N.C. Mar. 17, 2006).

---

[1] The Tanner Defendants, through counsel, provided FSMS a copy of the amended answer on August 1, 2024. Dkt. 179 at 2. FSMS requested until August 12, 2024 to consider it, and on August 13, 2024, declined to consent. *Id.* The Tanner Defendants filed the Motion and amended answer on August 20, 2024. *Id.*

[2] Opp. 14, 21-22; *see Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (explaining that motion to amend was after the close of discovery); *Smith v. Angelone*, 111 F.3d 1126, 1134 (4th Cir. 1997) (same); *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987) (same); *Advanced Training Grp. Worldwide, Inc. v. Pro-Active Techs., Inc.*, No. 22-1945, 2023 WL 8945846, at *4 (4th Cir. Dec. 28, 2023) (same); *accord Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379–80 (4th Cir. 2012) (court had granted judgment and sole remaining claim was voluntarily dismissed). FSMS's other case, *Laber v. Harvey*, **granted** leave to amend. 438 F.3d 404, 428 (4th Cir. 2006).

FSMS does not argue that any of those circumstances are present here, and for good reason. As discussed below, the amendments are based on information learned during discovery. *Infra* Part II. The Misrepresentation Claims invoke the same contracts and conduct at issue in FSMS's complaint, "for which the parties have already been conducting discovery." *Church Mut. Ins. v. Storm Team Constr., Inc.*, No. 2:21-CV-31-D, 2022 WL 990511, at *6 (E.D.N.C. Mar. 31, 2022) (finding no undue prejudice where defendant's new "allegations . . . [w]ere closely related to the facts underlying [plaintiff's claims]"). FSMS need not conduct new investigations or depose new witnesses because information about its capabilities, experience, and relationships is already within its possession and control. *See Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 421 (4th Cir. 1990) (finding no undue prejudice where the amendment "was based entirely on documents taken from plaintiff's own records"). Nor need it redepose existing witnesses. When the Motion was filed, only one party deposition had occurred and it focused on accounting topics not relevant to the Motion. Finally, FSMS need not retain any experts. Whether FSMS's representations were false is a factual question whose resolution requires no expertise.

FSMS's outlandish projections about the Tanner Defendants potentially seeking discovery are also overwrought. FSMS's counsel imagines that it would need to review documents from "at least 140 companies and individuals," totaling 80,000 documents. Opp. Ex. 15 at ¶¶ 14-15. Respectfully, counsel's estimate is highly unrealistic. Notably absent from counsel's declaration is any date range for this estimate. *Id.* But the Misrepresentation Claims focus on a discrete period – that is, the **time around the inception** of the parties' relationship. At that point, FSMS had been operating only for a few months and "according to FSMS's own ledger, FSMS had made approximately six purchases of products from a total of two entities." Dkt. 179-1 at ¶¶ 29, 31. Given that FSMS had only a few vendors at that time, it seems unlikely that any new discovery

would be so wide-ranging. FSMS's speculation that the Tanner Defendants "would demand extensive discovery" in a way that would "inevitably delay the trial" is also unfounded. Opp. 21. Trial is almost eight months away, Opp. 13 (trial is set for May 5, 2025), and depositions are ongoing. At the time of the Motion, the Tanner Defendants had not yet deposed **anyone from FSMS –** not its owners Laird Cagan and Jim Mao, or any other current or former personnel of FSMS. Thus, counsel for the Tanner Defendants need not reopen any depositions. If the Motion is granted, the Tanner Defendants anticipate renewing only narrow, well-framed document requests or simply pressing FSMS on deficiencies in their responses already set forth in prior communications between counsel.[3]

## II.    TPUK and TannerGAP are not seeking leave to amend in bad faith.

The Tanner Defendants are not acting in bad faith in moving to add the Misrepresentation Claims. As the Motion explained, courts regularly allow amendments based on information learned during discovery. Mem. 6; *see Software Pricing Partners*, 2021 WL 12092946, at *2 (granting leave where amendments sought to add claims based on information learned during discovery); *T&M Indus. v. Great Lakes Salt, Inc.*, No. 15 C 3107, 2016 WL 693231, at *2, *6-7 (N.D. Ill. Feb. 22, 2016) (same); *Hollinger Int'l, Inc. v. Hollinger Inc.*, No. 04 C 698, 2007 WL 1029089, at *1 (N.D. Ill. Mar. 29, 2007) (same). Tellingly, FSMS did not address any of the Motion's cases on this point. Moreover, in **every one** of FSMS's cases cited for bad faith (Opp. 14, 23-25), the court denied amendment because the newly alleged facts were known at the time of the original complaint.[4]

---

[3] FSMS's prejudice arguments also ring hollow in light of its expressed intent to amend its own complaint for a second time. On the same day that the Tanner Defendants sent their proposed amended answer to FSMS, FSMS indicated that it "was planning to seek leave to file a Second Amended Complaint in this action." Dkt. 179 at 2.

[4] *Gifford v. Pro Line Prod., Inc.*, No. 3:17-CV-00346-RJC-DSC, 2018 WL 4328262, at *2 (W.D.N.C. June 15, 2018) (movant was aware of facts before filing of original complaint); *Orban v. Nationwide Tr. Servs., Inc.*, No. 5:12-CV-16, 2015 WL 4132935, at *4 (W.D.N.C. July 8, 2015) (same); *Bailey v. Polk Cnty.*, No. 1:10-CV-264, 2011 WL

5

Here, the Tanner Defendants learned the newly alleged facts during discovery and its follow-on investigation, with some learned only in **June 2024**.  FSMS produced copies of its "ledger" in March and May 2024 showing a dearth of prior purchases from Orient Gene and other manufacturers and the existence of transactions with resellers.  In interrogatory responses served in June 2024,[5] FSMS revealed its lack of a prior relationship with Orient Gene, its lack of insurance, and its dearth of business licenses.  Less than two months went by before the Tanner Defendants shared the proposed amended answer with FSMS.  That length of time is far from excessive, particularly given that the Tanner Defendants are "entitled to a reasonable time to investigate" the new information.  *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987) (reversing denial of amendment where three months elapsed between when plaintiff learned the new facts and when it moved to amend, even though suit had been pending for over three years).  The Tanner Defendants' amendments are a good-faith effort to account for newly learned facts not available at the time they filed their original answer.

The risk of res judicata also compels granting the amendment.  The Misrepresentation Claims are compulsory counterclaims because they "arise[] out of the same transaction or occurrence" as FSMS's contract claims.  *Charlotte-Mecklenburg Cnty. Bd. of Educ. v. Brady*, 66 F.4th 205, 215 (4th Cir. 2023) (citing Fed. R. Civ. P. 13).  The Fourth Circuit "freely" grants leave to amend compulsory counterclaims "lest parties later be met with a plea of res judicata." *Richards v. Octane Env't, LLC*, No. 1:18-CV-157, 2019 WL 8165258, at *2 (N.D.W. Va. Jan. 28, 2019) (citation omitted); *accord Moretz*, 898 F.2d at 420 (explaining that "omitted compulsory

---

4565449, at *3 (W.D.N.C. Sept. 29, 2011) (same); *Ferguson v. Maita*, 162 F. Supp. 2d 433, 441 (W.D.N.C. 2000) (same); *accord Mayfield*, 674 F.3d 379–80 (movant admitted that "there was no new evidence that could not have been discovered previously").

[5] FSMS attached these interrogatory responses to its Opposition. Opp. Ex. 2.

counterclaims should be liberally permitted to be set up by amendment") (citation omitted); Mem. 7 (collecting cases). FSMS fails to wrestle with this argument at all.

Nor does FSMS seriously dispute that the proposed amendments result from facts learned in discovery. To sidestep this issue, FSMS points to a letter from TPUK's counsel in 2021, asserting that FSMS misrepresented its relationship with Orient Gene. Opp. 25. But FSMS overlooks that the standard for pleadings in federal court is far higher than a demand letter sent between two former counterparties. *See* Fed. R. Civ. P. 11 (requiring an attorney to certify that factual contentions have evidentiary support after an "inquiry reasonable under the circumstances"). Until discovery, the Tanner Defendants had no access to FSMS's internal information about its relationships, finances, and business records. FSMS does and cannot challenge that contention.

Finally, FSMS concocts a bad-faith theory far afield from case law and common sense. FSMS theorizes that the Tanner Defendants jumped ship from their contract interpretation position after TPUK's corporate witness "admitted" to agreeing with FSMS's position in his deposition. Opp. 24. That theory is nonsensical for three reasons. First, the alleged "admission" that FSMS says it procured from TPUK's witness was no admission at all. FSMS's brief relies mostly on quotes from FSMS's own counsel, not the witness, despite that FSMS deposed the witness for nearly seven hours. And even those quotes lack important context. *Id.* What the **witness** actually said supports and confirms the Tanner Defendants' position.

Second, the Tanner Defendants' position about the proper interpretation of the contract is and has always remained the same. While FSMS criticizes that interpretation as "irrational" (Opp. 2), FSMS overlooks that its owner, Laird Cagan, apparently did not see it that way. As FSMS's own attachments show, Cagan invoiced TPUK using that interpretation and accepted payment

7

from TPUK based on that interpretation after TPUK had explained it to him both in writing and over the phone. Opp. Ex. 11. Thus, FSMS's hyperbole that TPUK and TannerGAP's interpretation is "irrational" is clearly misguided. FSMS has not offered any authority to show that pursuing viable counterclaims, while also pursuing other viable arguments, supports a finding of bad faith.

Third, Steven Scalia's 30(b)(6) deposition testimony could not have influenced the Tanner Defendants' decision to file the Motion, because the deposition occurred three days after they filed the Motion. Dkt. 179-1 (filed on 8/20/24); Opp. Ex. 16 (deposed on 8/23/24). FSMS's theory that TPUK somehow anticipated the "admission" from preparations with the witness and instantly spun up a detailed pleading is fanciful. TannerGAP and TPUK first provided FSMS a copy of the draft amended answer twenty-two days before the deposition, attenuating it from the timing of witness preparation and testimony. Dkt. 179 at 2.

Lastly, FSMS attempts to divine bad faith from what it calls the Tanner Defendants' "candid[]" statement that their "theory of the case has evolved." Opp. 23. But, as the Motion explained in the remainder of the sentence omitted from FSMS's brief, that theory "has evolved as new facts have been discovered." Mem. 6 (emphasis added). Those facts revealed FSMS's fraudulent conduct. And FSMS's pearl-clutching aside, FSMS is the party whose theory of the case has morphed over time from its California complaint (Dkt. 16-6), to its North Carolina complaint (Dkt. 1), to its first amended complaint (Dkt. 40), which for the first time, alleged breach of the NDNCA. *Id.*

## III. The proposed amendments are not futile.

The Misrepresentation Claims are not futile because the Tanner Defendants have plausibly

alleged (i) a false statement or misrepresentation; and (ii) justifiable reliance.[6]  FSMS does not

argue that the Tanner Defendants failed to plausibly allege any other elements.  Opp. 16-19.[7]

A.      **TPUK and TannerGAP have plausibly alleged that FSMS made false statements and misrepresentations.**

The Misrepresentation Claims teem with extensive, specific allegations of FSMS's

misrepresentations.  It alleges that FSMS and its owners made these specific misrepresentations,

among others:

- "All FS Medical Supplies products are sourced directly from . . . factories"

- FSMS is "able to fulfill orders up to 100M units"

- FSMS's products are "Direct from Trusted Factories No Middlemen or Brokers"

- FSMS's products are "direct from the factory"

- "FSMS had done prior substantial business with Orient Gene and Healgen"

- FSMS had a "personal working relationship with Orient Gene's decisionmaker and Chairman"

- FSMS "worked directly with Orient Gene and Healgen"

- FSMS "vet[s] factories"

- FSMS's Cagan "got into PPE distribution a few years back"

- FSMS's Cagan "worked directly with . . . Chinese manufacturers"

- FSMS had "prior expertise in the field" of PPE distribution

- FSMS had "suppl[ied] Target stores"

---

[6] FSMS asserts that the Tanner Defendants "misdescribe[d] the futility standard."  Opp. 13.  FSMS is incorrect.  As the Fourth Circuit recently explained, "[a] district court should deny leave to amend on the grounds of futility only when the proposed amendment is clearly insufficient or frivolous on its face or fails to withstand Rule 12(b)(6) scrutiny." *K.C. Co. v. Pella Corp.*, No. 22-2018, 2024 WL 1554759, at *3 (4th Cir. Apr. 10, 2024) (citation omitted).

[7] *Alkemal Singapore Pte Ltd. v. DEW Glob. Fin., LLC*, No. 15 CVS 1406, 2017 WL 6383145, at *14 (N.C. Super. Dec. 12, 2017) ("The essential elements of fraudulent inducement are: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party"); *ITW Glob. Invs. Inc. v. Am. Indus. Partners Cap. Fund IV, L.P.*, No. CVN-14C-10236, 2017 WL 1040711, at *6 (Del. Super. Ct. Mar. 6, 2017) (similar).

Dkt. 179-1 ¶¶ 9-27. It contains specific details about each misstatement, including the "who, what, where, and when" as required by Rule 9(b). It also contains allegations explaining the support for TPUK and TannerGAP's belief as to why each statement is false. *Id.* ¶¶ 28-55. False representations about "capabilities" and "resources" of this kind are actionable misstatements for purposes of a fraudulent inducement claim. *Apex Tool Grp. LLC v. Cyderes, LLC*, No. 3:23-CV-00236-KDB-SCR, 2023 WL 7490146, at *4-5 (W.D.N.C. Nov. 13, 2023) (denying motion to dismiss fraudulent inducement claim where misrepresentations related to "capabilities" and "resources"); *PC Connection, Inc. v. Int'l Bus. Machs. Corp.*, 687 F. Supp. 3d 227, 270 (D.N.H. 2023) (similar).

FSMS addresses only four of the alleged misstatements above, leaving the rest unrebutted. Opp. 2-3, 7-8, 15-17 (addressing the first, fifth, seventh, and eighth bullets above). And of those four, FSMS does not argue that they lack the particularity required by Rule 9(b). Instead, it argues that they are "not allege[d] to be false," that their falsity is contradicted by other documents, or that they constitute "mere puffery." Opp. 2, 3, 7, 14-17.[8] None of these arguments is persuasive, and they provide no basis to deny the Tanner Defendants the right to amend.

First, FSMS points to the alleged misstatement that FSMS "had done substantial prior business with Orient Gene and Healgen." Opp. 15. It argues that the Tanner Defendants have "identifie[d] no actual statements" that FSMS made to that effect. *Id.* FSMS appears to be complaining that the proposed amended answer paraphrases, rather than quotes, these misstatements. What FSMS overlooks is that the proposed amended answer alleges that FSMS made these statements in **oral** conversations. Dkt. 179-1 ¶¶ 13-14 (describing call between Bracey and Cagan on June 2, 2020); *Id.* ¶¶ 17-18 (describing call between Scalia and Cagan on June 5,

---

[8] This brief addresses puffery below. *Infra* Part III.B.

2020).  *Id.*  FSMS has cited no case holding, and nothing in Rule 12 or Rule 9 requires, the Tanner Defendants to quote any alleged misstatement word-for-word.  That the proposed amended answer identifies the names, dates, and paraphrases the specific substance of each misstatement distinguishes it from FSMS's case holding a fraud counterclaim was insufficiently specific.  *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 142-43 (Del. Ch. 2009) (allegations did "not mention any person or the time, place, or contents of the misrepresentation).[9]

Second, FSMS criticizes the proposed amended answer for alleging that FSMS "implied" its relationship was substantial rather than alleging that FSMS said so explicitly.  But FSMS's own case recognized that "creat[ing] a false impression as to the true state of affairs" is an actionable misstatement.  *Lynch v. Gonzalez*, No. CV 2019-0356, 2020 WL 4381604, at *35 (Del. Ch. July 31, 2020).  Indeed, another of FSMS's cases held that a misstatement was actionable where it "could be interpreted" to mean something false, or where it "implicitly promis[ed]" something without an intent to perform.  *Shaver v. Walker*, No. 22 CVS 11080, 2023 WL 2746848, at *10 (N.C. Super. Mar. 31, 2023); Opp. 16.  Here, the Misrepresentation Claims allege that FSMS told TPUK that it "worked directly with Orient Gene."  Dkt. 179-1 ¶ 13.  Construing that statement "in the light most favorable" to the Tanner Defendants, *Sed, Inc. of S.C. v. E. Coast Sweepstakes LLC*, No. 7:10-CV-135, 2010 WL 5477748, at *1 (E.D.N.C. Dec. 30, 2010), it creates the false impression that FSMS had transacted with Orient Gene on many prior orders, when, in fact, it had an introductory phone call only two weeks before.  Dkt. 179-1 ¶ 30.

Finally, FSMS argues that the Tanner Defendants have not sufficiently alleged a false statement because they "admit" that FSMS had "a pre-existing business relationship with Orient

---

[9] *Airborne* also applied a state and not federal law pleading standard.  *Airborne Health*, 984 A.2d at 142 (citing Del. Ch. Ct. R. 9).

Gene."   Opp. 1, 14-15.   The Tanner Defendants have never made any such admission and doing so would contradict the facts learned in discovery.   As explained, FSMS and Orient Gene had an introductory phone call only two weeks before meeting TPUK and **had never transacted business** at that time.   Dkt. 179-1 ¶¶ 29-30, 34.   And tellingly, the "admission" that FSMS points is not in the amended answer, but in a text message attached to its Opposition.   Opp. 14.   In that message, TPUK employee Bracey begged FSMS to get in touch with Orient Gene.  *Id.*  Drawing inferences in the Tanner Defendants' favor, that text message supports a showing of falsity rather than refutes it.   That Bracey had to beg FSMS for information from Orient Gene reinforces that FSMS had no relationship with Orient Gene.   If it had, FSMS would have had open channels of communication with key decisionmakers at Orient Gene, and Orient Gene would have been responsive to FSMS's requests.   But FSMS had none of that, and Bracey was left without information at a critical time.

In any case, the court should not consider the dozens of pages of text messages and emails attached to FSMS's Opposition on which the Misrepresentation Claims do not rely.   As FSMS's own case illustrates, the justification for the rule allowing courts to consider extrinsic evidence at the Rule 12(b)(6) stage is not present here. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc*, 367 F.3d 212, 234 (4th Cir. 2004).   That rule prevents a plaintiff from "extracting an isolated statement from a document," where the "full context" would give a different impression.  *Id.* (citation omitted).   Here, that rationale is not present because the Tanner Defendants did not extract or otherwise rely in its Misrepresentation Claims on the emails and text messages attached to FSMS's Opposition.   FSMS is the one who relied on them in its complaint, to which TannerGAP and TPUK's answer merely responded.   FSMS cannot disprove falsity by relying on the cherry-picked documents featured in its complaint. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597,

601, 607 (4th Cir. 2015) (vacating dismissal where district court considered documents not relied on in complaint).

### B.    TPUK and TannerGAP have plausibly alleged justifiable reliance.

The Tanner Defendants have also plausibly alleged justifiable reliance. "Justifiable reliance requires that the representation relied upon involve a matter which a reasonable person would consider important in determining his choice of action in the transaction in question, i.e., that the matter misrepresented is material." *In re P3 Health Grp. Holdings, LLC,* No. 2021-0518, 2022 WL 15035833, at *6 (Del. Ch. Oct. 26, 2022). Here, a reasonable person would consider material the capabilities, experience, and relationships of a counterparty who had agreed to serve as an "authorized reseller or distributor" for Orient Gene's products and other PPE. Dkt. 179-2 ¶ 27; Opp. Ex. 1 § 7. Unlike FSMS's cases,[10] this is not a situation where reliance was unreasonable because the alleged misrepresentations contradicted a written document. As FSMS recognizes, the Distribution Agreement is silent on FSMS's capabilities, experience, and prior purchases from Orient Gene. Opp. 17. To the extent that it touches on FSMS's relationship with Orient Gene at all, it is **consistent** with FSMS's misrepresentations. It states that "FSMS is engaged in . . . the supply and sale of [PPE] and Diagnostic Rapid Tests," that it agrees to work "as an authorized reseller or distributor of Covered Products," and that Orient Gene, as the manufacturer of any Covered Product, "shall be considered a prior relationship of FSMS." Opp. Ex. 1 §§ Recital B, 7, 16.4. Thus, FSMS has shown no inconsistencies between the parties' contracts and FSMS's misrepresentations so as to make reliance on them unjustifiable. And, as

---

[10] Opp. 17-19; *Ussery v. Branch Banking & Tr. Co.*, 368 N.C. 325, 338 (2015) (holding reliance not reasonable where assurance contradicted written documents); *Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n*, 352 F. Supp. 3d 508, 518 (E.D.N.C. 2016) (same). Two of FSMS's cases did not involve fraud or negligent misrepresentation claims. *Golden Rule Fin. Corp. v. S'holder Representative Servs. LLC*, No. CV 2020-0378, 2021 WL 305741, at *14 (Del. Ch. Jan. 29, 2021) (quasi-estoppel); *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 547–48 (Del. Super. Ct. 2005) (breach of contract).

two of FSMS's cases explain, reasonable reliance "is ordinarily a question for the jury." *Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n*, 352 F. Supp. 3d 508, 518 (E.D.N.C. 2016); *accord APEX Fin. Options, LLC v. Gilbertson*, No. CV 19-046, 2022 WL 619833, at *5-6 (D. Del. Jan. 31, 2022).

FSMS argues that its misstatements about buying "all" products directly from manufacturers were "mere puffery," and therefore, not material. Opp. 17-18. This argument lacks legal and factual support. With one exception, none of FSMS's cases deemed an alleged misstatement to be puffery.[11] And in that one exception, the misstatement seen as puffery was "a gesture to some undefined future success or end goal and ma[d]e no specific guarantee or disprovable fact." *Glob. Hookah Distributors, Inc. v. Avior, Inc.*, 401 F. Supp. 3d 653, 660 (W.D.N.C. 2019). By contrast, FSMS's statements that it sourced "all" products "directly" from manufacturers and did not use resellers is both a "guarantee [and] disprovable fact." *Id.* That is, whether FSMS bought all products directly from manufacturers "can be proven true or false." *Id.* And as FSMS's own cases illustrate, that FSMS made some of these misstatements on its website and in price sheets does not turn them into puffery. *U.S. Gypsum Co.*, 332 N.C. at 17-18 (holding statements in "sales brochures" were material and not puffery).

FSMS is also wrong that a plaintiff alleging a fraud claim must always allege that it conducted due diligence to show justifiable reliance. Opp. 17-18. As two of FSMS's own cases state, diligence is not required where the matter is within the knowledge of one party and not the

---

[11] Opp. 16-17; *Appel v. Berkman*, 180 A.3d 1055, 1060-61 (Del. 2018) (concluding alleged omission was material); *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17–18 (1992) (rejecting argument that statements were puffery); *Shaver*, 2023 WL 2746848, at *5 (concluding statements were "sufficiently definite and specific to constitute representations of fact"); *see also Lynch*, 2020 WL 4381604, at *35-36 (concluding that all elements of fraudulent inducement were met by clear and convincing evidence). *Airborne Health*, discussed further above, commented that the alleged misrepresentations were "sales talk that the law labels puffery," but did not further analyze materiality, dismissing the claims instead because they "d[id] not identify any specific fact that was misrepresented." 984 A.2d at 142.

other. "Where a representation is made of a fact . . . peculiarly within the knowledge of the person making the representation, the person receiving it . . . **is not required to seek means of information to determine its falsity**, although such means are available." *Craft v. Bariglio*, No. 6050, 1984 WL 8207, at *9 (Del. Ch. Mar. 1, 1984) (emphasis added) (citation omitted); *accord Bucci v. Burns*, No. 16 CVS 15478, 2018 WL 4288524, at *2 (N.C. Super. Sept. 4, 2018) (holding further diligence not required where "Defendants are the only ones alleged to have known the truth about either misrepresentation"). FSMS's other case explains that "[a] plaintiff may justifiably rely on representations made by a defendant with superior knowledge on a subject where the parties are not on equal footing and nothing about the defendant's representations should have given plaintiff cause to suspect the veracity of the representations." *Shaver*, 2023 WL 2746848, at *5 (citation omitted). Here, only FSMS had access to information about its prior expertise, relationships, and capabilities, and the Tanner Defendants had no reason to believe FSMS's statements were untrue. Indeed, FSMS's website echoed the same misrepresentations that Cagan made orally.

Finally, FSMS argues that it should not matter how much it overstated the personnel on its website because the Distribution Agreement allowed TPUK to go direct to Orient Gene. Opp. 16-17. This argument only underscores the merits of the Misrepresentation Claims. First, it illustrates exactly why FSMS made these misrepresentations in the first place. FSMS never planned to – and could not – do the work of a distributor. Instead, it waited for TPUK to realize it would not be able to sell Orient Gene products unless TPUK did all the work and FSMS sat back and collected the money. Second, it illustrates exactly why TPUK had to go direct. FSMS lacked the capabilities, resources, and relationships that would have enabled it to serve as an effective "authorized reseller or distributor" of Orient Gene's products. Opp. Ex. 1 § 7.

**C.      Delaware law does not bar the proposed amendments.**

FSMS argues that Delaware law bars recovery for the Misrepresentation Claims because they are not distinct from the breach of contract.  Opp. 19.  It is mistaken for three reasons.  First, unlike all FSMS's cases,[12] TannerGAP and TPUK have not alleged a breach of contract claim.[13]

Second, "[w]here a fraud claim alleges damages for rescission or rescissory damages, it is not barred as a 'rehash' of the Complaint's breach of contract damages."  *First Wheel Mgmt. Ltd. v. Inventist, Inc*., No. CV 17-1059 (MN), 2021 WL 3363504, at *2 (D. Del. Aug. 3, 2021).  As FSMS's own cases show, "the doctrine of merger by contract does not preclude a claim for rescission where a plaintiff was induced to enter into the contract because of a fraudulent misrepresentation."  *Craft*, 1984 WL 8207, at *8.  "[R]escissory damages based on a fraud claim are distinguishable from breach of contract damages."  *APEX Fin.*, 2022 WL 619833, at *4.

Third, as FSMS's own case states, "[c]laims for fraud can coexist with claims for breach of contract where a defendant committed intentional fraud."  *Greenstar*, 934 F. Supp. 2d at 696; *DDS Striker Holdings, LLC, et al. v. Verisk Analytics, Inc.*, No. N24C-02-130, 2024 WL 3983973, at *4 (Del. Super. Ct. Aug. 29, 2024) (similar).[14]

Here, TannerGAP and TPUK have alleged that FSMS fraudulently induced them into contracting and seek rescission to unwind those contracts, and therefore, Delaware law does not bar their claims.

FSMS's related argument that punitive damages are not recoverable for breach of contract

---

[12] Opp. 19; *Norman v. Elkin*, 860 F.3d 111, 130–31 (3d Cir. 2017) (plaintiff alleged fraud and contract claims); *APEX Fin.*, 2022 WL 619833, at *5 (same); *Greenstar, LLC v. Heller*, 934 F. Supp. 2d 672, 696 (D. Del. 2013) (same).

[13] The original answer and proposed amended answer both allege that FSMS breached the Distribution Agreement as part of its excuse of performance **defense**. Dkt. 120; Dkt. 179-2.

[14] To the extent that FSMS is trying to invoke the economic loss doctrine, fraud in the inducement, as alleged here, is a well-recognized exception to that doctrine. *Wheeler v. BMW of N. Am. LLC*, 534 F. Supp. 2d 527, 534 (Conrad, J.) (W.D.N.C. 2021) (so stating); *Kuhn Const. Co. v. Ocean & Coastal Consultants*, *Inc.*, 844 F. Supp. 2d 519, 529 (D. Del. 2012) (same).

(Opp. 20) is also not relevant here. Unlike FSMS's cases,[15] the Tanner Defendants have alleged fraud and not breach of contract claims. *See Phillips v. Creative Website Studios*, No. 5:23-CV-568-M, 2024 WL 3634450, at *16 (E.D.N.C. July 24, 2024) (explaining that "punitive damages are available under North Carolina law upon a showing of fraud"); *Yavar Rzayev, LLC v. Roffman*, No. CV S14L-12-035 MJB, 2015 WL 5167930, at *4 (Del. Super. Ct. Aug. 31, 2015) ("A claim of fraud, if established, may give rise to punitive damages").

Finally, FSMS's equitable fraud authorities have no bearing here. Opp. 20. The Tanner Defendants did not bring an equitable fraud claim, which, as FSMS's cases show, has different elements than legal fraud. *Grzybowski v. Tracy*, No. CV 3888-VCG, 2013 WL 4053515, at *6 (Del. Ch. Aug. 9, 2013) (explaining elements and that "equitable fraud is both more and less difficult to establish than with legal fraud"); *Kostyszyn v. Martuscelli*, No. CV 8828-MA, 2014 WL 3510676, at *4 (Del. Ch. July 14, 2014) (similar). Second, FSMS's authorities addressed sales of assets where the asset value changed over time, and therefore, a remedy of undoing the contract and reversing the sale would be inequitable. *Grzybowski*, 2013 WL 4053515, at *6 (real estate); *Kostyszyn*, 2014 WL 3510676, at *4 (retail business); *Craft*, 1984 WL 8207, at *12 (same). Here, this case does not involve the sale of any asset, much less one that changed in value over time.

## CONCLUSION

FSMS's Opposition improperly asks the Court to venture into fact-finding and credibility determinations that are not appropriate on a Rule 15 motion to amend, and to ignore the Tanner Defendants' detailed pleading of the Misrepresentation Claims. The Tanner Defendants

---

[15] *SciGrip, Inc. v. Osae*, 373 N.C. 409, 417 (2020) (breach of contract); *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 445 (Del. 1996) (same).

respectfully request that this Court allow amendment of their answer to add the Misrepresentation Claims.

This the 10th day of September, 2024.

McGuireWoods LLP

By: /s/ Bradley R. Kutrow
Bradley R. Kutrow
N.C. State Bar No. 13851
Brian A. Kahn
N.C. State Bar No. 29291
Anita Foss
N.C. State Bar No. 47743
Jessica L. O'Brien
N.C. State Bar No. 56679
Kelly A. Warlich
N.C. State Bar No. 51053
201 North Tryon Street, Suite 3000
Charlotte, NC 28202-2146
Telephone: (704) 343-2049
Facsimile: (704) 343-2300
bkutrow@mcguirewoods.com
bkahn@mcguirewoods.com
afoss@mcguirewoods.com
jobrien@mcguirewoods.com
kwarlich@mcguirewoods.com

Mark E. Anderson
N.C. State Bar No. 15764
501 Fayetteville Street, Suite 500
Raleigh, NC 27601
Telephone: (919) 755-6678
Facsimile: (919) 755-6699
manderson@mcguirewoods.com

Anne Doherty
N.C. State Bar No. 55494
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-7633
Facsimile: (804) 775-1061
adoherty@mcguirewoods.com

*Attorneys for Defendants TannerGAP, Inc. and Tanner Pharma UK Limited*

## <u>CERTIFICATION</u>

Pursuant to this Court's June 18, 2024 Order regarding the use of artificial intelligence, the undersigned states that:

1.     No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

2.     Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 10th day of September, 2024.

*/s/ Bradley R. Kutrow*
Bradley R. Kutrow
N.C. State Bar No. 13851
MCGUIREWOODS LLP

*Counsel for Defendants TannerGAP, Inc.*
*and Tanner Pharma UK, Ltd.*