# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Civil Action Nos. 3:21-cv-00501-RJC-WCM; 3:23-cv-00598-RJC-WCM

| | |
|---|---|
| FS MEDICAL SUPPLIES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>TANNERGAP, INC. AND TANNER PHARMA UK LIMITED<br><br>    Defendants;<br><br>and<br><br>FS MEDICAL SUPPLIES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>TANNER PHARMA UK LIMITED;<br>RAYMOND FAIRBANKS BOURNE;<br>MARY EVERETT BOURNE,<br><br>    Defendants. | **BOURNE DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY ON DISCOVERY** |

## INTRODUCTION

Plaintiff FS Medical Supplies, LLC mischaracterizes its motion to compel as an effort to obtain "discovery on discovery."[1] But what FSMS actually seeks is an

---

[1] Although FSMS seeks to compel responses to discovery served in Case No. 3:23-cv-00598 ("FSMS II"), which is consolidated with Case No. 3:21-cv-00501 ("FSMS I") for purposes of discovery, FSMS fails to include the docket number or caption of FSMS II. Because FSMS seeks to compel responses to discovery served in FSMS II, the Bournes' counsel submits this response.

order compelling production of privileged communications between defendants and their counsel. In support of this extraordinarily inappropriate relief, FSMS also mischaracterizes the record, improperly asserts that defense counsel has not been transparent, and incorrectly suggests that Mr. Bourne and Mr. Bracey have intentionally deleted or shielded emails and texts from discovery.

As is explained below, and as is reflected in the correspondence to FSMS's counsel attached as Exhibits to the Declarations filed herewith, defense counsel promptly responded in a wholly transparent fashion when FSMS's counsel identified anomalies in the production of Mr. Bourne's texts and emails.[2] Nevertheless, as reflected in the email correspondence filed contemporaneously herewith, in their haste to try to discredit defendants, FSMS filed this Motion without properly conferring about the document requests directed to the Bournes, running roughshod over (if not wholly disregarding) Local Rule 7.1(b). Declaration of Emma W. Perry, Ex. L. FSMS ran to the Court before asking the Bournes' counsel specific questions, resulting in a number of assertions in their Motion that are incorrect.

The Bournes respectfully assert that a full and complete examination of the discovery record compels denial of FSMS's Motion. Even if it truly sought "discovery on discovery," that would be inappropriate here. But FSMS does not stop at "discovery on discovery." It seeks to invade the attorney-client privilege and work product

---

[2] Mr. Bracey is an employee of Tanner Pharma UK Limited. Accordingly, counsel for TPUK will respond to the arguments concerning Mr. Bracey's texts and production of a Rule 30(b)(6) witness to provide privileged information in response to deposition questions.

doctrine. Nothing that has occurred in discovery in these consolidated actions justifies entry of an order compelling production of attorney work product or privileged communications between defense counsel and their clients.

## BACKGROUND

The Bournes have produced thousands of documents since discovery began in FSMS II. Perry Decl. ¶ 5. The Bournes' productions of electronically stored information ("ESI") include email communications, SMS text messages, WhatsApp messages, and other electronic documents. *Id*. FSMS now seeks permission to scrutinize each step of the defendants' ESI collection and production process, including reviewing privileged communications, because the discovery process in this case—as in almost all cases—resulted in follow-up questions from opposing counsel and it was not absolutely perfect. In seeking to leverage these issues and pry open a window into privileged communications, FSMS ignores the Bournes' counsels' prompt and thorough efforts to address and answer the discovery questions that have arisen, as detailed below.

On October 18, 2023, shortly after service of FSMS II, Robinson Bradshaw issued a litigation hold memo to Mr. and Mrs. Bourne, Van Pittman (an assistant to Mr. Bourne), and other potential custodians. Perry Decl. ¶ 6. At the direction of counsel, Reliance Forensics, LLC ("Reliance") collected and imaged potential custodians' personal devices in November 2023. Walton Decl. ¶ 9. As part of the imaging process, Reliance performed a Cellebrite Advanced Logical forensic extraction of Mr. Bourne's iPhone 13 Pro on November 13, 2023 to obtain all

forensically retrievable SMS text messages and WhatsApp messages on the device. Walton Decl. ¶ 8; Bourne Decl. ¶ 3. At that time, Reliance noticed nothing unusual about Bourne's text messages. Walton Decl. ¶ 11.

On June 25, 2024, FSMS's counsel told the Bournes' counsel that certain categories of data appeared to be missing from Bourne's custodial ESI productions. Perry Decl., Ex. A. Specifically, FSMS's counsel sought text messages and emails between Tanner Pharma personnel and Mr. Bourne that TPUK produced but the Bournes did not. *Id.* Counsel also asked about a text message gap in Mr. Bourne's custodial data spanning from June 3 through October 8, 2020, and unilaterally imposed a 48-hour response deadline. *Id.* The Bournes' counsel immediately investigated the issues FSMS raised and responded within FSMS's requested time, stating its investigation was ongoing and promising a further update by July 2. Perry Decl., Ex. B at 2.

The ensuing investigation revealed that the "Message History" setting on Mr. Bourne's iPhone was set to keep text messages for thirty days, causing all texts older than thirty days to be deleted. Walton Decl. ¶ 10; Bourne Decl. ¶ 4. Mr. Bourne was not aware that this setting was turned on, does not know when it happened, and does not recall activating it.[3] Bourne Decl. ¶ 4. Because Mr. Bourne did not realize that the 30-day auto-delete setting was on, he did not adjust it to keep text messages following his receipt of the litigation hold notices issued in FSMS I and FSMS II.

---

[3] No forensic data is available to determine when the setting was turned on. Walton Decl. ¶ 15.

Upon discovering this issue, the Bournes, their counsel, and several eDiscovery vendors began to assess whether the automatically deleted text messages could be recovered. Walton Decl. ¶¶ 12, 16-17; Perry Decl. ¶ 13. At the same time, the Bournes' counsel promptly updated FSMS's counsel by letter on July 2, 2024, informing them that the 30-day auto-delete setting was inadvertently set on Mr. Bourne's iPhone. Perry Decl., Ex. C at 2. In their letter, counsel also candidly explained the steps being taken to recover all possible data from additional devices and promised another update following further investigation. *Id*. FSMS's counsel responded the following day to ask that the Bournes "immediately agree to engage Clark Walton of Reliance Forensics, LLC." *Id*., Ex. D. The Bournes' counsel responded that they engaged Reliance several months earlier to image and collect custodian devices and Reliance was already working to address these issues. *Id*., Ex. E.

Unfortunately, text messages deleted under a 30-day auto-delete setting cannot be retrieved on the device from which they were deleted. Walton Decl. ¶ 14. Thus, Reliance focused recovery efforts on data collection from Mr. Bourne's iCloud account and other devices. *Id*. ¶¶ 16-17. Mr. Bourne promptly provided counsel and Reliance his iCloud account access information. Bourne Decl. ¶ 5. Using this information, Reliance searched for other device backups on Mr. Bourne's iCloud account that might have the missing texts. Walton Decl. ¶¶ 16-17. Reliance also searched forensic images of Mr. Bourne's previously collected computers to determine whether they had locally-stored iTunes backups of his iPhone or another Apple product, potentially containing the text messages. *Id*.

Reliance ultimately discovered a backup of text messaging data from Mr. Bourne's iPad containing messages from November 25, 2022 to present. *Id*. This backup existed because the 30-day auto-delete setting was not turned on Mr. Bourne's iPad, a device he purchased in November 2022. Bourne Decl. ¶¶ 6-7. Reliance and counsel tried to find older iCloud backups, of course, but they could not find any because Mr. Bourne's old iPad was destroyed. *Id*. ¶ 6. Mr. Bourne accidentally left it on the roof of his car, drove away without retrieving it, and it shattered, rendering it unusable. *Id*.

Counsel and vendors collaborated to promptly ingest, process, and review the newly found data. Perry Decl. ¶ 13. The Bournes produced responsive, non-privileged messages from this collection on August 30, 2024. *Id*., Ex. G. To date, the Bournes' counsel, in collaboration with Reliance and other eDiscovery vendors, have exhausted all possible avenues of recovering additional text messages that were automatically deleted from Bourne's iPhone.

FSMS claims "[t]he representation of defense counsel that they were not aware of the auto-delete function until last month strains credulity because they should have realized the total absence of SMS messages when they collected ESI from a custodian who frequently used his phone to conduct business," and they fault the Bournes' counsel for a lack of transparency. ECF No. 182 at 12. But the Bournes' counsel did not immediately recognize this issue for good reason. All mobile device messaging data was uploaded to counsel's review platform with a file extension name of ".RSMF." Perry Decl. ¶ 8. SMS text messages and WhatsApp messages were

assigned the same .RSMF file extension. *Id*. WhatsApp messages comprised the primary form of mobile device messages between individuals living in the United States and the United Kingdom. Bourne Decl. ¶ 8. Further, the WhatsApp message chains look very similar to SMS text message chains in the document review platform. Perry Decl. ¶¶ 10-11. Counsel were unaware that they were viewing message threads primarily from the WhatsApp app, rather than SMS text messages, so they did not immediately recognize time gaps in text messages. *Id*. ¶¶ 9-10. Reliance similarly did not realize that there were gaps in text message production. Walton Decl. ¶ 11.

To illustrate and reinforce this point, FSMS's counsel made the same mistake in filing its Motion. FSMS claims Mr. Bourne should have produced certain WhatsApp messages attached as Exhibit 8 to its Motion. *See* ECF No. 182 at 7; ECF No. 182-8. But three of the five messages in Exhibit 8 are not WhatsApp messages, which were produced in full and without issue from Mr. Bourne's iPhone. They are SMS text messages. Perry Decl. ¶ 11. This is why Mr. Bourne had not produced them at the time of FSMS's filing. FSMS's mistake underscores the similarity in appearance of SMS texts and WhatsApp messages, which is why the Bournes' counsel did not immediately recognize the gaps in text message data. The remaining two messages in Exhibit 8 are screenshots of WhatsApp messages. These messages do not contain the parties' agreed upon search terms, and therefore Mr. Bourne's counsel would have had no reason to search for and review these messages for production.

Although text message recovery efforts have concluded without recovery of all of Mr. Bourne's texts, no material mobile device messages have been lost. Mr. Bourne sporadically texted with Steve Scalia and Bill Taylor (in-house counsel for the Tanner Defendants), and perhaps Jonathan Bracey about the issues pertaining to FSMS I. Perry Decl., Exs. E & F; Bourne Decl. ¶ 8. Importantly, the 30-day auto-delete setting had no effect whatsoever on WhatsApp messages, which was Mr. Bourne's primary method of communication with Mr. Bracey. *Id.* Mr. Bourne's WhatsApp messages were collected, reviewed, and produced without issue. *See* Walton Decl. ¶ 10. The Tanner Defendants have produced a complete set of Mr. Scalia's responsive text messages, including his text messages with Mr. Bourne. A search of Mr. Taylor's iPhone revealed only one responsive and privileged text chain. Thus, it is extremely unlikely that any material, responsive, and non-privileged text messages have not been produced to FSMS's counsel in FSMS I.

The same is true for Mr. Bourne's text messages potentially relevant in FSMS II. Mr. Bourne would have potentially texted his wife or Mr. Taylor about FSMS II. Bourne Decl. ¶ 9. As noted above, Mr. Taylor had only one privileged text with Mr. Bourne. Mrs. Bourne's text messages have been collected, and non-privileged, responsive exchanges between Mr. and Mrs. Bourne were produced. To the extent Mr. Bourne texted his accountant John Bly, Mr. Bly testified that he copies his work-related texts into his work email as a matter of policy. Perry Decl., Ex. H (Bly Tr. 313:25-316:7). Therefore, any suggestion that texts relevant to FSMS II have been lost can only be based on speculation.

Turning to Mr. Bourne's email, FSMS has asked questions because TPUK produced emails of Mr. Bourne that the Bournes did not produce. If FSMS had not jumped the gun and had conferred with the Bournes' counsel before filing the Motion, FSMS would have had an explanation for this apparent anomaly.

Mr. Bourne has three email addresses that are relevant to these lawsuits, one with a Bourne-Partners.com extension and two with a TannerPharma.com extension. Bourne Decl. ¶ 12. All three email accounts were collected, preserved, and reviewed as part of the discovery process in these cases. *Id*. ¶ 13. The emails in Mr. Bourne's two TannerPharma.com accounts are retained indefinitely. Declaration of Katie Smoot ¶ 8. Emails in Mr. Bourne's Bourne Partners email account are not subject to an auto-delete function. Bourne Decl. ¶ 13.

When Mr. Bourne received emails about the topics in FSMS I or FSMS II, he typically saved them to specific Outlook folders. *Id*. ¶ 14. At times, Mr. Bourne dragged emails from his Bourne Partners email account and dropped them into his Tanner Pharma email accounts. *Id*. ¶ 17. Although the Outlook accounts are separate, they are listed side-by-side in his Outlook folder. *Id*. ¶¶ 15-16. When Mr. Bourne picks up a Bourne-Partners.com email and drops it into a TannerPharma.com account, the email displays that it involves Mr. Bourne's Bourne Partners email address, but the metadata changes to say it is from his Tanner Pharma email account. Perry Decl. ¶¶ 18-19. This discrepancy accounts for some of the emails FSMS claims are "missing," even though FSMS has had the emails for months from TPUK.

In several other cases involving a "missing" email TPUK produced but Mr. Bourne did not, Mr. Bourne produced an earlier version of the email chain. For example, Mr. Bourne did not produce TannerUK00254239, but he did produce BOURNE_0005949. Perry Decl. ¶ 20, Exs. J & K. TannerUK00254239 is the same email chain as BOURNE_0005949, except that TannerUK00254239 includes a non-substantive continuation of the chain. *Id.* The only portion of the email thread that the Bournes did not produce was a reply from Jonathan Bracey saying, "Thanks Banks." *Id.* Most importantly, these emails, like the text messages described above, were retained through other custodial sources. The Bournes' counsel continues to evaluate the apparent email anomaly and will provide updates to FSMS's counsel as appropriate. *See id.* ¶ 16.

As this lengthy summary of the discovery process demonstrates, there is no reason to permit FSMS to invade the attorney-client privilege or work product immunity here. FSMS attempts to spin a narrative of intentional deceit and non-disclosure by Mr. Bourne and his counsel. That is not what happened here, and no amount of insinuation or inference can undermine the prompt, thorough, and good-faith action the Bournes and their counsel have taken to address and remedy FSMS's discovery questions.

To be clear, Mr. Bourne did not intentionally withhold any information from FSMS. Had Mr. Bourne wanted to conceal text messages or emails from FSMS, he would have made sure those messages were also deleted from the devices of other custodians, whose data was produced to FSMS. For example, if Mr. Bourne wanted

or intended to delete an email he sent to Mr. Scalia, he would have instructed Mr. Scalia to also delete the email from his account. That did not happen.

In addition, Mr. Bourne would have made sure the auto-delete setting was turned on in order to delete messages from his iPad. It was not. Instead, Mr. Bourne's iPad was set to save messages forever, underscoring that his iPhone's 30-day deletion setting was not an intentional ploy to destroy evidence.

The messages allegedly "missing" are in the hands of FSMS through other custodians in these cases. The Bournes' counsel have been, and will continue to be, wholly transparent concerning discovery matters, as is appropriate.

## ARGUMENT

The discovery on discovery that FSMS seeks exceeds what is permitted under Rule 26. The 2015 amendment to Rule 26 "emphasize[s] the need for proportionality in discovery and [ ] encourage[s] judges to be more aggressive in identifying and discouraging discovery overuse." *Taekman v. Unum Life Ins. Co. of Am.*, 1:22-cv-605, 2023 WL 6460377, at *7 (M.D.N.C. Oct. 4, 2023) (quoting *Wall v. Reliance Standard Life Ins. Co.*, 341 F.R.D. 1, 5 (D.D.C. 2022)).

FSMS's Fourth Request for Production of Documents contains, in part, eight requests for production ("RFPs") directed to the Bournes that are the subject of their Motion. Those RFPs cover three categories of information: (1) documents and communications about the issuance of, and compliance with, litigation hold notices; (2) documents and communications about the preservation, collection, and imaging

of ESI from Mr. Bourne and Mr. Bracey; and (3) documents and communications about the destruction or deletion of Mr. Bourne's or Mr. Bracey's custodial ESI.

FSMS's Motion should be denied because the discovery it seeks is protected by the attorney-client privilege and work product doctrine, is not relevant to any party's claim or defense, is not proportional to the needs of the case, and is duplicative of other information already produced to FSMS. Discovery on discovery is generally "disfavored" and under the current record is wholly inappropriate here.

### A. Discovery on discovery is generally disfavored.

Discovery on discovery is "broadly described ... as any discovery seeking information regarding a party's preservation, collection, and retention efforts." *Black v. W. Va. State Police*, 3:22-cv-00096, 2023 WL 4834948, at *9 (S.D.W. Va. July 27, 2023). This type of investigation, which is precisely what FSMS seeks through its Motion, "is not an appropriate topic of discovery and numerous courts have disallowed such discovery." *Fish v. Air & Liquid Sys. Corp.*, GLR-16-496, 2017 WL 697663, at *15 (D. Md. Feb. 21, 2017). Since "proportionality took center stage" following amendments to Rule 26, discovery on discovery has only become more disfavored. *Black*, 2023 WL 4834948, at *9-10.

If the Court grants FSMS's Motion, the parties will be "mired in disputes over the collateral issue of how well the other party searched for information to respond to discovery requests." *Id.* at 10. There is no reason for that extraordinary discovery here. Before FSMS filed its Motion, and without invading the attorney-client privilege or the protection of work product immunity, the Bournes' counsel provided continual

and timely updates addressing the same issues about which FSMS now seeks discovery. Perry Decl., Exs. B, C, E, & F. The Bournes and their counsel have acted in good faith with no intent to deprive FSMS of the ESI needed to litigate these matters, and there is no basis for any argument or implication to the contrary.

**B.    FSMS's discovery requests invade the attorney-client privilege and work product doctrine.**

Rule 26 permits discovery of "any *nonprivileged* matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). FSMS will depose Mr. Bourne, Mr. Scalia, Mr. Bracey and other material witnesses in the next five weeks, giving FSMS an opportunity to ask each witness questions about their document retention and general ESI practices. Nothing more is warranted here. *See Williams v. AT&T Mobility*, 5:19-cv-00475, 2022 WL 2821922, at *6 (E.D.N.C. July 19, 2022) (denying a motion to compel because plaintiff failed to show undue hardship when he could have asked the questions in a deposition).

FSMS nevertheless seeks documents and TPUK Rule 30(b)(6) testimony about:

- "Defendants' litigation hold";

- "steps taken to ensure and monitor compliance with the litigation hold";

- "steps taken to preserve and collect custodial data from key witnesses";

- "the deletion of ESI from key witnesses' devices"; and

- "communications about Defendants' discovery obligations."

ECF No. 182 at 2-3. *See also* RFP Nos. 1-8, ECF No. 182-2. This invasion of the privilege and work product immunity is improper and unnecessary.

FSMS may depose Mr. Bourne about when he received a litigation hold and what steps he took to ensure his compliance with it during his deposition, and FSMS may ask similar questions of other witnesses. That discovery is appropriate, and counsel for the Bournes will not object, as long as FSMS does not seek to invade the privilege or cross the line into documents protected by work product immunity. In contrast, however, the documents and information FSMS seeks in its Motion fall squarely within the protection of the attorney-client privilege and work product doctrine.

### i. All requests seek clearly privileged communications.

Documents relating to Defendants' litigation hold,[4] steps taken to monitor compliance, steps taken to preserve and collect custodial data, communications about the deletion of ESI from witnesses, and communications about Defendants' discovery obligations are all communications for the purpose of giving or seeking legal advice and therefore are privileged. The "purpose" of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients" which "promote[s] broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Thus, when the attorney-client privilege applies, it "affords confidential communications between

---

[4] "Defendants are correct that preservation notices, if prepared by counsel and directed to the client, are protected by the attorney-client privilege." *Shenwick v. Twitter, Inc.*, 16-CV-05314, 2018 WL 833085, at *4 (N.D. Cal. Feb. 7, 2018).

lawyer and client complete protection from disclosure." *See Williams*, 2022 WL 2821922, at *4 (citation omitted).

Counsel played an integral role in guiding the Bournes through the preservation, collection, and discovery process. FSMS's requests for all documents and communications regarding the hold notice, compliance with it, and other matters of discovery management invade the very privilege that encourages full and frank communications between the Bournes and their lawyers. On this basis alone, FSMS's Motion should be denied.

### ii.   The work product doctrine prevents disclosure.

Even if any of the requested documents do not implicate the attorney-client privilege, they would constitute work product. "Under the work-product doctrine, documents prepared in anticipation of litigation ... by or for another party or its representative are generally not discoverable." *Williams*, 2022 WL 2821922, at *4. (quoting Fed. R. Civ. P. 26(b)(3)(A)) (internal quotations omitted).

Here, FSMS seeks to compel the production of documents reflecting work performed to issue a litigation hold, maintain compliance with a litigation hold, collect and preserve custodial ESI, forensically image custodial devices, and analyze document retention issues. "[T]he primary motivating purpose behind the performance of [this] work was to assist in the pending or impending litigation." *Id.*; *see also Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). Further, as a practical matter many of the requested documents, such as those relating to how the Bournes' counsel collected and

forensically imaged custodial devices, are located in Robinson Bradshaw's files, not Mr. Bourne's files.

Whether FSMS's document requests implicate fact work product, opinion work product,[5] or some combination of the two, the end result is the same: FSMS has no right to the documents. *Williams*, 2022 WL 2821922, at *5 (explaining that opinion work product is stringently protected while fact work product may be discoverable upon showing (1) substantial need and (2) an inability to secure the substantial equivalent by alternate means). Even if any of the documents requested were fact work product, on the record here, FSMS cannot demonstrate a substantial need for the documents or that it cannot secure the information by alternate means.

FSMS's allegation that "defense counsel" has been "unwilling[ ] to disclose" the "gaps in Defendants' ESI production" is simply not true. *See* ECF No. 182 at 13. The Bournes' lawyers have kept FSMS informed of the specific data that was lost and their ongoing efforts to recover that data, drawing the line of disclosure only at the protected information the RFPs now request. Perry Decl., Exs. B, C, E, & F. Because the Bournes' counsel provided FSMS detailed and continual updates on the topics for which FSMS now seeks in document discovery, FSMS cannot demonstrate a substantial need to override the work product doctrine.

---

[5] The RFPs seek primarily opinion work product because counsel's mental impressions and candid advice are reflected within the text of the litigation hold, communications about the hold, communications about how to image devices and collect ESI, and the other discovery FSMS seeks.

Further, to the extent FSMS believes it still has open questions, it can obtain answers through alternative means. FSMS can continue to meet and confer with the Bournes' counsel, pose questions, and receive letters from the Bournes' lawyers with responses. FSMS can also ask Mr. Bourne follow-up questions during his deposition if it seeks nonprivileged information. These alternative methods are available to FSMS, with no need to invade the work product doctrine.

### iii.    Other Courts have refused to invade privilege for discovery on discovery.

FSMS is not the first party to try to invade the attorney-client privilege and work product doctrine by seeking discovery on discovery. Other courts have rejected prior attempts to do so. *See e.g.*, *Fish*, 2017 WL 697663, at *16 (denying motion to compel discovery on discovery when the requests at issue were broad enough to potentially capture information protected by the attorney-client privilege and work product doctrine). As the court in *Bombardier Recreational Prod., Inc. v. Arctic Cat, Inc.* explained, when the requested discovery is "not designed to elicit information relevant to any claim and/or defense," and is "only designed to elicit information concerning [the defendant's] discovery efforts," which "treads dangerously close to encroaching on attorney work product privilege," the motion to compel should be denied. 12-cv-2706, 2014 WL 10714011, at *15 (D. Minn. Dec. 5, 2014).

FSMS's discovery requests are more than "dangerously close" to invading privileged information—invading the privilege is the goal of FSMS's Motion. That is wholly inappropriate. Attorneys and clients should be encouraged to have full and frank communication, and "[i]t is essential that a lawyer work with a certain degree

of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 734 (4th Cir. 1974). For this reason alone, FSMS's Motion should be denied.

### C. The discovery FSMS seeks is not relevant to any party's claim or defense.

Information must be "relevant to any party's claim or defense" to be discoverable under Rule 26. *See, e.g.*, *Zeitlin v. Bank of Am.*, N.A., 218-cv-01919, 2021 WL 5154114, at *2 (D. Nev. Nov. 5, 2021) (deeming discovery on discovery "precluded by Rule 26(b)(1), which limits discovery of any nonprivileged matter that is relevant to any party's claim or defense."). "Discovery about the process by which a party searches for, reviews, and collects documents is *not* discovery relevant to a claim or defense." *LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 158 (N.D. Ill. 2023) (emphasizing that nothing in the Federal Rules permits discovery about a party's procedures to comply with its discovery obligations) (emphasis in original).

FSMS I and FSMS II involve claims of breach of contract and fraudulent conveyance. Neither of those core causes of action, nor their related defenses, have anything whatsoever to do with the Defendants' procedural management, collection, or preservation of ESI during discovery. Even if the discovery on discovery sought in FSMS's Motion was not privileged (which it is), the Court should still deny its Motion because it seeks discovery irrelevant to all claims and defenses.

**D.    The discovery that FSMS seeks is not proportional to the needs of the case.**

"All permissible discovery must be measured against the yardstick of proportionality," and discovery should be limited when it is unreasonably duplicative or can be obtained from a more convenient source. *Fish*, 2017 WL 697663, at *3, *15.

Discovery on discovery is duplicative and inappropriate where counsel has explained (1) that no additional documents responsive to initial discovery requests exist, and (2) that purged documents cannot be recreated. *See Black*, 2023 WL 4834948, at *10 (granting motion for protective order as to topics seeking discovery on discovery in deposition notice). In these situations, nothing is gained through invasive discovery on discovery. *Id.*

Through letters and oral communications, defense counsel has already provided FSMS appropriate nonprivileged information about the discovery process topics at issue here. Perry Decl., Exs. B, C, E, & F. As outlined in these letters, FSMS is fully informed as to the circumstances, how certain text messages were inadvertently deleted, and what steps have been taken to search for and recover lost data.

Ignoring these efforts, FSMS nevertheless asserts in its Motion that failing to issue a timely hold in FSMS I, the existence of missing data, and Defendants' alleged lack of transparency warrants a full-scale fishing expedition into Defendants' discovery management practices. ECF No. 182 at 8-13. According to FSMS, these conditions "raise[ ] further questions," and FSMS needs to "verify the reasonableness of Defendants' discovery conduct." ECF No. 182 at 10, 13.

FSMS's haste to file its Motion (and apparent desire to cast Defendants in a bad light) is the sole cause of any open questions about the topics at issue here. For example, FSMS asserts that "[c]ounsel have not offered any explanation for why Mr. Bourne's iCloud backups from the period before [November 2022] have gone missing." ECF No. 182 at 6. Had FSMS's counsel complied with Local Rule 7.1(b) and conferred with the Bournes' counsel, it would have learned that Mr. Bourne's old iPad was destroyed when it fell off the roof of his car. Bourne Decl. ¶ 6. The only device backups available in Mr. Bourne's iCloud account were his existing devices, all of which were collected, imaged, reviewed, and produced.[6]

---

[6] On August 22, at 11:39 AM, counsel for FSMS sent the following email to defense counsel: "We intend to file a motion to compel Defendants to respond to requests 1 through 8 of Plaintiff's 4th RFPs and to provide a witness on topics 43 and 44 of the Amended 30(b)(6) Notice for TPUK. We understand from our various conferrals that you oppose the relief we are requesting. Please confirm that understanding." Perry Decl., Ex. L. At 3:19 PM the same day, FSMS filed the motion at issue here.

Approximately thirty minutes later, at 3:55 PM, the undersigned counsel responded via email as follows:

> I was in Winston-Salem this morning, just got back in the office about 90 minutes ago, after having talked to Brad [Kutrow] briefly from the road on my cell phone about your email (briefly discussing the questions he posed below), and have been sorting through emails, returning calls, and for about a half hour was occupied with a pre-scheduled zoom.

> Amanda is out of the office today on another matter. Emma has been tied up most of the day, and Anna Clair is on vacation.

> I see that you nevertheless filed a motion to compel that appears to concern the matter addressed in your email below before I could even talk with my colleagues so one of us could respond to that email.

> I take it you really didn't care for a response or meaningful engagement.

Simply put, FSMS counsel did not substantively engage the Bournes' counsel before filing the motion at issue. *Id.*

Under these circumstances, courts have routinely declined to permit the intrusive probe into the attorney-client relationship that FSMS is requesting. *Fish*, 2017 WL 697663, at *3, *15 (holding that inquiries into document retention policies were overly broad, unduly burdensome, and not proportionate to the needs of the case); *Catlin v. Wal-Mart Stores, Inc.*, 015-cv-00004, 2016 WL 7974070, at *2 (D. Minn. Sept. 22, 2016) (denying discovery on discovery where counsel overlooked and did not produce responsive information, but later owned up to the error and completed production); *Zeitlin*, 2021 WL 5154114, at *2 (deeming discovery on discovery to be unduly burdensome).

Courts have also held that declarations of the type Defendants have submitted here, which detail efforts to comply with discovery obligations and address questions and concerns, will suffice when a plaintiff seeks intrusive discovery on discovery. *See, e.g.*, *Hanan v. Corso*, CIV.A. 95-0292, 1998 WL 429841, at *7 (D.D.C. Apr. 24, 1998) ("Mobil, for its part, has produced several declarations detailing under oath the efforts made to comply with plaintiff's discovery requests … [p]laintiff does not specify what additional information the new discovery will yield which these declarations do not contain.").

"Discovery [ ] is already a costly and time consuming process" and to "add another level of discovery … in a case in which discovery is about to have its third anniversary without any clear showing that the discovery will lead to relevant evidence is truly foolhardy." *Id.* (prohibiting discovery on discovery). By nevertheless seeking discovery on discovery, FSMS has created an expensive and time-consuming

hurdle in discovery, a process that FSMS's counsel claims has already droned on unnecessarily.

**E. Even if discovery on discovery were permissible, it is not warranted in this case.**

Even if discovery on discovery were within the Rule 26's limitations, it should only be permitted following a demonstration of "*specific, tangible, evidence-based indicia* [ ] of a material failure by the responding party to meet its obligations." *LKQ Corp.*, 345 F.R.D. at 162 (quoting 19 Sedona Conf. J. at 123) (emphasis in original). Even then, "a court should select the narrowest discovery tool possible to avoid side-tracking the discovery process." *Id.* at 163. For these reasons and on the record here, as explained in detail above, FSMS does not meet this stringent standard and fails to show a material failure by the Bournes to satisfy their discovery obligations.

## CONCLUSION

Based on the foregoing, the Bournes respectfully request Plaintiff's Motion to Compel Discovery on Discovery be denied.

This the 12th day of September, 2024.

*s/ Robert W. Fuller*
Robert W. Fuller
N.C. Bar No. 10887
Amanda P. Nitto
N.C. Bar No. 45158
Emma W. Perry
N. C. Bar No. 58848
Anna Claire Tucker
N.C. Bar No. 59457

ROBINSON, BRADSHAW & HINSON, P.A.
101 N. Tryon St., Ste. 1900
Charlotte, North Carolina 28246
Telephone: 704.377.2536
Facsimile: 704.378.4000

rfuller@robinsonbradshaw.com
anitto@robinsonbradshaw.com
eperry@robinsonbradshaw.com
atucker@robinsonbradshaw.com

*Counsel for Defendants Raymond Fairbanks*
*Bourne and Mary Everett Whitehurst Bourne*

23

<u>Artificial Intelligence Certification</u>

Pursuant to the Court's June 18, 2024 Order, 3:24-mc-104, I hereby certify that:

- No artificial intelligence was employed in doing the legal research for the preparation of this document, with the exception of such artificial intelligence embedded in standard on-line legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

- Every statement and every citation to an authority contained in this document has been checked by an attorney at this firm and/or paralegal working at their direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This 12th day of September, 2024.

<u>*s/ Robert W. Fuller*</u>
Robert W. Fuller