**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| FS MEDICAL SUPPLIES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>TANNERGAP, INC. AND TANNER PHARMA UK LIMITED,<br><br>    Defendants;<br><br>and<br><br>FS MEDICAL SUPPLIES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>TANNER PHARMA UK LIMITED; RAYMOND FAIRBANKS BOURNE; MARY EVERETT BOURNE,<br><br>    Defendants. | Case No. 3:21-cv-501-RJC-WCM<br>Case No. 3:23-cv-598-RJC-WCM |

**TANNER DEFENDANTS' RESPONSE IN OPPOSITION TO FSMS'S**
**MOTION TO COMPEL DISCOVERY ON DISCOVERY**

Defendants TannerGAP, Inc. and Tanner Pharma UK Limited ("TPUK" and, together with TannerGAP, the "Tanner Defendants") oppose the Motion to Compel Discovery on Discovery ("Motion") filed by Plaintiff FS Medical Supplies, LLC ("FSMS"). Dkt. 181.

## I.    INTRODUCTION AND BACKGROUND

FSMS's motion to compel "discovery on discovery" is based on speculation that certain categories of information are missing from the Tanner Defendants' productions to date. FSMS

has not shown—as it must—any specific or tangible evidence of material discovery failures by the Tanner Defendants that would justify the extreme relief that it seeks. While FSMS claims that a few WhatsApp or SMS messages were produced by one custodian and not another, these communications are not, in fact, missing. The messages in Steve Scalia's possession that FSMS references were inadvertently not produced because of a technical issue with the Tanner Defendants' e-discovery vendor. The Tanner Defendants had already alerted FSMS to that issue and those documents have now been produced. In some cases, the documents FSMS points to simply did not fall within the scope of the search terms that the parties agreed upon. In others, the substantive information that FSMS claims is missing from WhatsApp or SMS messages can be found in emails from other sources that the Tanner Defendants have already produced. And many of the documents are simply immaterial to this dispute.

Indeed, given the mountains of documentation and communications that the Tanner Defendants have produced to date, including mobile device data, it is difficult to see how any material information could still be missing. FSMS's unsupported theories to the contrary are simply not enough to justify discovery on discovery.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) limits discovery to "nonprivileged matter[s] that [are] relevant to any party's claim or defense and proportional to the needs of the case." Accordingly, litigants may not obtain discovery on issues that have "no bearing on an issue of material fact." *Jowite Ltd. P'ship v. Fed. Ins. Co.*, No. CV SAG-18-2413, 2019 WL 1513457, at *2 (D. Md. Apr. 8, 2019). One area beyond the bounds of permissible discovery is "discovery on discovery." *Black v. W. Va. State Police*, No. 3:22-cv-00096, 2023 WL 4834948, at *10 (S.D.W. Va. July 27, 2023).

Even FSMS's cited authority holds: "[d]iscovery on discovery should be the exception, not the norm." *LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 162 (N.D. Ill. 2023). General "allegations of deficiencies" or "[m]ere speculation about missing evidence is insufficient to allow discovery on discovery." *Id.* at 162, 163 (relying on *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1 (2018)). Instead, the moving party bears the burden to "produc[e] specific and tangible evidence" of an opponent's "material failure" during the discovery process. *Id.* at 163; *AOT Holding AG v. Archer Daniels Midland Co.*, No. 19-2240, 2021 WL 6118175, at *4 (C.D. Ill. Sept. 3, 2021); *Guillory v. Carrington Mortg. Servs., LLC*, No. CV 22-192-JWD-SDJ, 2023 WL 4688133, at *5 (M.D. La. July 21, 2023) (same). A "material" failure in discovery is one that is "of consequence to the fact-finding process, such that further inquiry is warranted." *LKQ*, 345 F.R.D. at 162.

Given this strict standard, courts reviewing a request for discovery on discovery "must closely scrutinize the request in light of the danger of extending the already costly and time-consuming discovery process ad infinitum." *Williams v. NYC Bd. of Elections*, No. 23-CV-5460 (AS) (KHP), 2024 WL 3567395, at *4 (S.D.N.Y. July 29, 2024) (internal quotations omitted). The risks of delay, expense, and inefficiency cause courts to view discovery on discovery with "disfavor" because the information sought quickly becomes "counterproductive and disproportional to the needs of the case." *Black*, 2023 WL 4834948, at *10. And, where the discovery seeks privileged information, courts generally deny it. *Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL 697663, at *2 (D. Md. Feb. 21, 2017) (litigants need not answer discovery requests regarding "information protected by the attorney-client privilege and the work product doctrine").

## III.    ARGUMENT

FSMS's request for leave to pursue discovery on discovery rests on speculation that there may be "missing" information, including primarily text messages. FSMS asks the Court to order the Tanner Defendants to prepare a corporate representative to testify about the "preservation, collection, review, and production of the custodial ESI" of Raymond Fairbanks Bourne and Jonathan Bracey. Mot., Ex. 3 at Topics 43, 44. FSMS further also asks the Court to compel the Tanner Defendants to produce the following categories of documents under Rule 34:

1. All documents concerning any litigation hold issued in connection with the Action.
2. All communications with Jonathan Bracey or Raymond Fairbanks Bourne concerning any litigation hold (written or oral) issued in connection with the Action.
3. All documents concerning Tanner's efforts to monitor or otherwise ensure compliance with any litigation hold issued in connection with the Action.
4. All documents concerning steps taken by Defendants to image custodial devices of Jonathan Bracey or Raymond Fairbanks Bourne in connection with the Action.
5. All communications concerning the preservation of custodial ESI of Jonathan Bracey or Raymond Fairbanks Bourne in connection with the Action.
6. All communications concerning collection or attempts to collect ESI from Jonathan Bracey or Raymond Fairbanks Bourne in connection with the Action.
7. All communications concerning the destruction or deletion (whether intentional or inadvertent) of ESI stored on custodial devices of Jonathan Bracey or Raymond Fairbanks Bourne.
8. All communications to or from Jonathan Bracey or Raymond Fairbanks Bourne concerning Defendants' document production obligations in the Action.

Mot., Ex. 1 at Requests for Production of Documents 1-8.

These deposition topics and document requests target litigation-related attorney-client communications or protected work product. Ordering the Tanner Defendants to comply with these broad requests for privileged information would be both unnecessary and improper.[1]

Beyond these threshold shortcomings, FSMS's request falls far short of satisfying its

---

[1] The privileged nature of these communications is addressed more comprehensively in the Tanner Defendants' motion for protective order, Dkt. 184, and the Bournes' Response to Plaintiff's Motion to Compel Discovery on Discovery

burden to show that discovery on discovery is warranted here. Instead, in the face of the massive volume of ESI and documents produced by the Tanner Defendants (and comparatively little produced by FSMS), FSMS simply speculates that a small subset of material information may not have been produced. This speculation is based largely on incorrect assertions of fact. And, as is characteristic of FSMS's discovery motions, the specific relief that FSMS requests is unclear.

Granting FSMS's request would derail this litigation so that FSMS can conduct an unnecessary discovery sideshow. Instead, the Court should direct the parties to remain focused on substantive issues, deny FSMS's Motion, and grant the Tanner Defendants' pending Motion for Protective Order.

## A. FSMS's Accusation of "Systemic Loss" of ESI is Entirely Speculative.

FSMS argues that certain perceived production gaps create the "natural inference" that Bourne, Scalia, and Bracey all deleted certain other ESI in concert. Mem. at 10-11. Based on that inference, FSMS contends that the Court should order "discovery into Defendants' efforts to preserve ESI and, in particular, Bourne's non-privileged communications regarding Defendants' discovery obligations." *Id.*

Contrary to FSMS's assertions, the allegedly "missing" data has either now been produced or is immaterial to this dispute. Also, the reasons for the data's initial non-production are innocuous and explainable, not proof of nefarious discovery behavior, as FSMS contends. Specifically:

- FSMS first cites five examples of WhatsApp messages that Bourne exchanged with Scalia and/or Bracey that were not found on Bourne's phone. From a facial review of those, three messages are text messages, not WhatsApp messages, and they were in the date range that Bourne no longer has on his phone. *See* ECF 182-8 at TannerUK00345445, TannerUK00345481, TannerUK00345503. However, those messages were found on and

("Bourne Opp."), Dkt. 190. Those arguments apply with full force here as well. But to avoid reiterating arguments that have been made elsewhere, the Tanner Defendants focus on other points in this opposition, each of which is an equal reason to deny FSMS's discovery-on-discovery request.

5

produced from Scalia's phone. The remaining two messages fell outside of the scope of the parties' search terms. Ex. 1, Declaration of Anita Foss ("Foss Decl.") ¶ 8.

- FSMS cites four examples of SMS and WhatsApp messages that Scalia exchanged with Bourne and Bracey that were not produced from Scalia's phone. Two of these messages were outside the scope of the parties' search terms, so they were not originally produced. *Id.* ¶ 9. The Tanner Defendants have since produced them. *Id.* The remaining two messages were unproduced due to a vender collection issue, which the Tanner Defendants disclosed to FSMS before FSMS filed this motion. *Id.* ¶ 10. The Tanner Defendants have now produced these messages as well. *Id.*

- FSMS cites four examples of messages that Bracey exchanged with Bourne and/or Scalia that were not produced from Bracey's phone. Two of these messages were inadvertently missed in the original collection and have now been collected and produced to FSMS. *Id.* ¶ 11. Neither of them have any substantive value to this case. One document was originally collected but inadvertently coded as nonresponsive, and it has now been produced to FSMS. The remaining document was not located during Tanner's collection, but FSMS has access to its content from Scalia's device and the message otherwise contains non-substantive content. *See* ECF 178-1. Again, none of these messages meaningfully impact this case.

- FSMS cites eleven examples of embedded documents or voicemails that were included as pictures in either Bracey or Sean Neat's data and where the actual voicemails or embedded documents were not produced. Several of these documents bear little, if any, relevance. *See, e.g.*, Mem., Ex. 11, TannerUK00370230 (photos of test kits visible in the message produced; 178-4 TannerUK000370415 (generic check-in on timing). Other documents, or the content of those documents, were separately produced in that custodian's Tanner enterprise data or emails. *Compare* Foss Decl., Ex. B, TannerUK00260437 *with* Mem., Ex. 11, TannerUK00370234. Thus, the embedded documents are non-substantive or not missing, that information is available in the images themselves, and as appropriate the Tanner Defendants could take additional steps to identify and collect these records.

- FSMS cites one example of a message string with Orient Gene and/or the UK Government that was not produced from Bracey's phone. This message was not located on Bracey's phone. Regardless, the message reflects an innocuous check-in that would have fallen outside the scope of the parties' search terms. ECF 178-3 at TannerUK00370415. Further, in many instances, the key information from messaging data was separately relayed via email. *See, e.g.*, Foss Decl., Ex. B, TannerUK00336290.

In sum, FSMS has identified nothing of any consequence that is missing. FSMS's speculation to the contrary falls far short of the discovery-on-discovery standard that requires "***specific and tangible evidence***" of discovery shortcomings, *LKQ*, 345 F.R.D. at 162–63, not "hypothetical inferences" and speculation, *Culliver v. BP Expl. & Prod., Inc.*, No. 3:21CV4942-

MCR-HTC, 2022 WL 19568966, at *4 (N.D. Fla. Nov. 29, 2022) (quoting *246 Sears Rd. Realty Corp. v. Exxon Mobil Corp.*, 2011 WL 13254283, at *4 (E.D.N.Y. Apr. 1, 2011)); *Zunum Aero, Inc. v. Boeing Co.*, No. C21-0896JLR, 2023 WL 11835334, at *3 (W.D. Wash. Nov. 13, 2023) ("Mere speculation about missing evidence is insufficient to allow discovery on discovery . . . ."); *Sidman v. Concord Arena Parking, LLC*, No. 15-CV-7426-CBA-SJB, 2021 WL 1940255, at *3 (E.D.N.Y. May 11, 2021) (denying motion to compel discovery on discovery when movants failed "to offer anything more than hypothetical inferences in support" of their request).[2]

## B. FSMS Misstates the Chronology and Impact of the Tanner Defendants' Litigation Hold and Productions to Date.

FSMS's request for discovery on discovery relies heavily on a reductive and inaccurate timeline of events. FSMS asserts that (i) TPUK's duty to preserve documents arose in late 2020, Mem. at 8, (ii) FSMS first sued the Tanner Defendants in March 2021, (iii) the Tanner Defendants did not issue a litigation hold until January 2022, *id*. at 3-5, and (iv) Bourne did not disengage his phone's 30-day autodelete function until November 2022, *id.* at 5. From there, FSMS postulates that WhatsApp and SMS messages from the custodial files of Scalia, Bracey, and Bourne must be materially incomplete.[3]

It is true that the Tanner Defendants first sent a written litigation hold notice in January 2022. But by seizing on that date alone, FSMS misapprehends the date on which TPUK could

---

[2] FSMS's citations to support discovery on discovery are once again misguided. In *DuPont*, the movant supported its request for discovery on discovery with specific evidence—not speculation—that the opposing party's vice president intentionally deleted emails after the movant filed its complaint. 803 F. Supp. 2d. at 476. Similarly, in *Martley v. City of Basehor, Kansas*, the court based its discovery-on-discovery order on evidence—not hypothetical inferences—of "deletion of information from City servers, and the destruction of the computer used by Plaintiff while he worked for the City." No. 19-2138-DDC-GEB, 2021 WL 4134307, at *3 (D. Kan. Sept. 10, 2021). FSMS has cited no authority holding that courts should order invasive discovery on discovery in circumstances like this case.

[3] FSMS mischaracterizes the sequence of events related to John Lagus by griping about process, not substance. The Tanner Defendants did not initially view Lagus as a custodian because he had virtually nothing to do with the sales of test kits to the DHSC, which the emails produced from his custodial file clearly reflect. But in its initial custodian list (sent October 31, 2023) FSMS indicated that it wanted Lagus to be a custodian. At that point, the Tanner Defendants' counsel acted quickly to add Lagus as a potential custodian and issued a litigation hold to him on November 3, 2023. Thus, contrary to FSMS's assertion, the Tanner Defendants' instruction that Lagus preserve documents at that time is

have reasonably anticipated litigation (and its relevant scope at that time) and ignores the fact that **TPUK was already preserving all emails sent and received on its company servers**. FSMS also relies on outdated case law, issued before the Federal Rules of Civil Procedure were amended in 2015, and fails to show how the litigation hold notice's timing has caused FSMS any prejudice.

### *i.* **FSMS miscalculates the date on which TPUK's preservation duty arose.**

In the Fourth Circuit, as FSMS acknowledges, "the duty to preserve" begins when a "party anticipates litigation." *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 451 n.1 (4th Cir. 2004). The time at which "litigation becomes reasonably foreseeable is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Webb v. Daymark Recovery Servs., Inc.*, No. 1:21CV424, 2022 WL 17832160, at *3 (M.D.N.C. July 26, 2022) (internal quotations omitted). That did not take place until late February 2021.

It is undisputed that FSMS never threatened litigation in 2020. To the contrary, in November 2020, FSMS continued pursuing business with TPUK. *See* Mem. and Recommendation, Dkt. 110; Foss Decl., Ex. C. Indeed, Scalia, testifying as TPUK's corporate representative, stated that on October 22, 2020 TPUK was working in good faith to "**avoid** a dispute" through discussion with FSMS and reach an amicable and mutually agreeable resolution. Scalia Rule 30(b)(6) Dep. at 285-86 (emphasis added). In fact, FSMS kept communicating and pursuing additional business with Tanner through the end of 2020 and into February 2021. Foss Decl., Ex. D. No one resorted to litigation or even mentioned the possibility. Based on FSMS's

---

evidence of their diligence in discovery, not their carelessness. Further inquiries have revealed that Lagus had information on an entirely different topic: non-FSMS sources of Orient Gene test kits that Tanner had identified and pursued prior to the deal with the UK government. Moreover, his recent deposition bore out the Tanner Defendants' view that Lagus "didn't really have much to do" with the test kits sales to the UK government. Lagus Dep. 236-237. More to the point, FSMS points to **no Lagus ESI** that has not been produced or is unavailable.

appetite for a continuing business relationship it would have been unreasonable for TPUK to anticipate litigation until FSMS sent its original demand letter on February 24, 2021.

### ii. The Tanner Defendants extensive productions to date make it unlikely any material information is missing.

FSMS's request for discovery on discovery also ignores the extensive productions that the Tanner Defendants have made to date. Acting in good faith and in compliance with its discovery obligations, the Tanner Defendants have produced over 104,000 documents (and, importantly, the entire relevant time period), spanning roughly 450,000 pages. *See* Opp. to Bracey Mot. at 2. Given the sheer volume of documents that the Tanner Defendants have already collected—across many custodians and platforms—and produced, it is exceedingly unlikely that whatever needle FSMS is looking for remains outside of the haystack it already possesses.

The most comprehensive category of the Tanner Defendants' productions is its enterprise platform data. TPUK and TannerGAP both use a set of integrated data platforms: Outlook for email, Teams for audio/video meetings, and NetSuite, an enterprise resource planning platform that supports accounting, finance, procurement, sales, inventory, customer and vendor record, taxes, and employment functions. Ex. 2, Declaration of Katie Smoot ("Smoot Decl.") ¶¶ 3-6. These platforms are the backbone of the Tanner Defendants' business operations.

Since August 2018, all three platforms have been cloud-based, meaning that the ESI used by those systems is housed and retained by networked servers that store data remotely. Importantly, the Tanner Defendants have not implemented any retention cut-off for **any** data created and used on these platforms, meaning that the Tanner Defendants effectively have an **indefinite** retention period for enterprise ESI. As a result, the Tanner Defendants have produced enormous amounts of ESI spanning the entire time period relevant to this litigation, including

Outlook emails, Teams meeting records and messaging, and NetSuite accounting records. *See* Smoot Decl. ¶ 9; Foss Decl. ¶ 12.

FSMS ignores this robust production and focuses instead on a far narrower category of ESI: informal WhatsApp and SMS messages. But the Tanner Defendants have now produced a complete set of all responsive, non-privileged WhatsApp and SMS messages from Scalia's phone dating back to June 2, 2020, the beginning of the relevant time frame, including all such messages with either Bourne or Bracey (or both).[4] Foss Decl. ¶ 7. Their productions also include all lawfully available responsive, non-privileged WhatsApp and SMS communications from Bracey's phone that were identified during a reasonably diligent search. *Id.* ¶ 7. While FSMS is asking that the Court order TPUK to obtain an image of Bracey's phone, a more intrusive imaging process is impossible since Bracey has personally asserted valid objections to that process under United Kingdom law. *See generally* Opp. to Bracey Mot. Further, Bourne has produced all responsive, non-privileged WhatsApp messages from his phone, and SMS messages beginning in November 2022. Bourne Opp. at 3, 10-11.

FSMS fundamentally misunderstands the significance of these productions. It cites *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 901 (N.D. Ill. 2021), to argue that the Tanner Defendants cannot explain away purported discovery violations merely by pointing to the number of documents that it has produced. Mem. at 11. Yet the volume of the Tanner Defendants' production alone is not the point. The point is that, given the Tanner Defendants' comprehensive, expansive productions of ESI in this case, it is extremely unlikely that anything missing is material enough to warrant discovery on discovery.

---

[4] After the Tanner Defendants' counsel identified a processing error in the output provided by its vendor, Scalia's phone data was reprocessed and supplemental productions to complete the WhatsApp and SMS messages were made.

### *iii.* **FSMS strays from the discovery-on-discovery standard.**

Additionally, FSMS cannot show that the Tanner Defendants failed to preserve any **material** information because much of the information that FSMS seeks fell beyond the scope of the Tanner Defendants' preservation duty.

As discussed above, custodians' duty to preserve documents arises before litigation begins only when they objectively and "reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001); *Webb*, 2022 WL 17832160, at \*3. The duty to preserve does not extend to every conceivable custodian and does not "require a party to retain every scrap of paper in its possession." *LKQ*, 345 F.R.D. at 166. Instead, "the duty to preserve extends to . . . the 'key players' in the case." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, No. 3:09CV58, 2011 WL 1597528, at \*11 (E.D. Va. Apr. 27, 2011); *see also Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 511–12 (D. Md. 2009). And it requires the preservation only of "relevant documents," meaning "discoverable information that the disclosing party may use to support its claims or defenses." *Id*. Overall, and consistent with Rule 26(b), the preservation duty is "proportional to the facts of the case." *Washington v. Wal-Mart La. LLC*, No. CV 16-1403, 2018 WL 2292762, at \*4 (W.D. La. May 17, 2018); *Zbylski v. Douglas Cnty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1164 (D. Colo. 2015).

Until August 12, 2022, when FSMS amended its complaint to assert a UDTPA claim against Bourne and Scalia individually, this dispute was purely a breach of contract case between corporate and LLC entities. Dkt. 1. Accordingly, before that date, employees of the Tanner Defendants—including Bourne—had no reason to anticipate that their preservation duties extended to any information other than that relevant to FSMS's breach of contract claim. Thus, Bourne's initial preservation duty was quite limited: he was obligated to preserve only documents that could support FSMS's contract claim or the Tanner Defendants' defenses to that claim.

*DuPont*, 2011 WL 1597528, at *11.  Because Scalia and Bracey were the Tanner personnel most involved in TPUK's contractual relationship with FSMS, however, they (and not Bourne) were the "key players" in the parties' dispute.  *See id*.  As a result, because the parties' dispute was based in contract alone, Bourne had little if any unique data to preserve.[5]

That changed in *FSMS I* only when FSMS asserted its UDTPA claim against him in August 2022.  At that point, Bourne could have anticipated (and did anticipate) the need to defend the UDTPA claim, which was ultimately dismissed.  But no events "of consequence" to any live claims in *FSMS I* took place during the time when Bourne was sued individually (August 12, 2022) to when his text messages started to be retained (November 25, 2022).  *LKQ*, 345 F.R.D. at 162 (ruling that discovery on discovery is appropriate only when allegedly missing information is "of consequence to the fact-finding process, such that further inquiry is warranted").  Missing documents from that short timeframe cannot justify discovery on discovery.

The same is true for *FSMS II*, the fraudulent transfer case.  By late summer and fall of 2022, nothing "of consequence" to FSMS's fraudulent transfer claims or the Tanner Defendants' defenses was taking place at TPUK.  TPUK was not issuing any distributions and its sales to the DHSC had wound down by that point.  Any of Bourne's hypothetical SMS messages that remain unavailable from that timeframe, to the extent any ever existed at all, are therefore inconsequential or of limited, marginal value to *FSMS II* as well.  And the Tanner Defendants have already produced emails, WhatsApp messages, and SMS texts among Scalia and Bourne or Bracey for the entire period of June 2020 to October 2023, including August to November 2022, that were identified during the Tanner Defendants' searches.

---

[5] The Court should also bear in mind that the auto-deletion policy on Bourne's phone was set for one month.  Thus, even if Bourne would have been a relevant custodian for FSMS's originally pled breach-of-contract case in FSMS I (which he was not), only data that was stored one month prior to the deletion date would have been preserved had the Bourne changed the setting.  Under any reasonable view, this means no texts from 2020 (the relevant time period for FSMS I) would have been preserved.

In sum, FSMS's litigation-hold argument centers on Bourne's pre-November 2022 SMS text messages. But Bourne was under no obligation to preserve documents other than those relevant to the breach of contract claim before August 2022. And FSMS hasn't shown that there were any communications between August and November 2022 of consequence, and that is unlikely given how little was happening then.

### iv. The timing of the Tanner Defendants' litigation hold notice caused FSMS no prejudice.

FSMS next argues that "the delay in issuing a litigation hold and communicating with custodians caused real harm." Mem. at 9. But the only possible prejudice that FSMS posits is that "Mr. Bourne may or may not have activated the autodelete function before he anticipated litigation." *Id.*

FSMS's bald speculation that Bourne intentionally engaged the autodelete function to destroy evidence or otherwise acted in bad faith during the discovery process puts the cart before the horse. The Court should disregard this argument because the testimony in the upcoming depositions of Bourne, Scalia, and Bracey will disprove the intentional discovery misconduct that FSMS alleges. Moreover, contrary to FSMS's argument, the keystone of the discovery-on-discovery analysis is **materiality**, not intentionality. *See*, *infra*, Section II. FSMS's theorizing about the Tanner Defendants' intentional spoliation thus falls well short of the "specific and tangible evidence" of discovery violations "of consequence" that courts require before authorizing discovery on discovery. *LKQ*, 345 F.R.D. at 162–63.

### v. FSMS's caselaw is outdated and inapplicable.

To support its wholesale contention that discovery on discovery is appropriate "where a party fails to issue a timely litigation hold," Mem. at 8, FSMS cites exclusively pre-2015 caselaw. That date is important because in late 2015, "the United States Supreme Court amended the Federal

Rules of Civil Procedure" to "put an end to" unfettered discovery on discovery and "impose[] a requirement of proportionality on discovery requests." *Tucker v. Momentive Performance Materials USA, Inc.*, No. 2:13-CV-04480, 2016 WL 8252929, at *2–3 (S.D.W. Va. Nov. 23, 2016). FSMS's cases from before the 2015 amendments to the Federal Rules of Civil Procedure are therefore of very limited value.

They are also substantively distinguishable. In *Major Tours, Inc. v. Colorel*, the court faced evidence of spoliation by multiple custodians across a span of nearly two years, including one executive who testified to not saving "anything" despite the existence of a litigation hold. No. CIV 05-3091(JBS/JS), 2009 WL 2413631, at *4 (D.N.J. Aug. 4, 2009). *Major Tours* also involved evidence that many email communications were deleted by both the sender and the recipient, making them impossible to recover. *See id.* at *5. Here, on the other hand, the Tanner Defendants have produced all of Bourne's responsive, non-privileged emails collected from the Tanner Defendants' systems. All of Bourne's WhatsApp messages are available and were produced by Bourne's counsel, and the SMS messages available from his iPad. And many (if not all) of Bourne's so-called "missing" SMS messages were recovered since the party he is likely to have had SMS messages with about relevant topics was Scalia, and Scalia's SMS messages were all produced.

Similar to *Major Tours*, *Tate & Lyle Americas, LLC v. Glatt Air Techniques, Inc.* involved a long, multi-year delay in issuing a litigation hold. No. 13-2037, 2014 WL 10209161, at *3 (C.D. Ill. Aug. 4, 2014). It also based its holding on the "reasonable" inference that the plaintiff destroyed "relevant evidence." *Id.* at *2.[6] For the reasons set out above, there is no basis for such

---

[6] Other cases cited by FSMS rely on similar facts and circumstances. *See, e.g.*, *DuPont*, 803 F. Supp. 2d 469, 501 (E.D. Va. 2011) (describing rampant intentional deletion of relevant material); *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 233 (D. Minn. 2019) (describing employees that intentionally "wiped and destroyed" their phones after the company was sued).

an inference here. If anything, the most reasonable inference is that Bourne **did not** intentionally delete communications. He did not delete WhatsApp messages, which have been produced. And he did not have the autodelete setting on his iPad, so additional SMS texts were available from the iPad. Moreover, FSMS has produced no evidence that Bourne's autodelete function made it impossible to recover material information that cannot be obtained from anyone else.

*Procaps S.A. v. Patheon Inc.* deals only tangentially with litigation holds. No. 12-24356-CIV, 2014 WL 800468, at *1 (S.D. Fla. Feb. 28, 2014). There, the court imposed a strict ESI search procedure on a litigant that issued a litigation hold about 14 months after the lawsuit was filed. *Id.* But the court's analysis turned almost exclusively on the litigant's woefully deficient ESI search procedures, which included custodian self-collection, single-term searches, and the failure to collect **any** responsive internal emails. *Id.* at *2. Those facts bear little relation this case.

In sum, because FSMS's case law is of limited (if any) value here, the Court should reject FSMS's argument that the timing of the Tanner Defendants' litigation hold is so consequential to this litigation to require a detour into discovery on discovery.

### C. FSMS Falsely Blames the Tanner Defendants for Lack of Discovery "Transparency."

FSMS's final argument consists of a shotgun collection of accusations that the Tanner Defendants or their counsel (or both) have been less than "transparent" throughout the discovery process. These assertions boil down to either misunderstandings of basic discovery concepts or variations on the same speculation discussed above.

FSMS first faults the Tanner Defendants for producing certain documents "upon repeated outreach from FSMS" after the parties' negotiated substantial completion deadline. Mem. at 11. That argument reflects a fundamental misunderstanding of the purpose of certifying the substantial completion of document production. A substantial completion certification means exactly what

its name suggests: that a litigant has **substantially**—not **entirely**—completed its document production. And the Tanner Defendants have lived up to that certification. They produced 101,095 documents, or 97% of their overall production, by the June 14, 2024 substantial completion deadline. Foss Decl. ¶ 12. Since then, in compliance with their obligation under the Federal Rules of Civil Procedure to supplement productions when necessary, *see* Fed. R. Civ. P. 26(e), the Tanner Defendants have produced an additional 3,218 documents, or 3% of their overall production, Foss Decl. ¶ 12.

FSMS's protestations about the Tanner Defendants' supplemental productions to address FSMS's requests are puzzling. For one thing, FSMS has itself produced documents after the substantial completion deadline. Foss Decl. ¶ 13. For another, the Tanner Defendants' continuing productions reflect its efforts to meet and confer with FSMS to remedy any perceived discovery issues as they arise. The Tanner Defendants intend to continue doing so in good faith.

FSMS next claims (without citation) that the Tanner Defendants' and their counsel's "inexplicably slapdash approach to review and production" has "enabled intentional spoliation." Mem. at 12. The review and production process in this action has been far from "slapdash", as the number of custodians, sources, and documents produced demonstrates. To the contrary, the Tanner Defendants' counsel and discovery attorneys have spent significant amounts of time reviewing the very large volume of ESI retained by the Tanner Defendants in order to make a comprehensive production to FSMS. Foss Decl. ¶ 12. And, as addressed above, FSMS has **zero evidence** of any intentional spoliation whatsoever. Speculation remains speculation, no matter how many times it is repeated.

Finally, yet again, FSMS's cases are unhelpful. Unlike this case, *Vander Pas v. Board of Regents of University of Wisconsin Systems* held that a litigant's failure to investigate the existence of certain documents was "especially egregious" after her counsel promised that "**all information**"

had already been produced. 664 F. Supp. 3d 893, 913 (E.D. Wis. 2023) (emphasis added). That is fundamentally (and obviously) different than the Tanner Defendants' certification that its productions were **substantially** complete by the negotiated deadline.

In *Jasso v. Wells Fargo Bank, N.A.*, the court permitted discovery on discovery after it came to light that the defendant's representations about its own document retention policy were inconsistent with governing policies and documents within its own productions. No. 220CV00858CDSBNW, 2022 WL 4227332, at *3 (D. Nev. Sept. 13, 2022). Again, that is not the case here.

Worst of all, one discovery-on-discovery holding that FSMS cites, *Burd v. Ford Motor Co.*, No. 3:13-CV-20976, 2015 WL 4137915, at *1 (S.D.W. Va. July 8, 2015), has been overruled. There, over Ford's objections, a magistrate judge held in a report and recommendation that a Rule 30(b)(6) deposition could proceed on four topics, one of which concerned the details of document searches performed in connection with the litigation. *Id.* at *9, 11 (ordering Ford to "to produce a Rule 30(b)(6) witness to provide an overview of its claims investigation process, to testify regarding its document retention and destruction policies, and to supply details regarding the document search performed by Ford to date"). However, before the district court could review the magistrate judge's recommendations, *Burd* was consolidated with *Johnson v. Ford Motor Company*. *See Burd v. Ford Motor Co.*, United States District Court for the Southern District of West Virginia Case No. 3:13-CV-20976, Dkt. 491; *Johnson v. Ford Motor Company*, United States District Court for the Southern District of West Virginia, Case No. 3:13-6529, Docket Sheet (listing Charles T. Burd as a "Consol. Plaintiff"); Dkt. 623 (consolidating *Johnson* and *Burd*).

After consolidation, the *Johnson* court reviewed Ford's objections to the same Rule 30(b)(6) objections that it raised in *Burd*.[7]  As in *Burd*, the magistrate judge ruled that a Rule 30(b)(6) deposition concerning the searches for documents in the litigation should go forward. *Johnson v. Ford Motor Co.*, No. CV 3:13-6529, 2015 WL 6758234, at *1 (S.D.W. Va. Nov. 5, 2015).  But on Rule 72 review, the district court **reversed** and granted Ford's objection in relevant part.  *Johnson* held that "the information sought in response to Topic 79 is best supplied by counsel," and that "[a]t best, a corporate designee could only superficially address how each employee created, managed, retained, and then searched for whatever documents were within the scope of production." *Id.* at *2.  A Rule 30(b)(6) deposition on Topic 79, *Johnson* held, "would add little light to the matter." *Id.*[8]

Thus, *Johnson*'s holding—not *Burd*'s—remains in force.  *Johnson* clearly stands for the proposition that Rule 30(b)(6) depositions are unnecessary when they seek information about the "method" or "process" to search for documents in litigation, as that process is the work of lawyers. That is precisely what FSMS's Topics 43 and 44 seek: "The preservation, collection, review, and production of the custodial ESI of" Bracey and Bourne.  *See* Dkt. 182-3 at 21-22.  Moreover, the Tanner Defendants have already detailed how the document searches and collections were accomplished here.  *See* O'Donovan Decl. ISO Opp. to Bracey Mot., Dkt. 176-4.  The only information FSMS is targeting is what *Johnson* placed off-limits: the Tanner Defendants'

---

[7] The relevant deposition topics in *Burd* and *Johnson* are identical. *Compare Johnson*, 2015 WL 6758234, at *1 (discussing Topic 79, which "concern[ed] the method by which Ford directed its employees to search their individual computers for emails or similar documents") *with Burd v. Ford Motor Co.*, United States District Court for the Southern District of West Virginia Case No. 3:13-CV-20976, Dkt. 438-1 (listing Topic 79 as "The identity of the custodians of the documents produced by Ford in this litigation and the process by which the custodians reviewed his or her records and e-mails to acquire the responsive documents requested.").

[8] The court did allow the Rule 30(b)(6) topics related to the company's retention of documents unrelated to the litigation.  But that topic is not at issue here, where all documents on the Tanner Defendants' systems have been retained.  Plaintiffs are seeking in this case to depose someone about activities that they took **because of the litigation**, which, as the *Johnson* court recognized, are activities of lawyers.

18

counsel's involvement in the process.

Accordingly, *Johnson* wiped away whatever limited utility *Burd* had for FSMS. As is true for the rest of its citations, *Burd* does not support the relief FSMS seeks.

### D. The Discovery-on-Discovery Remedies that FSMS Seeks are Unnecessary and Unwarranted.

Even if the Court were to agree with FSMS that some sort of discovery on discovery could be allowed (which it should not), the relief FSMS requests is inappropriate and needlessly burdensome. As a rule, when a movant can establish an "abuse" of the discovery process necessitating discovery on discovery, *Williams v. NYC Bd. of Elections*, No. 23-CV-5460 (AS) (KHP), 2024 WL 3567395, at *4 (S.D.N.Y. July 29, 2024), the reviewing court should "select the narrowest discovery tool possible" as a remedy, *LKQ*, 345 F.R.D. at 163.

Both of the invasive forms of discovery that the FSMS asks the Court to compel contravene that that standard. At the outset, FSMS's document requests and deposition topics both implicate material protected by the attorney-client and work product privileges. *See, e.g.*, *Shenwick v. Twitter, Inc.*, No. 16-CV-05314, 2018 WL 833085, at *4 (N.D. Cal. Feb. 7, 2018) ("[P]reservation notices, if prepared by counsel and directed to the client, are protected by the attorney-client privilege.") (citation omitted); *In re Exxon Corp.*, 208 S.W.3d 70, 75 (Tex. App. 2006) (request to depose corporate representative "for the purpose of inquiring specifically into the process" of responding to document requests "necessarily and almost exclusively concerns" attorney work product); *Bombardier Recreational Prods., Inc. v. Arctic Cat, Inc.*, No. 12-cv-2706, 2014 WL 10714011, at *15 (D. Minn. Dec. 5, 2014) (deposition topic on discovery on discovery "treads dangerously close to encroaching on attorney work product privilege") (citations omitted); *Fed. Deposit Ins. Corp. v. Johnson*, No. 12-cv-209, 2013 WL 1195698, at *3 (D. Nev. Mar. 22, 2013) (noting that all "searches, filters, document review, coding and tagging of documents is the work

product of the attorney and firm performing the work in the database and is not available to any other party"). Absent concrete evidence of the discovery misdeeds that FSMS imagines, the Court should not order the Tanner Defendants to reveal privileged information.

To the extent that these requests would require TPUK to collect and produce further sensitive personal information from Bracey's mobile device (or describe the process of doing so), TPUK could only do so by violating United Kingdom law. *See generally* Opp. to Bracey Mot.

Additionally, forcing the Tanner Defendants to designate a corporate witness to testify about Bourne and Bracey's preservation, collection, and production practices would be needlessly burdensome. While it might be appropriate to ask individual fact witnesses about their personal practices with email or mobile device communications under certain circumstances, it is not appropriate to have a Rule 30(b)(6) corporate representative designated for such topics.

And Bracey, Scalia, and Bourne will all be deposed soon: September 24, September 30, and October 16. They, as individuals, are much better able to testify about their personal mobile device use than any TPUK corporate designee would be. During their depositions, FSMS can ask each of them about their phone use and the retention of their phone data. By contrast, it would be burdensome and costly to force TPUK to prepare a corporate designee who lacks personal knowledge to testify as to Bourne and Bracey's personal phone use and retention practices. This is especially true where, as here, the corporation does not have control over the phones at issue.

Finally, this unnecessary burden would result in little to no substantive gain because the Tanner Defendants have explained to FSMS—in good faith, in detail, and on multiple occasions— the process by which they have searched for, collected, reviewed, and produced the text messaging and WhatsApp data belonging to Bracey and Bourne, among other custodians.

### E. FSMS Has Once Again Failed to Meaningfully Meet and Confer on This Motion.

Before the Tanner Defendants filed their motion for protective order, their counsel met and conferred with FSMS's counsel regarding TPUK's objections to FSMS's document requests and deposition topics. *See* Dkt. 184 at 3. These conversations took place on August 13, 2024, more than a week before the Tanner Defendants filed its motion. The Tanner Defendants stated explicitly they would prepare and file a motion for protective order before the scheduled completion of TPUK's Rule 30(b)(6) deposition on August 23. In contrast, FSMS's counsel first stated it planned to file a cross-motion to compel just four hours before filing it. Foss Decl., Ex. A. Defendants' counsel were unable to convene and confer with FSMS's counsel before FSMS filed.

Moreover, FSMS now complains that certain text messages "should have been found on Mr. Bracey's phone," but were not produced. Mem. at 6. The Tanner Defendants heard the details of this complaint, and FSMS's complaints related to the collection from Scalia's phone, **for the first time in reading FSMS's brief**. As detailed above, many of these messages either are available and have been produced to FSMS, or were inadvertently unproduced due to a miscoding, a technical error by the vendor, or the failure of those documents to hit on search terms.

This is yet another instance of FSMS refusing to meaningfully meet and confer with the Tanner Defendants before bolting to the Court for resolution. *See* Dkt. Opp. to Bracey Mot. at 20-21 (describing FSMS's failure to meaningfully meet and confer before filing that motion). Had it done so, the parties could have informally resolved many of the issues that are now before the Court. *See id.* at 22-23. It is lamentable that FSMS continues to disregard the extent of the judicial resources that it is diverting with its stream of discovery disputes.

## CONCLUSION

For the reasons stated above, the Tanner Defendants respectfully request that this Court deny Plaintiff's Motion to Compel Discovery on Discovery in full.

This the 12th day of September 2024.

McGuireWoods LLP

By:     */s/ Bradley R. Kutrow*
        Bradley R. Kutrow
        N.C. State Bar No. 13851
        Brian A. Kahn
        N.C. State Bar No. 29291
        Anita Foss
        N.C. State Bar No. 47743
        Jessica L. O'Brien
        N.C. State Bar No. 56679
        Kelly A. Warlich
        N.C. State Bar No. 51053
        201 North Tryon Street, Suite 3000
        Charlotte, NC 28202-2146
        Telephone: (704) 343-2049
        Facsimile: (704) 343-2300
        bkutrow@mcguirewoods.com
        bkahn@mcguirewoods.com
        afoss@mcguirewoods.com
        jobrien@mcguirewoods.com
        kwarlich@mcguirewoods.com

        Mark E. Anderson
        N.C. State Bar No. 15764
        501 Fayetteville Street, Suite 500
        Raleigh, NC 27601
        Telephone: (919) 755 -6678
        Facsimile: (919) 755-6699
        manderson@mcguirewoods.com

        Anne Doherty
        N.C. State Bar No. 55494
        Gateway Plaza
        800 East Canal Street

Richmond, VA 23219
Telephone: (804) 775-7633
Facsimile: (804) 775-1061
adoherty@mcguirewoods.com

*Attorneys for Defendants TannerGAP, Inc.*
*and Tanner Pharma UK Limited*

## <u>CERTIFICATION</u>

Pursuant to this Court's June 18, 2024 Order regarding the use of artificial intelligence, the undersigned states that:

1.       No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

2.       Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 12th day of September 2024.

*/s/ Bradley R. Kutrow*
Bradley R. Kutrow
N.C. State Bar No. 13851
MCGUIREWOODS LLP

*Counsel for Defendants TannerGAP, Inc.*
*and Tanner Pharma UK, Ltd.*
