UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| FS MEDICAL SUPPLIES, LLC,<br><br>    Plaintiff,<br>v.<br><br>TANNERGAP, INC. *et al.*,<br><br>    Defendants. | Civil Action No.<br>3:21-CV-501-RJC-WCM |

# REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY ON DISCOVERY

**MAYNARD NEXSEN PC**
227 W. Trade Street, Suite 1550
Charlotte, NC 28202
704-339-0304

**ARNOLD & PORTER**
  **KAYE SCHOLER LLP**
250 W 55th Street
New York, NY 10019
212-836-8000
 – and –
1144 Fifteenth Street, Suite 3100
Denver, CO 80202
303-863-1000

September 19, 2024

Contrary to Defendants' assertions, at this stage, Plaintiff does not have to prove that it has met the standards of Rule 37(e). Rather, as explained in FSMS's opening brief, discovery on discovery is warranted "where there is reasonable doubt about the sufficiency of a party's response," *Am. W. Bank Members, L.C. v. State*, 2021 WL 5234372, at *2 (D. Utah Nov. 10, 2021), or where there is "evidence which allows the court to make a reasonable deduction that other documents may exist or did exist and have been destroyed," *Culliver v. BP Expl. & Prod., Inc.*, 2022 WL 19568966, at *2 (N.D. Fla. Nov. 29, 2022). Defendants' long delay in issuing a litigation hold, Mr. Bourne's undisputed destruction of his SMS text messages, Mr. Bracey's refusal to turn over his phone for imaging, the still unexplained absence of inculpatory emails in Mr. Bourne's files, the missing messages of Messrs. Bourne, Bracey, and Scalia as compared against each other's productions, and Defendants' lack of transparency leave no doubt that ESI which did once exist has been destroyed or withheld. This is not a sanctions motion. It is a motion seeking the information necessary to assess the degree to which Defendants' conduct reflects negligence or intent or both. Fairness demands that Defendants provide that information, given the striking deficiencies reflected in their productions after extensive efforts to locate lost and withheld ESI.

## I. Discovery On Discovery Is Warranted

### A. Defendants Apply the Wrong Standard

Defendants have the legal test wrong. They invoke the Rule 37(e)(1) standard, but that is "not the right framework for viewing" a request for discovery on discovery. *LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 159 (N.D. Ill. 2023). Rule

37(e)(1), which permits moderate sanctions for *negligent* failure to preserve ESI, does require a showing of prejudice resulting from the loss of ESI; but such a showing is not required at this stage, because "when a party initially requests process-related discovery, a party does not yet have [that] level of information." *LKQ Corp.*, 345 F.R.D. at 159.

Rather than confront the *applicable* standard, Defendants insist FSMS must show that *unique material information is missing* even to justify discovery on discovery. *See* ECF No. 195 at 2, 3, 6, 10, 12. Defendants employ this sleight of hand because they do not wish to provide further information about the discovery failures that have occurred in this case. Yet Defendants do not deny that the first litigation hold was issued in January 2022, fifteen months after they engaged litigation counsel at McGuireWoods.[1] Defendants attempt to minimize the wholesale deletion of Mr. Bourne's text messages as an unintentional blunder, but the fact remains that Mr. Bourne *did* delete all SMS text messages more than 30 days old, and none are recoverable from the period during which Tanner negotiated and breached the contract. Moreover, Defendants do not acknowledge—much less explain—their clear violations of the ESI Protocol, which include the failure to promptly disclose their purported inability to collect and search ESI in the agreed manner. Defendants do admit, however, that even after receiving evidence of *specifically missing ESI* from the Bracey phone, some messages were still "not located on Bracey's phone." *Id.* at

---

[1] Defendants quibble whether they first anticipated litigation in October 2020 or in February 2021. The Court need not determine at this point when exactly Defendants reasonably anticipated litigation, because even under Defendants' reasoning, the litigation hold was issued eleven months too late.

6. Defendants make no attempt to explain why those messages are not on Bracey's phone. Taken together, these failures are more than sufficient evidence to raise reasonable doubt about the sufficiency of Defendants' production.

Defendants also argue that they had no intent to spoliate, so discovery on discovery is unnecessary. Once again, Defendants have the standard backwards. The purpose of discovery on discovery is to answer the factual questions germane to application of Rule 37(e), one of which is intent. *See Korbel v. Extendicare Health Servs., Inc.*, 2015 WL 13651194, at *16 (D. Minn. Jan. 22, 2015); *Waste Action Project v. Girard Res. & Recycling, LLC*, 2024 WL 3251776, at *3 (W.D. Wash. May 1, 2024). Conduct relevant to the question of intent includes the "failure to issue a litigation hold" and "willful disregard of a party's discovery obligations." *Gardner v. Wells Fargo Bank, NA*, 2021 WL 2125530, at *1 (E.D. Wash. Apr. 14, 2021); *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017) (inferring intent to deprive from defendant's "failure to make any effort over the course of four years to confirm that the data was properly preserved"). The discovery requested by FSMS is directed at exactly those issues.

Finally, Defendants' privilege objection is meritless. As explained in FSMS's response to Defendants' motion for a protective order, Defendants' privilege cases did not involve any evidence reflecting deficiencies of a party's production. *See* ECF No. 194 at 9–10; *Fish v. Air & Liquid Sys. Corp.*, 2017 WL 697663, at *16 (D. Md. Feb. 21, 2017) (no allegation of discovery misconduct). Where, as here, there is reasonable doubt about a party's compliance with discovery obligations, discovery on discovery, including the disclosure of materials that might ordinarily be shielded, is

3

warranted and any privilege objection is overcome by the issue of potential spoliation. *See* ECF No. 194 at 10–11.

### B. Defendants' Argument That The Missing ESI Is Irrelevant Or Duplicative Is Implausible

Defendants try to minimize the various deficiencies by arguing that their admitted destruction of ESI has not prejudiced FSMS. They say that the missing ESI is either duplicative or irrelevant. Again, this is not the time to evaluate the Rule 37(e) factors. But even on the current record, Defendants' argument is implausible. For example, while Defendants claim that Mr. Bourne's SMS text messages are relatively unimportant, ECF No. 195 at 9–10, Mr. Bourne's agents told a very different story to the IRS when he was audited. They said:

> ***Raymond is the overall decision maker.*** Tanner has a professional CEO who handles much of the day to day operations, however ***all significant decisions are ultimately up to Raymond*** as the sole director of Tanner Pharma Group Inc. … We estimate that on average he has 4 – 6 hours of scheduled calls and meeting each week relating to Tanner Pharma management. … ***Finally, Raymond uses his cell phone to stay in constant communication with the Tanner Pharma team, most especially in 2020 due to the incredibly complex nature of the contracts with the Department of Health and Social Care (DHSC).***

Ex. 1 (Response to IRS Information Request No. 1, Item 4) (emphasis added). It defies common sense for a man who made "all significant decisions" and "use[d] his cell phone to stay in constant communication with the Tanner Pharma Team" to argue that the text messages on his phone are irrelevant.

Had Tanner's counsel conducted a timely Rule 26 inquiry, they would have recognized that Mr. Bourne *was* one of the key custodians. Any suggestion that Tanner did not need to preserve Mr. Bourne's ESI before he was individually named in

August 2022 runs counter to his role as described in his own admission quoted above.² Defendants also appear to argue that before August 2022, they only had a duty to preserve Bracey and Scalia's ESI, which raises additional questions about whether Defendants appropriately appreciated the scope of their discovery obligations and took reasonable steps to preserve all relevant ESI. *See* ECF No. 195 at 12.

It also is demonstrably false that the spoliated ESI is duplicative of other disclosures or otherwise accessible information. As just one example, consider Mr. Bourne's communications with his tax advisor John Bly. As the Court will recall, FSMS sought documents from Mr. Bly and his firm, including communications between Mr. Bly and Mr. Bourne regarding the decision to issue dividends and related tax planning. Mr. Bly resisted the imaging of his cellphone until this Court ordered his counsel to search the device for responsive communications. *See* ECF 166 at 8–9. A forensic examination of the phone uncovered no responsive text messages between Messrs. Bly and Bourne. Mr. Bly's explanation for this gap is that he never sent a business-related text message to Mr. Bourne and that he deleted all text messages that he received from Mr. Bourne as a matter of course. *See* ECF No. 193-9.³

---

² Defendants also mischaracterize the deletion of Mr. Bourne's text messages, stating that "Bourne *did not disengage* his phone's 30-day autodelete function until November 2022." ECF No. 195 at 7, 12 ("when his text messages started to be retained (November 25, 2022)." The truth is, Mr. Bourne is not saying when he activated or deactivated the autodelete function on his phone; and the post-November 2022 texts were located because Plaintiff demanded that Defendants engage a forensic specialist, who found them.

³ There is good reason to doubt Mr. Bly's explanation for how he handled business-related text messages received from Mr. Bourne. Although Mr. Bly testified that he always copied such text messages into an e-mail and continued any conversation initiated by Mr. Bourne in that medium, neither Mr. Bly nor Mr. Bourne produced a

5

Mr. Bourne claims that he "usually do[es] not communicate with [Bly] via text about business matters," but his counsel recently produced a text message exchange regarding tax planning discovered by the forensic specialist who examined the 2022 iPad backup. *See* Ex. 2. Communications of this kind from 2020 and 2021 are lost. Mr. Bly deleted them, as did Mr. Bourne. Thus, relevant ESI from the central time period is inaccessible. The messages between Mr. Bourne and Mr. Bly are important because Mr. Bourne's principal defense to Plaintiff's claim that he stripped $200 million from TPUK with actual intent to hinder, delay, and defraud creditors is that he was just following tax-planning advice from Mr. Bly.

Although it is premature to consider prejudice at this stage, the destruction of relevant and unique ESI between these two key witnesses is obvious prejudice. In any event, Defendants have a warped view of the measure of prejudice. As one court put it:

> It is a circular argument that [the moving party] must explain exactly what was in the deleted text messages in order to establish prejudice, especially when they never had the chance to review said text messages. [The movant's] ability to put forth their case has undoubtedly been impacted by a swath of who knows how many missing text messages, and the Court finds they have been prejudiced accordingly.

*Trade Grp., Inc. v. BTC Media, LLC*, 2024 WL 3513475, at *4 (N.D. Tex. July 23, 2024); *see E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 505 (E.D. Va. 2011) ("[F]or [defendant] to argue that the deleted information was of little relevance from its view, ignores the possibility that [plaintiff] might

---

single e-mail evidencing this peculiar protocol. In fact, the only text message between Mr. Bly and Mr. Bourne produced in this case shows that Mr. Bly *did* participate in business-related conversations by text message. *See* Ex. 2.

have entertained different views to which the deleted information may have been relevant."); *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 518 n.12 (D. Md. 2009) ("The argument of an accused spoliator that it did not violate its duty to preserve evidence because it retained the 'relevant' information and only deleted 'irrelevant' information rings particularly hollow. The ultimate decision of what is relevant is not determined by a party's subjective assessment filtered through its own perception of self-interest.").

### C. Defendants' Late Litigation Hold Requires Discovery on Discovery

Defendants suggest that they did not need to issue a timely litigation hold because all corporate emails were being retained indefinitely by default. However, courts have rejected such arguments, finding that general retention of emails and files was not a substitute for an actual litigation hold. *See Marsulex Env't Techs. v. Selip S.P.A.*, 2019 WL 2184873, at *10 (M.D. Pa. May 21, 2019) (finding defendant failed to take reasonable steps to preserve evidence and saving all files on defendant's system was not a substitute for a litigation hold); *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 2016 WL 6609208, at *11 (C.D. Cal. July 12, 2016) (finding company-wide policy to retain all information insufficient to satisfy the duty to issue litigation hold), *report and recommendation adopted*, 2016 WL 6901696 (C.D. Cal. Sept. 2, 2016). The delay meant that Mr. Bourne and other custodians were not instructed to preserve and not delete their emails and text messages until January 2022, which could have potentially led to Mr. Bourne activating the autodelete function on his phone during this period.

Defendants also argue that the cases FSMS relied on for discovery on discovery based on a delayed litigation hold are outdated because of the 2015 amendments to Rule 37(e). They do not cite a single case for the proposition that the 2015 amendments did away with the duty to issue a litigation hold as a reasonable step to preserve ESI. And, in fact, courts continue to hold that the late institution of litigation hold is sufficient to warrant discovery on discovery. *E.g.*, *Bagley v. Yale Univ.*, 318 F.R.D. 234, 241 (D. Conn. 2016) (finding defendant's nine-month delay in issuing litigation hold warranted production of litigation hold notices so that plaintiff can "discern the merit or lack of merit of a formal claim for spoliation"); *Al Otro Lado, Inc. v. Wolf*, 2020 WL 4432026, at *2 (S.D. Cal. July 31, 2020) (finding the late issuance of litigation hold "over a year after this litigation was initiated" alone "is sufficient to make a preliminary showing of spoliation" and ordering disclosure of litigation notice); *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 61 (S.D.N.Y. 2020) ("Where a party fails to timely institute a formal litigation hold and otherwise informally preserve ESI, the Court can conclude that it did not undertake reasonable steps to preserve ESI.") (cleaned up).

### D. Counsel's Discovery Conduct Requires Discovery on Discovery

Defendants mischaracterize FSMS's argument about their failures to cooperate in discovery. Defendants' deficiencies reflected multiple failures. Counsel failed to alert Mr. Bourne and other witnesses to preserve ESI; counsel failed to discover the autodeletion of Mr. Bourne's text messages; counsel failed to disclose Mr. Bracey's and Mr. Neat's "refusal" to allow data to be retrieved from their phones (in violation of the ESI protocol); and counsel failed to notify FSMS that they did not

8

Case 3:21-cv-00501-RJC-WCM    Document 196    Filed 09/19/24    Page 9 of 13

run agreed search terms against the messages that were (improperly) collected via screenshot (also in violation of the ESI protocol).

Moreover, Defendants' slow drip of information cannot fairly be described as a voluntary self-disclosure: rather, it came about in response to Plaintiff's repeated complaints of missing information. Defendants' counsel has offered no information on whether Tanner's counsel conducted a proper Rule 26 inquiry into the retention practices of Mr. Bourne's ESI sources. Defendants also offer no explanation for why they completely disregarded the ESI Protocol for the collection of Mr. Bracey's and Mr. Neat's data. Defendants state that their investigation into why there are selective email messages missing from Mr. Bourne's email file "is ongoing." Perry Dec. ¶ 17 (ECF No. 193). Defendants' forensic specialist states that "there are other forensic issues raised in the [motion] that Reliance may address separately if requested by Defendants' counsel." Walton Dec. ¶ 7 (ECF No. 191). Plaintiff is entitled to learn the results of that investigation.

## II. The Requested Discovery Is Targeted And Proportionate

Application of Rule 37(e) turns in part on whether the party "failed to take reasonable steps to preserve" ESI. Fed. R. Civ. P. 37(e). Yet Defendants have made only selective discourse about those steps. Unanswered questions remain: When were written litigation holds issued? To whom? What did they say? Whom did counsel contact to understand the identity of the key custodians? What questions were asked about ESI? When? When did Defendants image phones and laptops?

There are also issues of intent that may arise under Rule 37(e)(2). Intent must be inferred from the totality of the circumstances, such as irresponsible behavior that

9

lacks any other explanation than intent to deprive a party of ESI. Here, the irresponsible behavior was organizational as well as individual. The finder of fact should have the benefit of the *organization's* information, and the *organization's* testimony, in order to test the *organization's* explanations for its failure to preserve ESI. Indeed, it is difficult to see how individual fact witnesses could answer these questions.

Despite months of inquiries about Defendants' deficiencies, every time there is a new filing, Plaintiff learns something new and troubling about Defendants' discovery conduct. This protracted and painstaking process of extracting information from Defendants has placed an unfair burden on Plaintiff, especially when there is sufficient basis to conduct targeted discovery.

### III. The Parties Conferred Before The Filing of This Motion

As detailed in the accompanying declaration of Kent A. Yalowitz, Defendants' contention that there was inadequate conferral is meritless. Plaintiff sent several email messages emphasizing the gravity of the issue (both on depositions and documents). As it became apparent that the parties were far apart, Plaintiff organized a conference call on "discovery issues." During that call, both the depositions and the documents were discussed specifically. Plaintiff asked if there was a path forward that Defendants could accept; and Defendants' lead counsel on the call, Mr. Kutrow, indicated that there was no compromise to be had.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion to compel and order Defendants to produce documents responsive to Plaintiff's discovery requests and TPUK to produce a Rule 30(b)(6) witness on discovery-related issues.

This the 19th day of September, 2024.

| | |
|---|---|
| */s/ Kent A. Yalowitz* | */s/ Lex M. Erwin* |
| Kent A. Yalowitz (admitted *pro hac vice*) | Lex M. Erwin |
| N.Y. State Bar No. 2188944 | N.C. State Bar No. 34619 |
| Carmela T. Romeo (admitted *pro hac vice*) | David A. Luzum |
| N.Y. State Bar No. 5058151 | N.C. State Bar No. 41398 |
| **ARNOLD & PORTER** | Kevin Y. Zhao |
|   **KAYE SCHOLER LLP** | N.C. State Bar No. 53680 |
| 250 W 55th Street | **MAYNARD NEXSEN PC** |
| New York, NY 10019 | 227 W. Trade Street, Suite 1550 |
| 212-836-8000 | Charlotte, NC 28202 |
| kent.yalowitz@arnoldporter.com | Telephone: (704) 339-0304 |
| carmela.romeo@arnoldporter.com | Facsimile: (704) 338-5377 |
| | lerwin@maynardnexsen.com |
| – and – | dluzum@maynardnexsen.com |
| | kzhao@maynardnexsen.com |
| Eliseo R. Puig (admitted *pro hac vice*) | |
| Colorado State Bar No. 49022 | *Counsel for Plaintiff* |
| **ARNOLD & PORTER** | |
|   **KAYE SCHOLER LLP** | |
| 1144 Fifteenth Street, Suite 3100 | |
| Denver, CO 80202 | |
| 303-863-1000 | |
| eliseo.puig@arnoldporter.com | |

# CERTIFICATION

Pursuant to the Court's June 18 2024 Standing Order regarding Use of Artificial Intelligence, the undersigned certifies that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line research sources WestLaw, Lexis, FastCase, and Bloomberg;
2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

                                         */s/ Lex M. Erwin*
                                         Lex M. Erwin