FS MEDICAL SUPPLIES, LLC,

      Plaintiff,

v.

TANNERGAP, INC. AND TANNER PHARMA
UK LIMITED,

      Defendants;

and

FS MEDICAL SUPPLIES, LLC,

      Plaintiff,

v.

TANNER PHARMA UK LIMITED; RAYMOND
FAIRBANKS BOURNE; MARY EVERETT
BOURNE,

      Defendants.

Case No. 3:21-cv-501-RJC-WCM
Case No. 3:23-cv-598-RJC-WCM

**TANNER DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER TO PRECLUDE DISCOVERY ON DISCOVERY**

TannerGAP, Inc. and Tanner Pharma UK Limited ("TPUK" and, together, the "Tanner

Defendants") have explained to FS Medical Supplies, LLC ("FSMS") in detail the steps that they

and their counsel took to preserve, collect, search, and produce responsive, non-privileged

documents. They have produced a full set of responsive, non-privileged ESI held by Steve Scalia,

including all WhatsApp and SMS text messages across the entire relevant time period. They have

also produced all of the responsive, non-privileged ESI collected from Jonathan Bracey, a citizen

of the United Kingdom. While FSMS would prefer that TPUK violate United Kingdom law by imaging Bracey's phone without authorization, TPUK cannot do so, nor is it necessary, since responsive material has been collected from his phone and produced. And the Tanner Defendants and Bourne Defendants have now produced all responsive, non-privileged ESI from Raymond "Banks" Bourne's Tanner system data, and all his WhatsApp messages. They have also produced SMS messages between Bourne and other custodians, including Scalia.[1] Since Bourne has said WhatsApp, not SMS texts, was his normal mode of non-email communication about TPUK's business, SMS messages that may have been sent and later deleted (if any) were in all likelihood nonresponsive, immaterial, or irrelevant to this dispute. Certainly, FSMS has provided no evidence that anything material is missing from the Defendants' extensive production of ESI.

Instead, FSMS has proffered only speculation that some information **might** exist that somehow remains outside the Tanner Defendants' productions to date. But, as discussed throughout the Tanner Defendants' briefing on FSMS's demands for discovery on discovery, speculation alone cannot justify the Rule 30(b)(6) deposition that FSMS seeks.

FSMS's requests have other fundamental flaws as well. First, most or all of the information that FSMS seeks from the Tanner Defendants falls within either the attorney-client privilege or the work-product protection. There is no good reason for the Court to permit FSMS to invade those protections and derail this litigation. Second, as a practical matter, requiring the Tanner Defendants to designate and prepare a Rule 30(b)(6) witness to discuss the personal practices of two individual custodians regarding their personal devices makes little sense when FSMS can (and will) depose each custodian in short order. Bracey's deposition is set for September 24, and Bourne's deposition is set for October 16.

---

[1] FSMS has also identified a handful of non-substantive emails as allegedly missing from Bourne's Bourne Partners email account. The Tanner Defendants discuss these in more detail below.

In short, granting FSMS's request would make little practical or legal sense. To avoid the discovery sideshow that FSMS wishes to conduct—for no ascertainable benefit—the Court should issue a protective order barring Topics 43 and 44 in FSMS's Rule 30(b)(6) deposition notice.

## ARGUMENT

### I.     FSMS's Assertion that the Tanner Defendants Have "Admitted" Certain Discovery Misconduct is False.

FSMS's lead argument against the protective order that the Tanner Defendants seek is that the Tanner Defendants have "admitted" a wide range of improper discovery conduct. Most, if not all, of these points have been addressed and debunked in previous briefing. In an effort to balance the desire to fully respond to each of these points and the desire not to needlessly reiterate arguments made elsewhere, the Tanner Defendants have summarized, but not fully set forth, their responses to each of the points in FSMS's bulleted list on pages two and three of its Opposition. *See* Dkt. 195, Opp. to Mot. to Compel Discovery on Discovery, at 2–3.[2]

### A.     FSMS miscalculates the date on which the Tanner Defendants could have reasonably anticipated litigation.

FSMS states that the Tanner Defendants' counsel did not issue a written litigation hold until 15 months after the Tanner Defendants first anticipated litigation. FSMS arrives at that 15-month figure by asserting that the Tanner Defendants should have reasonably anticipated litigation in October 2020. *See* Mot. to Compel Discovery on Discovery, Dkt. 182, at 8. As explained in the Tanner Defendants' opposition to FSMS's motion to compel discovery on discovery, however, that calculation is inaccurate. *See* Dkt. 195, at 8–9.

---

[2] FSMS also accuses the Tanner Defendants of injecting a prejudice requirement into the standard where none exists. *Id.* It is unclear to the Tanner Defendants what gave rise to that accusation. The Tanner Defendants' motion for protective order refers to "prejudice" once in a parenthetical citation and does not argue that prejudice plays a role in the Rule 26 inquiry. Mem. at 12. Their opposition to FSMS's motion to compel discovery on discovery discusses prejudice, but only because FSMS first argued that the Tanner Defendants' conduct "caused real harm" to FSMS. Dkt. 195 at 13.

The "duty to preserve relevant evidence," which can require a litigation hold, begins "once a party reasonably anticipates litigation." *Todd v. White*, No. 1:16-CV-77-FDW, 2017 WL 424892, at *3 (W.D.N.C. Jan. 31, 2017) (internal brackets omitted). The time when "litigation becomes reasonably foreseeable is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Webb v. Daymark Recovery Servs., Inc.*, No. 1:21CV424, 2022 WL 17832160, at *3 (M.D.N.C. July 26, 2022) (internal quotations omitted).

Here, as the Tanner Defendants have explained, they could not have reasonably anticipated litigation until FSMS sent its demand letter in February 2021. *See* Dkt. 195, at 8-9. Contrary to FSMS's position, throughout October 2020 TPUK continued working with FSMS to "**avoid** a dispute" and reach an amicable and mutually agreeable resolution. Scalia Rule 30(b)(6) Dep. at 285–86 (emphasis added). And FSMS kept communicating with, pursuing new business with, and accepting payments from the Tanner Defendants up through February 2021. Dkt. 195-1, Declaration of Anita Foss in Support of Opp. to Mot. to Compel Discovery on Discovery ("Foss Decl.") at Ex. D. No one would have expected litigation until the Tanner Defendants received FSMS's February 2021 demand letter. *See* Dkt. 195 at 8–9. And even if the Tanner Defendants' preservation duty arose then, FSMS can only speculate that the Tanner Defendants failed to preserve "relevant evidence." *Todd*, 2017 WL 424892, at *3; Dkt. 195 at 9–10.

### B.     Bourne did not intentionally delete any data.

FSMS next implies that Bourne intentionally set his iPhone to automatically delete SMS messages. Bourne himself has refuted that allegation. *See* Dkt. 190, Bournes' Opp. to Mot. to Compel Discovery on Discovery at 4–5; Dkt. 192, Declaration of Raymond Fairbanks Bourne in Support of Opp. to Mot. to Compel Discovery on Discovery ("Bourne Decl.") at ¶ 4. While, unbeknownst to Bourne, his iPhone was set to keep SMS text messages for 30 days, causing those

older than 30 days to be deleted, Dkt. 192, Bourne Decl. at ¶¶ 4–5, Bourne immediately remedied the issue upon discovering it and his counsel immediately began investigating whether the deleted messages could be recovered, Dkt. 190 at 5. That diligent investigation uncovered "a backup of text messaging data from Mr. Bourne's iPad containing messages from November 25, 2022 to present." *Id.* at 6. SMS messages from before that date remain unrecoverable, despite counsel's best efforts, because Bourne's iPad was destroyed when he inadvertently "left it on the roof of his car, drove away without retrieving it, and it shattered, rendering it unusable." *Id.* Still, all Bourne's WhatsApp messages have been produced. And SMS text messages between Bourne and Scalia have been produced for the entire discovery period beginning in June 2020, because they were retained on Scalia's phone. Thus, far from intentionally concealing evidence, Bourne and his counsel have endeavored to recover and produce all available responsive messages on any device or backup storage platform.

C.     **Any data that Bourne inadvertently deleted is overwhelmingly unlikely to be "of consequence" to this dispute.**

FSMS claims that "[n]one of Mr. Bourne's SMS text messages are recoverable from the key period of time in 2020 when Tanner was negotiating and breaching the contract." Dkt. 194, FSMS Opp. to Mot. for Protective Order at 2. While Bourne's 2020 SMS messages are unavailable **from Bourne**, that does not end the inquiry. The 30-day autodelete function had no effect on Bourne's WhatsApp messages, the primary means of non-email communication between Bourne and Bracey, among others. Dkt. 192, Bourne Decl. at ¶ 8. All of Bourne's WhatsApp messages have now been "collected, reviewed, and produced without issue." Dkt. 190, Bournes' Opp. to Mot. to Compel Discovery on Discovery at 8. And FSMS's use of Bourne's SMS messages as exhibits to its brief shows that those messages are available from the other custodians with whom Bourne texted.

5

Moreover, the duty to preserve documents extends only to "relevant documents," meaning "discoverable information that the disclosing party may use to support its claims or defenses." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, No. 3:09CV58, 2011 WL 1597528, at *11 (E.D. Va. Apr. 27, 2011). As explained in the Tanner Defendants' opposition to FSMS's motion to compel discovery on discovery, until August 12, 2022, when FSMS amended its complaint to assert a UDTPA claim against Bourne and Steve Scalia individually, this dispute was purely a breach of contract case between corporate and LLC entities. *See* Dkt. 1, Complaint. Bourne was not involved with the negotiation of the relevant contracts with FSMS or the fulfillment of TPUK's contracts with the United Kingdom government. Thus, Bourne's initial preservation duty was limited to documents that could support FSMS's contract claim or the Tanner Defendants' defenses to that claim. Bourne had little if any unique data to preserve. Dkt. 195, Opp. to Mot. to Compel Discovery on Discovery, at 11–12.

While FSMS eventually asserted a UDTPA claim against Bourne in the mid-August 2022 Amended Complaint, at which point Bourne anticipated the need to defend a claim against him as an individual, no events "of consequence" to this dispute took place between August 2022 and November 2022 (after which all of Bourne's SMS messages are available). *See LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 162 (N.D. Ill. 2023) (discovery on discovery is appropriate only in the event of a discovery failure that is "of consequence to the fact-finding process, such that further inquiry is warranted"). There is no contrary evidence—just FSMS's bare speculation.

### D. The Bourne Defendants' counsel have already explained the alleged email gaps for Bourne's data.

FSMS abruptly raised its concerns about alleged gaps in Bourne's email production in its motion to compel—less than four hours after its Rule 7.1 Conferral email, Dkt. 193-13—yet now faults defense counsel for failing to explain the alleged "gaps" in those collections earlier. Once

able to evaluate FSMS's concerns, the Bournes' counsel provided detailed responses in the Bourne Defendants' response to FSMS's motion to compel. *See* Dkt. 190, Bournes' Opp. to Mot. to Compel Discovery on Discovery at 9–11; Dkt. 192, Bourne Decl. at ¶¶ 12–17; Dkt. 193, Declaration of Emma Perry in Support of Opp. to Motion to Compel Discovery on Discovery ("Perry Decl.") at ¶¶ 14–20. Their investigation to date has determined that in some cases, the "gaps" result from Bourne's practice of moving emails from his Bourne Partners email account to his Tanner Pharma email accounts (and those are not "gaps" since the data is available to FSMS through the Tanner Defendants' productions). *See* Dkt. 193, Perry Decl. at ¶¶ 16–17. In other instances, the only "missing" portions of emails are non-substantive replies. *See id.* ¶ 20.

### E.    FSMS once again misunderstands the significance of certifying substantial completion.

As it did in its motion to compel discovery on discovery, FSMS insists that the Tanner Defendants' failure to produce 100% of all responsive, non-privileged communications by the parties' negotiated substantial completion date is somehow evidence of discovery misconduct. Not only is the opposite true, but FSMS's argument betrays a misunderstanding (whether deliberate or otherwise) of the purpose of certifying substantial production completion.

FSMS ignores that, by the parties' substantial completion deadline, the Tanner Defendants produced 101,095 documents, or 97% of their overall production. Dkt. 195-1, Foss Decl. at ¶ 12. That effort more than satisfied the Tanner Defendants' obligation to **substantially**—not **entirely**—complete its overall production. Indeed, both sides have continued production efforts after the substantial completion deadline.[3] *Id.* at ¶¶ 12–13. The Tanner Defendants' continuing productions reflect their efforts to meet and confer with FSMS in good faith to remedy any perceived discovery

---

[3] FSMS has also continued to serve new document requests following the substantial completion date (as recently as September 17), reflecting the fact that all parties expected document discovery to continue after that date.

issues as they arise. One such area that Bourne and the Tanner Defendants investigated in good faith upon inquiry from FSMS was Bourne's pre-November 2022 SMS messages. *See* Dkt. 193, Perry Decl. at ¶¶ 12–13.

### F. Bracey has declined to surrender personal, sensitive data from his personal mobile device, as is his right under United Kingdom law.

The Tanner Defendants have explained that United Kingdom law forbids TPUK from obtaining Bracey's mobile data against his will to produce it to FSMS. *See generally, e.g.*, Dkt. 176, Opp. to Mot. to Compel Production of ESI from Jonathan Bracey's Mobile Phone ("Opp. to Bracey Mot."). And, the same would be true under U.S. law. *See, e.g., Halabu Holdings v. Old Nat'l Bancorp*, No. 20-10427, 2020 WL 12676263, *2 (E.D. Mich. June 9, 2020). Yet FSMS refuses to accept the realities of United States and United Kingdom data-privacy, human-rights, and employment law and persists in asking the Court to order TPUK to violate those laws.

The Tanner Defendants have set out in detail that the relief FSMS seeks—the forcible and unauthorized collection of personal, sensitive information from Bracey's phone—implicates Bracey's protected interests in "private life," "family life," and "correspondence" under the United Kingdom's Human Rights Act 1998 ("HRA 1998"). *See id.* at 7–8. There are no "clear justifications" under HRA 1998 that would justify infringing those rights. *Id.* Similarly, the United Kingdom's General Data Protection Regulation ("UK GDPR") and Data Protection Act 2018 ("DPA") protect from unauthorized disclosure personal data related to Bracey's minor son. None of the recognized exceptions to that rule apply here. *See id.* at 9–10. And due to those legal impediments, any action by TPUK compelling Bracey to subject his phone to full ESI imaging without Bracey's consent would violate United Kingdom employment law. *Id.* at 11–12.

Similarly, in the United States, the Stored Communications Act (the "SCA") provides a cause of action against anyone who (1) intentionally accesses without authorization a facility

through which an electronic communication service is provided, or intentionally exceeds an authorization to access that facility; and (2) thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system. *Hately v. Torrenzano*, No. 1116CV01143GBLMSN, 2017 WL 2274326, at *6 (E.D. Va. May 23, 2017). Accessing Bracey's personal data through a full ESI search without its authorization could expose TPUK to SCA liability. *See* Dkt. 176 at 12–14; *see also Hoofnagle v. Smyth-Wythe Airport Commc'ns*, No. 1:15CV00008, 2016 WL 3014702, at *1–3 (W.D. Va. May 24, 2016) (after an employee sued his employer for violating the SCA for accessing his personal e-mail account, the court found sufficient facts for the SCA claim to proceed to a jury).

FSMS has no answer for this, other than to repeat over and over that the Tanner Defendants have not acted in the manner that FSMS desires.

### G. The Tanner Defendants' method of collecting data from Bracey's phone was reasonable and appropriate under the circumstances.

FSMS's next accusation is a variant of the same theme. It argues that the attorney-supervised collection and production of Bracey's ESI was somehow improper. To the contrary, as the Tanner Defendants have explained, attorney-guided collection of to-be-produced information is not just permissible but **encouraged**. *See* Dkt. 176, Opp. to Bracey Mot. at 17–18 (citing cases); *see also M.G. v. New York City Dep't of Educ.*, No. 13CV4639SHSRWL, 2024 WL 1657433, at *4 (S.D.N.Y. Apr. 17, 2024) ("Mere speculation as to the existence of additional documents is insufficient to warrant an order to compel") (quoting *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 436 (S.D.N.Y. July 1, 2011)).

FSMS also appears to question the way the Tanner Defendants' counsel staffed its review of Bracey's data. Opp. at 4 n.1 (calling McGuireWoods attorney William Boddy's involvement in the process "unorthodox"). If FSMS's concern is that Boddy was too senior to conduct the

9

document review process, that concern is both inaccurate and irrelevant. First, McGuireWoods associate Alice O'Donovan also participated in the search process. Dkt. 176-4, Declaration of Alice O'Donovan in Support of Opp. to Mot. to Compel Production of ESI from Jonathan Bracey's Mobile Phone ("O'Donovan Decl.") at ¶¶ 8–16. Second, it is unclear how Boddy's involvement in this process in any way justifies the discovery on discovery that FSMS demands.[4] McGuireWoods' decision to have a particular lawyer participate in the document collection and review process is outside the scope of even the Rule 30(b)(6) topics at issue.

## H. Neither Scalia's nor Bracey's ESI contain "unexplained gaps."

Contrary to FSMS's assertion, there are no "unexplained gaps" in the production of either Scalia's or Bracey's ESI. The Tanner Defendants have produced a complete set of responsive, non-privileged emails, WhatsApp messages, and SMS messages from Scalia's ESI. Dkt. 195-1, Foss Decl. at ¶ 7. And FSMS can only speculate that material SMS texts with unique information from Bracey remain unproduced. *LKQ*, 345 F.R.D. at 162; *Culliver v. BP Expl. & Prod., Inc.*, No. 3:21CV4942- MCR-HTC, 2022 WL 19568966, at *4 (N.D. Fla. Nov. 29, 2022). Speculation, however, cannot justify violating Bracey's privacy rights by obtaining more of his personal information against his will. *See generally* Dkt. 176, Opp. to Bracey Mot.

## II. "Mere Speculation" Does Not Justify Discovery on Discovery.

As even FSMS acknowledges, discovery on discovery is appropriate only when "there is 'a material failure of a party's obligation to conduct a reasonable inquiry in the discovery process.'" Opp. at 5 (quoting *LKQ*, 345 F.R.D. at 162–63). To satisfy that standard, FSMS must show "**specific and tangible evidence**" that evidence "of consequence" to the litigation is missing.

---

[4] If FSMS means to suggest that Boddy or O'Donovan acted improperly, FSMS has provided no basis for that accusation. Boddy and O'Donovan have ethical obligations as United Kingdom attorneys, and were working with their North Carolina colleagues. There is no reason to believe that they have strayed from their ethical obligations. Dkt. 176-4, O'Donovan Decl. at ¶ 17.

*LKQ*, 354 F.R.D. at 162, 63.  Speculation and "hypothetical inferences" about evidence that may be missing are insufficient.  *See* Dkt. 195, Opp. to Mot. to Compel Discovery on Discovery at 6–7 (citing cases).

FSMS's request for discovery on discovery rests entirely on speculation and conjecture. Rather than identify any document or genre of documents "of consequence" that it believes are missing, it simply (and wrongly) concludes that a Rule 30(b)(6) deposition is necessary because (1) a hypothetical handful of documents are unavailable or (2) others were produced only after FSMS identified and asked the Tanner Defendants to produce them.  *See* Dkt. 195, Opp. to Mot. to Compel Discovery on Discovery at 5–6 (refuting FSMS's allegations that certain documents are missing from the Tanner Defendants' productions).  Without real evidence showing that material information has not been produced, the Court should not grant FSMS's extraordinary request.  *Culliver*, 2022 WL 19568966, at *4; *Sidman v. Concord Arena Parking, LLC*, No. 15-CV-7426-CBA-SJB, 2021 WL 1940255, at *3 (E.D.N.Y. May 11, 2021) (denying motion to compel discovery on discovery when movants failed "to offer anything more than hypothetical inferences in support" of their request).

FSMS asks the Court to disregard the cases that the Tanner Defendants have cited because they are "cases where all the court had was 'mere speculation.'"  Opp. at 5.  That is precisely the point: when based on speculation alone, requests for discovery on discovery should be denied.

FSMS's efforts to distance itself from that reality and the Tanner Defendants' cases are unavailing.  FSMS first cherry-picks language from *Guillory v. Carrington Mortg. Servs., LLC*, No. CV 22-192-JWD-SDJ, 2023 WL 4688133 (M.D. La. July 21, 2023), and *Freedman v. Weatherford Int'l Ltd.,* No. 12 CIV. 2121 LAK JCF, 2014 WL 4547039 (S.D.N.Y. Sept. 12, 2014), while ignoring their reasoning and holdings.  In the former, the court held that parties requesting discovery on discovery must "sho[w] through the documents that have been produced . . . that

other documents may exist or did exist and have been destroyed or must 'point to the existence of additional responsive material.'" *Guillory*, 2023 WL 4688133, at *5 (the mere "fact that a party may disbelieve . . . a response . . . is not a recognized ground for compelling discovery" on discovery). In any massive production, some documents are bound to "fall[] through the cracks." *Freedman*, 2014 WL 4547039, at *3. But even so, the court refused to allow discovery on discovery because the discovery mechanism that the moving party requested was unlikely to "remedy the alleged discovery defects." *Id.* And here, where FSMS points to documents "missing" from Bourne's production, it has the exact document it says is missing from the ESI of Scalia, Bracey, or Mary Bourne. And deposing a corporate representative about the Tanner Defendants' discovery practices will provide no value beyond what is already available to FSMS in the Defendants' previous explanations and upcoming depositions of Bourne and Bracey.

Further, contrary to FSMS's characterization of *Black v. W. Virginia State Police*, that court refused to allow discovery on discovery because doing so would not assist the movant in "locating relevant information or further the claims or defenses in any meaningful way." No. 3:22-CV-00096, 2023 WL 4834948, at *7 (S.D.W. Va. July 27, 2023). The court also held that the nonmoving party could resolve the movant's concerns "in a more convenient, less expensive, and less burdensome way" by providing a signed affidavit regarding the discovery practices at issue. *Id.* The Defendants have now done just that, **several times**.[5] *See, e.g.*, Dkt. 176-4, O'Donovan Decl. at ¶¶ 5–16; Dkt. 195-1, Foss Decl. at ¶¶ 5–11; Dkt. 193, Perry Decl. at ¶¶ 5–20.

---

[5] FSMS also cites *F.F.T., LLC v. Sexton*, No. 119CV03027RLYMJD, 2020 WL 3258623, at *3 (S.D. Ind. June 15, 2020), for a similar proposition. But that court held that the nonmoving party satisfied its discovery obligations by submitting an affidavit setting out the reasonable discovery efforts that it undertook. *Sexton*, 2020 WL 3258623, at *3 ("If Defendants' brief unequivocally stated that they had made a thorough search of all reasonably likely sources of responsive documents within their possession, custody, or control and had either produced or included on a privilege log all responsive documents they located, Plaintiff's motion would be denied. The Court can do no more than order Defendants to search for and produce non-privileged responsive documents; if Defendants have already done so, there is nothing more for the Court to do.").

FSMS also tries to distinguish several of the Tanner Defendants' cases because those decisions included "no factual basis that defendant was withholding or deleted any" material evidence. Opp. at 6 (quoting *Powell v. WestRock CP, LLC*, No. 2:23-cv-2085, 2024 WL 448785, at *3 (W.D. Ark. Feb. 6, 2024)).[6] But that argument proves the Tanner Defendants' point. There is no evidence that the Tanner Defendants have destroyed or failed to preserve any material evidence, only speculation. To the contrary, as explained above, from the time the Tanner Defendants reasonably anticipated breach-of-contract litigation, all their enterprise ESI was preserved. Dkt. 195-2, Declaration of Katie Smoot in Support of Opp. to Mot. to Compel Discovery on Discovery ("Smoot Decl.") at ¶ 8. They later took further reasonable steps to preserve additional ESI related to that claim. The Defendants have now made comprehensive productions from Tanner Defendants' enterprise ESI, from Scalia's WhatsApp and SMS texts messages (including those with Bourne and Bracey), and from the data on Bracey's and Bourne's devices that the Defendants were able to collect. The Tanner Defendants' extensive document collection efforts, good-faith discovery conferences, and voluminous productions are hardly evidence of discovery mischief.

FSMS can do no more than point to the inevitable handful of situations in the Tanner Defendants' extensive production where a text message was kept by one person but not the other, then speculate that more must be missing. This is not sufficient evidence to justify requiring the Tanner Defendants to prepare a corporate witness for a separate deposition on topics 43 and 44. *LKQ*, 345 F.R.D. at 168 ("[M]ere speculation about missing evidence is insufficient to allow discovery on discovery, which is all that LKQ has provided the Court. Accordingly, LKQ has

---

[6] FSMS makes the same argument about *Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL 697663, at *17, 20–22 (D. Md. Feb. 21, 2017); *Salz-gitter Mannesmann Int'l (USA) Inc. v. Sun Steel Co. LLC*, No. 3:22-cv-00030, 2022 WL 3041134, at *2–3 (S.D. Tex. Aug. 2, 2022); and *Williams v. NYC Bd. of Elections*, No. 23-cv-5460, 2024 WL 3567395, at *4 (S.D.N.Y. July 29, 2024).

failed to satisfy its burden, and the Court denies LKQ's motion to compel a Rule 30(b)(6) designee to testify . . .").  That is especially true when Bourne and Bracey will both be deposed, likely about these very topics, in the next few weeks.

### III.    FSMS's Speculation Cannot Overcome Attorney-Client Privilege and Work-Product Protection.

The Tanner Defendants (and Bourne, separately) have all argued that the information FSMS seeks through its requested Rule 30(b)(6) deposition is protected by the attorney-client privilege and work product protection.  Indeed, Rule 26 permits discovery of only "any **nonprivileged** matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added).  The attorney-client privilege "affords confidential communications between lawyer and client complete protection from disclosure."  *Williams v. AT&T Mobility*, No. 5:19-CV-00475-BO, 2022 WL 2821922, at *4 (E.D.N.C. July 19, 2022).  And the work product protection shields from discovery "documents prepared in anticipation of litigation . . . by or for another party or its representative."  *Id.*  Privileged communications and protected work product both fall outside the scope of discoverable information.  *Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL 697663, at *2 (D. Md. Feb. 21, 2017).

The document preservation, collection, search, and production process that the Tanner Defendants followed here was managed by their attorneys.  *See, e.g.*, Dkt. 176-4, O'Donovan Decl. at ¶¶ 5–16; Dkt. 195-1, Foss Decl. at ¶¶ 5–11; Dkt. 193, Perry Decl. at ¶¶ 5–20.  Thus, any communications between the Tanner Defendants and their attorneys regarding this process, including the litigation hold drafted by the Tanner Defendants' attorneys, implicates the privilege.  *Shenwick v. Twitter, Inc*., No. 16-CV-05314, 2018 WL 833085, at *4 (N.D. Cal. Feb. 7, 2018); *Grayson Consulting, Inc. v. Cathcart*, No. 2:07-CV-00593-DCN, 2013 WL 3946203, at *5 (D.S.C. July 31, 2013) (noting that answers to questions during a deposition about the contents of

communications with attorneys would "undoubtedly be privileged"). Those privileged communications should thus be beyond FSMS's grasp. *Fish*, 2017 WL 697663, at *16; *Bombardier Recreational Prods., Inc. v. Arctic Cat, Inc.*, No. 12-cv-2706, 2014 WL 10714011, at *15 (D. Minn. Dec. 5, 2014); *In re Exxon Corp.*, 208 S.W.3d 70, 75 (Tex. Ct. App. 2006).

Similarly, to the extent that FSMS seeks to depose the corporate representative about documentation concerning the document preservation, collection, search, and production process, those documents are protected because the "primary motivating purpose" behind their creation was to "assist in the pending or impending litigation." *Williams*, 2022 WL 2821922, at *4; *Fed. Deposit Ins. Corp. v. Johnson*, No. 12-cv-209, 2013 WL 1195698, at *3 (D. Nev. Mar. 22, 2013) (noting that all "searches, filters, document review, coding, and tagging of documents is the work product of the attorney and firm performing the work in the database and is not available to any other party"). Even if those documents lack any attorney's mental impressions, they are discoverable only if FSMS can show a "substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Procs #5 Empaneled Jan. 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005).

Neither showing is possible here. First, there is no substantial need for any further inquiry into this topic because the Tanner Defendants have produced all material, responsive, and discoverable information identified during their reasonable and diligent searches. The Tanner Defendants have also explained their procedures in depth, within the limits of privilege: FSMS negotiated and knows the agreed-upon search terms, TPUK has explained in detail the method used to extract text messages from Bracey's phone, and Bourne's counsel has described the preservation and collection of data from Bourne's devices. *See, e.g.*, Dkt. 176-4, O'Donovan Decl. at ¶¶ 5–16; Dkt. 193, Perry Decl. at ¶¶ 5–20.

Second, FSMS can obtain non-privileged fact testimony simply by asking Bourne and

Bracey direct fact questions at their upcoming depositions (as discussed further below). Although, because of the extensive information already provided to FSMS, it appears the only additional information FSMS may try to seek from Bourne and Bracey pertains to their communications with counsel, which is clearly privileged and not discoverable. FSMS could also begin meaningfully engaging in the meet-and-confer process about its discovery complaints. Indeed, each of the recent discovery disputes that FSMS has brought to the Court's attention could have been resolved (at least in large part) by giving the Tanner Defendants a reasonable amount of time to cure any perceived production shortcomings.

Neither of FSMS's two counterpoints have merit. FSMS first argues that "where a party defends alleged misconduct by asserting that it relied on the advice of its counsel, the assertion waives the attorney-client privilege." Opp. at 10. This contention reflects a fundamental misunderstanding of the Tanner Defendants' position. The Tanner Defendants are not admitting discovery misconduct and relying on the advice of their counsel as a defense. They reject the premise that any discovery misconduct took place, and their attorney-guided ESI collection and production process complied with the well-established interpretations of the Federal Rules of Civil Procedure. *See* Dkt. 176, Opp. to Bracey Mot. at 17–19. The Tanner Defendants' motion seeks to protect privileged communications and does not waive any privilege.

Next, FSMS cites several cases that it claims support its argument. As the Tanner Defendants have previously noted, several of these decisions were issued before the Supreme Court "amended the Federal Rules of Civil Procedure" in 2015 to "put an end to" unfettered discovery on discovery and "impose[] a requirement of proportionality on discovery requests." *Tucker v. Momentive Performance Materials USA, Inc.*, No. 2:13-CV-04480, 2016 WL 8252929, at *2–3 (S.D.W. Va. Nov. 23, 2016). Moreover, many of these pre-2015 decisions bear little resemblance to this case's facts. *See, e.g.*, *Keir v. Unumprovident Corp.*, No. 02 CIV. 8781 (DLC),

2003 WL 21997747, at *12 (S.D.N.Y. Aug. 22, 2003) (defendants violated the court's order to preserve six days' worth of emails, when they overwrote the back-up files containing the emails subject to preservation); *see also Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 429, 435 (S.D.N.Y. 2004) (ordering sanctions after finding (1) defendant "personnel unquestionably deleted relevant e-mails" after the litigation hold period began, (2) counsel never communicated the litigation hold instructions to its clients, and (3) counsel "failed to protect relevant backup tapes").

Of the post-2015 cases that FSMS cites, many are either meaningfully distinguishable or helpful to the Tanner Defendants. In *Whitesell Corp. v. Electrolux Home Prod., Inc.*, for instance, the court ordered a Rule 30(b)(6) deposition only because the plaintiff did not have access to almost two years of emails due to a discovery stay. No. CV 103-050, 2016 WL 1317673, at *3 (S.D. Ga. Mar. 31, 2016). Then, in a subsequent motion, the plaintiff requested all documents related to data collection and production, including privileged documents. *Id.* The *Whitesell* court held that plaintiff's request to compel discovery documentation was "overly broad, unduly burdensome" and unrelated "to the issue at the forefront" of the case, especially because plaintiff "received all [the information] it is entitled to" after taking a Rule 30(b)(6) deposition. *Id.* In short, the *Whitesell* court determined it "will not compel the production of substantive, privileged memoranda regarding data collection and production." *Id.* The Court should reach the same result here.

Meanwhile, in *DR Distributors, LLC v. 21 Century Smoking, Inc.*, the court issued discovery sanctions after conducting an evidentiary hearing and finding "colossal problem[s]" with the attorneys' handling of document collection and preservation. 513 F. Supp. 3d 839, 927 (N.D. Ill. 2021). In *DR Distributors*, the attorneys conducted **no** "investigation to determine the basis, scope, and nature of the fundamental breakdown in the identification, preservation, collection, and production of ESI or even to simply go back and perform, in late 2018, a reasonable custodian interview." *Id.* That is hardly the situation here.

In sum, since FSMS has not shown that it can overcome the attorney-client privilege or the work product protection to depose a corporate representative about the Tanner Defendants' document preservation, collection, search, and production process, the Court should put in place a protective order shielding that information from discovery.

## IV.    A Rule 30(b)(6) deposition on Personal Devices is Unneeded and Inappropriate.

At bottom, FSMS wants more information about Bourne and Bracey's individual practices and conduct during the discovery process.  Since both individuals are scheduled to be deposed very soon, FSMS can inquire into those practices during their testimony.  There is no need for the Tanner Defendants to prepare a corporate representative to testify about matters within the personal knowledge of currently scheduled deponents.

In addition, the Tanner Defendants do not control Bracey's personal mobile device.  *See* Dkt. 176, Opp. to Bracey Mot. at 12–13; *Halabu Holdings,* 2020 WL 12676263, at *2 ("[r]equiring an employer to produce an employee's [personal] phone for inspection or retrieval of documents, without further indicia of control, could well jeopardize the employee's privacy" and "would have serious potential consequences for an employee's privacy rights," and finding no case to support compelling such production).  And Bourne owns and uses his personal mobile devices independently of the Tanner Defendants' enterprise systems.

Requiring a corporate representative—rather than Bracey and Bourne themselves—to prepare to testify about **their** use of **their** devices would be pointless and artificial.  FSMS posits that because "Mr. Bracey is alive and well and working for Tanner," TPUK should have no trouble preparing a Rule 30(b)(6) designee on Bracey's knowledge, but that misses the point.  Opp. at 7. FSMS's concern, boiled down, is how an individual managed his personal mobile device.  That area can be far more efficiently explored at Bracey's individual deposition, which is next week. Under Rule 26(c)(1)(C) this Court should limit FSMS to questioning Bracey and Bourne.

18

FSMS then says the Tanner Defendants should already know everything about Bourne and Bracey's practices because its counsel were obligated to "make reasonable inquiry into relevant ESI sources and retention practices." *Id.* at 7–8. The only support it cites, however, is *DR Distributors*, which states uncontroversially that counsel must familiarize themselves with clients' ESI storage systems and conduct custodian interviews. 513 F. Supp. 3d at 927. The Defendants' counsel did so here. *DR Distributors* does not hold that litigants must educate Rule 30(b)(6) designees on the individual preservation, collection, search, and production practices of each custodian when those same custodians are available for individual depositions. That would make even less sense where, as here, both custodian/deponents have already provided declarations about those preservation, collection, and production procedures. *See* Dkt. 176-2, Declaration of Jonathan Bracey in Support of Opp. to Bracey Mot. at ¶¶ 4–6, 16; Dkt. 192, Bourne Decl. at ¶¶ 3–20. So requiring the Tanner Defendants to designate and prepare a Rule 30(b)(6) corporate designee under these circumstances and before FSMS has deposed Bracey and Bourne would make little sense.

FSMS's more general support for the notion that a Rule 30(b)(6) deposition is necessary also misses the mark (and is largely pre-2015 rules changes). In *Korbel v. Extendicare Health Services., Inc.*, the court granted the request for Rule 30(b)(6) testimony only after noting that the responding party had conducted no searches through a custodian's email file, even when a discovery request required the search. No. 13-CV-2640 (SRN/SER), 2015 WL 13651194, at *16 (D. Minn. Jan. 22, 2015). Those facts are a far cry from this case, in which the Tanner Defendants' counsel have searched each custodian's emails and text messages, explained those searches in excruciating detail, produced 400,000 pages of documents, and cooperated to the extent reasonably possible with each of FSMS's follow-up discovery requests.

The *Beaudry* court allowed a Rule 30(b)(6) deposition when there were "no other means to obtain the information, the information sought [was] relevant and non-privileged, and the

information is crucial to the preparation of the case."  No. 3-07-0842, 2013 WL 12355782 (M.D. Tenn. Mar. 31, 2013).  None of those factors hold true here.  FSMS can get the non-privileged information it seeks by deposing Bourne and Bracey individually, and the privileged or protected work product information has nothing to do with the merits of the parties' claims.  Finally, in *Martley v. City of Basehor, Kansas*, the court based its discovery-on-discovery order on evidence—not hypothetical inferences—of "deletion of information from City servers, and the destruction of the computer used by Plaintiff while he worked for the City."  No. 19-2138-DDC-GEB, 2021 WL 4134307, at *3 (D. Kan. Sept. 10, 2021).  FSMS has cited no authority holding that courts should order invasive discovery on discovery when, as in this case, one party's speculation about intentional evidentiary spoliation has been refuted.

To sum up, FSMS has offered no persuasive reason why a burdensome, invasive Rule 30(b)(6) deposition is necessary when it will depose the relevant individuals themselves in the next few weeks.

## CONCLUSION

For these reasons, the Tanner Defendants ask the Court to grant the Tanner Defendants' Motion for Protective Order to Preclude Discovery on Discovery, specifically Rule 30(b)(6) Deposition Topics 43 and 44, under Rule 26(c)(1)(D) and further should deny FSMS's competing Motion to Compel Discovery on Discovery.

This the 19th day of September 2024.

McGuireWoods LLP

By:     /s/ Bradley R. Kutrow
        Bradley R. Kutrow
        N.C. State Bar No. 13851
        Brian A. Kahn
        N.C. State Bar No. 29291
        Anita Foss
        N.C. State Bar No. 47743
        Jessica L. O'Brien
        N.C. State Bar No. 56679
        Kelly A. Warlich
        N.C. State Bar No. 51053
        201 North Tryon Street, Suite 3000
        Charlotte, NC 28202-2146
        Telephone: (704) 343-2049
        Facsimile: (704) 343-2300
        bkutrow@mcguirewoods.com
        bkahn@mcguirewoods.com
        afoss@mcguirewoods.com
        jobrien@mcguirewoods.com
        kwarlich@mcguirewoods.com

        Mark E. Anderson
        N.C. State Bar No. 15764
        501 Fayetteville Street, Suite 500
        Raleigh, NC 27601
        Telephone: (919) 755 -6678
        Facsimile: (919) 755-6699
        manderson@mcguirewoods.com

        Anne Doherty
        N.C. State Bar No. 55494
        Gateway Plaza
        800 East Canal Street
        Richmond, VA 23219
        Telephone: (804) 775-7633
        Facsimile: (804) 775-1061
        adoherty@mcguirewoods.com

        *Attorneys for Defendants TannerGAP, Inc.*
        *and Tanner Pharma UK Limited*

<u>**CERTIFICATION**</u>

Pursuant to this Court's June 18, 2024 Order regarding the use of artificial intelligence, the undersigned states that:

1.      No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

2.      Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 19th day of September 2024.

*/s/ Bradley R. Kutrow*
Bradley R. Kutrow
N.C. State Bar No. 13851
MCGUIREWOODS LLP

*Counsel for Defendants TannerGAP, Inc.*
*and Tanner Pharma UK, Ltd.*