UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| FS MEDICAL SUPPLIES, LLC,<br><br>    Plaintiff,<br>v.<br><br>TANNERGAP, INC. *et al.*,<br><br>    Defendants. | Civil Action No.<br>3:21-CV-501-RJC-WCM |

## NOTICE OF ADDITIONAL INFORMATION IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF ESI FROM JONATHAN BRACEY'S MOBILE PHONE

Plaintiff, FS Medical Supplies, LLC ("FSMS"), respectfully submits this Notice of Additional Information in further support of FSMS's motion to compel production of ESI from Jonathan Bracey's mobile phone (ECF 174).

1. One of Defendants' reasons for refusing to produce ESI from executive Jonathan Bracey's cell phone was purported confidentiality concerns lodged by Mr. Bracey. The September 24, 2024 deposition of Mr. Bracey showed that Defendant TPUK has overstated Mr. Bracey's confidentiality concerns.

2. During the deposition, counsel questioned Mr. Bracey about his willingness to submit his phone for forensic imaging. Mr. Bracey testified that he does not want his non-work data saved on a computer. But providing his work-related data was not off limits, as shown by his off-the-cuff offer to allow the attorney to review the data:

1

Q. If your counsel could ensure that no materials on your phone that are unrelated to your work at Tanner are provided to us in discovery, is that something that you would object to?

A. If everything was just related to the emails and WhatsApp and text messages on -- between me and Tanner, then that's fine. You can look at them now, if you want.

Q. So you would not have any problem if your counsel electronically collected text messages and emails from your device, provided that they committed not to turn over to us any records that they'd collected that are unrelated to your work at Tanner?

A. Yeah.

Q. Okay. If it were possible to, at the point of collection, collect only the emails and text messages related to your work at Tanner, is that something that you would be okay with?

A. Yes.

Q. And if, in order to do that, to make the distinction between emails and text messages that are related to your work at Tanner and those that are not, your device had to be hooked up to a computer to assist that process, is that something that you would object to?

A. Well, it depends what the computer was going to do with everything else that was on my phone. If it stays on my phone and doesn't go anywhere, then that's fine. But if everything from my phone ends up on a computer, then that's not fine.

See Excerpt of J. Bracey Deposition Transcript (Ex. A).

3. For the reasons set forth in Plaintiff's motion to compel, Mr. Bracey's purported privacy interests do not relieve Defendants of their obligation to collect and produce responsive, company-owned data on the mobile phone of a senior executive who played a central role in the events that are the subject of this lawsuit. Nor do those interests absolve Defendants' undenied and undeniable violations of the parties' ESI protocol, which have forced Plaintiff's counsel to spend dozens of hours and many thousands of dollars trying to bring Defendants into compliance with their obligations.

4. Notwithstanding the pending motion and Defendants' behavior, Plaintiff was committed to finding a solution that might accommodate Mr. Bracey's purported concerns and spare the Court from resolving this dispute. To that end, after Mr. Bracey's deposition, Plaintiff asked a digital forensics firm whether work-related messages could be collected from Mr. Bracey's phone using a procedure that ensured "everything from [his] phone" did not "end up" on a computer, in accordance with Mr. Bracey's wishes. As set forth in the attached declaration, such a procedure is possible. See Declaration of T. Kiefer (Ex. B). Using this specially tailored process, the mobile phone is connected to a computer in the presence of the custodian and a

complete image of the phone is written to an encrypted external hard drive. *Id.* ¶ 7. While the extraction is housed on the encrypted external drive, a computerized search is run to isolate communications to or from a defined list of persons (*i.e.*, certain work colleagues) from a defined period of time. *Id.* The targeted data (and *only* the targeted data) indentified by this search is then written to a second encrypted external drive. *Id.* ¶ 8. Both drives are unplugged from the computer; the first containing the full image of the phone is permanently deleted (or provided to the custodian at his election) and the second drive containing only the targeted data is retained by the technician for processing. *Id.* ¶ 9.

5. On October 4, 2024, Plaintiff shared Mr. Kiefer's declaration with Defendants and asked that they reconsider their refusal to properly collect and search Mr. Bracey's ESI in light of an available procedure that would accommodate Mr. Bracey's concerns. *See* 10.4.2024 Letter from E. Puig to Defendants' Counsel (Ex. C). Defendants refused the request.

This the 9th day of October, 2024.

| | |
|---|---|
| */s/ Kent A. Yalowitz* | */s/ Lex M. Erwin* |
| Kent A. Yalowitz (admitted *pro hac vice*) | Lex M. Erwin |
| N.Y. State Bar No. 2188944 | N.C. State Bar No. 34619 |
| Carmela T. Romeo (admitted *pro hac vice*) | David A. Luzum |
| N.Y. State Bar No. 5058151 | N.C. State Bar No. 41398 |
| **ARNOLD & PORTER** | Kevin Y. Zhao |
| **  KAYE SCHOLER LLP** | N.C. State Bar No. 53680 |
| 250 W 55th Street | **MAYNARD NEXSEN PC** |
| New York, NY 10019 | 227 W. Trade Street, Suite 2300 |
| 212-836-8000 | Charlotte, NC 28202 |
| kent.yalowitz@arnoldporter.com | Telephone: (704) 339-0304 |
| carmela.romeo@arnoldporter.com | Facsimile: (704) 338-5377 |
| | lerwin@maynardnexsen.com |
| – and – | dluzum@maynardnexsen.com |
| | kzhao@maynardnexsen.com |
| Eliseo R. Puig (admitted *pro hac vice*) | |
| Colorado State Bar No. 49022 | *Counsel for Plaintiff* |
| **ARNOLD & PORTER** | |
| **  KAYE SCHOLER LLP** | |
| 1144 Fifteenth Street, Suite 3100 | |
| Denver, CO 80202 | |
| 303-863-1000 | |
| eliseo.puig@arnoldporter.com | |