# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

FS MEDICAL SUPPLIES, LLC,

      Plaintiff,

v.

TANNERGAP, INC. *et al.*,

      Defendants.

Civil Action No.
3:21-CV-501-RJC-WCM

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S<br>MOTION FOR PROTECTIVE ORDER CONCERNING DEPOSITIONS</u>

**ARNOLD & PORTER<br>  KAYE SCHOLER LLP**
250 W 55th Street
New York, NY 10019
212-836-8000
kent.yalowitz@arnoldporter.com
carmela.romeo@arnoldporter.com

  – and –

**ARNOLD & PORTER<br>  KAYE SCHOLER LLP**
1144 Fifteenth Street, Suite 3100
Denver, CO 80202
303-863-1000
eliseo.puig@arnoldporter.com

**MAYNARD NEXSEN PC**
227 W. Trade Street, Suite 2300
Charlotte, NC 28202
Telephone: (704) 339-0304
lerwin@maynardnexsen.com
dluzum@maynardnexsen.com
kzhao@maynardnexsen.com

*Counsel for Plaintiff*

October 23, 2024

Plaintiff, FS Medical Supplies, LLC ("FSMS"), respectfully moves for a protective order forbidding deposition questions related to the nine specific topics identified at pages 9-10 below because those topics are not relevant to any claim or defense in the case and are not proportional to the needs of the case. The affected depositions are those of Laird Cagan, FSMS (as a Rule 30(b)(6) witness), and non-parties Charles Roach, Will Hooks, and Reese Kennedy.

## INTRODUCTION

This motion is necessary because Tanner is attempting to use the deposition process to develop evidence on its unpled misrepresentation theory and to inquire about irrelevant and intrusive financial matters of no relevance to the claims and defenses in the case. A party is not entitled to use discovery "to develop new claims or defenses that are not already identified in the pleadings." 2000 Advisory Committee Notes to Rule 26(b)(1). Tanner has moved for leave to add a misrepresentation defense and counterclaim, seeking to make a number of allegations "on information and belief." *See* ECF 179-1 at 59-62. Tanner's proposed "information and belief" allegations are that FSMS made misrepresentations on its website and in a brochure about its vetting of factories unrelated to Orient Gene, about its use of brokers, that it was supplying Target stores, and about its experience, resources, and capabilities. Tanner is attempting to fill in the gaps in these proposed "information and belief" allegations by seeking deposition testimony about FSMS's website, brochures, vetting of factories, use of brokers, efforts to supply Target stores, and its financial resources. But a party may not use discovery to "troll for new claims or causes of action." *Linseth v. Sustayta*, No. 1:21-CV-173, 2022 WL 16744347, at *3

(D.N.D. Nov. 7, 2022) (cleaned up). Rather, "a party is to be held to discovery within the scope of the claims and defenses asserted in the pleadings." *S. Pointe Wholesale, Inc. v. Vilardi*, No. 1:17CV-00052-GNS, 2018 WL 2085275, at *3 (W.D. Ky. Feb. 2, 2018). Further, Tanner is using the deposition process to demand information about private financial matters that are irrelevant to any claim or defense; courts prohibit subjecting a party "to overbroad intrusion into its finances generally" where such information is irrelevant. *Caraustar Indus., Inc. v. N. Georgia Converting, Inc.*, No. 3:04CV187-H, 2005 WL 8174172, at *4 (W.D.N.C. Sept. 9, 2005).

## BACKGROUND

Discovery has been proceeding in this case since October 2023. The parties have exchanged tens of thousands of documents composed of hundreds of thousands of pages. Since June 2024, the parties have conducted eleven fact depositions. The parties anticipate taking ten expert depositions in the few weeks remaining before the close of discovery on December 6, 2024. Several pending motions could lead to additional targeted discovery.

On August 20, 2024, Tanner sought leave to amend its counterclaims and answer to add a misrepresentation theory both as a defense and as a counterclaim. ECF 179. FSMS opposed that motion on the ground that the amendment would be futile, prejudicial, and in bad faith. ECF 188. Most prominently, FSMS demonstrated that the motion for leave to inject a misrepresentation theory into the case would be futile because it "fails to withstand Rule 12(b)(6) scrutiny." *See In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021). FSMS showed that Tanner's proposed factual allegations do not specify a *material* misstatement of fact insofar as FSMS

obviously *did* have a relationship with Orient Gene, which is how Tanner was introduced to that company at the critical and urgent moment. ECF 188 at 14-17.[1]

---

[1] In its Reply, Tanner asserts that the fact that Mr. Bracey "had to beg" for the introduction to Orient Gene supports an inference that "FSMS had no relationship with Orient Gene." ECF 189 at 12. Tanner did not propose to allege that "FSMS had no relationship with Orient Gene," and Tanner may not use its Reply Brief to expand its proposed pleading. Tanner's point is also nonsensical: FSMS could not have made an introduction to Orient Gene if it had no relationship with Orient Gene. In addition, Tanner's counsel could not make such an allegation consistent with their Rule 11 duties. Indeed, Mr. Bracey admitted that if it had not been for FSMS, Tanner *never* would have had access to Orient Gene, and the UK deal *never* would have happened:

> Q.    Did you connect the dots, on September 10, [2020], that if you didn't agree to sign the distribution agreement [with FSMS], you weren't going to get direct access to Orient Gene?
>
> A.    I think we realized we needed to have a contract signed before we were going to get access, yeah. * * *
>
> Q.    The fact is, sitting there on September 10, you understood no contract, no access to Orient Gene?
>
> A.    Yes. * * *
>
> Q.    Sitting there on September 10, you understood that if you didn't sign a contract with FSMS, which was called the distribution agreement … FSMS was not going to give you direct access to Orient Gene, correct?
>
> A.    Yes.
>
> Q.    And sitting there on September 10, 2020, you understood that without access to Orient Gene, you were not going to be able to complete the potential transaction with the UK Government, correct?
>
> A.    Correct.

Bracey Dep. (Ex. A) 221-22. Although the Court need not and should not rely on this testimony in deciding the motion for leave to amend, the testimony shows that Tanner's belated attempt in its Reply Brief to expand its proposed pleading is not honest.

FSMS also showed that Tanner made *no* allegation that it performed *any* due diligence, which makes it impossible for Tanner to plead reasonable reliance. *See* ECF 188 at 17-18; *Debakey Corp. v. Raytheon Serv. Co.*, No. 14947, 2000 WL 1273317, at *26 (Del. Ch. Aug. 25, 2000) ("By asserting their fraud counterclaim, the defendants are seeking, in effect, to shift the cost of their inadequate due diligence to the plaintiffs."); *Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*, C.A. No. 2017-0500, 2018 WL 2727542, at *13 (Del. Ch. June 6, 2018) ("Under these circumstances, the pled facts do not allow a reasonable inference that Buyers could have reasonably relied upon the alleged extra-contractual representations made prior to their due diligence that were not included in the final agreement."); *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 449 (2015) ("Reliance is not reasonable if a plaintiff fails to make any independent investigation.").[2]

FSMS also opposed Tanner's belated attempt to inject its misrepresentation theory into the case as prejudicial. ECF 188 at 20-23. As FSMS explained: "A common example of a prejudicial amendment is one that 'raises a new legal theory that would require the gathering and analysis of facts not already considered by the defendant, and is offered shortly before or during trial.'" *Laber v. Harvey*, 438 F.3d

---

[2] Tanner's Rule 30(b)(6) witness admitted: "As the corporate representative with all of the documents that I had to review, I am not sure, and I can't point to anything specifically we did by your definition of independent due diligence," and "I don't disagree [with your definition], but I'm trying also to explain, you know, the environment we were in at the time…. So that—if we didn't do between the narrow period of time that you referenced—if we didn't to some typical due diligence that we might normally have done, it doesn't mean we didn't do it later." Tanner Pharma 30(b)(6) Dep. Vol. I (Ex. B) 61-62 (Aug. 23, 2024).

404, 427 (4th Cir. 2006) (cleaned up); *Smith v. Angelone*, 111 F.3d 1126, 1134 (4th Cir. 1997) ("If an amendment is proposed late enough and requires the opponent to engage in significant new preparation or results in the added expense and the burden of a more complicated and lengthy trial, prejudice may be found.") (cleaned up). FSMS objected that Tanner's new theory would require extensive additional discovery. ECF 188 at 20-23. Tanner replied by promising that there would be no need for "new investigations or [to] depose new witnesses" if its motion were granted. ECF 189 at 4.

That has proved to be an empty promise. Following its motion for leave to add a misrepresentation theory, Tanner took the deposition of one of FSMS's two principals, Jim Mao. The questioning went far afield of the claims and defenses in the case. Tanner's counsel asked many questions of Mr. Mao about Tanner's misrepresentation theory. For example, counsel asked about the FSMS website, which of FSMS's counterparties were "factories," whether FSMS relied on "students" to make sales, and about a company called Hallrich, which has nothing to do with the *existing* claims or defenses, but figures in Tanner's proposed misrepresentation theory. *See supra* p. 13. Tanner's counsel also asked about private financial matters that have nothing to do with the claims and defenses, such as FSMS's distributions to shareholders, whether Mr. Mao paid his taxes, his investments in other companies, and the fund he manages. *See supra* p. 19. At more than one point, counsel for Tanner refused to offer any explanation for the relevance of his questions. Mao Dep. (Ex. C) 53, 206, 209-10.

On October 7, 2024, Tanner served a Rule 30(b)(6) deposition notice on

FSMS, with sixty-two (62) topics. Ex. D. The notice demanded that FSMS produce a corporate witness familiar with each of those topics three weeks later—on October 31, 2024. Nearly half the topics were directed to the development of evidence in support of Tanner's misrepresentation theory, such as FSMS's website, its relationship with its website developer, the sources of information in every brochure it ever produced, its effort to vet every factory it ever considered doing business with, its relationships with numerous entities that were not involved in the Orient Gene transactions, and its funding, finances, financial resources, sales, bank accounts, and capitalization. The deposition notice also included more than a dozen topics that have no apparent relevance and that are extremely intrusive about FSMS and its principals.

On October 10, 2020, FSMS sent a letter explaining that Tanner is not permitted to question witnesses on matters that are not relevant to an existing claim or defense because Tanner is "not entitled to use discovery 'to develop new claims or defenses that are not already identified in the pleadings.'" Letter from K. Yalowitz to B. Kahn (Ex. E) at 3 (Oct. 10, 2020) (quoting *McKenna v. Dillon Transportation, LLC*, 97 F.4th 471, 477 (6th Cir. 2024) (quoting, in turn, 2000 Advisory Committee Notes to Rule 26(b)(1))). FSMS provided specific examples of this improper use of discovery and requested a meet and confer session.

On October 15, 2024, Tanner served a notice of deposition of Charles Roach, a non-party who developed FSMS's website. The notice indicated that Tanner would pay for Mr. Roach to fly from Idaho to Charlotte to give a deposition on October 24, 2024. Ex. F.

6

The parties conferred regarding depositions on Thursday, October 17. At the meeting, Tanner did not dispute the principle that parties are not entitled to use discovery to develop new claims or defenses that are not already identified in the pleadings. Rather, Tanner stated that the Rule 30(b)(6) topics and the non-party depositions it has noticed or intends to notice are relevant to Tanner's defense of "unclean hands" as currently pled. At the meeting, counsel also stated that they were planning to depose two members of FSMS's sales staff, Will Hooks and Reese Kennedy, who had no role in any dealings with Tanner.

On October 18, 2024, FSMS wrote to Tanner's counsel explaining why that theory was untenable. Letter from K. Yalowitz to B. Kahn (Oct. 18, 2024) (Ex. G).

On October 21, 2024, Tanner responded. Letter from B. Kahn to K. Yalowitz (Oct. 21, 2024) (Ex. H). Tanner served an amended notice of deposition, with forty (40) topics. Ex. I. A number of those topics simply consolidated two prior topics, so in many ways the revisions were cosmetic. Again, nearly half the topics remain directed to the development of evidence in support of Tanner's misrepresentation theory, such as FSMS's website, its relationship with its website developer, the sources of information in every brochure it ever produced, its effort to vet every factory it ever considered doing business with, its relationships with numerous entities that were not involved in the Orient Gene transactions, and its funding, finances, financial resources, sales, bank accounts, and capitalization.[3] The deposition notice also

---

[3] In particular, the topics are: (1) the source of, and factual basis for, statements on FSMS's website, brochures, price sheets, and other marketing materials (Topic 5); (2) FSMS's efforts to vet or visit factories (Topic 24); (3) FSMS's relationship and communications with Hallrich Group [a supplier of masks] (Topic 9); (4) FSMS's

included more than a dozen topics that have no apparent relevance and that are extremely intrusive about FSMS and its principals.[4] Conferral on narrowing the topics continues.

_____

use of, and relationships with, middlemen, intermediaries, or brokers (Topic 4); (5) FSMS's representations regarding its relationships, experience, licenses, patents, resources, and capabilities to representatives of TPUK and TannerGAP throughout FSMS's existence and the truthfulness or falsity of the same (Topic 7); (6) FSMS's funding throughout its existence (Topic 1); (7) FSMS's employees, contractors, consultants, and business partners throughout its existence; any contracts or other understandings with the same; and any payments to the same (Topic 3); (8) FSMS's finances, sales, and assets throughout its existence (Topic 14); (9) FSMS's [general] ledger and the recording of transactions therein (Topic 15); (10) Any balance sheets, income statements, cash flow statements, or other financial records, including those that reflect FSMS's assets and capitalization throughout its existence (Topic 16); (11) FSMS's use of East West Bank and any other bank accounts throughout its existence (Topic 17); (12) All FSMS transactions where it purports to have acted as a distributor and/or a broker (Topic 18); (13) FSMS's experience and expertise in the PPE and diagnostic testing space, including in the areas of distribution, sale, sourcing, quoting, negotiations, importing, exporting, logistics, shipping, funding, licenses, and related experience (Topic 6); and (14) FSMS's relationship and communications with Ascendant Strategic Partners Incorporated, Amanda Campbell, and Kyle McGowan (Topic 13). Ex. I.

[4] These are: (1) FSMS's use of East West Bank and any other bank accounts throughout its existence (Topic 17); (2) Any balance sheets, income statements, cash flow statements, or other financial records, including those that reflect FSMS's assets and capitalization throughout its existence (Topic 16); (3) FSMS's funding throughout its existence (Topic 1); (4) FSMS's finances, sales, and assets throughout its existence (Topic 14); (5) the issuance of dividends or distributions from FSMS to Mr. Cagan and Mr. Mao or their spouses during the years 2020 to 2022 (Topic 34); (6) FSMS's [general] ledger and the recording of transactions therein (Topic 15); (7) FSMS's relationships with any affiliates or predecessors throughout its existence (Topic 2); and (8) FSMS's litigation accruals for the above-captioned case (Topic 35).

8

## LEGAL STANDARD

Rule 26(c)(1) of Federal Rules of Civil Procedure provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending…. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

"A district court has broad discretion in managing discovery, including the discretion to determine whether discovery is relevant to a party's claim or defense." *Parker v. Case Farms, LLC*, No. 1:20-CV-11(MR)(WCM), 2020 WL 5240587, at *1 (W.D.N.C. Sept. 2, 2020) (cleaned up). "Further, all discovery must be measured against the yardstick of proportionality. Deposition topics that are of minimal relevance are significantly disproportional to what is in dispute with the litigation." *Tucker v. Momentive Performance Materials USA, Inc.*, No. 2:13-CV-04480, 2017 WL 11674365, at *4 (S.D.W. Va. Feb. 24, 2017) (cleaned up).

## ARGUMENT

## I.     The Court Should Preclude Discovery Into Irrelevant And Disproportional Topics

FSMS respectfully asks the Court to issue a protective order barring Tanner from questioning witnesses about matters that are not relevant to a claim or defense in the case. Specifically, FSMS respectfully requests that the Court order Tanner not to question witnesses about the following topics:

(1) FSMS's website, the development of the website, the website developer (Charles Roach), the sources of statements on the website;

(2) FSMS's brochures, price lists, and other marketing materials, the development of those materials, and the sources of statements in the those materials;

(3) FSMS's sales personnel or potential sales channels, unless they communicated with Tanner;

(4) FSMS's sources of PPE other than covid test kits, its relationships with manufacturers of PPE other than covid test kits, or its use of middlemen, intermediaries or brokers;

(5) FSMS's efforts to supply disinfecting wipes to Target stores;

(6) The truth or falsity of FSMS's alleged representations to Tanner regarding its relationships, experience, licenses, patents, resources, and capabilities;

(7) FSMS's transactions with persons or entities unless they concern Orient Gene products or potential or actual sales to Tanner;

(8) FSMS's funding, finances, sales, financial resources, accounting, bank accounts, assets, capitalization source of funds; and

(9) FSMS's document storage systems.

## A.     Tanner's Misrepresentation Theory Is Not A Basis for Discovery

Tanner has sought leave to amend its answer and add counterclaims based on a misrepresentation theory. ECF 179. That motion is opposed and currently pending. Yet Tanner is attempting to use discovery to support its unpled theory. That is not permitted. "Parties are not entitled to use discovery 'to develop new claims or defenses that are not already identified in the pleadings.'" *McKenna v. Dillon Trans-*

*portation, LLC*, 97 F.4th 471, 477 (6th Cir. 2024) (quoting 2000 Advisory Committee Notes to Rule 26(b)(1)).

This rule is widely enforced. As numerous courts have explained, discovery may not "be used to troll for new claims or causes of action," but rather must be "relevant to the specific claims and defenses before the court." *E.g.*, *Linseth*, 2022 WL 16744347, at *3 (cleaned up). Thus, "a party is to be held to discovery within the scope of the claims and defenses asserted in the pleadings, and may not employ discovery as a means of investigating whether additional claims might be available." *S. Pointe Wholesale, Inc.*, 2018 WL 2085275, at *3.[5]

---

[5] *See Caliber Home Loans, Inc. v. Bales*, No. 3:16-CV-1167-J-32JRK, 2017 WL 8341699, at *1 (M.D. Fla. Aug. 17, 2017) ("The fact that the requested discovery relates to an *unpled counterclaim* is insufficient to bring it within the scope of discovery. Defendant must demonstrate that its requests are relevant to the claims and defenses the parties have raised.") (emphasis added); *Filippelli v. Grow, LLC*, No. 22-CV-81731-DMM, 2023 WL 11799558, at *2 (S.D. Fla. Apr. 25, 2023) ("[T]he requested information must have some connection to proving or disproving an *existing* claim or defense.") (emphasis in original); *Ivory v. United States*, No. 3:18-CV-00537, 2023 WL 1973198, at *4 (M.D. Tenn. Feb. 13, 2023) ("[T]he Federal Rules of Civil Procedure do not permit a plaintiff to use the discovery process to develop claims that are not included in the complaint"); *BMO Harris Bank, N. A. v. MTR Farms, L.L.C.*, No. 2:16-CV-133-LJM-DKL, 2017 WL 2418328, at *5 (S.D. Ind. June 5, 2017) ("Because the Daugherty Defendants have not pled any explicit claim or defense based on BMO's non-competition objection, and have not explained how a claim or defense is encompassed within the existing pleadings, they have not shown the relevance of their requested discovery."); *Haddley v. Isanti Cty.*, No. 15-CV-2106 (DWF/LIB), 2016 WL 11004385, at *5 (D. Minn. May 31, 2016) ("Parties are *not* entitled to discovery to develop new claims or defenses that are not already identified in the pleadings.") (emphasis in original); *Turco v. Ironshore Ins. Co.*, No. 218CV634FTM99MRM, 2019 WL 2255654, at *5 (M.D. Fla. Mar. 4, 2019) ("If Plaintiffs are successful in adding a bad-faith claim or allegations of bad faith to this litigation, then the scope of relevant discovery may change. For now, however, the

Tanner's conduct leaves no doubt that it is violating that rule, and Tanner's explanation for its conduct—that these issues are already in the case because it has pled an "unclean hands" defense—does not hold water.

### 1. Tanner Is Attempting To Use Discovery To Develop Evidence For Its Misrepresentation Theory

A large number of Tanner's Rule 30(b)(6) deposition topics are only relevant to allegations Tanner seeks to make "on information and belief" in support of its misrepresentation theory. Tanner's proposed amended Answer and Counterclaims seek to inject into the case allegations that FSMS's website contained false statements in 2020, *see* ECF No. 179-1 at 59-60; that FSMS had no employees, *id.* at 60; that in June 2020, FSMS had only made "modest purchases from only two entities and at least one of those entities was not a factory or manufacturer," *id.* at 60; that FSMS "had little experience in PPE distribution," *id.* at 61; that FSMS made misrepresentations in a brochure, *id.* at 62; about its vetting of factories, *id.* at 59; about its use of brokers, *id.* at 61; about supplying wipes to Target stores, *id.* at 62; and about its experience, resources, and capabilities, *id.* at 64-65; and that FSMS lacked financial resources to distribute large volumes of products, *id.* at 65.

Consistent with these proposed "information and belief" allegations, Tanner's original Rule 30(b)(6) deposition notice seeks information regarding FSMS's website (Topics 4, 7, and 8); employees and consultants (Topic 12); sourcing and purchase of PPE, relationship with Hallrich (a supplier), and transactions (Topics 9, 15,

---

scope of permissible discovery in this case is informed by and limited to the claims Plaintiffs have actually asserted and the Defendant's asserted defenses thereto.").

and 30–32); brochures (Topic 9); efforts to vet factories (Topic 40); use of brokers (Topic 5); efforts to supply Target stores (Topic 54); experience, licenses, resources, and capabilities (Topic 12); and funding, assets, and financial resources (Topics 1, 24, 28, and 29). *See* Ex. D. Other deposition topics are also geared toward Tanner's un-filed fraud claims, such as FSMS's relationships with third parties (Topics 21 and 22), finances and sales (Topics 23, 25, and 26), and use of bank accounts (Topic 27). *Id.* These deposition topics largely remain in the amended notice. *See* Ex. I.

Tanner has already used a fact witness's deposition to explore matters that only have relevance to its misrepresentation theory. Many of the questions counsel posed to Mr. Mao, which have no relevance to the contract claims and defenses currently in the case, mirror the allegations Tanner seeks to add. At Mr. Mao's deposition, counsel questioned Mr. Mao about FSMS's website, Mao Dep. (Ex. C) at 73-85, whether FSMS relied on "students" to make sales and how FSMS compensated its consultants, *id.* at 81, 84, 94-96, 106, which of FSMS's counterparties were "factories," and what kind of company was Hallrich (which FSMS paid for masks), *id.* at 92-94.

Tanner has also has arranged to take the deposition of Charles Roach, who developed FSMS's website, and has stated that it plans to take the depositions of two FSMS salespeople who never communicated with Tanner and had nothing to do with the underlying contracts. These depositions have no relevance to the contract issues in the case.

### 2. Tanner's Misrepresentation Theory Is Not Pled In Its Existing Defenses

In the parties' meet and confer session, Tanner asserted that the Rule 30(b)(6) topics and the non-party depositions it has noticed or intends to notice—of FSMS's website developer and FSMS's salespeople—are relevant to Tanner's defense of "unclean hands" as currently pled. Tanner's position is not tenable, for two clear reasons.

***First:*** As pled, Tanner's "unclean hands" defense is not directed to FSMS's website, brochures, sales staff, funding, finances, bank accounts, transactions with manufacturers, sources of PPE other than covid tests, or representations to Tanner regarding its relationships. Tanner's Answer pled the "unclean hands" doctrine as part of its Third Affirmative Defense in an *extremely limited and focused way*, as follows:

> **THIRD DEFENSE**
>
> (*Ratification, Unclean Hands, Waiver, Estoppel, Laches*)
>
> FSMS's claims are barred, in whole or in part, by the doctrines of ratification, unclean hands, waiver, laches, and estoppel. **FSMS accepted profit split payments from TPUK and was aware of how TPUK calculated the profit split at the time that FSMS accepted them, failed to object, and did not terminate the contract, ratifying [Tanner's] interpretation**.

ECF 120 at 50 (bold and underscoring added). The focus of this defense is specifically narrow because fraud-based defenses—including unclean hands—must be pled with particularity under the strict standards of Rule 9(b). *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 700 (4th Cir. 2018).

As pled, Tanner's "unclean hands" defense specifically invokes the fact that FSMS "accepted profit split payments" from Tanner in November 2020 and February 2020 knowing that Tanner had not used the actual cost paid to Orient Gene, without objecting or terminating the contract. It does not focus on the matters that are the subject of Tanner's misrepresentation theory.

In correspondence, Tanner pointed out that Tanner's existing complaint contains a gratuitous "Preliminary Statement" with generalized and non-specific allegations that FSMS "misrepresented its capabilities to TPUK"; signed a Distribution Agreement that it "could not and did not perform"; that it "misrepresented its capabilities and failed to live up to its obligations"; and that "FSMS did not have the experience and contacts that they had promised." ECF 120 at 2-3. Tanner cannot explain how those generalized and conclusory statements could possibly meet Rule 9(b) because they could not. That is why Tanner moved for leave to amend, and, in its motion papers, specifically acknowledged its need to comply with Rule 9(b). ECF 180 at 9. Tellingly, Tanner cites its *proposed new allegations* in support of its contention that it complied with Rule 9(b)—not its old, conclusory, non-specific allegations in its gratuitous "Preliminary Statement." *Id.*

Tanner also pointed out in correspondence that it pled an unclean hands defense in response to the fraudulent conveyance claims against it. But Tanner's reliance on that defense suffers the exact same problem.

## SECOND DEFENSE

*(Ratification, Unclean Hands, Waiver, Estoppel, Laches)*

FSMS's claims are barred, in whole or in part, by the doctrines of ratification, unclean hands, waiver, laches, and

estoppel. **FSMS has been purportedly concerned about the alleged dissipation of assets since March 2021, but failed to pursue for nearly 18 months the ultimate relief it seeks in this action.**

ECF 41 at 12 (bold and underscoring added) in No. 23-cv-598. As pled, Tanner's "unclean hands" defense to the fraudulent conveyance claim invokes the fact that FSMS "failed to pursue" its suspected claim until 2023. It does not focus on the matters that are the subject of Tanner's misrepresentation theory.

Finally, Tanner has asserted that the vast array of topics identified above may be relevant to Tanner's "prior material breach" defense. That is meritless. It is true that "a party who first commits a material breach of a contract cannot enforce the contract going forward" under Delaware law. *Prime Victor Int'l Ltd. v. Simulacra Corp.*, 682 F. Supp. 3d 428, 446 (D. Del. 2023) (cleaned up). A material breach is "*a failure to do something* … so fundamental to a contract that the failure to perform the obligation defeats the essential purpose of the contract or makes it impossible for the other party to perform under the contract." *Id.* (emphasis added; cleaned up). Here, it is undisputed that Tanner executed the contract on September 11, 2020. Tanner's position is that FSMS materially breached the contract that very week, by missing a meeting and having a "nonexistent, deep, direct relationship with the CEO of Orient Gene." Tanner Rule 30(b)(6) Dep. (Ex. J) at 106-07 (Sept. 30, 2024). It is very difficult to imagine how these allegations—missing a phone call and not having a "deep, direct relationship with the CEO of Orient Gene"—warrants a freewheeling inquiry into FSMS's website, brochures, marketing materials, sales staff, relation-ships with manufacturers of masks and other PPE, "licenses, patents, resources, and

capabilities," use or non-use of middlemen, funding, finances, assets, bank accounts, capitalization, email systems, distributions to its principals, and litigation accruals.

**_Second:_** Tanner's course of conduct during discovery and before proposing to amend its counterclaims and defenses is sharply inconsistent with its position that the misrepresentation theory is already in the case by operation of Tanner's Third Affirmative Defense. The first time Tanner mentioned "unclean hands" as a basis for discovery was on October 18, 2024, more than a year into discovery. Indeed, in March 2024, Tanner acquiesced to FSMS's objection that the issue whether FSMS "misrepresented its relationships, capabilities, and financial wherewithal," was not relevant to any claim or defense in the case. *See* Letter from C. Romeo to B. Kahn (Ex. K) at 2 (Feb. 21, 2024); Letter from B. Kahn to C. Romeo (Ex. L) at 3 (March 6, 2024); Letter from C. Romeo to B. Kahn (Ex. M) at 4 (March 20, 2024).

Tanner then served one interrogatory directed to the misrepresentation theory. That interrogatory asked FSMS to identify all PPE manufacturers it had "relationships" with as of June 8, 2020 and to state the dates and amounts of its purchases "of such goods" in 2020 and 2021. Ex. N. FSMS objected that the interrogatory sought information that was not relevant to a claim or defense in this case and was disproportionate to the extent it sought information about PPE manufacturers other than Orient Gene. *Id.* Tanner sent a meet-and-confer letter about FSMS's objection on June 11, 2024. Letter from B. Kutrow to C. Romeo (Ex. O) (June 11, 2024). That letter said nothing about "unclean hands." On June 20, 2024, FSMS responded to Tanner's June 11 letter by explaining that "the interrogatory seeks information that is not relevant to a claim or defense in this case and is disproportionate to the extent

it seeks information about PPE manufacturers other than Orient Gene…." Letter from C. Romeo to B. Kutrow (Ex. P) at 2 (June 20, 2024). Again Tanner acquiesced to FSMS's objection. Rather than respond or seek the Court's involvement, on August 1, 2024, Tanner proposed to FSMS that it amend its counterclaims and defenses to add a misrepresentation theory.

In sum, the evidence Tanner now seeks to develop is not relevant to any claim or defense and is not proportional to the needs of the case. Indeed, Tanner has spent the last year conducting discovery without suggesting that the unclean hands defense or any other defense as pled entitles it to develop evidence on a misrepresentation theory.

## B. The Court Should Preclude Discovery Into Irrelevant And Intrusive Topics

Tanner is also inquiring into areas that are plainly out of bounds under Rule 26. The Rule 30(b)(6) deposition notice seeks information regarding FSMS's bank accounts, financial records, assets and capitalization, funding, source of funds, finances, financial resources, issuance of dividends, transaction ledger, affiliates and predecessors, relationship with a third party entity, McAffee Capital Partners, and "litigation accruals" for this case, and FSMS's email systems. *See* Ex. D (Topics 1, 2, 20, 23, 24, 25, 26, 27, 28, 29, 55, 56, 57, 62); *see also* Ex. I (1, 2, 14, 15, 16, 17, 34, 35).

Tanner's conduct appears to be directed to imposing annoyance, embarrassment, oppression, and undue burden and expense. Although Tanner did not notice the Rule 30(b)(6) deposition until only a few weeks ago, it has long been threatening

to make life unpleasant for FSMS. More than seven months ago, Tanner's counsel implied that Tanner had a fraud-based counterclaim and threatened that Plaintiff would regret ever having filed the suit:

> We are focused at the moment on preparing to take the depositions of Mr. Cagan, Mr. Mao, the other FSMS members, and others in Mr. Cagan's milieu. Even outside of formal discovery, we learn more about Mr. Cagan and FSMS daily. FSMS appears to have been a fraud-ulent enterprise, and the continued prosecution of this case will in the end be very costly for FSMS and its individual members, well beyond mere legal fees. If he does not already, Mr. Cagan will end up regretting filing this suit before it concludes and will view it as a negative invest-ment when all costs are considered.

Ex. E at 7.

Tanner probed into some of these matters at Mr. Mao's deposition. Counsel questioned Mr. Mao about whether Mr. Mao paid his taxes, Mao Dep. (Ex. C) at 49, the investors in the fund Mr. Mao currently manages, *id.* at 52–53,[6] what other com-panies he had invested in and how he was compensated, *id.* at 216–17, and FSMS's distribution to its members and its accounting systems, *id.* at 205–06, 209–11. When counsel for FSMS pressed for Tanner's basis for these questions, counsel for Tanner refused to offer any explanation for the relevance of the questions. *Id.* at 53, 206, 209–10.

---

[6] The exhibited excerpts of Mr. Mao's deposition include testimony concerning Mr. Mao's role at Citta Capital and the nature of Citta Capital's business activities. In order to avoid filing a motion to seal, FSMS has redacted a small number of ques-tions and answers that reveal sensitive information about Citta Capital. *See* Mao Dep. (Ex. C) at 52-53. To the extent Defendants dispute the characterization of this testimony—or should the Court wish to review the questions and answers—FSMS will file an unredacted copy of the transcript under seal.

The finances of Mr. Mao and FSMS and FSMS's relationship with third parties and affiliates unrelated to the parties' contracts are not relevant to this case and are inappropriate topics for discovery. *Caraustar Indus.*, 2005 WL 8174172, at *4 (issuing protective order to prevent "subjecting the Defendant to overbroad intrusion into its finances generally").

The Court should issue a protective order precluding Tanner's attempts to use depositions to support its misrepresentation theory and intrude into FSMS's finances and other irrelevant matters.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for protective order precluding discovery on the nine topics specified above at pages 9-10. This the 23rd day of October, 2024.

_/s/ Kent A. Yalowitz_

Kent A. Yalowitz (admitted _pro hac vice_)
N.Y. State Bar No. 2188944
Carmela T. Romeo (admitted _pro hac vice_)
N.Y. State Bar No. 5058151
**ARNOLD & PORTER**
  **KAYE SCHOLER LLP**
250 W 55th Street
New York, NY 10019
212-836-8000
kent.yalowitz@arnoldporter.com
carmela.romeo@arnoldporter.com

– and –

Eliseo R. Puig (admitted _pro hac vice_)
Colorado State Bar No. 49022
**ARNOLD & PORTER**
  **KAYE SCHOLER LLP**
1144 Fifteenth Street, Suite 3100
Denver, CO 80202
303-863-1000
eliseo.puig@arnoldporter.com

_/s/ Lex M. Erwin_

Lex M. Erwin
N.C. State Bar No. 34619
David A. Luzum
N.C. State Bar No. 41398
Kevin Y. Zhao
N.C. State Bar No. 53680
**MAYNARD NEXSEN PC**
227 W. Trade Street, Suite 2300
Charlotte, NC 28202
Telephone: (704) 339-0304
Facsimile: (704) 338-5377
lerwin@maynardnexsen.com
dluzum@maynardnexsen.com
kzhao@maynardnexsen.com

_Counsel for Plaintiff_

## CERTIFICATION

Pursuant to the Court's June 18 2024 Standing Order regarding Use of Artificial Intelligence, the undersigned certifies that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line research sources WestLaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Lex M. Erwin*
Lex M. Erwin