IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action Nos. 3:21-cv-00501-RJC-WCM; 3:23-cv-00598-RJC-WCM

| | |
|---|---|
| FS MEDICAL SUPPLIES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>TANNERGAP, INC. AND TANNER PHARMA UK LIMITED<br><br>    Defendants;<br><br>and<br><br>FS MEDICAL SUPPLIES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>TANNER PHARMA UK LIMITED; RAYMOND FAIRBANKS BOURNE; MARY EVERETT BOURNE,<br><br>    Defendants. | BOURNE DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTIONS FOR PROTECTIVE ORDER, FOR EXPEDITED CONSIDERATION OF PENDING DISCOVERY MOTIONS, AND FOR A CONFERENCE |

## INTRODUCTION

On October 23, 2024, Plaintiff FS Medical Supplies, LLC ("FSMS") filed a Motion for Protective Order ("Motion"), contending that defendants seek discovery about topics of "no relevance . . . in the case" allegedly designed to develop new claims or defenses not identified in the pleadings. FSMS Motion at 1. That assertion is simply incorrect. The discovery is directly relevant to the unclean hands defenses pleaded in the Answers filed by the Tanner defendants (Civil Case No. 3:21-cv-00501-

RJC-WCM ("FSMS I"), ECF 120 at 50), (Civil Case No. 3:23-cv-00598-RJC-WCM ("FSMS II"), ECF 41 at 12) and the Bourne defendants (FSMS II, ECF 42 at 13). The discovery is also proper to develop evidence to impeach FSMS's witnesses.

FSMS presumably seeks to block the requested discovery because it will likely develop evidence unfavorable, and likely fatal, to FSMS's claims in both FSMS I and FSMS II. It is axiomatic that a party cannot block discovery that will unearth relevant evidence undermining the party's claims, but that is exactly the result FSMS seeks in its Motion. Moreover, FSMS's refusal to proceed with depositions as noticed and scheduled will delay the completion of discovery and potentially delay the schedule for dispositive motions and trial, in addition to causing the defendants to incur unnecessary costs and fees.

The Motion is baseless. The Bourne defendants respectfully suggest that oral argument and expedited procedures for the Motion are unnecessary. To avoid further delay and unnecessary expense, the Motion should be summarily denied.

## BACKGROUND

FSMS seeks to block discovery of crucial relevance in both FSMS I and FSMS II. The cases are consolidated for discovery purposes. Therefore, in an effort to avoid unnecessary litigation expenses and duplication of effort, counsel for the Bournes have deferred to counsel for the Tanner defendants to take the lead in pursuing the discovery at issue, as explained to FSMS counsel in the letter attached hereto as Exhibit A.[1] This effort to achieve some level of efficiency and avoid duplication does

---

[1] FSMS filed their motion for protective order a few hours after receiving Exhibit A.

2

17501716v11 28344.00011

Case 3:21-cv-00501-RJC-WCM    Document 207    Filed 10/28/24    Page 2 of 14

not indicate that the discovery is of no importance to the Bourne defendants. To the contrary, the discovery is likely to develop evidence strongly supporting the defenses and arguments of the Bourne defendants in FSMS II.

Accordingly, as the Bournes' counsel informed FSMS's counsel in Exhibit A, the Bourne defendants plan to participate (and ask questions, as necessary) in the depositions at issue. The Bourne defendants therefore submit this brief to explain the relevance of the discovery from their perspective. Unless this Court summarily denies the Motion, which would be appropriate, the Tanner defendants will submit a separate brief addressing the relevance and crucial nature of the discovery with respect to their positions and defenses in both FSMS I and FSMS II.

## RELEVANCE OF DISCOVERY

As this Court knows from prior briefing, the Tanner defendants (owned by the Bourne defendants) entered into a Distribution Agreement with FSMS in September of 2020 providing that FSMS, as distributor, would supply COVID test kits from a Chinese company (Orient Gene) to defendant Tanner UK for resale to the government of the United Kingdom. Almost immediately after execution of the Distribution Agreement, however, it became apparent that FSMS did not have the requisite resources, experience, expertise, or capacity to perform its obligations under the Distribution Agreement. Ex. B (Scalia Rule 30(b)(6) Dep. at 265:2-268:1). Implicitly conceding its inability to perform, on September 29, 2020, FSMS instructed Tanner UK to deal directly with Orient Gene to procure the test kits. Ex. C (Scalia Dep. at 38:1-3). Tanner UK did that, and over the next 18 months supplied thousands of test

kits to the UK government.

In the month after FSMS instructed and authorized Tanner UK to "go direct" to Orient Gene, the parties communicated about the amount Tanner UK was obligated to pay FSMS under the Distribution Agreement. In another telephone call on October 24, 2020, Tanner UK provided its interpretation of the Agreement to the principals of FSMS (Laird Cagan and Jim Mao). Tanner UK explained that the profit sharing calculation under the Agreement is based on a notional price of $5 paid to Orient Gene for each test kit because that was the only price obtained by FSMS. Ex. B (Scalia Rule 30(b)(6) Dep. At 317:25-324:3). FSMS admits it well knew that Tanner UK was obtaining test kits from Orient Gene for less than $5 each. FSMS I Amended Complaint ¶85 [ECF 58].

Instead of contesting Tanner's interpretation of the Agreement, FSMS submitted invoices to Tanner UK, from November 17, 2020 to February 11, 2021, using the $5 notional value in each invoice. Tanner UK paid each invoice in full. Ex. D (Mao Dep. at 204:17-19; 205:5-8). Shortly after receiving over $6.4 million in payments based on these invoices, FSMS sued the Tanner defendants. *See id.*; Ex. E (Complaint, Santa Clara Sup. Ct., March 24, 2021). In the suit, FSMS effectively disavowed its own invoices, taking a position about the calculation of gross profits under the Distribution Agreement completely irreconcilable with the invoices it had submitted to Tanner UK. *See* Ex. E ¶¶23-30.

FSMS now not only seeks hundreds of millions of dollars from the Tanner defendants, it has sued the Bournes personally, asserting that dividends paid to them

by Tanner UK were fraudulent conveyances even though over $40 million of the dividends were paid before FSMS even intimated to anyone that it intended to assert a claim against the Tanner defendants. Ex. F (Dep. Ex. 396) & Harcourt Declaration, Appendix A [FSMS II, ECF 27-1]. Mr. Bourne, the sole director of Tanner UK, declared the dividends because Tanner UK did not need the excess funds to conduct its business and because "repatriating" the earnings ameliorated significant tax risks. Bly Declaration, ¶10 [FSMS II, ECF 31]. FSMS disputes the tax planning justifications for repatriation of the earnings even though FSMS's own law firm (Arnold & Porter) issued guidance during the relevant time period fully consistent with and confirming Bly's advice.[2]

When the pleadings were joined, all defendants knew that FSMS had not performed under the Distribution Agreement. The defendants also knew that FSMS had invoiced and collected over $6 million from Tanner UK before reversing position on the interpretation of the Distribution Agreement and filing a lawsuit against Tanner UK. The defendants did not know, however, that FSMS had materially

---

[2] Post-Election Analysis 2020: Tax (November 9, 2020), https://www.arnoldporter.com/en/perspectives/advisories/2020/11/post-election-analysis-tax ("Unified Democratic control of the legislative and executive branches will allow for substantial regulatory and legislative changes in tax policy in the 117th Congress. Rather than a stand-alone tax "reform" proposal, tax policy changes will support the ambitious agenda on which President-elect Biden campaigned." "In light of the Democratic sweep, President-elect Biden is expected to have more flexibility in passing many of his international tax priorities. President-elect Biden's international tax policy proposals generally would increase taxes on businesses' income related to international activities. Under a Democratic Congress, the Biden Administration likely will pursue proposals for higher taxes on multinational companies and tighten several rules regarding current international tax laws.").

misrepresented its experience, capabilities, resources, and successes in relevant lines of business in order to convince the Tanner defendants to execute the Distribution Agreement.

An investigation led by counsel for the Tanner defendants during the discovery period has unearthed evidence indicating that FSMS, formed a few months prior to the execution of the Distribution Agreement, was nothing more than a "pop up shop" with no experience, resources, or capability to perform its obligations. In his deposition, one of the principals of FSMS implicitly confirmed this; he was unable to describe the experience, roles or status of various individuals identified on the FSMS website as purported employees. Ex. D (Mao Dep. at 78:22-81:6).

To further develop this evidence, the defendants seek to depose three fact witnesses who are former contractors (held out as employees) of FSMS: Charles Roach, Will Hooks, and Reese Kennedy. All three witnesses were working with FSMS in 2020 when FSMS made representations to Tanner about its alleged experience, capabilities and resources. Ex. G & Ex. H. All three individuals likely have information concerning whether specific representations made by FSMS to Tanner were accurate and truthful.

Charles Roach is a business founder and website developer who worked on FSMS's website. Ex. H. (collection of emails produced by Charles Roach). The website contained numerous representations about FSMS's business that now appear to have been false and misleading, such as its representations regarding its purported employees noted above. Further, Laird Cagan corresponded with Roach concerning

6

17501716v11 28344.00011
Case 3:21-cv-00501-RJC-WCM   Document 207   Filed 10/28/24   Page 6 of 14

the Orient Gene test kits. Ex. H. Roach, therefore, is one of the few individuals with personal knowledge of the Orient Gene test kits on the FSMS side who is not seeking to benefit personally from this lawsuit.

Hooks was the "Director of Business Development at FSMS" in 2020, and Kennedy was a "Managing Sales Associate." Ex. G. Hooks and Kennedy, therefore, are likely to have information concerning the veracity of FSMS's representations to Tanner concerning its business dealings, experience, capabilities, and staffing. *See, e.g.*, Ex. B (Scalia Rule 30(b)(6) Dep. at 66:5-67:3).

In response to defendants' request for the depositions, FSMS seeks to bar defendants *not only* from deposing these three fact witnesses, but also from asking *any witness* about nine relevant topics. Motion at 2-3. Each topic is highly relevant to the Bournes' defense of unclean hands, because each involves the veracity of FSMS's representations in contract negotiations with Tanner.

It has long been the law in the Fourth Circuit that it is improper to instruct a witness not to answer deposition questions on the basis of alleged irrelevance; instead, the testimony should be taken "subject to [an] objection" to the questions. *Ralston Purina v. McFarland*, 550 F.2d 967, 973 (4th Cir. 1977) (explaining that if "counsel felt that the discovery procedures were being conducted in bad faith or abused in any manner, the appropriate action was to present the matter to the court by motion [to terminate or limit examination] under Rule 30(d)"). Here, FSMS seeks to block deposition testimony before the deposition even starts, wasting the time of the parties and seeking to require this Court to address relevance issues properly

reserved for another time.

FSMS should not be permitted to challenge the relevance of the testimony before any deposition even occurs. "[R]elevance and admissibility are to be tested after" the deposition. *CSX Transp., Inc. v. Gilkison*, No. CIV. A. 5:05CV202, 2009 WL 1362507, at *2 (N.D.W. Va. May 14, 2009), *aff'd*, No. CIV.A. 5:05CV202, 2009 WL 1968747 (N.D.W. Va. July 7, 2009). Indeed, the *CSX* Court ordered a second deposition when counsel instructed a witness not to answer on relevance grounds. *Id.*[3] Based on this precedent, this Court need not even address the relevance of the discovery at issue before summarily denying FSMS's Motion. In any event, the discovery is directly relevant in both pending cases, and FSMS should not be allowed to block discovery that is relevant but prejudicial to FSMS.

With respect to FSMS II, the discovery at issue is relevant because it is likely to support Bournes' defense of unclean hands. Answer, ¶15 & Second Further Defense [FSMS II, ECF 42]. In addition, the discovery is likely to unearth additional "information with which to impeach witnesses for the opposition," which is "commonly allowed." Wright & Miller, 8 Fed. Prac. & Proc. (3d ed.) § 2015; *see also Am. Angus Ass'n v. Sysco Corp.*, 158 F.R.D. 372, 374 (W.D.N.C. 1994) (quoting Wright & Miller).

---

[3] FSMS's counsel has similarly obstructed depositions by asserting relevance objections during a deposition, Motion at 19; *see also* Ex. D (Mao Dep. at 53:12-54:14; 209:23-211:2), and by instructing its witness not to answer questions for reasons other than privilege, Ex. D (Mao Dep. at 109:12-15, 110:3-12, 167:4-168:3).

8
17501716v11 28344.00011
Case 3:21-cv-00501-RJC-WCM   Document 207   Filed 10/28/24   Page 8 of 14

The usefulness of the evidence for impeachment purposes needs no further explanation. It has always been permissible to develop evidence showing that an opposing party dissembled and made misrepresentations. Wright & Miller, 8 Fed. Prac. & Proc. (3d ed.) § 2015; *see also* Fed. R. Evid. 607 (any party can impeach a witness). The Advisory Committee Notes to the 2015 Amendment of Rule 26 confirmed this is still the case, stating that discovery of "information that could be used to impeach a likely witness" "is not foreclosed by the amendments."

A brief review of the issues in FSMS II confirms that the discovery is relevant to the unclean hands defense as well. In FSMS II, FSMS alleges that it will prevail in FSMS I and thus should be able to recover the dividends paid by Tanner UK to the Bournes. In this regard, FSMS asserts two fraudulent conveyance claims and a purported claim for imposition of a constructive trust. Amended Complaint, FSMS II [ECF 33].

The defendants in FSMS II contend that all three claims should be governed by English law because TPUK is located in England. G.S. § 39-23.9A. Accordingly, the defendants have procured a report from an English Barrister, Ben Valentin, who explains that FSMS's misrepresentations and underhanded dealings are relevant under English law:

> Although the trigger conditions for liability to make restoration under s.423 set out the basic balance to be struck between the interests of the creditors and of a transferee as established by Parliament, the making of an order under s.423(2) and s.425 ***necessarily requires some further balancing of the interests of the transferor's creditors and of the transferee to be determined by the court*** . . . .

See Ex. I, Valentin Report ¶28 (quoting <u>4Eng Ltd v. Harper</u>) (emphasis added).

9

17501716v11 28344.00011
Case 3:21-cv-00501-RJC-WCM    Document 207    Filed 10/28/24    Page 9 of 14

Even if North Carolina law were to apply to the claims in FSMS II, the unclean hands defense can bar the two fraudulent conveyance claims. *See* G.S. § 39-23.10; *GE Cap. Com., Inc. v. Worthington Nat. Bank*, No. 3:09-CV-572-L, 2011 WL 5025153, at *4 (N.D. Tex. Oct. 20, 2011) (holding nearly identical language in the Texas fraudulent transfer statute permitted application of the unclean hands defense). The defense is equally pertinent with respect to the constructive trust remedy (misstated as a third claim for relief instead of a remedy) in the Amended Complaint. *See, e.g., Lane v. Lane*, 115 N.C. App. 446, 452, 445 S.E.2d 70, 73 (1994) ("it is clear that plaintiff's claim [for imposition of a constructive trust] is barred on the basis of the doctrine of unclean hands and equitable estoppel"). It bears noting that FSMS's conduct does not have to rise to the level of fraud for unclean hands to bar recovery, *Brissett v. First Mount Vernon Indus. Loan Ass'n*, 233 N.C. App. 241, 256, 756 S.E.2d 798, 809 (2014), so the discovery sought is appropriate even if the Tanner defendants' motion to amend is not granted.

Defendants anticipate the depositions of Roach, Hooks, and Kennedy will confirm that FSMS made material misrepresentations in its dealings with the Tanner defendants in August and September of 2020. The discovery sought may well unearth additional, currently unknown misrepresentations. FSMS's strenuous attempts to block the discovery indicate that FSMS apparently anticipates – and fears – the same outcome.

10

# ARGUMENT

The scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The "standard for issuance of a protective order is high." *Koppers Performance Chem., Inc. v. Travelers Indem. Co.*, 638 F. Supp. 3d 610, 613 (D.S.C. 2022) (quotation omitted). "A party moving for a protective order has the burden of making a particularized showing of why discovery should be denied, and conclusory or generalized statements in the motion fail to meet this burden." *Artis v. Murphy-Brown LLC*, No. 7:14-CV-237-BR, 2018 WL 3352639, at *2 (E.D.N.C. July 9, 2018).

The doctrine of unclean hands denies equitable relief to litigants "who have acted in bad faith, or whose conduct has been dishonest, deceitful, fraudulent, unfair, or overreaching in regard to the transaction in controversy." *Collins v. Davis*, 68 N.C. App. 588, 592, 315 S.E.2d 759, 762, *aff'd*, 312 N.C. 324, 321 S.E.2d 892 (1984). FSMS's only basis for claiming it is a "creditor" of the Bournes in FSMS II is its belief it is owed a significant amount of money under the contracts with Tanner. Therefore, FSMS's conduct in negotiations with Tanner is part of the "transaction in controversy" and relevant to the Bournes' unclean hands defense.

The Bourne defendants should be permitted to support their unclean hands defense through discovery. There is simply no basis for FSMS to cut off the development of evidence for this defense by arguing that, unless and until the Tanner defendants' motion to amend is granted, discovery should not be permitted to support the fraud claim and additional defenses that the Tanner defendants seek to assert in

FSMS I. The discovery at issue is relevant whether the motion to amend is permitted or not because the discovery supports the unclean hands defense asserted by the Bourne defendants in FSMS II. The two cases are consolidated for all discovery purposes.[4]

FSMS's core argument – that the discovery at issue should not be permitted unless and until the Court allows an amendment to assert a fraud counterclaim in FSMS I – is a red herring, *i.e.*, a disingenuous argument intended to distract the Court from the true issues presented. FSMS's position is disingenuous in another respect, as well. FSMS's counsel has been questioning witnesses about the misrepresentations in depositions, presumably in anticipation of the Court granting the motion to amend of the Tanner defendants in FSMS I. Ex. B (Scalia Rule 30(b)(6) Dep. at 65:16-66:9); Ex. I (Alvarenga Deposition Excerpt Tr. 55:2-4).

Moreover, even if the discovery were not relevant to the unclean hands defense, it would be appropriate for impeachment, as confirmed by the Wright & Miller treatise and the Committee Notes cited above. "No special status is given to impeachment evidence under Rule 26(b)(1)." *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 437 (D. Md. 2006). Such evidence is not exempted from disclosure, and must be produced "in the ordinary course of discovery." *Id.*

---

[4] In Exhibit A, counsel for the Bournes informed FSMS counsel of the relevance of the evidence to the Bournes' unclean hands defense. FSMS nevertheless proceeded to seek a protective order without even addressing the points raised in Exhibit A.

12
17501716v11 28344.00011
Case 3:21-cv-00501-RJC-WCM   Document 207   Filed 10/28/24   Page 12 of 14

## CONCLUSION

The Bournes respectfully request that the Motion for Protective Order be denied.

This the 28th day of October, 2024.

*s/ Robert W. Fuller*
Robert W. Fuller
N.C. Bar No. 10887
Amanda P. Nitto
N.C. Bar No. 45158
Emma W. Perry
N. C. Bar No. 58848
Anna Claire Tucker
N.C. Bar No. 59457

ROBINSON, BRADSHAW & HINSON, P.A.
101 N. Tryon St., Ste. 1900
Charlotte, North Carolina 28246
Telephone: 704.377.2536
Facsimile: 704.378.4000

rfuller@robinsonbradshaw.com
anitto@robinsonbradshaw.com
eperry@robinsonbradshaw.com
atucker@robinsonbradshaw.com

*Counsel for Defendants Raymond Fairbanks Bourne and Mary Everett Whitehurst Bourne*

<u>Artificial Intelligence Certification</u>

Pursuant to the Court's June 18, 2024 Order, 3:24-mc-104, I hereby certify that:

- No artificial intelligence was employed in doing the legal research for the preparation of this document, with the exception of such artificial intelligence embedded in standard on-line legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

- Every statement and every citation to an authority contained in this document has been checked by an attorney at this firm and/or paralegal working at their direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This 28th day of October, 2024.

<u>*s/ Robert W. Fuller*</u><br>Robert W. Fuller