# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

FS MEDICAL SUPPLIES, LLC,

      Plaintiff,

v.

TANNERGAP, INC. AND TANNER
PHARMA UK LIMITED,

      Defendants;

and

FS MEDICAL SUPPLIES, LLC,

      Plaintiff,

v.

TANNER PHARMA UK LIMITED; RAYMOND
FAIRBANKS BOURNE; MARY EVERETT
BOURNE,

      Defendants.

Case No. 3:21-cv-501-RJC-WCM
Case No. 3:23-cv-598-RJC-WCM

## TANNER PHARMA UK LIMITED'S AND TANNERGAP, INC.'S
## RESPONSE IN OPPOSITION TO
## <u>FSMS'S MOTION FOR PROTECTIVE ORDER CONCERNING DEPOSITIONS</u>

Defendants TannerGAP, Inc. ("TannerGAP") and Tanner Pharma UK Limited ("TPUK" and, together with TannerGAP, the "Tanner Defendants") oppose Plaintiff FS Medical Supplies, LLC's ("FSMS") Motion for Protective Order Concerning Depositions ("Motion"). Dkt. 201.

## I.    INTRODUCTION

FSMS tries to send deposition discovery off the rails in its latest motion, asking the Court to take the extraordinary measure of forbidding fact witness deposition testimony based solely on FSMS's view of relevance. FSMS incorrectly asserts that fact testimony the Defendants seek from FSMS's former personnel and FSMS itself is not relevant to the claims and defenses presently framed in these two actions. FSMS's relevancy argument is myopic and wrong, and FSMS fails to meet its burden to establish the "good cause" requisite for entry of a protective order. Remarkably, FSMS asks the Court to prohibit the Defendants from seeking **_any_** deposition testimony about nine topics. FSMS also seeks to prevent the Defendants from taking a meaningful deposition of FSMS's Rule 30(b)(6) designee and bar them from taking **_any_** deposition testimony of three former FSMS independent contractors who indisputably have personal knowledge relevant to the claims and defenses joined in these cases.[1]  *See generally* Dkt. 201.

FSMS seeks to jettison the Rules of Civil Procedure, which allow great leeway for deposition testimony while preserving objections for trial, and instead impose unworkable limits on testimony from former FSMS personnel. Moreover, it invites the Court to make rulings, **in the context of a discovery motion**, on evidentiary questions of **relevance and admissibility** and **merits** issues that are properly reserved for trial. This approach contravenes Rules 26 and 32.

---

[1] FSMS has represented that it had no employees, only independent contractors. Yet on FSMS's website, Charles Roach ("Roach") was listed as head of Marketing, Will Hooks ("Hooks") as Operations Manager, and Reese Kennedy ("Kennedy") as Managing Sales Associate. Roach, Hooks, and Kennedy communicated and did other relevant work on FSMS's behalf. FSMS says it has no control over these former contractors or their documents and ESI, but its counsel now represents Hooks and Kennedy.

1

Rule 32(b) fully addresses FSMS's arguments by providing that objections to deposition testimony on relevance or other admissibility grounds are preserved until a hearing or trial. And FSMS cannot make a "proportionality" argument to bar a handful of fact witness depositions in a case where it seeks hundreds of millions in theorized "damages." Fed. R. Civ. P. 26(b)(1); 32(b).

FSMS's request should be seen for what it is—gamesmanship intended to hamstring the Defendants' ability to obtain crucial fact witness testimony needed to defend against FSMS's claims and damages theories. FSMS itself has already taken **ten** depositions of current and former Tanner personnel, including a 44-topic Rule 30(b)(6) deposition of two TPUK designees for a full day each plus additional time on a third day. By contrast, so far Tanner has taken **one and a half** fact witness depositions: FSMS's members Jim Mao ("Mao") and Laird Cagan ("Cagan"), with Cagan's deposition suspended after less than three hours of testimony pending resolution of FSMS's Motion.

FSMS improperly seeks to hobble the Defendants and prevent them from challenging FSMS's liability and damages contentions and inquiring about the nine "forbidden" topics. FSMS's motion should be denied outright so that the parties can complete deposition testimony.

## II.     BACKGROUND

### a.  The Claims and Defenses Joined in *FSMS I* and *FSMS II*.

The claims remaining in FSMS's Amended Complaint allege that the Tanner Defendants breached a Non-Disclosure and Non-Circumvention Agreement ("NDNCA") and a Distribution Agreement they entered into with FSMS in 2020. Under the Distribution Agreement, signed after lengthy discussions, FSMS was to serve as a "supplier" to procure and provide TPUK with Covid-19 test kits for resale to customers outside the United States. *See generally* Dkt. 40.

TPUK was already in touch with its contacts in the UK Government about its need for test

kits. After entering the Distribution Agreement, TPUK successfully won the right to supply those test kits. Dkt. 63-3, Second J. Bracey Decl. ¶¶ 25-26. FSMS did little apart from facilitating two acquisitions of relatively small numbers of test kits for validation testing. *See* Ex. A, TPUK Rule 30(b)(6) Dep. Tr. 12:9-16 (S. Scalia, Sept. 30, 2024). TPUK ultimately bought directly from Orient Gene, a Chinese diagnostics manufacturer, and sold to the UK Government hundreds of millions of test kits in 2020, 2021, and 2022. *See* Dkt. 207-4, S. Scalia Dep. Tr. 38:1-3 (Individual Deposition). TPUK, without help from FSMS, managed the logistics of transporting these millions of test kits from China to the UK and shouldered the financial burden of prepaying millions of dollars needed to secure the kits amid intense worldwide demand. Dkt. 63-3, Second J. Bracey Decl. ¶ 26. FSMS did not assist in any of this. Yet, TPUK paid FSMS roughly $6.5 million to honor the Distribution Agreement it had with FSMS. Dkt. 207-5, J. Mao Dep. Tr. at 204:17-19; 205:5-8. It's undisputed that on October 24, 2020, the parties discussed the interpretation of the contract and the calculation of payments due FSMS, and TPUK explained its view and how it would perform those calculations. Ex. B, L. Cagan Dep. Tr. 23:19-24:9. Instead of contesting TPUK's reading of the contract and saying it believed it had been underpaid, FSMS invoiced TPUK and accepted the payments (ratifying the Tanner Defendants' interpretation of the Distribution Agreement), while secretly planning an ambush lawsuit once it had collected the final payment. *Id.* at 23:18-22; *see also* Dkt. 207-6.

Discovery so far has borne this out. In deposition testimony, FSMS principals Mao and Cagan have conceded that FSMS intentionally did not dispute TPUK's reading of the contract while planning to sue. Ex. B, L. Cagan Dep. Tr. 24:2-25:12. Cagan also admitted that FSMS did nothing to share pricing information with Tanner and did nothing to perform its contract obligations once it decided on its ambush strategy. *Id.* at. 21-25; 55:22-56:16. Mao admitted that,

despite its claimed "relationships" with manufacturers and unique ability to negotiate pricing—the basis for its new "pricing" damages claim—its total profit apart from what TPUK paid it was only $723,000. Ex. C, J. Mao Dep. Tr. 47:4-48:13 (Sept. 10, 2024).

In its Amended Complaint, FSMS alleges the Tanner Defendants breached the NDNCA by circumventing FSMS's "relationship" with Orient Gene in selling test kits to the UK Government. Dkt. 40 at ¶¶ 140-44. FSMS also alleges the Tanner Defendants breached the Distribution Agreement in various ways, including by "[f]ailing to purchase Covered Products from FSMS"; "[f]ailing to collaborate with FSMS prior to submitting bids"; "[f]ailing to collaborate with FSMS prior to quoting, shipping, or otherwise distributing Orient Gene Products in the UK"; "[f]ailing to collaborate with FSMS to set the best price to maximize the likelihood of winning business and making a profit"; "[f]ailing to deliver purchase orders to FSMS"; and "[f]ailing to work together with FSMS on logistics for shipment of Orient Gene products." *Id.* at ¶ 138.

In response, the Tanner Defendants asserted a number of affirmative and other defenses, pleading that FSMS's claims are barred by the doctrines of unclean hands, waiver, estoppel and laches. Dkt. 120 at 50-52. They assert that in recognition that it could not perform as a distributor, FSMS invoiced TPUK and took $6.5 million in payments, accepting TPUK's interpretation of the Distribution Agreement; and that FSMS's inability and ultimate failure to perform as a distributor under the Distribution Agreement excuses TPUK from making any further payments to FSMS. *Id.* The Tanner Defendants also assert that the NDNCA was superseded by the Distribution Agreement. *Id.* With their depositions, the Tanner Defendants are appropriately seeking discovery into the validity of FSMS's claimed "relationships;" its inability to actually perform as a distributor; contract interpretation issues; and FSMS's unclean hands.

4

In August, the Tanner Defendants moved to amend their Answer to include additional defenses and counterclaims. Dkt. 179. While FSMS opposes the Tanner Defendants' proposed misrepresentation-based defenses and counterclaims, FSMS does not oppose two of the proposed additional defenses. Dkt. 188 at 1. Specifically, the Tanner Defendants seek to add (and FSMS does not oppose) the defense that the NDNCA is void under California law as an illegal restraint on trade and that the Distribution Agreement was modified by the parties' course of performance, which recognized that FSMS could not perform as a distributor under the Distribution Agreement. *See* Dkt. 179-2 at 51, 53-54.

FSMS's "claims" have not been static since it filed the Amended Complaint. In expert reports and a Mao "opinion" disclosure served **on September 11**, and a supplemental Rule 26(a)(1)(A) disclosure that same day, FSMS revealed a new, additional damages theory premised on factual contentions that FSMS possessed special relationships and unique abilities to obtain better "sourcing" and "pricing" of test kits. *See* Exs. D-G. This putative expert testimony is premised on embedded factual contentions about the relevant market and sources for test kits and FSMS's supposedly unique abilities. The Defendants are entitled to probe these contentions in deposition testimony from FSMS and its personnel—the testimony FSMS seeks to prohibit.

These *FSMS I* contract claims and defenses have been consolidated for discovery with the fraudulent transfer claims FSMS brought in *FSMS II* against TPUK and its owners, Raymond Fairbanks Bourne and his wife, Molly. *See* Case No. 3:23-cv-598, Dkt. 1; *see also* Dkt. 165 (consolidating for discovery only). In *FSMS II*, FSMS alleges that the Bournes wrongfully caused TPUK to issue dividends in order to defraud FSMS and seeks to unwind the dividends and impose a constructive trust. *See* Case No. 3:23-cv-598, Dkt. 33. Both TPUK and the Bournes filed answers asserting equitable defenses, including unclean hands, based on FSMS's improper

conduct throughout the parties' relationship and during the relevant time period.  Case No. 3:23-cv-598, Dkt. 41 at 12; Dkt. 42 at 13.

   **b.  The Discovery the Defendants Seek is Relevant to Claims, Defenses and Damages Theories Now at Issue.**

   The discovery the Defendants seek and FSMS wants to avoid is relevant to the claims and defenses in both the contract and fraudulent transfer cases.  *See supra* Part II.a.  Specifically, FSMS seeks to prevent the Defendants from obtaining discovery from FSMS and its personnel about nine discrete subject areas that all bear directly on FSMS's "relationships" and lack of ability to perform under the Distribution Agreement and its new "pricing" damages theory:

- FSMS's website, the development of the website, and sources of statements on the website;
- FSMS's marketing materials, including brochures and price lists, and the development of the same;
- FSMS's sales personnel and sales channel partners, ***unless they communicated with Tanner***;[2]
- FSMS's dealings with third parties, and specifically manufacturers and other vendors of Covid test kits and related medical supplies, as well as middlemen and brokers related to the same;
- FSMS's large-scale distribution experience, including the stated experience of selling Covid-related supplies to Target stores;
- FSMS's statements to the Tanner Defendants about FSMS's ability to act as a distributor;
- FSMS's finances; and
- FSMS's document storage systems.

Dkt. 201 at 2-3 (emphasis added).

   On September 11, FSMS served expert reports that disclosed its damages claim, including a new "pricing" claim that theorizes that FSMS's purportedly singular abilities to negotiate and obtain better pricing could have led to bigger margins on test kits sales.  FSMS now claims $116-232 million in additional theorized "pricing" damages. *See* Ex. D, Dolgoff Report at 20.

---

[2] FSMS's attempt to limit deposition testimony to exclude testimony by sales personnel unless they communicated with Tanner has the practical effect of prohibiting any deposition testimony by FSMS's sales personnel.  That this is FSMS's goal is confirmed by FSMS's October 18 letter.  Dkt. 202-7, October 18 Letter from K. Yalowitz to B. Kahn.

Although FSMS is not so blunt, its demand is that the Court bar the Defendants from questioning any FSMS members or former contractor witnesses about these topics, which bear directly on FSMS's claims and damages theories as well as on the Tanner Defendants' defenses. FSMS seeks to severely constrain the questioning of its Rule 30(b)(6) designee and to bar entirely the depositions of three former FSMS contractor witnesses who have personal, firsthand knowledge of facts relevant to FSMS's claims and damages theories and Defendants' defenses—Charles Roach, Will Hooks, and Reese Kennedy.

### i. FSMS's Designee

The Tanner Defendants served their Notice of Rule 30(b)(6) Deposition of FSMS on October 7, 2024 ("Original Notice"). Dkt. 202-4, October 7 Notice of Rule 30(b)(6) Deposition. The Original Notice set out 62 topics on which the Defendants sought testimony from FSMS's designee. *Id.* These topics were informed by FSMS's discovery responses to date, including FSMS's interrogatory responses and document production, as well as its anticipated expert testimony. Dkt. 202-8, October 21 Letter from B. Kahn to K. Yalowitz (explaining relevance of topics). After a meet-and-confer, on October 21, the Tanner Defendants served an Amended Notice narrowed to 40 topics.[3] *Id.*; *see also* Dkt. 202-9.[4] Also in the October 21 correspondence, the Tanner Defendants described how the deposition topics were relevant to the claims in defenses in the cases, explaining (i) that the unclean hands defenses in both cases put FSMS's intent and motives at issue; (ii) that the Tanner Defendant's material breach defense puts FSMS's ability to

---

[3] FSMS's own Notice of Rule 30(b)(6) Deposition for TPUK contained 44 topics, and FSMS deposed two TPUK designees for roughly 22 hours.

[4] FSMS expert reports identified Aaron Dolgoff as an expert on damages and insolvency and Barry K. Lynn as an expert on "sourcing (especially in China), negotiating, procurement" and other topics. Exs. D, E. FSMS also served a disclosure indicating that its principal, Mao, would offer "expert testimony" on "the negotiation of prices with Chinese manufacturer and opinions and estimates concerning the prices that FSMS would have negotiated with Orient Gene . . ." Ex. F, Plaintiff's Disclosure Concerning Expected Expert Testimony of Jim Mao.

perform as a distributor at issue; and (iii) FSMS's own theories of damages, including those hypothesized by its expert Aaron Dolgoff, put FSMS's ability to perform at issue. *See* Dkt. 202-8, October 21 Letter from B. Kahn to K. Yalowitz.

The next day, FSMS demanded that the Tanner Defendants withdraw 17 of their 40 topics and drastically limit the other 23. Ex. H, October 22 Letter from K. Yalowitz to B. Kahn. FSMS's demands were rooted in FSMS's untenable position that the noticed topics related only to the Tanner Defendants' proposed misrepresentation-based claims and defenses, ignoring all the other issues to which the topics relate (as the Tanner Defendants set out in their October 21 letter). *Id.*; *see also* Dkt. 202-8, October 21 Letter from B. Kahn to K. Yalowitz. FSMS refused to tender a designee to testify to ***any*** of the Tanner' Defendants' topics as framed and made clear FSMS would not tender a designee for deposition on October 31. Ex. H, October 22 Letter from K. Yalowitz to B. Kahn. That deposition date had long been agreed, as contiguous to Cagan's October 29 fact witness deposition and Mao's October 30 "expert" deposition, all of which the Defendants agreed to take in Palo Alto, California.

In response, the Tanner Defendants said they planned to proceed with FSMS's Rule 30(b)(6) deposition as noticed, making clear that FSMS's counsel was free to object under Rule 32(b) to preserve relevance objections. Ex. I, October 23 Letter from B. Kahn to K. Yalowitz. FSMS responded on October 23, stating emphatically that it would not appear for its Rule 30(b)(6) deposition. Ex. J, October 23 Letter from K. Yalowitz to B. Kahn.

### ii. Charles Roach

On July 15, 2024, consistent with the Local Rules, the Tanner Defendants served a notice of intent to subpoena a nonparty for documents. *See* Dkt. 205-3. The document subpoena was directed to Roach and his company, Charles & Company, LLC. Roach began working with FSMS

in September 2020, later appeared on FSMS's website as its head of "Marketing," signed a Consulting Services Agreement in November 2020, and worked with FSMS to develop its marketing strategy and website. Ex. K, Roach Documents Submission at FSMS Page Vault Website Screenshot From 1.26.21; Roach_Subp_Resp_00000641; Roach_Subp_Resp_00000285. The Tanner Defendants sought this discovery because, based on its investigation, Roach had information related to FSMS's "relationships" with manufacturers, its ability to perform as a distributor, and facts relevant to Cagan and Mao's expected testimony and credibility. FSMS never objected to or moved to quash this document subpoena.

Through the documents produced by Roach and by FSMS, as well their own investigation, the Defendants have learned:

- Roach worked with FSMS to develop a marketing plan in late 2020;

- FSMS, through its principal, Laird Cagan, communicated with Roach about the sale of test kits to the UK Government;

- FSMS, through its principal, Laird Cagan, discussing pricing that FSMS could obtain from vendors and medical supply manufacturers;

- Roach and his firm entered a Consulting Services Agreement with FSMS in order to assist FSMS's distribution efforts;

- FSMS held out Roach as its Marketing chief on its website;

- Roach had relevant information about FSMS's "relationships" and operations.

See Ex. K, Roach Documents Submission.

After receiving Roach's document production (provided to FSMS on July 29, 2024, Ex. L), on October 15, 2024, the Tanner Defendants served a subpoena and a notice of deposition for a Rule 30 deposition of Roach on October 24. Dkt. 205. This date was chosen after Roach agreed to travel to Charlotte and testify voluntarily. Dkt. 205 at 2.

In response to a request to reschedule the deposition because of FSMS counsel Yalowitz's

personal conflict, the Tanner Defendants worked with Roach and rescheduled his deposition for November 6. *See* Dkt. 205-2. When the Tanner Defendants notified FSMS of this accommodation on October 21, FSMS abruptly indicated that it would "seek a protective order" to prevent the deposition. Ex. H, October 22 Letter from K. Yalowitz to B. Kahn. FSMS then filed its Motion and noticed FSMS's intent to serve Roach with its own document subpoena demanding compliance on November 1. Ex. M, FSMS's Not. of Intent to Serve Doc. Subpoena. FSMS also emailed Roach, urging him to postpone his deposition by suggesting the need for it would be "completely eliminate[d]" by a ruling in FSMS's favor. Dkt. 204-1. FSMS also demanded that Roach explain why he was unwilling to wait to be deposed and "counseled" him that he was not legally required to travel more than 100 miles for a deposition. Roach has now responded to FSMS's subpoena and remains willing to testify.

Despite Roach's willingness to provide highly relevant deposition testimony, FSMS now asks the Court to bar his deposition outright based on "irrelevance" and proportionality. *See* Dkt. 202-7, October 18 Letter from K. Yalowitz to B. Kahn; *see also* Dkt. 201.

### iii. Will Hooks and Reese Kennedy

The Tanner Defendants also seek to depose two other former FSMS contractors, Hooks and Kennedy. As with Roach, FSMS claims their testimony would be irrelevant and seeks to block their depositions entirely. Dkt. 202-7, October 18 Letter from K. Yalowitz to B. Kahn. But FSMS has produced documents (which FSMS presumably agrees are within the scope of discovery) that refer to and/or involve Hooks and Kennedy.

- Hooks appears to have earned significant commissions for making sales of Covid-related medical supplies PPE to customers on behalf of FSMS;

- Hooks' public LinkedIn profile indicates he managed an FSMS retail store in Texas;

- Hooks was also involved in ensuring customers executed non-disclosure and non-circumvention agreements before working with FSMS, was involved in discussions regarding sourcing gloves for the Tanner Defendants, and worked on marketing for and potential sales of Orient Gene test kits;

- Kennedy also appears to have earned significant commissions for sales of Covid-related medical supplies to customers on behalf of FSMS; and,

- Kennedy was provided with Orient Gene marketing information to use with customers, he discussed the provision of non-circumvention and non-disclosure agreements to FSMS customers, he assisted in providing marketing material to the Tanner Defendants, and he assisted in making sales of Orient Gene test kits to other FSMS customers.

Ex. N, Hooks/Kennedy Documents Submission.

Both Hooks and Kennedy appear to have personal knowledge about the claims (including claimed damages) and defenses in these cases, and the Defendants seek to depose them about that personal knowledge as well as the **FSMS-produced documents** that Hooks and Kennedy are likely to have knowledge of. FSMS's counsel now represent Hooks and Kennedy and have agreed, if FSMS's motion is denied, to accept deposition subpoenas. But FSMS seeks to preemptively bar their depositions on its own view—disputed by the Defendants—of relevance. *See* Dkt. 202-7, October 18 Letter from K. Yalowitz to B. Kahn; *see also* Dkt. 201.

The deposition testimony the Defendants seek, and FSMS wants to dodge, is directly relevant to the current scope of this case, including FSMS's claims and damages theories as well as the Defendants' defenses. And if the Tanner Defendants' Amended Answer and Counterclaims is permitted, FSMS's motion will be moot. *See* Dkt. 202-5 at 3-4 (topics that FSMS takes issue with relate to "proposed (but as yet unfiled) claims").

Either way, the Court should deny FSMS's Motion. FSMS's Motion is meritless, and the Court should not countenance FSMS's approach to discovery. FSMS's relevance-based objections have already bogged down the depositions of Mao and Cagan. During their depositions (including the suspended Cagan deposition) FSMS's counsel objected on relevance grounds and instructed

Cagan and Mao not to answer many times on relevance grounds. *See* Ex. B, L. Cagan Dep. Tr. Excerpts; Ex. O, J. Mao Dep. Tr. Excerpts (October 30, 2024). Rule 32(b) is meant to eliminate such obstructionist conduct, and a party's counsel cannot usurp the role of the Court. The Court should deny FSMS's Motion so that the depositions can proceed, with FSMS preserving its relevance objections under Rule 32(b).

### III.    ARGUMENT

A court may only issue a protective order "for good cause." Fed. R. Civ. P. 26(c)(1). Good cause to issue a protective order can exist when the moving party "'demonstrate[es] that specific prejudice or harm will result if no protective order is granted.'" *United States v. Google, LLC*, 692 F. Supp. 3d 583, 592 (E.D. Va. 2023) (quoting I*n re Zetia (Ezetimibe) Antitrust Litig.*, 2022 WL 18109999, *2 (E.D. Va. Feb. 7, 2022)). Protective orders are disfavored: "[s]uch orders are sparingly used and cautiously granted." *Google, LLC*, 692 F. Supp. 3d at 592 (citation and quotation omitted).

This is especially true where the discovery sought to be prohibited or topically limited is a deposition. *See, e.g.*, *S.E.C. v. Dowdell*, No. CIV.A.3:01CV00116, 2002 WL 1969664, at *2 (W.D. Va. Aug. 21, 2002) (citing 8, Charles Alan Wright et al., Federal Practice & Procedure § 2037 (2d ed. 1994))); *Doe v. Beaumont Indep. Sch. Dist.*, 615 F. Supp. 3d 471, 502 (E.D. Tex. 2022) (denying motion to prohibit deposition topics on sexual assault allegations because defendant must be afforded opportunity to "test" allegations through discovery); *Roanoke River Basin Ass'n v. Duke Energy Progress, LLC*, No. 1:17CV452, 2018 WL 11449628, at *1 (M.D.N.C. June 5, 2018) ("Thus, "'[i]n order to obtain a protective order prohibiting a deposition, the proponent must convince the Court that the information sought by the deposition lacks relevance to the extent that the likelihood and severity of the harm or injury caused by the deposition

outweighs any need for the information.'" (quoting *UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988))); *Bonumose Biochem, LLC v. Yi-Heng Zhang*, No. 3:17-CV-00033, 2018 WL 10068639, at *2 (W.D. Va. Sept. 10, 2018) (same). "Not only are protective orders prohibiting depositions rarely granted, but the plaintiff has a heavy burden of demonstrating the good cause for such an order." *Dowdell*, 2002 WL 1969664, at *2.

FSMS falls far short of meeting this heavy burden. It argues that the information the Defendants seek from fact witnesses including[5] FSMS's Rule 30(b)(6) designee, Roach, Hooks, or Kennedy is irrelevant to the claims and defenses currently in scope of the two cases, which have been consolidated for discovery, and is otherwise disproportionate. Dkt. 202 at 6-8. But FSMS ignores that there are *two* cases on which to seek discovery and that, across the two cases, there are multiple claims and defenses to which these witnesses' testimony is relevant. FSMS also utterly fails to articulate **any** reason why it would be prejudiced, and makes no harm or prejudice arguments. FSMS's arguments contradict the Rules.[6] Its Motion should be denied.

### a. The Discovery the Tanner Defendants Seek is Directly Relevant to the Claims and Defenses Currently in These Cases That Have Been Consolidated for Discovery

Evidence is relevant if it "has any tendency to make a fact [of consequence to the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. "The threshold

---

[5] Although FSMS's Motion does not reference the deposition of its member Laird Cagan, when the Court's Order of October 29 was issued temporarily staying the Roach, Hooks and Kennedy depositions, Cagan's in-progress deposition was suspended pending resolution of the Motion. *See* Dkt. 208. FSMS wants to prevent *all* fact witness deposition testimony on the issues outlined on pages 9-10 of its Motion.

[6] FSMS primarily argues that the Defendants' intended discovery should be prohibited because it all relates to the Tanner Defendants' misrepresentation-based proposed counterclaims and defenses. Dkt. 202 at 9-18. This argument is inaccurate, *see infra* Part III.a, and unpersuasive. As FSMS admits, during the depositions of Tanner witnesses, including TPUK's Rule 30(b)(6) designees, FSMS elicited testimony aimed at **defeating** the Tanner Defendants' proposed misrepresentation-based claims and defenses. *Id.* at 4 (arguing that Tanner Defendants cannot establish reasonable reliance for their misrepresentation-based claims and defenses based on testimony from TPUK's designee). FSMS's admission reveals that FSMS is attempting to hamstring the Tanner Defendants' ability to defend against FSMS's claims while precluding Defendants from countering with damaging information about FSMS. Fairness and a level playing field require that the Defendants be permitted to examine FSMS's witnesses without constraint.

for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at the trial stage." *Select Oilfield Servs., LLC v. Total Marine Servs. of Jefferson, Inc.*, No. CV 23-2431, 2024 WL 1701941, at *5 (E.D. La. Apr. 19, 2024). During discovery, relevant evidence includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* (quotations omitted).

Accordingly, district courts "may broadly construe" the relevancy standard. *Richardson v. Let's Pave, LLC*, No. 8:23-CV-01947-DCC, 2024 WL 4458216, at *1. (D.S.C. Oct. 10, 2024). "Discovery should be allowed unless the party opposing discovery establishes that the information sought can have no possible bearing on the claim or defense of the party seeking discovery." *Garsaud v. Wal-Mart La. LLC*, No. CV 23-4751, 2024 WL 3567477, at *2 (E.D. La. July 29, 2024) (quoting *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017)). "If relevance is in doubt, the court should be permissive in allowing discovery. *Id.*; *see also Select Oilfield Servs., LLC*, 2024 WL 1701941, at *5 (same).

Here, the testimony Defendants seek is relevant to multiple claims and defenses already within the scope of discovery (which encompasses both *FSMS I* and *FSMS II*). Specifically, the testimony is relevant to: (i) FSMS's affirmative claims for breach of contract; (ii) the Tanner Defendants' prior material breach defense; (iii) the Tanner Defendants' NDNCA defense; (iv) the Tanner Defendants' and the Bournes' defenses of unclean hands; and (v) the Tanner Defendants' proposed additional defenses not objected to. Each topic's relevancy is addressed below.

### i. FSMS's Affirmative Claims for Breach of Contract

FSMS forgets that discovery is permitted into "any nonprivileged matter that is relevant to any party's ***claim*** or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). Thus, the Tanner Defendants are not limited to obtaining discovery on their defenses; rather, they are entitled to

obtain discovery into issues related to FSMS's affirmative claims and damages theories. The deposition testimony the Defendants seek from FSMS's Rule 30(b)(6) designee and from the three contractor witnesses is directly relevant to FSMS's contract claims.

FSMS claims the Tanner Defendants are liable for hundreds of millions of dollars for alleged breaches of the NDNCA and the Distribution Agreement. Dkt. 40 at 29-30; 35. FSMS alleges multiple different breaches of both contracts. *See supraa* Part II.a.

FSMS has pursued these theories of breach in discovery. FSMS has submitted two expert reports and one expert "disclosure" to support FSMS's breach and damages theories, and in particular, its theory that it could have obtained better pricing on test kits so that profit margins would have been even greater (making FSMS's damage claim far larger). For instance, the Dolgoff expert report opines that, due to TPUK's breaches in not collaborating with FSMS on pricing with Orient Gene, FSMS can claim additional hundreds of millions in "pricing" damages. Ex. D, Dolgoff Report at 14-20. And Barry Lynn, a purported "sourcing" and price negotiation expert, opines that FSMS was such a crucial link in the supply chain that TPUK could not have managed an effective distribution transaction by working directly with Orient Gene without FSMS. Ex. E, Lynn Report at 5-7. FSMS also identified Mao as an unretained "expert" who will testify that "but for the breach of contract by [the Tanner Defendants] . . . FSMS could have negotiated prices that were at least comparable to the prices that other [anonymous] Orient Gene customers obtained," which were allegedly less than what TPUK paid. Ex. F, Plaintiff's Disclosure Concerning Expected Expert Testimony of Jim Mao. All this testimony is contradicted by FSMS's documents and Tanner witnesses' testimony.

The Tanner Defendants are entitled to probe these theories and the facts supporting them to test FSMS's contentions and related "pricing" damages claim. FSMS's claim necessarily

depends on its **actual ability** to effectively negotiate prices and add value to a distribution supply chain at a scale similar to that of the one at the center of the dispute here. *See, e.g.*, *Elevate Grp. LLC v. Amyx, Inc.,* No. 1:21-CV-48 (RDA/IDD), 2022 WL 3924267, at *6 (E.D. Va. Aug. 30, 2022) (discovery is for parties to "test their theories and defenses"); *Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 659 (E.D. Tex. 2013) (same); *Vital Pharms., Inc. v. Monster Energy Co.*, No. 19-60809-CIV, 2020 WL 13513442, at *2 (S.D. Fla. May 20, 2020), *aff'd*, No. 21-13264, 2022 WL 3083273 (11th Cir. Aug. 3, 2022) (striking damages claim due to late disclosure that prevented defendant from "test[ing] the Plaintiff's theory in discovery"). FSMS's experience in the field, its "pop-up" status, its use of intermediaries/brokers, and its representations about itself all bear directly on FSMS's affirmative breach claims and "pricing" damages, particularly because FSMS must prove those damages with reasonable certainty. *See, e.g.*, *Siga Techs., Inc. v. PharmAthene, Inc.*, 132 A.3d 1108, 1110 (Del. 2015), *as corrected* (Dec. 28, 2015) (plaintiff must prove expectation damages with reasonable certainty).

FSMS's Rule 30(b)(6) designee should be able to testify about these topics, and documents relevant to Roach, Hooks, and Kennedy make clear that each has related knowledge. *See* Ex. K, Roach Documents Submission at Roach_Supb_Resp_00000533 (Roach documents suggesting intent of FSMS to act as a distributor); Ex. N, Hooks/Kennedy Documents Submission at FSMS003225; FSMS017701 (Hooks and Kennedy documents suggesting knowledge in FSMS's sales strategy and ability to act as distributor). And as former members of FSMS's sales team, Hooks and Kennedy likely have firsthand knowledge of FSMS's ability (or lack thereof) to negotiate pricing and manage a supply chain to win sales. It would prejudice the Tanner

Defendants to deprive them of the testimony needed to test FSMS's claims and damages theories. *Lake Cherokee Hard Drive Techs.*, 964 F. Supp. 2d at 659.

### ii.   Prior Material Breach Defenses

The deposition testimony that FSMS seeks to peremptorily prohibit is also directly relevant to the Tanner Defendants' prior material breach defense.  That defense asserts "FSMS's failure to perform its obligations under and material breach of the Distribution Agreement excuses TannerGAP and TPUK from any performance, including payment obligations to FSMS, and entitles TPUK to recoup its payments of approximately $6.5 million from FSMS."  Dkt. 120 at 51. In deciding whether a party has committed a material breach that excuses the other party's performance, Delaware courts consider, among other things, "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing" and the "likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account all of the circumstances, including any reasonable assurances."  *Est. of Buller v. Montague*, No. CV S18C-11-007, 2020 WL 996883, at *5 (Del. Super. Ct. Mar. 2, 2020).

In its brief, FSMS agrees that a "material breach is 'a failure to do something . . . so fundamental to a contract" that the other party's performance is excused.  Dkt. 202 at 16 (quoting *Prime Victor Int'l Ltd. v. Simulacra Corp.*, 682 F. Supp. 3d 428, 446 (D. Del. 2023)).  But rather than concede that this shows why the Tanner Defendants' examination of witnesses to support its defense of prior material breach is relevant, FSMS instead argues the merits of the prior material breach defense and invites the Court to preemptively disallow the deposition testimony.

FSMS's argument "misstates the meaning of relevance for discovery purposes."  *Encore Big Beaver LLC v. Uncle Julio's of Fla., Inc.,* No. 20-CV-12345, 2022 WL 19001842, at *2 (E.D. Mich. Nov. 28, 2022).  Indeed, "a court deciding a discovery issue does not consider the merits of

the parties' claims and defenses in determining whether the requested discovery is relevant and proportional to the needs of the case" because the merits are "properly addressed at summary judgment." *Id.* (quotations omitted). FSMS's marketing materials, the source of statements they contain, its ability to serve as a direct distributor instead of using middlemen or intermediaries, its financial resources, and its limited experience, among other issues, all bear on FSMS's good faith in its purported intention and ability to perform as a distributor under the Distribution Agreement. The Tanner Defendants should be permitted to question FSMS fact witnesses about these issues.

### iii. NDNCA Defenses

FSMS seeks to wall off Hooks and Kennedy from testifying altogether based on its preemptive relevance argument. But their testimony is relevant to, among other things: (1) FSMS's claims for breach of the NDNCA; (2) the Tanner Defendants' defense that the NDNCA was superseded; and (3) the Tanner Defendants' defenses that they complied with the Distribution Agreement and NDNCA. Both Hooks and Kennedy appear to have been involved in the negotiation and execution of contracts at FSMS, including distribution and non-circumvention agreements. Ex. N, Hooks/Kennedy Documents Submission at FSMS002989; FSMS002800. To the extent that either the Distribution Agreement or NDNCA is ambiguous,[7] this Court may look to "extrinsic evidence to interpret [the] ambiguous contractual provision." *Aleynikov v. Goldman Sachs Grp., Inc.*, 765 F.3d 350, 362 (3d Cir. 2014) (applying Delaware law). Such evidence includes the parties' "prior agreements and communications. . . as well as trade usage [and] course of dealing." *Id.* FSMS's agreements with other counterparties and evidence of how individuals at FSMS understood the Distribution Agreement and the NDNCA are relevant extrinsic evidence.

---

[7] In its ruling on the Rule 12 motions, this Court held that the Distribution Agreement was ambiguous as to whether the NDNCA was operative. Dkt. 117 at 7. The Court could reach the same conclusion as to the NDNCA. *Id.* at 9-11 (analyzing potential merged contract).

*Id.*  FSMS has questioned all of the Tanner witnesses about their interpretation of the Distribution Agreement, but seeks to deny the Tanner Defendants equivalent discovery.  FSMS also seeks to limit testimony to its Rule 30(b)(6) designee while barring other less-biased witnesses from testifying.  *Compare* Dkt. 202-4 (topics for TannerGAP and TPUK's Rule 30(b)(6) notice to FSMS); *with* Dkt. 202 at 7 n.3 & 8 n.4 (topics that FSMS is challenging).  Because these are proper topics for discovery, and Hooks and Kennedy clearly have knowledge about FSMS's contracting practices, this Court should not bar their depositions.

### iv.  Unclean Hands Defenses

FSMS's argument that the unclean hands affirmative defenses are "irrelevant" is also unavailing.  FSMS focuses entirely on the Tanner Defendants' unclean hands defenses and ignores the Bournes' unclean hands defense.  *See* Dkt. 202 at 14-16.  The Bournes' unclean hands defense must be considered when evaluating the relevancy of the testimony sought.  And the testimony sought **is** relevant to the currently pled defenses of unclean hands.

Unclean hands is an equitable defense that provides that "one who comes to the court with unclean hands is barred from equitable relief."  *Omoa Wireless, S. Der. L. v. United States*, No. 1:06-cv-148, 2010 WL 3199959, at *8 (M.D.N.C. Aug. 12, 2010).  FSMS seeks equitable relief in both cases; in *FSMS II*, it seeks the imposition of a constructive trust and avoidance of fraudulent transfer, and in *FSMS I*, if Tanner succeeds on its contract defenses FSMS may be left to seek equitable *quantum meruit* relief.  *See* Case No. 3:23-cv-598, Dkt. 33 at 12; Case No. 3:21-cv-501, Dkt. 40 at 35.  Both the Tanner Defendants and the Bournes are entitled to develop their unclean hands defenses to rebut any claim by FSMS that equitable relief is proper *FSMS I* or *FSMS II*.

Specifically, FSMS's motivations and intent behind marketing itself as a distributor and representing its capabilities to the Defendants, as well as to third parties, are relevant to the unclean

hands defenses. This is because FSMS cannot be awarded equitable relief—whether in the form of the imposition of a constructive trust, avoidance of the transfers of dividends, or other equitable relief—if it has acted "in bad faith" or its "'conduct has been dishonest, deceitful, fraudulent, unfair, *or overreaching* in regard to the transaction in controversy.'" *Brissett v. First Mount Vernon Indus. Loan Ass'n,* 756 S.E.2d 79, 809 (N.C. Ct. App. 2014) (quoting *Collins v. Davis*, 315 S.E.2d 759, 762 (N.C. Ct. App. 1984), *aff'd*, 321 S.E.2d 892 (N.C. 1984)) (emphasis added); *see also Lane v. Lane*, 445 S.E.2d 70, 73 (N.C. Ct. App. 1994) ("[I]t is clear that plaintiff's claim [for imposition of a constructive trust] is barred on the basis of the doctrine of unclean hands and equitable estoppel."); *OMOA Wireless*, 2010 WL 3199959, at *8 (plaintiff could not "receive relief in equity from a fraud in which she participated"); Dkt. 207-10, Valentin Report ¶ 28 (under English law, good faith and clean hands of the plaintiff is relevant to FSMS's equitable claims for constructive trust and avoidance of the dividends).

The testimony of Roach, Hooks, Kennedy, FSMS's Rule 30(b)(6) designee, and Cagan is relevant to whether FSMS acted in good faith. Roach is likely to have knowledge about the capabilities FSMS wanted to claim and advertise, the source and validity of factual statements on FSMS's website, and FSMS's dealings with third parties. As FSMS's former contractors, Hooks and Kennedy are likely to have knowledge about FSMS's actual relationships and distribution efforts, including its claim of sales to Target stores; FSMS's ability to act as a distributor; and the truth of FSMS's representations to third parties. And FSMS's Rule 30(b)(6) designee and member, Laird Cagan, are certainly likely to have first-hand knowledge of FSMS's motivations and intentions and its capabilities— or lack thereof.

FSMS's arguments that these depositions are irrelevant miss the mark. FSMS first tries to link the unclean hands defenses solely to the Tanner Defendants' proposed misrepresentation-

based claims and defenses, Dkt. 202 at 14-16, but as explained above, a party need not have committed actual fraud to have unclean hands. Bad faith or unfair conduct that does not rise to the level of fraud is sufficient to prevent the award of equitable relief. *See, e.g., Brissett*, 756 S.E. 2d at 809 (a finding of unclean hands does not require fraud and stating that "fraud is not required to preclude equitable relief on the basis of unclean hands"). Both the Tanner Defendants and the Bournes have alleged bad faith and unfair conduct by FSMS and they should be able to develop those allegations during discovery.

### v. Proposed Additional Defenses FSMS Does Not Oppose.

While the Tanner Defendants' Motion to Amend has not yet been granted, FSMS has told the Court it does not oppose the proposed additional defenses of modification, waiver, and acquiescence by course of performance, and the NDNCA being void as a matter of law. Dkt. 188 at 1 n.1. FSMS's non-opposition is sufficient to satisfy the Rule 15(a)(2) standard for amendment, so it is reasonable and appropriate to deem those additional defenses as part of the case for discovery purposes. *See* Fed. R. Civ. P. 15(a)(2) (party may amend with the opposing party's written consent); *see also Spring House Com., LLC v. City of Richmond,* No. CV 5:21-149-KKC, 2022 WL 2232143, at *1 (E.D. Ky. June 21, 2022) (defendant's non-opposition to proposed amendments "satisfie[d] Rule 15(a)(2)'s first potential condition"); *Software Pricing Partners, LLC v. Geisman*, No. 3:19-CV-195-RJC-DCK, 2021 WL 12092946, at *2 (W.D.N.C. May 12, 2021) (granting motion to amend in part because motion was unopposed).

The two unopposed proposed defenses allege (1) that the Distribution Agreement was modified by the parties' course of performance because, after entering into the contract, FSMS "proved unable and/or unwilling" to perform as a distributor so the parties modified the contract to "discharge FSMS from its performance obligations" as a distributor; and (2) that the NDNCA

is void as a matter of California law because it imposes an unreasonable restraint on trade.  Dkt. 179-1 at 51; 55.

The testimony of FSMS's Rule 30(b)(6) designee, Cagan, Roach, Hooks, and Kennedy is directly relevant here.  The Tanner Defendants allege FSMS was unable or unwilling to perform as a distributor, so they are entitled to develop that theory by obtaining discovery on FSMS's ability and motivation to perform as a distributor by looking into FSMS's finances, its marketing strategy, its sales force, and its prior experience.  The Tanner Defendants also allege that the terms of the NDNCA create an unreasonable restraint on trade under California law, so they are entitled to develop that theory by obtaining discovery on FSMS's intent and strategy in using non-circumvention agreements generally, a topic both Hooks and Kennedy have demonstrated knowledge of.  *See* Ex. N, Hooks/Kennedy Documents Submission at FSMS001104, FSMS017701, FSMS002800.  The Tanner Defendants have "broad rights to discovery under Rule 26" that allow them to develop evidence about their unopposed defenses.  *Encore Big Beaver LLC*, 2022 WL 19001845, at *2.

### b. There is No Good Cause to Grant FSMS the Relief it Seeks.

FSMS must establish good cause before it can be granted the protective order it seeks. *See* Fed. R. Civ. P. 26(c)(1).  FSMS does not come close to satisfying its burden here.

First, as to the depositions of Roach, Hooks, and Kennedy, FSMS makes ***no argument*** that there is good cause to stay or prohibit their depositions.  And for good reason.  The burden of establishing good cause in connection with trying to prevent or stop a deposition is a "heavy" one. *See, e.g.*, *Scrap King, LLC v. Stericycle, Inc.*, No. 8:18-cv-733-T-35AEP, 2019 WL 13256809, at *1 (M.D. Fla. May 14, 2019) (citations omitted).  In fact, that burden is so heavy that "absent

extraordinary circumstances," a court order prohibiting a deposition "would likely be in error."[8] *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979). FSMS makes no effort to overcome this heavy burden and cannot establish extraordinary circumstances. Thus, FSMS's requests to delay or otherwise prevent the three nonparty witness depositions should be summarily denied.

Second, with respect to the deposition of FSMS's Rule 30(b)(6) designee and Cagan, FSMS's "good cause" argument is likewise unavailing. FSMS argues that some of the noticed topics (in particular the ones that inquire about FSMS's finances, its dealings with third parties, and its wherewithal as a business) are "intrusive" and disproportionate because they seek to impose "annoyance, embarrassment, oppression, and undue burden and expense." *See* Dkt. 202 at 19-21. Such conclusory statements are insufficient to show good cause, particularly where, as here, the topics are relevant to issues in the case. *Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C. 1987); *see also In re: Motor Fuel Temperature Sales Pracs Litig.*, No. 07-MD-1840-KHV, 2012 WL 12548410, at *2 (D. Kan. May 4, 2012) (rejecting conclusory arguments as to good cause and denying motion for protective order seeking to prohibit depositions).

More to the point, though, the discovery the Defendants seek is not disproportionate to the needs of the case and the Rules inherently protect against any prejudice FSMS could claim. FSMS demands nearly $400 million in damages from the Tanner Defendants. In pursuit of those damages, FSMS has obtained over 400,000 pages of documents from the Tanner Defendants and over 70 hours of deposition testimony from ten of their fact witnesses. By contrast, FSMS has produced just a fraction of the number of documents that Defendants have and has only allowed one deposition of one fact witness and a few hours of a second. It is reasonable and proportionate

---

[8] Moreover, FSMS's standing to challenge these depositions is doubtful. *See, e.g.*, *Barnett v. United States*, No. 2:20-cv-02517-DCV, 2021 WL 3472665, at *1 n.1 (D.S.C. Aug. 6, 2021) ("Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." (quotations omitted)).

to allow the Defendants to take an additional three nonparty fact witness and to conduct a thorough deposition of FSMS and of Cagan. *See* Fed. R. Civ. P. 26(b)(1); *see also City of Almaty v. Ablyazov,* No. 15–CV–05345 (AJN) (KHP), 2018 WL 2148430, at *3 (S.D.N.Y. May 10, 2018) (allowing deposition and taking into account "the difficulty Plaintiffs have had accessing information in light of the fact that the Defendants have produced little-to-no documents concerning the source of funds used to purchase the real estate that has been attached in connection with this action").

Finally, if FSMS is concerned about the Defendants eliciting irrelevant testimony, the protections afforded by Rule 32(b), which preserves all objections except as to form, address FSMS's concern. *See* Fed. R. Civ. P. 32(b); *see also United States v. White*, No. 2:23-CV-00001-BO, 2024 WL 2164683, at *6 (E.D.N.C. May 14, 2024) (objections should be kept to a minimum in light of Rule 32's protections); *Strickland v. City of Las Cruces*, No. 2:23-CV-116 KG/KRS, 2024 WL 3741515, at *4 (D.N.M. Aug. 9, 2024) (argument that relevancy objections are waived if not asserted during deposition was without merit in light of Rule 32); *Luangisa v. Interface Operations*, No. 2:11-CV-00951-RCJ, 2011 WL 6029880, at *10 (D. Nev. Dec. 5, 2011) (stating that it "is usually not necessary to object during a deposition on relevance grounds" and emphasizing that "in the face of irrelevant questions, the proper procedure is to answer the questions, noting them for resolution at pretrial or trial"). FSMS's Motion should be denied.

## IV. CONCLUSION

For the reasons stated above, the Tanner Defendants respectfully request that this Court deny Plaintiff's Motion for Protective Order Concerning Depositions.

This the 6th day of November, 2024.

MCGUIREWOODS LLP

By: _/s/ Bradley R. Kutrow_
Bradley R. Kutrow
N.C. State Bar No. 13851
Brian A. Kahn
N.C. State Bar No. 29291
Anita Foss
N.C. State Bar No. 47743
Jessica O'Brien Peretz (formerly Jessica L. O'Brien
N.C. State Bar No. 56679
Kelly A. Warlich
N.C. State Bar No. 51053
201 North Tryon Street, Suite 3000
Charlotte, NC 28202-2146
Telephone: (704) 343-2049
Facsimile: (704) 343-2300
bkutrow@mcguirewoods.com
bkahn@mcguirewoods.com
afoss@mcguirewoods.com
jperetz@mcguirewoods.com
kwarlich@mcguirewoods.com

Mark E. Anderson
N.C. State Bar No. 15764
501 Fayetteville Street, Suite 500
Raleigh, NC 27601
Telephone: (919) 755 -6678
Facsimile: (919) 755-6699
manderson@mcguirewoods.com

Anne Doherty
N.C. State Bar No. 55494
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-7633
Facsimile: (804) 775-1061
adoherty@mcguirewoods.com

*Attorneys for Defendants TannerGAP, Inc. and Tanner Pharma UK Limited*

## CERTIFICATION

Pursuant to this Court's June 18, 2024 Order regarding the use of artificial intelligence, the undersigned states that:

1.      No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

2.      Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 6th day of November, 2024.

/s/ Bradley R. Kutrow
Bradley R. Kutrow
N.C. State Bar No. 13851
McGuireWoods LLP

*Counsel for Defendants TannerGAP, Inc. and Tanner Pharma UK, Ltd.*