UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| FS MEDICAL SUPPLIES, LLC,<br><br>    Plaintiff,<br>v.<br><br>TANNERGAP, INC. *ET AL*<br><br>    Defendants. | Civil Action No.<br>3:21-CV-501-RJC-WCM |

## MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

**ARNOLD & PORTER**
  **KAYE SCHOLER LLP**
250 W 55th Street
New York, NY 10019
212-836-8000
kent.yalowitz@arnoldporter.com
carmela.romeo@arnoldporter.com

– and –

1144 Fifteenth Street, Suite 3100
Denver, CO 80202
303-863-1000
eliseo.puig@arnoldporter.com

**MAYNARD NEXSEN PC**

227 W. Trade Street, Suite 2300
Charlotte, NC 28202
Telephone: (704) 339-0304
lerwin@maynardnexsen.com
dluzum@maynardnexsen.com
kzhao@maynardnexsen.com

*Counsel for Plaintiff*

November 26, 2024

Plaintiff respectfully submits this memorandum in opposition to the motion for a protective order filed by Defendants Tanner Pharma UK Limited and Tanner-GAP, Inc. ("Tanner"), to "quash" the deposition notice directed to Robert Keel.

The Court should deny the motion. Mr. Keel is an Executive Vice President at Tanner Pharma Group. He was substantively involved in several events at issue during the critical period. His name is on close to 1,000 documents produced by Defendants. Defendants even identified him as a "person likely to have discoverable information" under Rule 26(a)(1)(A)(i).

Defendants contend that the notice is procedurally deficient and that permitting a deposition of Mr. Keel to go forward would violate principles of proportionality. Neither argument has merit. With regard to procedure, the notice was timely under the Court's scheduling order (contrary to Defendants' insinuation), and the notice was proper under Rule 30(b)(1) because Mr. Keel is an "officer" of Tanner Pharma UK Limited (TPUK) and because he is a "managing agent" of TPUK under the test that courts in this Circuit apply to determine if a witness is a "managing agent" for purposes of Rule 30(b)(1).

With regard to proportionality, Defendants' argument is meritless. They have *agreed* that his deposition can go forward, but only subject to scope and time limitations—even though Defendants have refused to accept any such limitations for their own upcoming depositions of non-parties. Their proportionality argument has nothing to do with the *logistics* of the deposition but reflects an effort to "game" the deposition by limiting the *topics*. In a case involving, in Defendants' words, "hundreds of millions" in damages, the deposition of Mr. Keel is proportional.

## BACKGROUND

Robert Keel is an Executive Vice President at Tanner Pharma Group. Exs. A, B. Earlier in discovery, Defendants identified him as an employee of Tanner Pharma UK. Ex. C. Defendants admit that Mr. Keel has knowledge relevant to the dispute, since Defendants amended their Rule 26(a)(1) disclosures to include him as a witness for their case in chief. Ex. D.

After attempting without success to obtain Tanner's agreement for a deposition, FSMS noticed Mr. Keel's deposition to go forward by remote video on November 22, 2024. ECF 230-4.

Defendants have offered to proceed with the deposition, but only if Plaintiff agreed to limit the deposition to a ninety-minute session directed to a single topic. When Plaintiff proposed reciprocal limitations for non-parties Hooks and Kennedy, Defendants rejected the proposal.

## LEGAL STANDARD

As defendants explained in their opposition to FSMS's motion for a protective order on depositions, courts have imposed a heavy burden for the relief they seek:

A court may only issue a protective order "for good cause." Fed. R. Civ. P. 26(c)(1). Good cause to issue a protective order can exist when the moving party "'demonstrate[es] that specific prejudice or harm will result if no protective order is granted.'" *United States v. Google, LLC*, 692 F. Supp. 3d 583, 592 (E.D. Va. 2023) (quoting *In re Zetia (Ezetimibe) Antitrust Litig.*, 2022 WL 18109999, *2 (E.D. Va. Feb. 7, 2022)). Protective orders are disfavored: "[s]uch orders are sparingly used

and cautiously granted." *Google, LLC*, 692 F. Supp. 3d at 592 (citation and quotation omitted).

This is especially true where the discovery sought to be prohibited or topically limited is a deposition. *See, e.g.*, *S.E.C. v. Dowdell*, No. CIV.A.3:01CV00116, 2002 WL 1969664, at *2 (W.D. Va. Aug. 21, 2002) (citing 8, Charles Alan Wright et al., Federal Practice & Procedure § 2037 (2d ed. 1994)); *Doe v. Beaumont Indep. Sch. Dist.*, 615 F. Supp. 3d 471, 502 (E.D. Tex. 2022) (denying motion to prohibit deposition topics on sexual assault allegations because defendant must be afforded opportunity to "test" allegations through discovery); *Roanoke River Basin Ass'n v. Duke Energy Progress, LLC*, No. 1:17CV452, 2018 WL 11449628, at *1 (M.D.N.C. June 5, 2018) ("Thus, '[i]n order to obtain a protective order prohibiting a deposition, the proponent must convince the Court that the information sought by the deposition lacks relevance to the extent that the likelihood and severity of the harm or injury caused by the deposition outweighs any need for the information.'" (quoting *UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988))); *Bonumose Biochem, LLC v. Yi-Heng Zhang*, No. 3:17-CV-00033, 2018 WL 10068639, at *2 (W.D. Va. Sept. 10, 2018) (same). "Not only are protective orders prohibiting depositions rarely granted, but the plaintiff has a heavy burden of demonstrating the good cause for such an order." *Dowdell*, 2002 WL 1969664, at *2.[1]

---

[1] Plaintiff and Defendants agree on the applicable standard, as this was the same standard they set forth in Defendants' Response in Opposition to FSMS's Motion for Protective Order Concerning Depositions at 12-13 (Nov. 6, 2024) (ECF 211).

# ARGUMENT

## I. THE TESTIMONY OF KEEL IS RELEVANT AND PROPORTIONAL

The deposition meets the relevance standard. As Defendants pointed out in their recent opposition to FSMS's motion for a protective order:

> "The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at the trial stage." *Select Oilfield Servs., LLC v. Total Marine Servs. of Jefferson, Inc.*, No. CV 23-2431, 2024 WL 1701941, at *5 (E.D. La. Apr. 19, 2024). During discovery, relevant evidence includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* (quotation omitted)….
>
> "Discovery should be allowed unless the party opposing discovery establishes that the information sought can have no possible bearing on the claim or defense of the party seeking discovery." *Garsaud v. Wal-Mart La. LLC*, No. CV 23-4751, 2024 WL 3567477, at *2 (E.D. La. July 29, 2024) (quoting *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017)). "If relevance is in doubt, the court should be permissive in allowing discovery. *Id.*; *see also Select Oilfield Servs., LLC*, 2024 WL 1701941, at *5 (same).

Defendants' Response in Opposition to FSMS's Motion for Protective Order Concerning Depositions at 13-14 (Nov. 6, 2024) (ECF 211).

Mr. Keel was (and remains) a senior executive of the Tanner Pharma Group. His involvement in the underlying matters at issue was less extensive than that of some other executives, but his name appears in nearly 1,000 documents produced by Defendants. He had communications on key issues including:

- Tanner's internal communications acknowledging an understanding that Tanner would "split profit with FSMS."

- Tanner's internal communications instructing key personnel to "keep the details" of the UK Government project "to only those within the Company

- and UK Government and Orient Gene."
- Tanner's internal communications concerning the relationship with Orient Gene.
- Tanner's internal communications acknowledging that FSMS "does have a signed contract with Tanner that we will split it all 50-50."
- Strategies for communications to the UK Government.

Ex. E (Collection of Keel Documents). Mr. Keel's testimony plainly will shed light on the dispute concerning the contract and the Orient Gene relationship.

The discovery is also proportional. At issue is a single deposition. Defendants successfully opposed a motion for a protective order with regard to three non-party witnesses, dismissing proportionality as inapplicable to "a handful of fact witness depositions in a case where [FSMS] seeks hundreds of millions in … damages." Defendants' Response in Opposition to FSMS's Motion for Protective Order Concerning Depositions at 2 (Nov. 6, 2024) (ECF 211). If three non-party depositions were proportional, the one deposition at issue here is an a fortiori case. Moreover, Defendants' argument that Mr. Keel's deposition is of little value when FSMS has deposed other Tanner employees is ironically insincere when less than a month ago Defendants argued that they should be able to depose three non-party witnesses because of the potential impeachment value of the depositions. Given Defendants' *agreement* to have Mr. Keel sit for deposition—but only if Plaintiff agreed to time and subject limitations imposed by Defendants—the proportionality argument falls by the wayside.

## II. THE DEPOSITION NOTICE WAS PROCEDURALLY PROPER

Defendants argue that the notice was procedurally improper. They are wrong.

**A. Timing.** Plaintiff issued the notice with adequate time to complete the deposition before the discovery deadline—even before the Court expanded the deadline by two weeks. Contrary to Defendants' insinuation, there has never been any implied or express agreement to an end-point for completion of Defendants' witnesses.

**B. Notice Rather Than Subpoena.** Under Rule 30(b)(1), an "examining party may request that [an] organization select and produce a representative deponent who is an officer, a director, or a managing agent of the entity; alternatively, the examining party may select a particular officer, director, or managing agent for deposition and order the organization to produce the person." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 268 F.R.D. 45, 48 (E.D. Va. 2010); *Travelers Indemnity Co. v. Hash Mgt.*, 173 F.R.D. 150, 155 (M.D.N.C. 1997); 8A *Wright & Miller's Fed. Prac. & Proc.: Civ.* § 2103 (3d ed.) ("the corporation is responsible for producing its officers, managing agents, and directors if notice is given").

**1. Officer.** Plaintiff noticed Mr. Keel as an *officer* of Tanner Pharma UK because he is an Executive Vice President of Tanner Pharma Group (Exs. A, B), and because Defendants identified him as an employee of Tanner Pharma UK. Ex. C. That makes him an "officer." *See Schweikert v. Bank of America, N.A.*, 521 F.3d 285, 289 (4th Cir. 2008) (vice president was an "officer"); *Palmer Coal & Rock Co. v. Gulf Oil Co.*, 524 F.2d 884, 887 (10th Cir. 1975) (person held out as a corporation's "vice president" is an "officer"); *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520,

525 (9th Cir. 1989) ("Executive Vice President" was "clearly" an officer). Defendants now say that he is actually *not* an employee of TPUK (contrary to counsel's earlier representations), but rather of a subsidiary of TPUK. Defendants should be held to their earlier admission, especially given the poor track record of Ms. Smott as a witness. (She is the one who submitted a demonstrably false sworn statement that Tanner's "standard terms and conditions"—which were incorporated into the Distribution Agreement and contained a consent-to-jurisdiction clause—did not exist. *Compare* ECF 63-4 ¶ 5 (false Smoot Declaration), *with* ECF 75 ¶ 3 (stipulation withdrawing the representation as incorrect).) The documentary evidence confirms that Defendants hold Mr. Keel out as an "Executive Vice President" of "Tanner Pharma Group" without distinction among the nest of corporate entities using the "Tanner Pharma" name.

**2. Managing Agent.** Mr. Keel is also a managing agent of TPUK. Courts in this Circuit apply the following factors to determine whether a person is a managing agent:

> (1) the discretionary authority vested in the person by the corporation; (2) the employee's dependability in following the employer's directions; (3) whether the individual is more likely to identify with the corporation or the adverse party in the litigation; and (4) the degree of supervisory authority in areas pertinent to the litigation.

*E.I. DuPont*, 268 F.R.D. at 48–49; *In re Honda Am. Motor Co., Inc. Dealership Rels. Litig.*, 168 F.R.D. 535, 540 (D. Md. 1996); *Felman Prod., Inc. v. Indus. Risk Insurers*, No. 3:09-CV-00481, 2010 WL 5110076, at *2 (S.D.W. Va. Dec. 9, 2010).

"Of these factors, the third—the employee's identity of interests with his employer as opposed to the opposing party—is 'paramount.'" *E.I. DuPont*, 268 F.R.D.

7

at 49 (quoting *Honda*, 168 F.R.D. at 540). Courts do not elevate form over function in applying the managing agent test: "virtually all courts and commentators agree that the question of whether a particular person is a 'managing agent' is to be answered pragmatically, on an *ad hoc* basis, considering the facts of the particular case." *Calderon v. Experian Info. Sols., Inc.*, 290 F.R.D. 508, 518 (D. Idaho 2013); *see Calgene, Inc. v. Enzo Biochem, Inc.*, No. Civ. S93-0195, 1993 WL 645999, at *8 (E.D. Cal. Aug. 23, 1993) (holding that consultant and advisory board member who identified with interests of company and who had "power regarding the subject matter of the litigation" was managing agent).

"[W]hile the burden is on the party seeking the discovery to prove that the potential witness is a managing agent of the corporation, this burden is a modest one, and at least at the discovery stage, all doubts are to be resolved in favor of the party seeking the depositions." *Calderon v. Experian Info. Sols., Inc.*, 287 F.R.D. 629, 632–33 (D. Idaho 2012) (collecting cases), *aff'd*, 290 F.R.D. 508 (D. Idaho 2013). Courts in this District have thus required "managing agents" of defendants to appear for deposition. *E.g.*, *Mousselli v. Hunter Warfield, Inc.*, No. 3:23-CV-411-MOC-DCK, 2024 WL 3734249, at *2 (W.D.N.C. July 5, 2024).

Here, the "paramount" question is whether Mr. Keel is likely to identify with Tanner or FSMS. Given the fact that he has been an Executive Vice President of Tanner for eight years, the answer is, obviously, Tanner. Mr. Keel's advanced education (he has an MBA from Harvard Business School) combined with his long tenure at Tanner supports the conclusion that he has discretionary authority and that he can be expected to follow Tanner's directions dependably. Indeed, he was involved

in the matters on which he will be examined *precisely because* he was a member of the Tanner Pharma Group leadership team.

The out-of-circuit cases Defendants cite are not persuasive. None of them apply the four-part test for determination of whether a witness is a managing agent. That test is well-established in this Circuit. The cases Defendants cite are also easily distinguished under the four-part test. In *Benicar*, the court distinguished other cases where there were findings that "that the requested deponents were defendants' managing agents," explaining: "No such argument is made here." *In re: Benicar (Olmesartan) Prod. Liab. Litig.*, 2016 WL 5817262, at *4 (D.N.J. Oct. 4, 2016). The *Herron* case involved managing agents of a "service vendor" to a party, rather than managing agents of the party to the litigation. *Herron v. Progressive Car Fin., LLC*, 2023 WL 11762874, at *1 (W.D. Okla. Oct. 13, 2023). And the remaining cases concluded that the witnesses were not "managing agents" of a party but offered no factual analysis and therefore no useful guidance. *Shijiazhuang Hongray Grp. v. World Trading 23 Inc*, 2023 WL 4827099, at *5 (C.D. Cal. Feb. 28, 2023); *Newmarkets Partners, LLC v. Oppenheim*, 2009 WL 1447504, at *1 (S.D.N.Y. May 22, 2009); *In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*, 2006 WL 1328259, at *9 (S.D.N.Y. May 16, 2006); *Cummings v. Gen. Motors Corp.*, 2002 WL 32713320, at *4 (W.D. Okla. June 18, 2002), *aff'd*, 365 F.3d 944 (10th Cir. 2004).

The only in-circuit case Defendants cite is wholly inapposite, because it did not even purport to apply the four-part managing-agent test. *See Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 2014 WL 6686727, at *1 (M.D.N.C. Nov. 26, 2014).

Defendant alludes to the supposed obstacles under Swiss law, but the Court has the power to order Mr. Keel to travel to the United States for deposition. *Honda*, 168 F.R.D. at 538 (collecting cases); *Schindler Elevator Corp. v. Otis Elevator Co.*, 657 F. Supp. 2d 525, 529 (D.N.J. 2009) (collecting additional cases). However, in an effort to minimize burden, Plaintiff proposed to do the deposition remotely. If Mr. Keel would prefer to do the deposition in the United States, so be it. But he could proceed by video, quite easily traveling to France or Germany or the UK, which impose no restrictions on voluntary depositions. Notably, Mr. Keel lives in Basel, which is on the tripoint border of Switzerland, France, and Germany. The French town of Saint-Louis appears to be about a 12-minute drive from the center of Basel; while the German town of Weil am Rhein is about a 13-minute drive. Mr. Keel could set up at a remote location either in a hotel or an office in a suburb of Basel. There are also intermediate options between a Basel suburb and Charlotte. If Mr. Keel wishes to set up in a law office, he is an hour and a half by rail to Strasbourg, an hour from Munich by air, an hour and a quarter from Paris by air, and an hour and a half from London by air.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendants' motion for a protective order.

This the 26th day of November, 2024.

| | |
|---|---|
| */s/ Kent A. Yalowitz* | */s/ Lex M. Erwin* |
| Kent A. Yalowitz (admitted *pro hac vice*) | Lex M. Erwin |
| N.Y. State Bar No. 2188944 | N.C. State Bar No. 34619 |
| Carmela T. Romeo (admitted *pro hac vice*) | David A. Luzum |
| N.Y. State Bar No. 5058151 | N.C. State Bar No. 41398 |
| **ARNOLD & PORTER KAYE SCHOLER LLP** | Kevin Y. Zhao |
| 250 W 55th Street | N.C. State Bar No. 53680 |
| New York, NY 10019 | **MAYNARD NEXSEN PC** |
| 212-836-8000 | 227 W. Trade Street, Suite 2300 |
| kent.yalowitz@arnoldporter.com | Charlotte, NC 28202 |
| carmela.romeo@arnoldporter.com | Telephone: (704) 339-0304 |
| | Facsimile: (704) 338-5377 |
| – and – | lerwin@maynardnexsen.com |
| | dluzum@maynardnexsen.com |
| Eliseo R. Puig (admitted *pro hac vice*) | kzhao@maynardnexsen.com |
| Colorado State Bar No. 49022 | |
| **ARNOLD & PORTER KAYE SCHOLER LLP** | *Counsel for Plaintiff* |
| 1144 Fifteenth Street, Suite 3100 | |
| Denver, CO 80202 | |
| 303-863-1000 | |
| eliseo.puig@arnoldporter.com | |

# CERTIFICATION

Pursuant to the Court's June 18 2024 Standing Order regarding Use of Artificial Intelligence, the undersigned certifies that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line research sources WestLaw, Lexis, FastCase, and Bloomberg;
2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

/s/ Lex M. Erwin
Lex M. Erwin