# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

FS MEDICAL SUPPLIES, LLC,

      Plaintiff,

v.

TANNERGAP, INC. AND TANNER
PHARMA UK LIMITED,

      Defendants,

and

FS MEDICAL SUPPLIES, LLC,

      Plaintiffs,

v.

TANNER PHARMA UK LIMITED; RAYMOND
FAIRBANKS BOURNE; MARY EVERETT
BOURNE,

      Defendants.

Case No. 3:21-cv-501-RJC-WCM
Case No. 3:21-cv-598-RJC-WCM

---

**NON-PARTIES ORIENT GENE AND HEALGEN'S**
**BRIEF IN SUPPORT OF TANNER PHARMA UK LIMITED'S AND**
**TANNERGAP, INC.'S CONSENT MOTION TO FILE EXHIBITS UNDER SEAL**

Pursuant to Local Rule 6.1(e), Non-Parties Zhejiang Orient Gene Biotech Co., Ltd.

("Orient Gene") and Healgen Scientific Limited Liability Company ("Healgen") submit this brief:

(i) in support of Defendants Tanner Pharma UK Limited and TannerGap, Inc.'s Consent Motion to

File Exhibits Under Seal, Dkts. 212, 213; and (ii) in response to the Court's November 25, 2024

Order, which held Tanner's Motion to Seal in abeyance and provided an opportunity for non-parties

to object to the unsealing of the subject exhibits. Dkt. 232. By submitting this brief, Orient Gene

and Healgen do not consent to personal jurisdiction or waive any objections to personal jurisdiction.

## I. PRELIMINARY STATEMENT

Non-Parties Orient Gene and Healgen, manufacturers and distributors of diagnostic test kits, produced their highly sensitive, confidential, and proprietary sales information in response to a subpoena from Plaintiff FS Medical Supplies, LLC ("FSMS"). This production was made pursuant to the terms of the parties' Amended Protective Order, Dkts. 25, 185, 232, and FSMS's agreement to additional safeguards intended by all parties to ensure the protection of Orient Gene and Healgen's confidential business information. Despite these protections, Orient Gene and Healgen now face the imminent threat of irreparable harm in having their confidential business information made public, jeopardizing their competitive standing in the marketplace.

The exhibits in question—excerpts from expert reports—contain proprietary sales data. Orient Gene and Healgen tightly guard this data because it is integral to their operations and business strategies. Its disclosure is of little interest to the public, but would cause significant harm to Orient Gene and Healgen because their competitors can use the information to undercut their market position and solicit their customers. Sealing this information is the only way to prevent harm to Orient Gene and Healgen, whose legitimate business interests outweigh any slight interest the public might have in viewing the documents. The Court should grant the Motion to Seal and preserve the confidentiality of the subject exhibits.

## II. BACKGROUND

### A. The Motion to Seal and FSMS's Subpoena of Orient Gene's and Healgen's Confidential Business Information

On November 6, 2024, Defendants TannerGAP, Inc. and Tanner Pharma UK Limited (collectively, "Tanner") filed a Consent Motion to Seal. Dkts. 212, 213. The Motion seeks to seal

four exhibits that contain information designated as Confidential and/or Confidential – Attorneys' Eyes Only in connection with their response to FSMS's Motion for Protective Order Concerning Depositions. Dkt. 201. Two of the exhibits that Tanner seeks to seal contain Orient Gene's and Healgen's confidential and proprietary sales information.

Orient Gene and Healgen produced the proprietary sales information in response to a subpoena issued by FSMS on May 14, 2024 (the "Subpoena). *See* Declaration of Aveling Xu ("Xu Decl."), 4. Orient Gene and Healgen objected to the Subpoena, among other reasons, on the grounds that it was improperly served, sought irrelevant information that was disproportionate to the needs of this case, sought highly confidential business information without adequate protections, and would impose an undue burden on Orient Gene and Healgen to comply. *Id.* at ¶ 5.

To resolve Orient Gene's and Healgen's objections to the Subpoena without court intervention, Orient Gene and Healgen agreed to produce and did ultimately produce the following confidential and proprietary business information (the "Confidential Business Information"):

    a.    Confidential and proprietary sales data for COVID antigen test kits sold to Tanner Pharma Group during the period September 1, 2020 through January 31, 2024. This data includes the date, invoice number, item, description, unit price, quantity, and total revenue for each sale (the "Tanner Sales Data").

    b.    Confidential and proprietary sales data for certain COVID antigen test kits sold to customers in the United States and European Union, excluding Tanner Pharma Group, during the period September 1, 2020 through May 31, 2022, including the same detailed sales information (the "Non-Tanner Sales Data").

*Id.* at ¶ 6.

The Non-Tanner Sales Data was produced only after FSMS, Orient Gene, and Healgen entered into a formal agreement resolving Orient Gene's and Healgen's objections to the Subpoena (the "Agreement"). *Id*. at ¶ 7; *Exhibit 1*, *Agreement*. The Agreement was entered into on August 20, 2024, and to safeguard the confidentiality of the Non-Tanner Sales Data, provided that:

a. FSMS would submit and move the Court to enter the now entered addendum to the Protective Order (which the Court has since approved). Dkts. 185, 232.

b. Orient Gene and Healgen would disclose the Non-Tanner Sales Data and designate it "CONFIDENTIAL—ATTORNEYS' EYES ONLY" under the amended protective order.

c. FSMS would refrain from challenging Orient Gene and Healgen's designation of the Non-Tanner Sales Data as "CONFIDENTIAL—ATTORNEYS' EYES ONLY."

d. FSMS would oppose any attempt to challenge such designation and take reasonable actions requested by Orient Gene's counsel concerning such designation.

e. FSMS would treat the Non-Tanner Sales Data as "CONFIDENTIAL—ATTORNEYS' ONLY" pending entry of the addendum to the Protective Order.

*Id.* Orient Gene and Healgen would not have produced the Non-Tanner Sales Data absent FSMS's agreement to terms safeguarding its confidentiality. *Id.* at ¶ 8.

On November 25, 2024, as noted above, the Court granted the parties' "Joint Stipulated Request for Entry of Addendum to Stipulated Protective Order" (Dkt. 185) to allow third-parties like Orient Gene and Healgen to produce documents designated as Attorneys' Eyes Only. Dkt. 232. The Court's November 25, 2024 Order further held Tanner's Motion to Seal in abeyance and provided an opportunity for any party or non-party to object to the unsealing of the subject exhibits. *Id.* Orient Gene and Healgen hereby submit this brief objecting to the unsealing of the following

4

exhibits containing their Confidential Business Information:

- Exhibit D, Excerpts from the Expert Report of Plaintiff's expert, Aaron Dolgoff, dated September 11, 2024, designated as CONFIDENTIAL – ATTORNEYS' EYES ONLY. Dkt. 215.

- Portions of Exhibit E, Excerpt from the Expert Report of Plaintiff's expert, Barry K. Lynn, dated September 11, 2024, designated as CONFIDENTIAL. Dkt. 216.[1]

The entirety of Exhibit D and the unredacted portions of Exhibit E submitted with this filing should be sealed because they contain Orient Gene's and Healgen's confidential and proprietary sales data, and charts, summaries, and conclusions derived from that data, which are also "Protected Material" under paragraph 2(d) of the Protective Order. *See* Dkt. 25 at ¶ 2(d) (providing that "Protected Material" includes not only the designated discovery material itself, but also "*any information copied or extracted therefrom*, as well as all copies, excerpts, summaries, or compilations thereof.") (emphasis added).

### B.    The Competitive Nature of the Diagnostic Test Industry

Orient Gene and Healgen manufacture and distribute diagnostic tests, including those used for detection of COVID and other infectious diseases. Xu Decl. at ¶ 3. The diagnostic test kit industry is intensely competitive, with manufacturers striving to secure market share through strategic pricing and transaction economics. *Id.* at ¶ 9. Key competitive factors among diagnostic test manufacturers center on the economic terms of individual sales transactions, which drive innovation and market positioning while simultaneously heightening the risks associated with public disclosure of proprietary business information. *Id.* at ¶ 10.

---

[1] A proposed redacted copy of Exhibit E (Dkt. 216) is attached as *Exhibit 2*. The undersigned obtained all parties' consent before filing unredacted portions of Exhibit E (Dkt. 216).

Orient Gene's and Healgen's Confidential Business Information—including pricing, sales volumes, and pricing strategies—is not public information. *Id.* at ¶ 11. Public disclosure of Orient Gene's and Healgen's Confidential Business Information, including pricing structures, sales volumes, and strategies would expose sensitive data to competitors, granting them significant competitive advantages. *Id.* at ¶ 12. Such exposure would harm Orient Gene and Healgen, as their competitors could exploit this information while Orient Gene and Healgen lack reciprocal access to competitors' proprietary data. *Id.*

Orient Gene and Healgen have serious concerns about the potential exposure of their Confidential Business Information, particularly given the high financial stakes and intense competition within their industry. *Id.* at ¶ 13.

Orient Gene and Healgen are non-parties to this litigation. They have no stake in the outcome and have not been accused of any misconduct. Nonetheless, they face the real risk of their sensitive business information becoming public because they chose to resolve their objections to FSMS's subpoena in an effort to avoid court intervention. Competitors could leverage such disclosures to gain insights into Orient Gene's and Healgen's strategies, pricing, and customer volumes, making it easier to solicit Orient Gene's and Healgen's customers and undercut their market position. *Id.* at ¶ 14.

In an industry where even slight competitive advantages can lead to substantial revenue gains, public disclosure of Orient Gene's and Healgen's Confidential Business Information would cause severe competitive harm. *Id.* at ¶ 15. This information derives its actual and potential economic value from its non-public nature; disclosure would provide competitors with unfair economic advantages while causing significant harm to Orient Gene and Healgen. *Id.* at ¶ 16. Based on extensive industry experience, it is evident that competitors would exploit any disclosed

6

Confidential Business Information to negatively impact Orient Gene's and Healgen's business operations. *Id.* at ¶ 17. Additionally, public disclosure of customer-specific pricing information risks breaching confidentiality agreements with individual customers, further exacerbating the potential harm. *Id.* at ¶ 18.

### C. Orient Gene's and Healgen's Confidentiality Protocols

Orient Gene and Healgen have implemented rigorous measures to safeguard the confidentiality of their sales, customer, and pricing data. *Id.* at ¶ 19. The Confidential Business Information is protected by strict access controls, including password protection and encryption. *Id.* at ¶ 20. Access to such information is further limited to specific employees based on their roles, ensuring that only those with a clear business need can access it. *Id.* at ¶ 21. Such employees are required to sign confidentiality agreements prohibiting the disclosure of Confidential Business Information. *Id.* at ¶ 22. Moreover, Orient Gene employees are subject to additional confidentiality obligations under their employment agreements and Healgen employees are subject to additional confidentiality obligations under their employee handbooks. *Id.* To reinforce these safeguards, Orient Gene and Healgen provide periodic training to ensure employees understand and adhere to their confidentiality obligations regarding sensitive sales, customer, and pricing information. *Id.* at ¶ 23.

Orient Gene and Healgen also execute confidentiality or non-disclosure agreements (NDAs) with customers, obligating them to protect sensitive data, including pricing and sales volumes. *Id.* at ¶ 24. The Confidential Business Information is treated as a highly guarded trade secret, with access tightly restricted to ensure secrecy. *Id.* at ¶ 25. The measures taken by Orient Gene and Healgen meet and exceed reasonable industry standards to preserve the confidentiality of this information. *Id.*

Public disclosure of the Confidential Business Information would inflict irreparable harm, enabling competitors to gain unfair advantages and undermining the integrity of Orient Gene's and Healgen's established confidentiality protocols. *Id.* at ¶ 26. In sum, the Confidential Business Information constitutes highly sensitive trade secrets, and its disclosure would result in significant, irreparable harm to Orient Gene and Healgen while undermining their efforts to maintain strict confidentiality in a fiercely competitive market. *Id.* ¶ 27.

## III. ARGUMENT

### A. Legal Standard

A district court has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000). "One such countervailing interest sufficient to overcome the common-law right of access is a party's right to protect confidential business information." *Rosinbaum v. Flower Foods, Inc.*, No. 7:16-CV-00233-FL, 2020 WL 8617628, at *1 (E.D.N.C. Dec. 29, 2020) (citing *Mortg. Grp., LLC v. Stonegate Mortg. Corp.*, No. 5:14-CV-00310-F, 2016 WL 4939308, at *1, (E.D.N.C. Sept. 14, 2016) ("[T]he need to keep proprietary business information confidential is often a sufficiently compelling justification for sealing judicial documents.")); *see Nallapaty v. Nallapati*, No. 5:20-CV-470-BO, 2022 WL 16984479, at *5 (E.D.N.C. Nov. 15, 2022) ("Confidential business records have often been recognized as sufficient to outweigh the right to public access."); *Wellness Grp., LLC v. King Bio, Inc.*, No. 1:12-CV-00281-MR-DLH, 2014 WL 68803, at *1 (W.D.N.C. Jan. 8, 2014) (sealing documents containing confidential proprietary business information); *Big Rock Sports, LLC v. AcuSport Corp.*, No. 4:08-CV-00159-F, 2011 WL 1213071, at *1 (E.D.N.C. Mar. 31, 2011) (observing that "the public's right of inspection has bowed before the power of a court to insure that its records are not used as

'sources of business information that might harm a litigant's competitive standing.'") (quoting *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598 (1978)).

Before sealing documents, the court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." *Ashcraft*, 218 F.3d at 302 (citing *In re Knight Pub. Co.*, 743 F.2d 231, 235–36 (4th Cir. 1984); *Stone v. University of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (1988)).

### B.   Orient Gene's and Healgen's Interest in Protecting Their Confidential Information Substantially Outweighs Any Public Right of Access in Such Information.

Orient Gene and Healgen's compelling interest in protecting their Confidential Business Information far outweighs any public interest in accessing this information. The subject exhibits contain highly sensitive, proprietary business information, including pricing structures, sales volumes, and pricing strategies for COVID antigen test kits. Xu Decl., ¶ 11. To protect this information, Orient Gene and Healgen have implemented rigorous safeguards, password protection and encryption, employee confidentiality agreements, and customer NDAs. *Id.* at ¶¶ 19–25. Public disclosure would cause severe competitive harm by enabling competitors to exploit this data to undercut pricing, target customers, and reverse-engineer pricing strategies, thereby gaining an unfair advantage in the highly competitive COVID test industry. *Id.* at ¶¶ 14, 16–17. The harm caused by disclosure would be irreparable, as even minor insights into this information could compromise Orient Gene and Healgen's market positions. *Id.* at ¶¶ 15, 26–27.

Courts within the Fourth Circuit consistently recognize the importance of protecting pricing terms and other competitively sensitive information from public disclosure to prevent

competitive harm. *See, e.g.*, *General Elec. Co. v. Siemens Energy, Inc.*, No. 3:21-CV-025, 2021 WL 8445828, at *2 (E.D. Va. Oct. 6, 2021) (allowing sealing of "pricing and technical information"); *Syngenta Crop Protection, LLC v. Atticus, LLC*, No. 5:19-CV-509-D, 2021 WL 2650339, at *1 (E.D.N.C. June 26, 2021) (granting motion to seal documents containing sensitive business information, including "pricing" and "confidential agreements with third parties"); *Smithkline Beecham Corp. v. Abbott Labs.*, No. 1:15-CV-0360, 2017 WL 11552659, at *5–*6 (M.D.N.C. Mar. 7, 2017) (granting motion to seal "sensitive financial information," including "pricing issues"); *ATI Indus. Automation, Inc. v. Applied Robotics, Inc.*, 801 F. Supp. 2d 419, 427–28 (M.D.N.C. 2011) (granting motion to seal where disclosure of pricing information would cause competitive harm by benefiting direct competitors). Indeed, in this case, the Court previously determined that the "redaction of pricing information and the numbers of units of products discussed" was appropriate. Dkt. 57, at 5. The need for confidentiality is especially compelling here where the information belongs to non-parties. Courts recognize the unique burdens placed on non-parties in protecting their confidential information. *See Nallapaty*, 2022 WL 16984479, at *6; *see also* Fed. R. Civ. P. 45(d)(1) (requiring parties to "avoid imposing undue burden" on non-parties subject to subpoena). This reinforces the necessity of sealing the Confidential Business Information in this matter.

### C. The *Ashcraft* Factors Are Met

All of the *Ashcraft* factors for sealing are satisfied here.

First, the public has been given adequate notice and an opportunity to object to the Motion to Seal. Tanner filed its Motion to Seal on November 6, 2024, and it has been publicly accessible through the Court's electronic case filing system since that time. Dkts. 212, 213. Additionally, the Court issued an Order on November 25, 2024, holding the Motion to Seal in abeyance and inviting

10

objections from third parties. Dkt. 232. No objections have been raised.

Second, redaction is impractical and inadequate for Exhibit D (the Dolgoff Report excerpt) due to the pervasive nature of the sensitive information it contains, including sales pricing, volumes, and strategies. *See Kinetic Concepts, Inc. v. Convatec, Inc.*, 2010 WL 1418312, at \*10 n.15 (M.D.N.C. Apr. 2, 2010) (finding redaction ineffective where "the pervasive nature of the sensitive information throughout the documents … makes redaction pointless"). However, a redacted version of Exhibit E (the Lynn Report excerpt) can be filed that removes any reference to Orient Gene's and Healgen's Confidential Business Information and other information marked Confidential.

Third, the Court can make specific factual findings to support sealing, as the record clearly demonstrates that the subject exhibits contain Orient Gene's and Healgen's confidential and proprietary information. The public's rights of access to such information is substantially outweighed by the competing interest in preventing harm to Orient Gene and Healgen and preserving the integrity of their competitive position.

## <u>CONCLUSION</u>

For the foregoing reasons, Orient Gene and Healgen respectfully request that the Court maintain the sealing of Exhibit D (the Dolgoff Report excerpt) and Exhibit E (the Lynn Report excerpt), with a public version of Exhibit E made accessible that redacts the Confidential Business Information and other information marked Confidential.

Respectfully submitted,

Dated: December 6, 2024

**GORDON REES SCULLY**
**MANSUKHANI, LLP**

By: */s/ Allison J. Becker*
    Allison J. Becker (#41993)
    150 Fayettesville Street
    Suite 1120
    Raleigh, NC 27601
    Tel: (919) 787-4555
    Fax: (919) 74105840
    abecker@grsm.com

    Peter G. Siachos (*pro hac vice forthcoming*)
    677 King Street, Ste. 450
    Charleston, SC 29401
    Tel: (843) 278-5900
    Fax: (843) 804-4691
    psiachos@grsm.com

    *Attorneys for Non-Parties Zhejiang Orient Gene Biotech Co., Ltd. and Healgen Scientific Limited Liability Company*

12

## CERTIFICATION

Pursuant to the Court's June 18, 2024 Order regarding the use of artificial intelligence, the undersigned states that:

1.      No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

2.      Every statement and every citation to any authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 6th day of December, 2024.

By: */s/ Allison J. Becker*
Allison J. Becker (#41993)
GORDON REES SCULLY
MANSUKHANI LLP

*Attorneys for Non-Parties Zhejiang Orient Gene Biotech Co., Ltd. and Healgen Scientific Limited Liability Company*

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 6, 2024, this brief was filed with the Clerk of the Court

through the CM/ECF system, which will send notification to all registered counsel of record.

*/s/ Allison J. Becker*
Allison J. Becker
