UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| FS MEDICAL SUPPLIES, LLC,<br><br>　　　　Plaintiff,<br>v.<br><br>TANNERGAP, INC. *et al.*,<br><br>　　　　Defendants. | Civil Action No.<br>3:21-CV-501-RJC-WCM |

## REPLY IN SUPPORT OF PLAINTIFF'S
## MOTION FOR LEAVE TO AMEND COMPLAINT

**ARNOLD & PORTER**
　**KAYE SCHOLER LLP**
250 W 55th Street
New York, NY 10019
212-836-8000
kent.yalowitz@arnoldporter.com
carmela.romeo@arnoldporter.com

　– and –

**ARNOLD & PORTER**
　**KAYE SCHOLER LLP**
1144 Fifteenth Street, Suite 3100
Denver, CO 80202
303-863-1000
eliseo.puig@arnoldporter.com

**MAYNARD NEXSEN PC**
227 W. Trade Street, Suite 2300
Charlotte, NC 28202
Telephone: (704) 339-0304
lerwin@maynardnexsen.com
dluzum@maynardnexsen.com
kzhao@maynardnexsen.com

*Counsel for Plaintiff*

December 27, 2024

What is good for the goose should be good for the gander. Having successfully added a new theory of their case two weeks before the scheduled close of discovery, Defendants cannot credibly argue that they would be prejudiced by the addition of claims and remedies that require no additional discovery. Defendants identify no discovery that they would need and no prejudice other than the mere fact of defending against additional theories of liability. But the Court rejected precisely that argument in granting Defendants leave to amend. ECF 232 at 7.

Defendants do not dispute that amending a complaint to include newly discovered evidence is proper. They also disclaim any argument that the alter ego claim is futile. ECF 259 at 4 n.2. Instead, Defendants argue: (1) there has been improper "delay"; (2) they would be prejudiced; (3) the amendment is made in bad faith; (4) the UDTPA claim is futile; and (5) the Court's prior order on consolidation bars adding the fraudulent conveyance claims to this case. These arguments are meritless.

## I.  Defendants' Complaints About "Delay" Are Irrelevant and Misplaced

Defendants' primary focus in opposing the motion is to accuse FSMS of "delay." ECF 259 at 1-4, 6-12; ECF 260 at 8-12. However, "mere delay in moving to amend is not sufficient reason to deny leave to amend[;] it is only when the delay is accompanied by prejudice, bad faith, or futility." *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987) (cleaned up).

As an initial matter, Defendants mischaracterize the time when FSMS obtained much of the evidence underlying its proposed amended complaint. With regard to the question of Tanner's intent not to perform, Tanner highlights some documents produced early in discovery, ECF 260 at 10, but ignores documents produced

later, such as: (1) a calendar entry showing that Tanner planned to "start blowing-up" Mr. Mao's phone to trick him into making an introduction to Orient Gene (produced Sept. 27, 2024); (2) a text chain showing that before entering the Distribution Agreement, Tanner was already keeping information from FSMS by having a critical call "without Laird" (produced June 14, 2024); (3) an email showing that *after* Tanner executed the Distribution Agreement, Mr. Scalia instructed Mr. Bracey not to deliver it to FSMS (produced June 11, 2024); (4) a text chain showing that, before Tanner delivered the executed Distribution Agreement to FSMS, it planned to get Orient Gene on "a separate call" (produced June 14, 2024); (5) a text chain showing that only three days after entering into the Contract, Tanner planned to keep more than 50% of gross profits for itself (produced June 14, 2024); (6) a text chain showing that Tanner planned to "readjust our deal with FSMS" four days after entering into the Distribution Agreement (produced Aug. 23, 2024); and (7) a text chain showing that Tanner had a "renegotiation strategy" for the FSMS deal only a week after entering into the Distribution Agreement (produced Aug. 23, 2024). Puig Decl. ¶¶ 3-9 & Exs. 1-7.

With regard to the alter ego theory, Defendants' assertion that "FSMS conducted extensive alter ego/veil piercing discovery in 2022" is wrong. *See* ECF 259 at 8. To the contrary, FSMS requested information relevant to the alter ego theory during jurisdictional discovery, but Tanner refused to provide it. *See* Apr. 19, 2023 Hr'g Tr. at 30 (ECF 101). It was not until after receiving Tanner's general ledger in July 2024 and deposing its Rule 30(b)(6) witness in August, Puig Decl. ¶¶ 10-11,

2

that FSMS was able to fully investigate the intermingling and intra-corporate transfers. Mr. Bourne's communication to the IRS stating that he is the "overall decision maker" at Tanner was not produced until July 2024. *Id.* ¶ 14 & Ex. 10. The text message containing Mr. Bourne's demand for a million dollars to pay bonuses at his other company, Bourne Partners, was produced in August 2024. *Id.* ¶ 12 & Ex. 8. And the fact that TPUK created "minutes" of board meetings that never took place was established when Mrs. Bourne testified on November 7, 2024. *Id.* ¶ 13 & Ex. 9.

As the Fourth Circuit has held, a few months' delay between acquiring knowledge of these new facts and the filing of motion to amend was not "inordinate or excessive," even when made several years into the litigation, as "plaintiffs [are] entitled to a reasonable time to investigate through other sources the information they had secured." *Island Creek Coal Co.*, 832 F.2d at 279. The amount of time it took FSMS to file the present motion is entirely reasonable, especially in light of the Court's holding that Defendants' motion—filed more than three years after they first began discussing their "misrepresentation" theory—was timely.

Finally, Defendants argue that the proposed amendment renders the current summary judgment schedule unworkable. *See* ECF 260 at 1, 7. That concern is misplaced. With regard to the alter ego issue, that issue is already in the case because TPUK contested personal jurisdiction in its answers. Unless TPUK obtains summary judgment in its favor on the issue of personal jurisdiction, the alter ego issue can be submitted to the jury and there is no prejudice in submitting that evidence on liability, as well. *See HBC Ventures, LLC v. Holt MD Consulting, Inc.*, 2011 WL 13233177, at *12 (E.D.N.C. Apr. 15, 2011) (submitting alter ego issues on liability

3

to jury "also will determine the personal jurisdiction issue"). With regard to the UDTPA claim, Defendants have already briefed their law of the case argument, and whether the new evidence identified in discovery is sufficient to warrant proceeding with the case will be decided under Rule 54(b). Moreover, to the extent the UDTPA claim relies on the same facts as the fraudulent conveyance claim, the summary judgment schedule would be unaffected.

## II. Defendants Cannot Articulate Prejudice

Defendants do not identify any discovery they would need from FSMS or any third party. Defendants argue that they are prejudiced because they will have to defend against additional theories of liability. ECF 259 at 4-6; ECF 260 at 12-15. But the Court rejected that very argument when FSMS made it. ECF 232 at 7. As Defendants successfully argued, there is no prejudice in adding a theory of liability that is "closely related to the facts underlying [plaintiff's other claims], for which the parties have already been conducting discovery." *Church Mut. Ins. Co. v. Storm Team Constr., Inc.*, 2022 WL 990511, at *6 (E.D.N.C. Mar. 31, 2022). Defendants prevailed on their own motion for leave to amend by citing *Church Mutual Insurances* and arguing that FSMS would suffer no prejudice "because [relevant information] is already in [FSMS's] possession and control." ECF 189 at 4. Defendants' contrary argument here, *see* ECF 260 at 17, is unpersuasive.

The Bournes go on to argue two kinds of prejudice, but neither argument holds water. *First*, they claim that they would need additional discovery. However, the Bournes do not identify a single witness that they need deposition testimony from, nor a single document from FSMS or a non-party. They point to the death of their

4

employee, Mr. Leonard, but Mr. Leonard died before he could be deposed because *Defendants* postponed his deposition. In any case, it is not reasonable to think that Mr. Bourne would have deposed a former employee in order to prove the reasons for transfers of money from TPUK to Mr. Bourne himself.

The other prejudice the Bournes argue comes down to having to do extra trial preparation *with witnesses that they already have identified or could have identified*. The Bournes allude to the need for expert witness, but they *own* Tanner, which is contesting personal jurisdiction, and therefore the alter-ego issue is in the case on that basis. Moreover, the Bournes served expert reports from both an English barrister and an English accountant. To the extent that expert testimony is relevant to Mr. Bourne's failure to follow the corporate formalities in stripping TPUK's assets, one of Defendants' experts, accountant Luke Steadman, *did* offer opinions on that issue. Counsel for the Bournes has confirmed that FSMS "questioned [Mr. Steadman] about all the topics [they] may have him address." Puig Decl. Ex. 13. With regard to the transfer pricing policy, Ms. Smoot testified about that policy as a Rule 30(b)(6) witness, Puig Decl. Ex. 11; and to the extent Defendants thought that they might want to use an additional witness on that topic, they should have designated that person in their Rule 26(a)(1) disclosures, served after Defendants filed an answer contesting personal jurisdiction (and thus keeping the alter-ego issue in issue).

*Second*, the Bournes argue that they would have participated in the case more fully had it not been for Mr. Bourne's "limited" exposure of $200 million plus prejudgment interest. That argument rings hollow. Counsel for Tanner and counsel for Bournes have conducted the case as a single defense group—a husband and wife and

5

two corporate entities that they own. Indeed, Mr. Bourne himself had frequent contacts with the McGuireWoods firm about the case. *See* Puig Decl. ¶ 16 & Ex. 12. Counsel for the Bournes were in every single deposition and filed briefs on virtually every motion—often duplicative briefs. They identify no discovery that was not vigorously pursued and no stone that the defense group left unturned. Defendants have pursued a "scorched earth" defense, and it is not credible to assert that there would have been *more* scorching of the earth if only Mr. Bourne had known that the Court's dismissal of the UDTPA claim might not stand. (That decision remains subject to *de novo* appellate review anyway, so Mr. Bourne's supposed repose lacks credibility.)

Moreover, the Bournes are wrong that the proposed amendment "would place Mr. Bourne in an entirely different defensive posture." *See* ECF 259 at 21. Even without the amendment, post-judgment relief against Mr. Bourne under an alter ego theory is available. *See Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 382 (4th Cir. 2018) (affirming post-judgment veil-piercing). What is to be gained (or lost) is not "an entirely different defensive posture," but judicial efficiency: presenting related evidence to one finder of fact rather than two.

Finally, the cases Defendants rely on involve different circumstances. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 940 (4th Cir. 1995) (amendment "would have required substantial new discovery regarding *third-party* activity," which "would have substantially prejudiced" the non-moving party); *Woodson v. Fulton*, 614 F.2d 940, 942 (4th Cir. 1980) (amendment was sought "[i]mmediately before trial," "on the same day that the district court ruled that res judicata barred [plaintiff's suit]," and was an "attempt[] to salvage his case");

*Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir. 1987) ("The proof required to defend against this new claim would be of an entirely different character than the proof which the defendant had been led to believe would be necessary."); *Sharkey IRO/IRA v. Franklin Res.*, 263 F.R.D. 298, 303 (D. Md. 2009) ("[p]rejudice stemming from requiring a party to engage in additional fact investigation generally only arises when that additional investigation is required on the eve of trial," but finding prejudice due to "the unique length and complexity of this multi-district litigation").[1]

### III. There Is No Bad Faith

Courts find bad faith "when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, and to present theories *seriatim* in an effort to avoid dismissal." *Newman v. Ambry Genetics Corp.*, 2024 WL 4553224, at *4 (D.S.C. Oct. 23, 2024) (cleaned up); *see also Bioiberica Nebraska, Inc. v. Nutramax Mfg., Inc.*, 2021 WL 242494, at *2 (D. Md. Jan. 25, 2021). That is not what is happening here.

Defendants argue that FSMS's "delay" shows bad faith, which, as explained above, was only a matter of weeks and months, not years. This Court has found that *Defendants'* three-year delay in adding the misrepresentation claims and defenses was not in bad faith. A much shorter delay by FSMS is an *a fortiori* case. As outlined

---

[1] Defendants' out-of-circuit cases are distinguishable. Three applied a "good cause" standard, inapplicable here. *Luo v. Panarium Kissenna, Inc.*, 2023 WL 4463258, at *4 (E.D.N.Y. Mar. 6, 2023) (Rule 16); *Carroll v. Stryker Corp.*, 670 F. Supp. 2d 891, 900 (W.D. Wis. 2009) (same), *aff'd*, 658 F.3d 675 (7th Cir. 2011); *Phenix Longhorn, LLC v. Wistron Corp.*, 2019 WL 6873029, at *2 (E.D. Tex. Aug. 16, 2019) (same under a local rule requiring "good cause"). The fourth found prejudice where summary judgment motions had already been decided. *Laber v. Long View R.V., Inc.*, 454 F. Supp. 3d 158, 172 (D. Conn. 2020).

above, Defendants produced incriminating evidence little by little throughout the summer and fall of 2024, some as late as November 2024, the same month FSMS filed the present motion. Puig Decl. ¶¶ 3-14.

Moreover, the fact that FSMS moved to amend before—and not after—the scheduled mediation confirms that the motion was in good faith, in contrast to the cases Defendants cite. *See GSS Properties, Inc. v. Kendale Shopping Ctr., Inc.*, 119 F.R.D. 379, 381 (M.D.N.C. 1988) (finding bad faith when plaintiff first stipulated that there was no need to amend the pleadings and only threatened and brought motion to amend *after* settlement talks stalled); *Luo*, 2023 WL 4463258, at *4 (finding undue delay because plaintiff did not seek leave to amend until "after the case had been submitted to mediation for settlement discussions").

The other cases Defendants rely on are inapposite. *See United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 199 (4th Cir. 2022) (finding amended complaint, without discovery, contained important details that *plaintiff* withheld); *Newman*, 2024 WL 4553224, at *4 (finding plaintiff unduly waited three months after court order that should have prompted plaintiff to move to amend and noting that this delay "informs, but is not dispositive of, the [c]ourt's analysis"); *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 440 (4th Cir. 2011) (the addition of six counterclaims two weeks before trial did not depend on facts learned in discovery and would have required further discovery); *Hensley v. City of Charlotte*, 2021 WL 4929491, at *5 (W.D.N.C. Oct. 21, 2021) (plaintiff had full notice of all relevant facts but did not seek amendment before close of dis-

covery; allowing the post-judgment amendment "would transform dispositive motions at the end of the discovery period into no more than advisory opinions and roadmaps for counsel to then seek 'amendment' of their claims in an effort to revive their lawsuit").

## IV. The Amendment Is Not Futile

Defendants do not contend that the alter-ego claim is futile. They do assert that the UDTPA claim is futile on the ground that the Court granted a motion to dismiss that claim on the pleadings. Rule 54(b) allows the Court to reconsider an interlocutory order "to account for evidence not previously available." *Regan v. City of Charleston, S.C.*, 40 F. Supp. 3d 698, 701 (D.S.C. 2014) (cleaned up). The Bournes acknowledge this standard, ECF 259 at 13, but do not apply it. Instead, they assert that the evidence FSMS relies on is not new because it was not discovered "recently" enough. *Id.* at 16. The relevant question, however, is whether the new evidence was unavailable at the time that FSMS filed its Amended Complaint, in August 2022. Since then, a lot of new evidence has emerged. In April 2023, FSMS discovered that TPUK had made massive distributions to Mr. Bourne. FSMS learned of additional distributions in September 2023, and even more distributions in August 2024, when its expert first had the opportunity to examine the TPUK general ledger.

As set forth above at pages 1-2, merits discovery has also revealed extensive evidence supporting the conclusion that Tanner and Mr. Bourne executed the Distribution Agreement intending not to honor it. Defendants produced much of the evidence supporting the amendment after June 2024. At this juncture, with discovery closed, the Court's role is not to weigh conflicting evidence, but to identify whether

9

conflicting evidence is in the record and, if so, send the claim to the jury.

## V. The Consolidation Issue Is A Red Herring

Defendants' initial response to the fraudulent conveyance claims was to insist that they be pled and proved in the same case as the breach of contract and UDTPA claims. ECF 27 at 10 in *Tanner II* ("FSMS could have sought leave to amend its complaint in FSMS I to assert the new claims it asserts now in this second action.") Although Defendants were wrong that amendment was *required*, they were certainly correct that amendment is *permitted*.

Defendants are also wrong to assert that the Court's treatment of FSMS's motion to consolidate somehow bars amendment here. The Court deferred a decision on whether to consolidate the two actions for trial until development of "a more complete record, including, for example, information as to what claims, if any have survived dispositive motions in each case and are proceeding to trial." ECF 147 at 7. Granting the current motion would not preclude a decision to proceed with separate trials should circumstances warrant. Rule 42(b) permits "a separate trial of one or more separate issues, claims, crossclaims, [or] counterclaims" for "convenience, to avoid prejudice, or to expedite and economize." The Court has broad discretion under this rule, *see In re Hutchinson*, 5 F.3d 750, 758 (4th Cir. 1993), and granting the present motion would not restrict that discretion.

Given the interlocutory nature of the Court's prior ruling, and its discretion under Rule 42(b), Defendants' law-of-the-case argument fails.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for leave

10
Case 3:21-cv-00501-RJC-WCM    Document 274    Filed 12/27/24    Page 11 of 13

to amend the Complaint.

This the 27th day of December, 2024.

| | |
|---|---|
| /s/ Kent A. Yalowitz | /s/ Lex M. Erwin |

Kent A. Yalowitz (admitted *pro hac vice*)
N.Y. State Bar No. 2188944
Carmela T. Romeo (admitted *pro hac vice*)
N.Y. State Bar No. 5058151
**ARNOLD & PORTER
  KAYE SCHOLER LLP**
250 W 55th Street
New York, NY 10019
212-836-8000
kent.yalowitz@arnoldporter.com
carmela.romeo@arnoldporter.com

 – and –

Eliseo R. Puig (admitted *pro hac vice*)
Colorado State Bar No. 49022
**ARNOLD & PORTER
  KAYE SCHOLER LLP**
1144 Fifteenth Street, Suite 3100
Denver, CO 80202
303-863-1000
eliseo.puig@arnoldporter.com

Lex M. Erwin
N.C. State Bar No. 34619
David A. Luzum
N.C. State Bar No. 41398
Kevin Y. Zhao
N.C. State Bar No. 53680
**MAYNARD NEXSEN PC**
227 W. Trade Street, Suite 2300
Charlotte, NC 28202
Telephone: (704) 339-0304
Facsimile: (704) 338-5377
lerwin@maynardnexsen.com
dluzum@maynardnexsen.com
kzhao@maynardnexsen.com

*Counsel for Plaintiff*

# CERTIFICATION

Pursuant to the Court's June 18 2024 Standing Order regarding Use of Artificial Intelligence, the undersigned certifies that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line research sources WestLaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

/s/ Lex M. Erwin
Lex M. Erwin