# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

FS MEDICAL SUPPLIES, LLC,

      Plaintiff,

v.

TANNERGAP, INC. *et al.*,

      Defendants.

Civil Action No.
3:21-CV-501-RJC-WCM
3:23-CV-598-RJC-WCM

## PLAINTIFF'S OPPOSITION TO RULE 12(B)(1) MOTIONS TO DISMISS

**ARNOLD & PORTER**
  **KAYE SCHOLER LLP**
250 W 55th Street
New York, NY 10019
212-836-8000
kent.yalowitz@arnoldporter.com
carmela.romeo@arnoldporter.com

 – and –

**ARNOLD & PORTER**
  **KAYE SCHOLER LLP**
1144 Fifteenth Street, Suite 3100
Denver, CO 80202
303-863-1000
eliseo.puig@arnoldporter.com

**MAYNARD NEXSEN PC**
227 W. Trade Street, Suite 2300
Charlotte, NC 28202
Telephone: (704) 339-0304
lerwin@maynardnexsen.com
dluzum@maynardnexsen.com
kzhao@maynardnexsen.com

*Counsel for Plaintiff*

February 24, 2025

Plaintiff FS Medical Supplies, LLC ("FSMS") respectfully submits this brief in opposition to Defendants' Rule 12(b)(1) motion to dismiss, which Defendants filed in case numbers 3:21-cv-501-RJC-WCM (*Tanner I*, ECF 294) and 3:23-cv-598-RJC-WCM (*Tanner II*, ECF 104). The Court has subject matter jurisdiction over the actions and should deny the motions. Furthermore, to remove any doubt as to the Court's ability to resolve this dispute, and to forestall any future litigation over this issue, the Court should consolidate *Tanner I* with the new lawsuit FSMS filed after its foreign member transferred her interest to her husband, who was already a mem-ber of FSMS (3:25-cv-102-RJC-WCM, *Tanner III*).

This memorandum first demonstrates that the Court has subject-matter jurisdiction in *Tanner I* and *Tanner II*, while recognizing that the case law on point is divided. The memorandum then provides a roadmap for how FSMS recommends that the Court proceed, in light of the filing of *Tanner III* as a protective back-up complaint.

## I. The Court Has Subject Matter Jurisdiction Over These Actions

The Court should reject Defendants' oversimplified "aliens on both sides" argument, because it is inconsistent with 28 U.S.C. § 1332(a)(3). Instead, the Court should follow cases that permit the exercise of diversity jurisdiction under paragraph (a)(3) in the fact-pattern presented here: an entity with both domestic and foreign citizenship suing domestic and foreign citizens, with complete diversity between the domestic citizens.

Citizenship is determined at the time of filing, *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570-71 (2004), and at the time of filing FSMS's members

were three U.S. citizens (domiciled in California and Texas) and one Chinese citizen (domiciled in California). An unincorporated association takes the citizenship of "*each* State or foreign country of which any of its partners is a citizen." *Id.* at 569 (emphasis added) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 192-95 (1990)); *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 379 (2016) ("While humans and corporations can assert their own citizenship, other entities take the citizenship of their members.").

## A. Section 1332(a)(3) Allows Jurisdiction In Cases With Aliens "On Both Sides"

Defendants contend that there is never diversity jurisdiction in any case in which there are aliens on "both sides of the suit." ECF 295 at 4 (quoting *Jiuna Wang v. NYZ Mgmt. Servs., LLC*, No. 3:19-CV-00642-FDW-DSC, 2020 WL 2926477, at *3 (W.D.N.C. June 3, 2020)). That is incorrect. Defendants' argument reflects a failure to appreciate the difference between cases arising under paragraph (a)(2) and those arising under (a)(3).

As relevant here, a federal court may exercise diversity jurisdiction in a civil case between:

> (1) citizens of different States;
>
> (2) citizens of a State and citizens or subjects of a foreign state…; [and]
>
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties….

28 U.S.C. § 1332(a).[1]

---

[1] Paragraph (a)(2) goes on to provide that "district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in

Numerous cases have construed paragraph (a)(2) as not conferring jurisdiction "over a lawsuit involving an alien on one side, and an alien and a citizen on the other side." *Saadeh v. Farouki*, 107 F.3d 52, 55 (D.C. Cir. 1997) (collecting cases); *see Slavchev v. Royal Caribbean Cruises, Ltd.*, 559 F.3d 251, 254-55 (4th Cir. 2009) (holding that an alien could not sue a foreign corporation with dual citizenship under § 1332(a)(2)); *see also Dresser Indus., Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 499 (3d Cir. 1997) ("Cases between aliens on one side and aliens and citizens on the other, therefore, do not fit the jurisdictional pigeonhole [of § 1332(a)(2)]."); *Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148, 1151 (5th Cir. 1985) ("For the purposes of section 1332(a)(2) complete diversity is required."). Thus, there is no dispute that "section 1332(a)(2) does not give the district court jurisdiction over a suit by a permanent resident against a non-resident alien." *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 127 (2d Cir. 2020).

But FSMS invokes paragraph (a)(3), not paragraph (a)(2). A federal court *does* have diversity jurisdiction under paragraph (a)(3) if there is complete diversity between "citizens of different States" and aliens are "additional" parties, regardless of whether aliens are on one or *both* sides of the case. The Circuits that have addressed this issue "have uniformly concluded that jurisdiction exists when diverse citizens are joined with aliens even if they appear on both sides of the dispute." *Dresser Indus.*, 106 F.3d at 497-98 (citing *Allendale Mutual Ins. Co. v. Bull Data*

---

the United States and are domiciled in the same State." Because Ms. Tong was a permanent U.S. resident domiciled in California, this provision limits jurisdiction under paragraph (a)(2) in certain situations not applicable here.

*Sys., Inc.,* 10 F.3d 425, 428 (7th Cir. 1993); *Transure, Inc. v. Marsh & McLennan, Inc.,* 766 F.2d 1297, 1299 (9th Cir. 1985); and *Goar v. Compania Peruana de Vapores,* 688 F.2d 417, 420 n. 6 (5th Cir. 1982)). "As the Seventh Circuit noted, when citizens of states are on both sides of the litigation and are completely diverse, the presence of aliens on one or both sides of the controversy 'fits section 1332(a)(3) to a t.'" *Id.* (quoting *Allendale,* 10 F.3d at 428); *accord Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 245 (7th Cir. 2003) (Posner, J.) ("the presence of foreigners on both sides of a diversity case does not destroy diversity"); *Bell Helicopter Textron, Inc. v. Alcoa, Inc.*, 2014 WL 271954, at *2 (N.D. Tex. Jan. 22, 2014) (same); *Zenith Elecs. Corp. v. Kimball Int'l Mfg., Inc.*, 114 F. Supp. 2d 764, 768 (N.D. Ill. 2000) ("Virtually every authority that has construed § 1332(a)(3) has held that the presence of aliens as additional parties on both sides of the action does not destroy diversity jurisdiction, provided there are diverse domestic citizens on both sides of the action who are legitimately interested parties.") (collecting cases); *Bank of New York v. Bank of Am.*, 861 F. Supp. 225, 228 (S.D.N.Y. 1994) (similar, also collecting cases); *see also Dewhurst v. Telenor Inv. AS*, 83 F. Supp. 2d 577, 596 n.11 (D. Md. 2000) ("section 1332(a)(3) permits a federal court to hear a case involving aliens on both sides of the controversy provided that United States citizens are present on both sides of the controversy and diversity exists between those citizens"); 15A *Moore's Fed. Practice—Civ.* § 102.77 ("the presence of diverse U.S. citizens on both sides preserves diversity").

The Third Circuit explained why: "Congress was well aware of the judicial interpretation of the diversity statute requiring complete diversity" when it added

§ 1332(a)(3) in the 1948 revision to the Judicial Code, and it "specifically used language that differs from the sections in which complete diversity had been applied." *Dresser*, 106 F.3d at 498; *accord U.S. Motors v. Gen. Motors Eur.*, 551 F.3d 420, 423 n.5 (6th Cir. 2008) (quoting *Dresser*). The Fifth Circuit went into detail on this: "According to Professor Moore, who was a Special Consultant on the Revision Staff, the purpose of the new language was to merge the traditionally separate jurisdictional grounds of 'diversity of citizenship' and 'alienage.' The traditional distinction had previously generated some confusion concerning the existence of federal jurisdiction when a citizen of one of the United States sues a citizen of a different state and a foreign citizen or subject in the same action." *Goar*, 688 F.2d at 421 n.6 (quoting James W. Moore, *Moore's Judicial Code Commentary* ¶ 0.03(25) at 154 (1949)); *accord K & H Bus. Consultants Ltd. v. Cheltonian, Ltd.*, 567 F. Supp. 420, 422 (D.N.J. 1983) ("Legislative history of the revised § 1332 states that the intention was to cover 'all diversity of citizenship instances in civil actions' including suits 'between citizens of a State, and citizens of other states and foreign states.'") (quoting 28 U.S.C. *Judiciary and Judicial Procedure Authoritative Text and Legislative History,* p. 1834, (1948)).

Because FSMS is invoking the Court's jurisdiction under paragraph (a)(3)—and not (a)(2)—Defendants' cases decided under paragraph (a)(2) are inapposite. *See* ECF 295 at 4 (citing *Wang*, 2020 WL 2926477 at *3-4; *Tagger*, 951 F.3d at 125; and *Bayerische Landesbank, N.Y. Branch* v. *Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012)).

5

## B. Section 1332(a)(3) Allows Diversity Jurisdiction Here

The dispositive question in this case—one that Defendants did not address—is whether the citizenship of an unincorporated association with both domestic and foreign members is considered to be a "citizen of [a] State[]" within the meaning of 28 U.S.C. § 1332(a)(3). Several courts have answered that question "yes" in well-reasoned opinions. For example, in *Tango Music*, the sole plaintiff was an LLC with a New Jersey citizen member and a U.K. citizen member. 348 F.3d at 245. The defendants were a corporation with New York and United Kingdom citizenship and individual defendants with United Kingdom and/or Virginia citizenship. *Id.* Thus, the line-up was jurisdictionally identical to this case: an LLC with U.S. and non-U.S. citizens; U.S. and non-U.S. defendants; and complete diversity between the plaintiff LLC's U.S. member and the U.S.-citizen defendants.

The Seventh Circuit sustained diversity jurisdiction, explaining: "The Judicial Code confers federal jurisdiction over suits between 'citizens of different States and in which citizens or subjects of a foreign state are additional parties.' That describes this case exactly." *Id.* (quoting paragraph (a)(3); citation omitted). The court added that "[a] reinforcing consideration is the desirability of promoting international harmony (a consideration emphasized by Hamilton, in *Federalist No. 80,* in justification of the alienage jurisdiction) by giving foreigners access to the national court system, where they are less likely to encounter provincial prejudices when litigating against U.S. citizens—as they are in this case, even though they are also litigating against their own co-nationals." *Id.* at 246 (citation omitted). *Tango Music* would have come out the other way if the Seventh Circuit had adopted the rule urged by Defendants.

6

Similarly, in *Auctus Fund, LLC* v. *Drone Guarder, Inc.*, 588 F. Supp. 3d 177 (D. Mass. 2022), the sole plaintiff was an LLC with members from eight States and three foreign countries. *Id.* at 179–80. The defendants were a U.K. citizen and a Nevada corporation with its principal place of business in London. *Id.* Again, the line-up was similar to this case. There was complete diversity between the plaintiff's domestic members and the U.S.-citizen defendants, and the plaintiff also had foreign members. The court concluded "[t]he text of [§ 1332(a)(3)], as well as the ultimate purpose of diversity and alienage jurisdiction make clear that federal courts have diversity jurisdiction in cases involving diverse U.S. citizens and alien parties on both sides." *Id.* at 181. The court reasoned that there were U.S. citizens on both sides of the dispute with complete diversity. *Id.* at 191. Provided the U.S. citizens on either side were completely diverse—"federal courts have diversity jurisdiction over matters between diverse domestic parties with alien parties on both sides as long as the amount in controversy is met." *Id.* The Court also explained that the purposes of diversity and alienage jurisdiction—"the fear of local prejudice" against an out-of-state party and "the risk of international friction"—reinforced its reading of the statutory text. *Id.* at 189; *accord Pregel Am., Inc. v. Casol*, No. 3:20-CV-00470-MOC-DSC, 2023 WL 2468980, at *2 (W.D.N.C. Mar. 10, 2023) ("The major purpose of alienage jurisdiction is to promote international relations by assuring other countries that litigation involving their nationals will be treated at the national level, and alienage jurisdiction is also intended to allow foreign subjects to avoid real or perceived bias in the state courts.") (internal quotations omitted).

Cases have also held that the U.S. citizenship of a dual-citizen corporate party

should not be disregarded under paragraph (a)(3). The Fifth Circuit's decision in *Leland v. De Havilland Aircraft Co. of Canada*, 987 F.2d 771 (5th Cir. 1993) (unpublished), is instructive. There, citizens of Texas and Ethiopia sued Boeing of Canada (BOC), which was incorporated in Delaware with its headquarters in Canada. *Id.* at *1. The court first recognized that § 1332(a)(3) does *not* forbid "aliens on both sides of the case." *Id.* at *2. Then, it then firmly rejected the claim that "because BOC's principal place of business is in Canada, it cannot be held to be a citizen of a state for the purposes of § 1332(a)(3)," explaining that "[this] counterintuitive proposition has no support in the case law…." *Id.*; *see also Intec USA, LLC v. Engle*, 467 F.3d 1038, 1043 (7th Cir. 2006) (explaining that an imputed dual-citizen could invoke § 1332(a)(3) if the domestic citizens on the other side of the case were from a different state).

Finally, the rule of *Tango* and *Auctus*, and *Leland* comports with diversity cases concerning individuals, in which the courts refuse to disregard the State citizenship of *individuals* with dual citizenship in evaluating diversity jurisdiction. *See Pregel*, 2023 WL 2468980, at *2) ("A broad consensus has formed that a dual citizen of the United States and another nation will be considered a U.S. citizen for diversity purposes."); *see Gen. Technology Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004) (citing and discussing *Sadat v. Mertes*, 615 F.2d 1176, 1187 (7th Cir. 1980)). Thus, in *Aly v. Hanzada for Import & Export Co.*, 864 F.3d 844, 847-48 (8th Cir. 2017), the court held that plaintiff who was a "citizen of Egypt and the United States" could sue a foreign defendant, because his "Egyptian citizenship does not defeat jurisdiction."

8

Here, too, it would be improper to disregard the domestic citizenship imputed to FSMS. The domestic members of the LLC have citizenships completely diverse from the domestic citizenship of the Defendants. Under these facts, this Court should join the *Tango*, *Auctus*, and *Leland* courts in concluding the language of the § 1332(a)(3), the purposes of diversity and alienage jurisdiction, and relevant policy and pragmatic considerations all support jurisdiction under § 1332(a)(3).

## C. Defendants' Section 1332(a)(3) Cases Are Incorrect

Defendants cite three cases decided under § 1332(a)(3) in which district courts declined to find jurisdiction when a party had domestic and foreign citizenship. *See* ECF 295 at 4 (citing *Phoenix Trading FZCO v. Dennis Corp.*, 2022 WL 18674462, at *1 (D.S.C. Aug. 29, 2022); *FPACP4 LEX, LLC* v. *Stantec, Inc.*, 586 F. Supp. 3d 824, 826 (N.D. Ill. 2022); and *N.Y. Metro. Reg'l Ctr., L.P. II* v. *Mammoet USA Holding, Inc.*, 552 F. Supp. 3d 451, 456 (S.D.N.Y. 2021)).

In those cases, the district courts held that an entity with both domestic and foreign citizenship must be treated *solely* as a foreign citizen for purposes of the diversity jurisdiction analysis. *FPACP LEX*, 586 F. Supp. 3d at 826; *N.Y. Metro.*, 552 F. Supp. 3d at 456. Thus, those cases expressly *disregard* the citizenship of the domestic members in evaluating the availability of jurisdiction under paragraph (a)(3), contrary to the basic principle that an unincorporated association takes the citizenship of "*each* State or foreign country of which any of its partners is a citizen." *Grupo Dataflux*, 541 U.S. at 569 (emphasis added).

We respectfully submit that those cases were incorrectly decided. To see why, consider two simple examples: First, a North Carolina citizen sues an individual who

is a U.S. citizen domiciled in California with dual citizenship in Bermuda. The two parties are "citizens of different States," so the court may exercise jurisdiction under § 1332(a)(1). *See supra* p. 8. Now, change the defendant to a corporation headquartered in California and incorporated in Bermuda. The two parties are still "citizens of different States" (North Carolina and California), so the court may exercise jurisdiction under § 1332(a)(1). It would be odd to relegate such a case to state court, since it involves the very concerns diversity and alienage jurisdiction were designed to protect against—the fear of local prejudice and the involvement of international parties. This case presents the same issue, with the addition of a *foreign* defendant (TPUK).

The cases that disregarded the State citizenship of a party under a §1332(a)(3) analysis seem to have gone astray by misreading the statements in *Grupo Dataflux* that a "citizenship change" of the LLC (which was but one "party") could not "cure the jurisdictional defect that existed at the time of filing," 541 U.S. at 575, and that a "dropped partner [cannot be equated] with a dropped party," *id.* at 578. Those statements are obviously correct, but do not support the assertion that the State citizenship of the party must be disregarded. Importantly, *Grupo* was a § 1332(a)(2) case, because the sole defendant was a Mexican corporation with Mexican citizenship. *Id.* at 568-69 n.1. That case thus fell within the rule, described above, that paragraph (a)(2) does not confer jurisdiction "over a lawsuit involving an alien on one side, and an alien and a citizen on the other side." *See Saadeh*, 107 F.3d at 55; *Dresser Indus.*, 106 F.3d at 499 ("Cases between aliens on one side and aliens and citizens on the other…do not fit the jurisdictional pigeonhole"). Put another way,

§ 1332(a)(3) did not provide a basis for jurisdiction in *Grupo*, as it does here, because the defendant was a Mexican citizen and not a U.S. citizen. 541 U.S. at 568.

If anything, *Grupo* supports jurisdiction here, because it confirmed that the "court 'looks to' the citizenship of the several persons composing the entity … for the purpose of determining the citizenship of the entity that is a party." 541 U.S. at 579. Defendants would have the Court *ignore* that aspect of FSMS's citizenship that—in the wording of § 1332(a)(3)—requires that it be treated as a "citizen of [a] State[]" (here, Texas and California), which is suing "citizens of [a] different State[]" (here, North Carolina), with TPUK as an "additional part[y]."

Moreover, Defendants' cases are also inconsistent with the reasoning of the Supreme Court's most recent case concerning diversity jurisdiction over unincorporated associations, *Americold Realty Trust*. In that case, the Court explained, it has always held that "only a human could be a citizen for jurisdictional purposes," and "if a 'mere legal entity' like a corporation were sued, the relevant *citizens* were its 'members,' or the 'real persons who come into court' in the entity's name." 577 U.S. at 381 (quoting *Bank of United States v. Deveaux*, 9 U.S. (5 Cranch) 61, 86, 91 (1809)). The Court went on to explain that, while Congress has enacted legislation that deems a corporation to be a dual citizen, 28 U.S.C. § 1332(c), it has "never expanded this grant of citizenship to include artificial entities other than corporations, such as joint-stock companies or limited partnerships," and "[f]or these unincorporated entities, we … have adhered to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of all members." *Id.* (cleaned up, quoting *Carden,* 494 U.S. at 195-96, quoting, in turn, *Chapman v.*

11

*Barney,* 129 U.S. 677, 682 (1889)). In *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 454 (1900) (cited as good law by the Court in *Americold*), the Court put it even more starkly: "This court does not hold that either a voluntary association of persons, or an association into a body politic, created by law, is a citizen of a state within the meaning of the Constitution." Thus, "we must look in the case of a suit by or against a partnership association to the citizenship of the several persons composing such association." *Id.* at 454, 456.

The obvious import of *Americold* is that an unincorporated association's members who are citizens of a State must not be disregarded for purposes of the diversity statute. Rather, *Americold* teaches that the court must look to the relevant *citizens*—the "'real persons who come into court' in the entity's name." 577 U.S. at 381. Thus, the citizenship of members from California and Texas (and China) are *all* imputed to FSMS, with the result that the case may proceed if all of members of FSMS are from different states than all Defendants, even if there are aliens that are "additional parties."

## II. Roadmap for Future Proceedings

As is evident from the above discussion, the district courts are divided on the dispositive question presented by Defendants' motion to dismiss for lack of subject matter jurisdiction. As one of the courts that took Defendants' side of the split put it, "the question is less clear than one might expect." *FPACP4 LEX*, 586 F. Supp. 3d at 825.

Fortunately, this Court's ability to resolve this dispute has been preserved with the filing of a new complaint (*Tanner III*) after the non-diverse member transferred

her interest to her husband, Jim Mao, a pre-existing member of the LLC. Mr. and Mrs. Bourne have already answered in *Tanner III*, and the other Defendants have accepted service and have agreed to respond to the complaint by March 14, 2025.

FSMS respectfully suggests that the Court proceed as follows.

**A.** If the Court denies the motion to dismiss—as it should—then FSMS respectfully recommends that the Court consolidate *Tanner I* and *Tanner III* and make them parallel in every respect. Consolidation and parallel treatment of the two identical cases will ensure that the work of the Court in resolving motions for summary judgment, preparing for and conducting trial, and resolving post-verdict motions will not be wasted, were the Fourth Circuit to determine that there was no subject-matter jurisdiction at the time of filing of *Tanner I*. As the Supreme Court reiterated in *Grupo Dataflux*, a determination on appeal that subject-matter jurisdiction was lacking at the time of filing would require dismissal, even after the case proceeded to trial, verdict, and judgment. 541 U.S. at 571-72. In that situation, *Grupo Dataflux* explains, the plaintiff would file a new complaint in the "very same District Court in which it was first filed." *Id.* at 581.

Dismissing *Tanner III* would present a risk of a retrial after years of appeal, which would place "burdens on the system in terms of witnesses, records, and fading memories, to say nothing of misusing judicial resources." *See Morris v. Slappy*, 461 U.S. 1, 15 (1983). Consolidating *Tanner I* with *Tanner III*, in contrast, would avoid a risk of the "spectacle of repeated trials." *Id.*; *see Hanes Companies, Inc. v. Ronson*, 712 F. Supp. 1223, 1230 (M.D.N.C. 1988) (denying motion to abate and granting

motion to consolidate because consolidation was the "proper means of achieving convenience and economy").

FSMS anticipates that the Court would then:

- Grant the Motion for Leave to Amend (ECF 239) in *Tanner I*, without prejudice to Defendants to file motions to dismiss or any other appropriate motions;

- Issue an order that all discovery and proceedings from *Tanner I* shall be usable in both cases;

- Administratively close *Tanner III* and direct that all filings would be made in *Tanner I* with both docket numbers on the exact same track;

- Dismiss *Tanner II* without prejudice, given the amended claims in *Tanner I* and as-pleaded claims in *Tanner III*.

**B.** If the Court grants the motion to dismiss *Tanner I* and *Tanner II*—and it should not—then the Court should proceed as follows.

**First:** The Court should state, in its order dismissing *Tanner I* and *Tanner II* that pursuant to North Carolina Rule of Civil Procedure 41(b), that "a new action based on the same claim may be commenced within one year or less after such dismissal." Because FSMS filed *Tanner III* while *Tanner I* and *Tanner II* were still pending, FSMS's claims in *Tanner III* are not barred by any statute of limitations. Under North Carolina law, "filing an action in federal court which is based on state substantive law does toll the statute of limitations while that action is pending." *Clark v. Velsicol Chem. Corp.*, 110 N.C. App. 803, 808 (1993), *aff'd*, 336 N.C. 599

(1994).[2] Nonetheless, in an abundance of caution to ensure that any dismissals of *Tanner I* and *Tanner II* will not have the unintended consequence of precluding resolution of the claims on the merits, the Court should include language in the dismissal order allowing FSMS to refile the claims within one year under N.C. R. Civ. P. 41(b). *See Clark*, 110 N.C. App. at 809; *Hesed-El v. Bryson*, No. 1:21-CV-00305-MR-WCM, 2022 WL 4287975, at *9 (W.D.N.C. July 12, 2022), *report and recommendation adopted*, 2022 WL 3370797 (W.D.N.C. Aug. 16, 2022); *Morgan v. Allstate Prop. & Cas. Ins. Co.*, No. 1:19 CV 345, 2020 WL 9848708, at *2 (W.D.N.C. Apr. 13, 2020), *report and recommendation adopted*, 2020 WL 2091072 (W.D.N.C. Apr. 29, 2020).

**Second:** The Court should then resolve the pending motions concerning the application of the protective orders in *Tanner I* and *Tanner II*. "It is well established that a federal court may consider collateral issues after an action is no longer pending." *Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1992). Resolving collateral issues "implicates no constitutional concern" because doing so does not constitute "a district court's assessment of the legal merits of the complaint" and therefore does not

---

[2] Delaware law is in accord. *Savage v. Himes*, 2010 WL 2006573, at *2 (Del. Super. Ct. May 18, 2010) (applying Delaware's savings statute, 10 Del. C. 8118, because "Delaware courts have long held that an action's failure for lack of subject matter jurisdiction constitutes failure for a matter of form."), *aff'd for the reasons stated by superior court*, 9 A.3d 476 (Del. 2010); *Wind Point Partners VII-A, L.P. v. Insight Equity A.P. X Co., LLC*, 2020 WL 5054791, at *11 ("the Savings Statute applies where a plaintiff has brought an action in good faith in what proves to be the wrong forum to ensure that controversies '[are] decided [on] the merits … rather than upon procedural technicalities.'") (quoting *Howmet Corp. v. City of Wilmington*, 285 A.2d 423, 427 (Del. Super. 1971)).

"raise the issue of a district court adjudicating the merits of a 'case or controversy' over which it lacks jurisdiction." *Id.* Numerous courts have confirmed the power of a district court to address the scope of a protective order, or even to modify it, following dismissal. *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 139-40 (2d Cir. 2004) (after a court has been divested of jurisdiction to adjudicate the merits, it still has "jurisdiction either to dispose of material in its files as it thinks appropriate or to modify or vacate its own protective orders with respect to such documents"); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993) ("[A] protective order, like any ongoing injunction, is always subject to the inherent power of the district court to relax or terminate the order, even after judgment."); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 780 (3d Cir. 1994) (third parties can intervene to modify a protective order even after the underlying dispute has been settled); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) ("As long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed.").

**Third:** the Court should decide the Rule 37(e) motion. This Court's "'interest in having rules of procedure obeyed … does not disappear' even if it is later determined that the court lacked jurisdiction." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 145 (4th Cir. 2020) (quoting *Willy*, 503 U.S. at 139). "There is no constitutional infirmity under Article III in requiring those practicing before the courts to conduct themselves in compliance with the applicable procedural rules or allowing the courts to impose … sanctions in the event of their failure to do so." *Id.*; *see Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1009 (4th Cir. 2014) (en banc) ("district courts

have jurisdiction to decide Rule 11 sanctions motions on the merits, even when they are filed after the underlying action is remanded to state court"); *Tellado v. IndyMac Mortg. Servs.*, 707 F.3d 275, 282 (3d Cir. 2013) ("although issued under Rule 16(f)(1)(C), the penalty order is analogous to the Rule 11 sanctions in *Willy* because it was designed to punish OneWest for its past violation of the order requiring the CEO's presence at trial.... [W]e find that the penalty order does not fall away based on the District Court's lack of subject matter jurisdiction over the underlying matter."); *In re GTI Cap. Holdings, LLC*, 399 F. App'x 236 (9th Cir. 2010) (Rule 37 sanctions "are collateral because they aim to deter abuse of the judicial process and have no bearing, and therefore no res judicata effect, on the case's underlying merits"); *In re Exxon Valdez*, 102 F.3d 429, 431 (9th Cir. 1996) ("The sanctions imposed here under Rule 37 were collateral to the merits of the actions, just as the Rule 11 sanctions were in *Willy*; though they terminated the actions, they did not signify a district court's assessment of the legal merits of the complaint.") (cleaned up); *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1553 (10th Cir. 1996) ("We conclude the district court's sanction imposed pursuant to Rule 16(f) and 37(b) is sufficiently analogous to Rule 11 sanctions to be enforced despite a lack of subject-matter jurisdiction."); *Dr. John's Inc. v. Vill. of Cahokia, Illinois*, 2019 WL 1574814, at *1 (S.D. Ill. Apr. 11, 2019) ("orders on sanctions—whether they be under Rule 11 as in *Willy* or under Rule 37 as here—are collateral to the merits and focus instead on an attorney's conduct under the Federal Rules of Civil Procedure during a civil case") (cleaned up).

**Fourth:** The Court should pick up in *Tanner III* where it left off in *Tanner I*

*and II*. This was the Supreme Court's solution to the problem identified in *Grupo Dataflux*, where the Court observed: "Having been through … years of discovery and pretrial motions in the current case, the parties would most likely proceed promptly to trial." 541 U.S. at 581 (cleaned up). This Court plainly has the power to make use of its prior proceedings. "A final determination of lack of subject-matter jurisdiction of a case in a federal court, of course, precludes further adjudication of it. But such a determination does not automatically wipe out all proceedings had in the district court at a time when the district court operated under the misapprehension that it had jurisdiction." *Willy*, 503 U.S. at 137.

In this regard, courts facilitate the use of prior proceedings and discovery where doing so is in the interests of justice. The case of *Astra Oil Trading NV v. PRSI Trading Co.*, 794 F. Supp. 2d 462 (S.D.N.Y. 2011), is instructive. There, the court entered a pre-judgment attachment, but later it appeared that the court did not have diversity jurisdiction. *Id.* at 469-70. Before the court dismissed the first action, the plaintiff filed a second action "as a precaution merely in order to continue pre-serving the status quo." *Id.* at 466. The second action was "substantively identical to the first," with the exception of its jurisdictional allegations. *Id.* at 470. The defend-ant urged the court to abate the second action, but the court refused, concluding that the equities warranted exercising discretion to permit the plaintiff to pursue the sec-ond action. *Id.* With regard to the attachment, the court recognized that an attachment by a court lacking subject-matter jurisdiction must be vacated, but concluded that the "reasoning set forth in our previous decision" was "equally applicable to plain-tiff's second action." *Id.* at 472-73.

Other courts have also made use of prior proceedings to promote efficiency and justice. *See, e.g., Daniels v. Jacobs*, 753 F. App'x 748, 755 (11th Cir. 2018) (affirming incorporation of "entire procedural history" to avoid "prejudice that would necessarily result" from allowing a party to "relitigate the case anew"); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131-32 (9th Cir. 2003) ("Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery") (cleaned up); *Parker v. Freightliner Corp.*, 940 F.2d 1019, 1025 (9th Cir. 1991) (no abuse of discretion where district court sanctioned plaintiff for failing to comply with discovery by barring him from offering expert testimony and then granted plaintiff's request to dismiss case without prejudice on condition that he would be barred from offering expert testimony in any refiled action); *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980) ("where an appropriate modification of a protective order can place litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification"); *Cohen v. Norcold, Inc.*, No. 5:20-CV-170-BO, 2023 WL 3335048, at *3 (E.D.N.C. May 8, 2023) (acknowledging that "modification of a protective order may be appropriate if the repetition of discovery could be avoided without tangibly prejudicing the substantial rights of another party" if doing so would "promote efficiency, minimize discovery costs, ensure full and fair disclosure, [or] conserve judicial resources").

# CONCLUSION

The Court should deny the motion to dismiss.

This the 24th day of February, 2025.

/s/ Kent A. Yalowitz
Kent A. Yalowitz (admitted *pro hac vice*)
N.Y. State Bar No. 2188944
Carmela T. Romeo (admitted *pro hac vice*)
N.Y. State Bar No. 5058151
**ARNOLD & PORTER**
  **KAYE SCHOLER LLP**
250 W 55th Street
New York, NY 10019
212-836-8000
kent.yalowitz@arnoldporter.com
carmela.romeo@arnoldporter.com

– and –

Eliseo R. Puig (admitted *pro hac vice*)
Colorado State Bar No. 49022
**ARNOLD & PORTER**
  **KAYE SCHOLER LLP**
1144 Fifteenth Street, Suite 3100
Denver, CO 80202
303-863-1000
eliseo.puig@arnoldporter.com

/s/ Lex M. Erwin
Lex M. Erwin
N.C. State Bar No. 34619
David A. Luzum
N.C. State Bar No. 41398
Kevin Y. Zhao
N.C. State Bar No. 53680
**MAYNARD NEXSEN PC**
227 W. Trade Street, Suite 2300
Charlotte, NC 28202
Telephone: (704) 339-0304
Facsimile: (704) 338-5377
lerwin@maynardnexsen.com
dluzum@maynardnexsen.com
kzhao@maynardnexsen.com

*Counsel for Plaintiff*

## CERTIFICATION

Pursuant to the Court's June 18 2024 Standing Order regarding Use of Artificial Intelligence, the undersigned certifies that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line research sources WestLaw, Lexis, Fast-Case, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Lex M. Erwin*
Lex M. Erwin