IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00501-UJ1-WCM

| | |
|---|---|
| FS MEDICAL SUPPLIES, LLC, | ) |
| Plaintiff, | ) |
| | ) MEMORANDUM AND |
| v. | ) RECOMMENDATION |
| | ) |
| TANNERGAP, INC. and | ) |
| TANNER PHARMA UK LIMITED, | ) |
| Defendants. | ) |

This matter is before the Court on multiple motions, including Defendants' Rule 12(b)(1) Motion to Dismiss Amended Complaint (Doc. 294), which has been referred to the undersigned for the entry of a recommendation.[1]

I. Relevant Procedural Background

On September 23, 2021, FS Medical Supplies, LLC ("FSMS") filed its original Complaint against TannerGAP, Inc. ("GAP") and Tanner Pharma UK, Limited ("TPUK"). FS Med. Supplies, LLC v. TannerGAP, Inc. & Tanner

---

[1]The other motions currently pending before the undersigned are Tanner Pharma UK Limited's and TannerGAP, Inc.'s Consent Motion to File Exhibits Under Seal (Doc. 212), Tanner Pharma UK Limited and TannerGAP, Inc.'s Motion to Quash and for Protective Order (Doc 229), FSMS's Motion to Dismiss Counterclaims and Strike Defenses (Doc. 235), FSMS's Motion to File Under Seal Second Amended and Supplemental Complaint (Doc. 237), FSMS's Motion for Leave to Amend Complaint (Doc. 239), Defendants' Joint Motion to Seal Confidential Information Contained in Plaintiff's Proposed Second Amended and Supplemental Complaint (Doc. 256), Plaintiff's Motion for Sanctions for Spoliation of Evidence (Doc. 261), and Defendants' Motion to Compel (Doc. 266).

1

Pharma UK Ltd., No. 3:21-cv-00501-UJ1-WCM ("FSMS I"), Doc. 1. Therein, FSMS alleged that this Court had federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy, exclusive of interest and costs, exceeded $75,000 and because all parties were "citizens of different states and foreign states." Id. at ¶¶ 1–4, 8. Specifically as to citizenship, FSMS alleged that it was a limited liability company whose members were citizens of either California or Texas, that GAP was a North Carolina corporation with its principal place of business in North Carolina, and that TPUK was a "European corporation with its principal place of business in the United Kingdom." Id. at ¶¶ 1–4.

GAP and TPUK moved to dismiss, based on, among other things, an alleged lack of personal jurisdiction. Docs. 15, 16. That motion was denied without prejudice and the parties were given an opportunity to conduct jurisdictional discovery. Doc. 21.

On September 16, 2022, FSMS filed an Amended Complaint that named GAP and TPUK and added Raymond Fairbanks Bourne ("Bourne") and Stephen John Scalia ("Scalia") as defendants. Like the original Complaint, the Amended Complaint asserted that federal subject matter jurisdiction existed pursuant to 28 U.S.C. § 1332. FSMS I, Doc. 58. With respect to the newly added defendants, FSMS alleged that Bourne and Scalia were domiciled in North Carolina. Id. at ¶¶ 13, 14.

All Defendants moved to dismiss. Docs. 62, 65, 67, 69, 71.

On July 17, 2023, the undersigned issued recommendations concerning the disposition of those motions. Doc. 110.

On September 20, 2023, and while the recommendations were pending, FSMS filed a separate case, this time against Bourne and Mary Everett Whitehurst Bourne a/k/a Molly Bourne (collectively, the "Bourne Defendants") and TPUK. FS Med. Supplies, LLC v. Tanner Pharma UK Ltd., Raymond Fairbanks Bourne, & Mary Everett Whitehurst Bourne, No. 3:23-cv-00598-UJ1-WCM ("FSMS II"), Doc. 1. FSMS again asserted that this Court had federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Specifically, FSMS alleged that it was a limited liability company with four members (two domiciled in Texas and two domiciled in California), that TPUK was "a company organized under the laws of England and Wales" with a principal place of business in North Carolina, and that the Bourne Defendants were domiciled in North Carolina. Id. at ¶¶ 4–7; see also FSMS II, Doc. 3 (FSMS's Citizenship Disclosure).

On September 30, 2023, the presiding District Judge granted in part and denied in part the pending motions to dismiss in FSMS I. Doc. 117.

On October 5, 2023, FSMS filed an Amended Complaint in FSMS II, and again asserted federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332. FSMS II, Doc. 33.

3

On January 17, 2024, the undersigned conducted a motions hearing and an initial pretrial conference in FSMS I and FSMS II and subsequently, recommended that the two cases be consolidated for discovery. FSMS I, Doc. 147; FSMS II, Doc. 75.

That recommendation was adopted and, on March 14, 2024, a pretrial order and case management plan was entered. FSMS I, Doc. 164; FSMS II, Doc 81.

By order filed on January 3, 2025, the undersigned stayed a January 6, 2025 deadline for the filing of dispositive motions, continued the trial of FSMS I and FSMS II, and directed the clerk to set a status conference and a hearing on numerous pending motions.

On January 7, 2025, the Clerk noticed those proceedings for February 11, 2025 at 10:00AM.

On February 10, 2025 (the day before the hearing), FSMS filed an Amended Citizenship Disclosure in FSMS II stating that as of September 20, 2023 (the date FSMS filed its original Complaint is FSMS II), one of its members, Zhen Zhen Tong, was a citizen of "California/China." FSMS II, Doc. 103 (the "Amended Citizenship Disclosure").[2]

---

[2] The parties appear to agree, and the undersigned assumes, that Zhen Zhen Tong was also a citizen of China on September 23, 2021, the date the original Complaint was filed in FSMS I.

4

Additionally on February 10, 2025, Zhen Zhen Tong transferred her interest in FSMS to her fellow member and husband by way of an "Assignment of Membership Interest." See FS Med. Supplies, LLC v. TannerGAP, Inc., Tanner Pharma UK Limited, Raymond Fairbanks Bourne, and Mary Everett Whitehurst Bourne, No. 3:25-cv-00102-UJ1-WCM ("FSMS III"), Doc. 37-3.[3]

By midnight on February 10, 2025, Defendants had filed Rule 12(b)(1) Motions to Dismiss in FSMS I and FSMS II, challenging this Court's subject matter jurisdiction based on an alleged lack of diversity. FSMS I, Doc. 294; FSMS II, Doc. 104.

On February 11, 2025, the parties appeared before the undersigned. At the beginning of that proceeding, FSMS reported that it had "quite recently discovered that we had a factual mistake in our understanding of the citizenship of one of the members of the plaintiff" and specifically that FSMS had discovered that one of its members was "a nonresident permanent . . . green card holder, nonresident alien." FSMS I, Doc. 298 at 7. FSMS further advised that it had, that morning, initiated a third action, FSMS III.[4]

---

[3] The Court may take judicial notice of the filings made in related matters. See Colonial Penn Ins. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989).

[4] One of the motions that had been noticed for hearing on that date was a request by FSMS for leave to file a second amended complaint in FSMS I, and a proposed amended complaint had been submitted. FSMS I, Docs. 239, 240. The original Complaint filed in FSMS III appears to be identical to the proposed second amended complaint that is the subject of the pending motion to amend in FSMS I.

5

After hearing from the parties, and in light of the Amended Citizenship Disclosure, the Rule 12(b)(1) Motions and the filing of FSMS III, the undersigned held all other motions previously set for hearing in both FSMS I and FSMS II in abeyance pending resolution of the question of subject matter jurisdiction.

This Memorandum now follows.

II. Discussion

A. Subject Matter Jurisdiction

Pursuant to 28 U.S.C. § 1332(a), this Court has "original subject matter jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between"

> (1) citizens of different States;
>
> (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;
>
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>
> (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).

Here, there is no dispute that the amount in controversy exceeds the jurisdictional threshold.

With respect to citizenship, it appears that at the time both <u>FSMS I</u> and <u>FSMS II</u> were filed, FSMS was a limited liability company whose members were citizens of Texas, California, and China. Therefore, FSMS was a citizen of Texas, California, and China. <u>Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC</u>, 636 F.3d 101, 103 (4th Cir. 2011) ("For purposes of diversity jurisdiction, the citizenship of a limited liability company ... is determined by the citizenship of all of its members").

It also appears that TPUK was a citizen of a foreign state, that GAP was a citizen of North Carolina, and that the Bourne Defendants were citizens of North Carolina.

Defendants contend that, under these circumstances, the requirements of 28 U.S.C. § 1332 are not met.

FSMS acknowledges that "[n]umerous cases have construed paragraph (a)(2) as not conferring jurisdiction 'over a lawsuit involving an alien on one side, and an alien and a citizen on the other side.'" <u>FSMS I</u>, Doc. 297 at 4; <u>see also</u> <u>Gen. Tech. Applications, Inc. v. Exro Ltda</u>, 388 F.3d 114, 120 (4th Cir. 2004) (citing <u>Universal Licensing Corp. v. Paola del Lungo S.P.A.</u>, 293 F.3d 579, 581 (2d Cir. 2002)). FSMS argues, though, that jurisdiction exists

pursuant to paragraph (a)(3), "regardless of whether aliens are on one or *both* sides of the case." FSMS I, Doc. 297 at 4 (emphasis in briefing).

Courts considering paragraph (a)(3) have found that "federal diversity jurisdiction is not defeated where (1) there is a legitimate controversy between diverse citizens and aliens are additional parties; and (2) there is complete diversity as to the citizens." Transure, Inc. v. Marsh & McLennan, Inc., 766 F.2d 1297, 1298 (9th Cir. 1985) (collecting cases); see also 13E Fed. Prac. & Proc. Juris. § 3604 (3d ed.) ("the language of Section 1332(a)(3) is broad enough to allow aliens to be additional parties on both sides of the dispute. Under this interpretation, jurisdiction would exist if a New Yorker, and a Canadian, sued a Californian, and a German, assuming, of course, that there was a legitimate dispute between the two Americans.").

Here, FSMS argues that its domestic citizenship (based on either the citizenship of its Texas and/or California members) may be used to satisfy the requirement that this suit be between "citizens of different States" because the "domestic members of [FSMS] have citizenships completely diverse from the domestic citizenship of the Defendants," which is North Carolina. FSMS I, Doc. 297 at 10.

The parties do not cite any controlling authority from the Fourth Circuit directly addressing the precise issue presented here, which is whether for the purposes of 28 U.S.C. § 1332(a)(3) a limited liability company may be

8

considered both: 1) a citizen of a State (based on the citizenship of only its domestic members) <u>and</u> 2) an "additional" party that is a citizen of a "foreign state" (based on the citizenship of only its foreign member).

Some courts have suggested that such an interpretation is proper. For example, in <u>Tango Music, LLC v. Deadquick Music, Inc.</u>, the court stated:

> Tango is a limited liability company, and for diversity purposes the citizenship of such an entity is that of its members. <u>Cosgrove v. Bartolotta</u>, 150 F.3d 729, 731 (7th Cir.1998). One of its members is a citizen of New Jersey, another a citizen of the United Kingdom. The principal defendant, DeadQuick, is a citizen of Delaware and New York, but one of the individual defendants is a citizen of the United Kingdom and the other a citizen of either the United Kingdom or Virginia. *So while the U.S. parties are diverse*, there are U.K. citizens on both sides of the case, and we must decide whether that destroys diversity jurisdiction.

348 F.3d 244, 245 (7th Cir. 2003) (emphasis added).

Similarly, in <u>Digital Media Solutions, LLC v. Zeetogroup, LLC</u>, No. 3:22-cv-01184-AHG, 2024 WL 1268164, at *3 (S.D. Cal. Mar. 25, 2024), the court stated that jurisdiction under paragraph (a)(3) would exist between a hypothetical plaintiff limited liability company with citizenships of Canada, Florida, Delaware, and New Jersey and a defendant limited liability company with alien citizenship and Texas citizenship "because the action would be between completely diverse U.S. citizens of different States (Florida, Delaware, and New Jersey on one side and Texas on the other), in which citizens or

9

subjects of a foreign state (Canada on one side and [defendant's member's] foreign state of citizenship on the other) are 'additional parties.'"

Other courts, however, have rejected this approach.

For example, in FPACP4 Lex, LLC v. Stantec, Inc., 586 F. Supp. 3d 824 (N.D. Ill. 2022), the court concluded that it lacked subject matter jurisdiction pursuant to paragraph (a)(3) in a suit brought by a limited liability company with domestic and foreign members against two corporations, one a citizen of Minnesota and the other a citizen of Canada. There, all parties agreed that "'there is no diversity jurisdiction over a case in which there are foreign parties on both sides of the suit and a U.S. citizen on only one side.'" Id. at 825–26 (quoting Salton, Inc. v. Philips Domestic Appliances & Pers. Care B.V., 391 F.3d 871, 875 (7th Cir. 2004)). Defendants argued that jurisdictional discovery would reveal there to be "citizens of diverse states on both sides, as well as citizens of foreign states" but the court concluded that even if the plaintiff's domestic citizenship was diverse from the Minnesota defendant, the plaintiff was also "inevitably a citizen of at least one foreign state, thus destroying diversity." Id. at 826-827.

Similarly, in New York Metropolitan Regional Center, L.P. v. Mammoet USA Holdings, Inc., 552 F. Supp.3d 451 (S.D.N.Y. 2021), the plaintiff, a limited partnership with partners having New York and foreign citizenship, asserted claims against a corporation with Texas citizenship. The plaintiff argued that

its New York partner was diverse from the Texas defendant, and that its foreign partner was an "additional party" pursuant to paragraph (a)(3). The court held that it lacked subject matter jurisdiction, explaining that while the plaintiff had multiple citizenships, it was a single party, which could not be "disaggregated, with its members being treated as 'distinct part[ies] with [their] own citizenship, as if the partners were personally named as parties." Id. at 456 (modification in original); see also Pattern Energy Grp., LP v. Perillo, No. 1:25-cv-00785, 2025 WL 1112848, a *5 (S.D.N.Y. April 15, 2025) ("For 28 U.S.C. § 1332(a)(3) to apply, this Court would need to disaggregate Pattern's foreign-based partners from the corporate entity and construe those partners as 'additional parties.' *Metropolitan Regional Center* is instructive in its thorough and reasoned rejection of an identical argument.") (citing 552 F. Supp. 3d at 455-58).

Additionally, in situations involving corporations with dual citizenship, courts have rejected efforts by parties to rely on one of those two citizenships to meet the jurisdictional requirements of paragraph (a)(3). See Phoenix Trading FZCO v. Dennis Corp., No. 4:22-cv-02355-RBH, 2022 WL 18674462, at *2 (D.S.C. Aug. 29, 2022) ("Although two Plaintiffs—Absolute Power Solutions, Inc. and Block Zero HS, Inc.—are citizens of Delaware (their state of incorporation), they are also citizens of the UAE (their principal places of business). Such dual citizenship does not confer diversity jurisdiction."); ACCO

11

Brands USA LLC v. Piñeyro Lara Comercial S.A., 27 F.Supp.3d 256, 260 (D.P.R. 2014) ("Plaintiffs would not be permitted to choose one of [defendant's] two citizenships in order to satisfy section 1332(a)(3)'s minimal diversity requirement; diversity would fail because [defendant's] foreign citizenship would result in no United States citizen appearing on the defendants' side of the suit."); Caribbean Telecommunications, Ltd. v. Guyana Tel. & Tel. Co., 594 F. Supp. 2d 522, 530 (D.N.J. 2009) ("The federal diversity statute does not permit domestic corporations to select among their two jurisdictional citizenships in order to preserve or defeat diversity. Diversity must be satisfied by both corporate citizenship designations; otherwise, the corporate citizenship provision would accomplish nothing. The Court sees no reason why alien corporations should be treated any differently.") (internal citations omitted); IGY Ocean Bay Props., Ltd. v. Ocean Bay Props. I Ltd., 534 F. Supp. 2d 446, 449 (S.D.N.Y. 2008) ("For Defendants' theory to prevail, however, Plaintiffs would have to be considered not only as 'additional parties,' but also as citizens of a domestic state as well. The argument thus reduces to an internal contradiction, insofar as it suggests that Plaintiffs be treated as aliens to satisfy one element of § 1332(a)(3)'s diversity requirement, but then as domestic citizens to meet the other part of that provision's jurisdictional test.").

Here, although no controlling case law directly addressing the precise situation presented here has been found, the Fourth Circuit has held that

where an entity has multiple citizenships, all of those citizenships must be considered in the jurisdictional analysis. See Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 121–22 (4th Cir. 2004) (finding that an unincorporated association's citizenship was that of its members—Columbia and Virginia—and that the court could "find no basis upon which to disregard either aspect" of the association's citizenship); accord Slavchev v. Royal Caribbean Cruises, Ltd., 559 F.3d 251, 254 (4th Cir. 2009) ("[A] corporation with its principal place of business in one of the United States and incorporated under the laws of a foreign state has dual citizenship for purposes of diversity jurisdiction. It is both a citizen of a State and a citizen of a foreign state. Thus, this case involves a claim by an alien (Bulgarian) against a corporation with the dual citizenship of Florida and a foreign state, Liberia. Under the long-standing requirement of complete diversity, which is applied to the dual citizenship of corporations, we find subject matter jurisdiction lacking.") (internal citation omitted).

While FSMS has multiple citizenships, it remains a single party and the undersigned is not convinced that FSMS can be treated as a domestic citizen (by virtue of the Texas and California citizenship of certain of its members) for the purpose of one portion of the paragraph (a)(3) analysis, while, at the same time, be treated as an "additional party" (by virtue of the foreign citizenship of its other member). Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 579

13

(2004) ("It is true that the court 'looks to' the citizenship of the several persons composing the entity, but it does so for the purpose of determining the citizenship of the entity that is a party, not to determine which citizens who compose the entity are to be treated as parties."); see also N.Y. Metro. Reg'l Ctr., L.P. II v. Mammoet USA Holding, Inc., 552 F. Supp. 3d 451, 456 & 458 (S.D.N.Y. 2021) (explaining that "[Carden v. Arkoma Associates, 494 U.S. 185 (1990)] and Grupo Dataflux thus stand for the (somewhat tautological) proposition that, for purposes of Section 1332(a), a 'single artificial entity' party is but one party and that its citizenship—and only its citizenship—matters for purposes of complete diversity" and that "to the extent [Tango Music] can be read to hold that a single LLC member (or partner) can be treated as an 'additional party,' that holding did not survive Grupo Dataflux, which was decided the following year"); FPACP4 Lex, 586 F. Supp. 3d at 826 ("the Tango court's passing comment on this issue—which was not the focus of its decision, as the question presented was whether the presence of citizens of the same foreign state on both sides of the litigation destroyed the diversity that otherwise existed between the completely diverse domestic citizens…is inconsistent with the Supreme Court's jurisdictional analysis in Grupo Dataflux….").

Accordingly, the undersigned finds that at the time the original Complaint was filed in this matter, the Court lacked subject matter jurisdiction.

### B. Additional Matters

As noted above, there are multiple other motions pending in this case.

By separate order, the undersigned is issuing a ruling on the three pending Motions to Seal. Docs. 212, 237, and 256.

Because the undersigned will recommend that the Defendants' Rule 12(b)(1) Motion to Dismiss Amended Complaint (Doc. 294) be granted and that FSMS's claims be dismissed without prejudice, the undersigned will also recommend that the other motions pending before the undersigned be denied without prejudice. S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 185 (4th Cir. 2013) (a dismissal for lack of jurisdiction must be without prejudice, "because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits").

Finally, FSMS requests that, in the event the Court finds subject matter jurisdiction to be lacking, the order of dismissal make clear that the "a new action based on the same claim may be commenced within one year or less after such dismissal" pursuant to Rule 41(b) of the North Carolina Rules of Civil Procedure. FSMS I, Doc. 297 at 15. FSMS, though, does not explain how such relief could be granted by a court that does not have subject matter jurisdiction.

15

See e.g., <u>Martin Marietta Corp. v. Forsyth Cnty. Zoning Bd. of Adjustment</u>, 65 N.C. App. 316, 317 (1983) ("Because the court was 'without authority to enter any order granting any relief,' … it did not have authority to grant petitioner the relief of thirty days within which to commence a new action based on the same claim; and its action in this respect is void.") (internal citation omitted).

### III. Recommendation

For the reasons set forth above, the undersigned **RESPECTFULLY RECOMMENDS**:

1. That Defendants' Rule 12(b)(1) Motion to Dismiss Amended Complaint (Doc. 294) be **GRANTED**, and that this matter be **DISMISSED WITHOUT PREJUDICE**.

2. That the following motions be **DENIED WITHOUT PREJUDICE**:

    a. Tanner Pharma UK Limited and TannerGAP, Inc.'s Motion to Quash and for Protective Order (Doc 229);

    b. FSMS's Motion to Dismiss Counterclaims and Strike Defenses (Doc. 235);

    c. FSMS's Motion for Leave to Amend Complaint (Doc. 239);

    d. Plaintiff's Motion for Sanctions for Spoliation of Evidence (Doc. 261); and

e. Defendants' Motion to Compel (Doc. 266).

Signed: August 27, 2025

W. Carleton Metcalf
United States Magistrate Judge

### Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).